1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MCGUIREWOODS LLP**
David C. Powell (SBN 129781)
dpowell@mcguirewoods.com
Carolee A. Hoover (SBN 282018)
choover@mcguirewoods.com
Alicia A. Baiardo (SBN 254228)
abaiardo@mcguirewoods.com
Aaron R. Marienthal (SBN 273154)
amarienthal@mcguirewoods.com
Two Embarcadero Center
Suite 1300
San Francisco, CA  94111-3821
Telephone:  415.844.9944
Facsimile:  415.844.9922

Attorneys for Defendants
Wells Fargo & Company and Wells
Fargo Bank N.A. d/b/a Wells Fargo
Dealer Services

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

IN RE WELLS FARGO
COLLATERAL PROTECTION
INSURANCE LITIGATION

CASE NO. 8:17-ML-2797-AG-KES

**DEFENDANTS WELLS FARGO &
COMPANY AND WELLS FARGO
BANK, N.A. dba WELLS FARGO
DEALER SERVICES' NOTICE OF
MOTION AND MOTION TO
DISMISS PLAINTIFFS'
COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT THEREOF**

Date:        June 4, 2018
Time:        10:00 a.m.
Courtroom:  10D
Complaint Filed; January 26, 2018

*Honorable Andrew J. Guilford*

1
DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S
NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that at 10:00 a.m. on June 4, 2018, in Courtroom 10D of the above-referenced court, located at 411 West 4th Street, Santa Ana, California 92701, Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. dba Wells Fargo Dealer Services (collectively, "Wells Fargo") will and hereby do move for an order dismissing the following claims from Plaintiffs'[1] Consolidated Class Action Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for failure to state a claim upon which relief may be granted: (a) first, second and third claims for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"); (b) fourth claim for violation of the Bank Holding Company Act, 12 U.S.C. § 1972 ("BHCA"); (c) fifth claim for violation of the California Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"); (d) sixth claim for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"); (e) seventh claim for Fraud by Concealment; (f) eighth claim for Unjust Enrichment; as well as the state sub-class claims for violation of the (g) Colorado Consumer Protection Act, COLO. REV. STAT. § 6-1-101 *et seq.* ("Colorado CPA"); (h) Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILL. COMP. STAT. 505/1 *et seq.* and 510/2 ("Illinois CFA"); (i) Indiana Deceptive Consumer Sales Act, IND. CODE § 24-5-0.5-3 et seq. ("Indiana DCSA"); (j) Minnesota Prevention of Consumer Fraud Act, MINN. STAT. § 325F.68(2) ("Minnesota CFA"); (k) Minnesota Uniform Deceptive Trade Practices Act, MINN. STAT. § 325d.43, *et seq.* ("Minnesota DTPA"); (l) Mississippi Consumer Protection Act, MISS. CODE ANN. § 75-24-1 *et seq.* ("Mississippi CPA");

---

[1] "Plaintiffs" means, collectively, the following individual named plaintiffs: Angela Camacho, Odis Cole, Nyle Davis, Duane Fosdick, Brandon Haag, Paul Hancock, Dustin Harvard, Brian Miller, Analisa Moskus, Regina Gonzalez, Keith Preston, Victoria Reimche, Dennis Small, and Bryan Tidwell.

DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S
NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

(m) Missouri Merchandising Practices Act, MO. REV. STAT. § 407.010 *et seq.* ("Missouri MPA"); (n) New Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8-1 *et seq.* ("New Jersey CFA") (o) Tennessee Consumer Protection Act, TENN. CODE § 47-18-101, *et seq.* ("Tennessee CPA"); (p) Wisconsin Deceptive Trade Practices Act, WIS. STA. § 100.18 *et seq.* ("Wisconsin DTPA"); and (q) Wyoming Consumer Protection Act, WYO. STAT. § 40-12-101 *et seq.* ("Wyoming CPA").

The grounds for Wells Fargo's Motion are as follows:

- Plaintiffs' first through third claims for violation of RICO fail because Plaintiffs do not meet the heightened pleading standard prescribed under FRCP 9(b). Specifically, Plaintiffs fail to allege with the requisite specificity: (1) the existence of a RICO enterprise or a common purpose, (2) actionable conduct on the part of Wells Fargo, or (3) predicate acts or a pattern of racketeering activity.

- Plaintiffs' fourth claim for violation of the BHCA fails because Plaintiffs do not allege facts, with the requisite specificity, showing that Wells Fargo preconditioned Plaintiffs' loans on the placement of CPI, nor is it an "unusual banking practice" to require collateral be insured, much less one that constitutes an "anti-competitive tying arrangement".

- Plaintiffs' fifth claim for violation of the CLRA fails because the statute does not apply to insurance and Plaintiffs do not adequately plead reliance.

- Plaintiffs' sixth claim for violation of the UCL fails because it lacks the required specificity, and Plaintiffs do not sufficiently plead unlawful, unfair or fraudulent conduct by Wells Fargo.

- Plaintiffs' seventh claim for Fraud by Concealment fails as a matter of law because Plaintiffs fail to meet the Rule 9(b) heightened pleading standards for fraud.

- Plaintiffs' eighth claim for Unjust Enrichment fails because it is not a

3

cause of action.

- All of Plaintiffs' state sub-class counts fail because they are insufficiently pleaded under Rule 9(b).

- Plaintiffs' state sub-class counts for violation of the Indiana DCSA, the Mississippi MPA, and the Wisconsin DTPA fail because these statutes do not apply to insurance transactions.

- Plaintiffs' claims under the Colorado CPA, the Tennessee CPA, the Mississippi CPA, and the Minnesota DTPA fail because the statutes either do not apply to class actions, or do not provide for damages and injunctive relief is not appropriate.

- Plaintiffs' claim under the Missouri MPA fails because the statute exempts credit service organizations.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in support thereof, the pleadings and papers on file herein, and upon such other matters as may be properly considered by the Court in ruling on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 2, 2018. Counsel were unable to resolve the dispute.

DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S
NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

1

DATED: March 9, 2018            **MCGUIREWOODS LLP**

2

3                                          By:    */s/ David C. Powell*

4                                                 David C. Powell

5                                                 David C. Powell (SBN 129781)
                                                  dpowell@mcguirewoods.com
6                                                 Two Embarcadero Center, Suite 1300
                                                  San Francisco, CA 94111-3821
7                                                 Telephone: (415) 844-9944
                                                  Facsimile:   (415) 844-9922
8

9                                                 *Counsel for Defendants Wells Fargo &*
10                                                *Company and Wells Fargo Bank N.A.*
                                                  *d/b/a Wells Fargo Dealer Services*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S
NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# **<u>TABLE OF CONTENTS</u>**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.  INTRODUCTION ........................................................................................ 1

II. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND ........ 3

    A.  General Background Allegations .................................................... 3

    B.  Allegations Regarding CPI Process and Defendants'
        Relationships .................................................................................. 4

    C.  Summary of Plaintiffs' Individual Allegations ............................... 5

    D.  Procedural History ......................................................................... 5

III. LEGAL STANDARD ................................................................................. 6

IV. LEGAL ARGUMENT ................................................................................ 7

    A.  Plaintiffs' RICO Claims Fail as They Lack The Required
        Specificity ...................................................................................... 7

        1.  Plaintiffs Fail To Sufficiently Plead The Existence of an
            Enterprise ............................................................................ 8

        2.  Plaintiffs Do Not Plead Actionable Conduct With
            Specificity .......................................................................... 9

        3.  Plaintiffs Do Not Adequately Allege Predicate Acts or a
            Pattern of Racketeering Activity ...................................... 10

    B.  Plaintiffs' BHCA Claim Fails Because CPI Was Not a
        Precondition to Financing and Requiring Insurance is Not
        "Unusual" ...................................................................................... 12

        1.  Plaintiffs Cannot Allege an "Unusual" Banking Practice ........ 14

        2.  Plaintiffs Fail to Plead an Anti-Competitive Tying
            Arrangement ...................................................................... 15

    C.  Plaintiffs' CLRA Claim Fails Because Insurance Is Not a "Good
        or Service" and Plaintiffs Fail to Allege Reliance .............................. 16

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT DEFENDANTS WELLS
FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

|  |  | 1. | Insurance is Not a "Good or Service" Subject to the CLRA..... 16 |
|  |  | 2. | The CLRA Claim Also Fails as Plaintiffs Fail to Allege Reliance ................................................................................. 17 |
|  | D. | Plaintiffs Fail to Adequately Plead a UCL Violation .......................... 17 | |
|  | E. | Plaintiffs' Fraud by Concealment Claim Is Inadequately Pled .......... 19 | |
|  | F. | Plaintiffs Fail To Allege A Claim For Unjust Enrichment ................. 21 | |
|  | G. | Plaintiffs' State Law Claims Likewise Fail As A Matter of Law ........ 22 | |
|  |  | 1. | The Indiana DCSA, Mississippi CPA and Wisconsin DTPA Do Not Apply to Insurance Transactions ...................... 24 |
|  |  | 2. | The Colorado, Tennessee, and Mississippi CPA and the Minnesota DTPA Do Not Apply to Class Actions, or Do Not Provide For Damages and Injunctive Relief is Inappropriate ............................................................................ 24 |
|  |  | 3. | The Missouri MPA Exempts Credit Service Organizations ..... 25 |
| V. | CONCLUSION .............................................................................................. 25 | | |

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Federal Cases**

4

*Abramson v. Marriott Ownership Resorts, Inc.*,
  155 F. Supp. 3d 1056 (C.D. Cal. 2016).....................................................17, 18, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................6

*B.C. Recreational Indus. v. First Nat'l Bank*,
  639 F.2d 828 (1st Cir. 1981) ...............................................................................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...................................6

*Bieber v. State Bank of Terry*,
  928 F.2d 328 (9th Cir. 1991) ..........................................................................13, 14

*Bischoff v. DirecTV, Inc.*,
  180 F. Supp. 2d 1097 (C.D. Cal. 2002).................................................................14

*Boyle v. United States*,
  556 U.S. 938 (2009) ................................................................................................8

*Browning et. al. v. Univlever United States, Inc.*
  2017 WL 7660643 (C.D. Cal. Apr. 26, 2017)........................................................22

*Buckley v. Cracchiolo*,
  2014 WL 545751 (C.D. Cal. Feb. 7, 2014) ..........................................................16

*United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) .........................................................................6, 23

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001) ................................................................................................8

*Chaset v. Fleer/Skybox Intern., LP*,
  300 F.3d 1083 (9th Cir. 2002) ..............................................................................10

*City of Los Angeles v. County of Kern*,
  No. 06-5094 GAF, 2006 U.S. Dist. LEXIS 81417 (C.D. Cal. Oct.
  24, 2006)................................................................................................................14

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii

*Cooper v. Pickett,*
    137 F.3d 616 (9th Cir. 1997) ............................................................................ 23

*Cousins v. Lockyer,*
    568 F.3d 1063 (9th Cir. 2009) ............................................................................ 6

*Damon v. Groteboer,*
    937 F. Supp. 2d 1048 (D. Minn. 2013) ............................................................ 25

*Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.),*
    42 F.3d 1541 (9th Cir. 1994) ............................................................................ 11

*Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.,*
    751 F.3d 990 (9th Cir. 2014) .............................................................................. 8

*Edwards v. Marin Park, Inc.,*
    356 F.3d 1058 (9th Cir. 2004) ...................................................................... 8, 11

*Erickson v. Boston Scientific Corp.,*
    846 F. Supp. 2d 1085 (C.D. Cal. 2011) ...................................................... 19, 20

*In re Experian Data Breach Litig.,*
    2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) .................................................. 18

*Fazio v. Apple, Inc. (In re iPhone 4S Consumer Litig.),*
    637 F.App'x 414 (9th Cir. 2016) ...................................................................... 19

*Glenn v. Hyundai Motor Am.,*
    2016 WL 3621280 (C.D. Cal. June 24, 2016) .................................................. 21

*Gomez v. Guthy-Renker, LLC,*
    2015 WL 4270042 (C.D. Cal. July 13, 2015) .................................................... 9

*Grant v. Aurora Loan Servs.,*
    736 F. Supp. 2d 1257 (C.D. Cal. 2010) ............................................................ 19

*Graue Mill Dev. Corp. v. Colonial Bank & Tr. Co. of Chicago,*
    927 F.2d 988 (7th Cir. 1991) ............................................................................ 15

*Howard v. Am. Online Inc.,*
    208 F.3d 741 (9th Cir. 2000) ...................................................................... 11, 12

*Humana Inc. v. Forsyth,*
    525 U.S. 299 (1999) .......................................................................................... 14

iv

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................................... 6, 7

*Kenty v. Bank One, Columbus, N.A.*,
    92 F.3d 384 (6th Cir. 1996), *abrogated on other grounds* .................................. 14

*Lancaster Cmty. Hos. v. Antelope Valley Hosp. Dist.*,
    940 F.2d 397 (9th Cir. 2001) ......................................................................... 8, 10

*Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*,
    2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) ...................................................... 21

*Martinez v. Nash Finch Co.*,
    886 F. Supp. 2d 1212 (D. Colo. 2012) .................................................................. 24

*McClain v. S.C. Nat. Bank*,
    105 F.3d 898 (4th Cir. 1997) ................................................................................. 15

*McCoy v. Franklin Savings Assoc.*,
    636 F.2d 172 (7th Cir. 1980) ................................................................................. 15

*Miranda v. SCME Mortg. Bankers, Inc.*
    2017 WL 3131965 (C.D. Cal. July 24, 2017) ...................................................... 20

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989) ................................................................................. 19

*NessCap Co. v. Maxwell Techs., Inc.*,
    No. 07cv0704-JLS (BLM), 2008 U.S. Dist. LEXIS 3357 (S.D. Cal.
    Jan. 16, 2008) ....................................................................................................... 14

*Orr v. Bank of America*,
    285 F.3d 764 (9th Cir. 2002) ................................................................................. 11

*Parks Sch. of Bus. v. Symington*,
    51 F.3d 1480 (9th Cir. 1995) ................................................................................... 6

*Parsons Steel, Inc. v. First Alabama Bank of Montgomery, N.A.*,
    679 F.2d 242 (11th Cir. 1982) ............................................................................... 14

*Rae v. Union Bank*,
    725 F.2d 478 (9th Cir. 1984) ................................................................................. 13

v

*Riverview Health Institute LLC v. Med. Mut. of Ohio*,
   601 F.3d 505 (6th Cir. 2010) ............................................................................... 14

*Rojas-Lozano v. Google, Inc.*,
   159 F. Supp. 3d 1101 (N.D. Cal. 2016) ............................................................... 17

*Sanders v. Choice Mfg. Co., Inc.*,
   2011 WL 6002639 (N.D. Cal. Nov. 30, 2011) ..................................................... 16

*Sec. & Exch. Comm'n v. Jammin Java Corp.*,
   2016 WL 6595133 (C.D. Cal. July 18, 2016) ...................................................... 20

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) ........................................................................... 7, 24

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d at 989-990 ................................................................................. 22

*Stitt v. Citibank, N.A.*,
   2015 WL 75237 (N.D. Cal. Jan. 6, 2015) .............................................................. 9

*Thunander v. Uponor, Inc.*,
   887 F. Supp. 2d 850 (D. Minn. 2012) ................................................................. 23

*Todd v. Tempur-Sealy Int'l, Inc.*,
   No. 13-CV-04984-JST, 2016 WL 344479 (N.D. Cal. Jan. 28, 2016) ........... 21, 22

*Tose v. First Penn. Bank*,
   648 F.2d 879 (3d Cir.), *cert. denied,* 454 U.S. 893 (1981) ................................. 15

*Two Moms & a Toy, LLC v. Int'l Playthings, LLC*,
   898 F. Supp. 2d 1213 (D. Colo. 2012) ................................................................ 23

*Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*,
   457 F.3d 1106 (9th Cir. 2006) ............................................................................. 21

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016) ............................................................................... 7

*Vega v. Ocwen Fin. Corp.*,
   676 F. App'x 647 (9th Cir. 2017) .......................................................................... 8

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ....................................................................*passim*

vi

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir.2008) ................................................................. 19

**California Cases**

*Berry v. Am. Exp. Publishing, Inc.*,
   147 Cal. App. 4th 224 (4th Dist. 2007) ................................................ 16

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ............................................................. 17

*Fairbanks v. Sup. Ct*,
   205 P.3d 201 (Cal. 2009) ...................................................................... 16

**Other State Cases**

*Am. Bankers Ins. Co. of Fla. v. Booth*,
   830 So. 2d 1205 (Miss. 2002) .............................................................. 25

*Barry v. St. Mary's Hosp. Decatur*,
   2016 IL App (4th) 150961, 68 N.E.3d 964, appeal denied, 80
   N.E.3d 1 (Ill. 2017) .............................................................................. 23

*Bd. of Cnty. Comm'rs v. Vandemoer*,
   205 P.3d 423 (Colo. App. 2008) .......................................................... 25

*Herrig v. Herrig*,
   844 P.2d 487 (Wyo. 1992) ................................................................... 24

*McKinney v. State*,
   693 N.E.2d 65 (Ind. 1998) .................................................................... 23

*Morse v. City of Waterville*,
   458 N.W.2d 728 (Minn. App. 1990) ..................................................... 25

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*,
   249 S.W.3d 301 (Tenn. 2008) .............................................................. 25

**Federal Statutes**

Bank Holding Company Act, 12 U.S.C.
   § 1972 ..........................................................................................*passim*

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.
   §§ 1962-1968 ...............................................................................*passim*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT DEFENDANTS WELLS
FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

**California Statutes**

Cal. Civ. Code
§ 1770(a) .................................................................................................. 16

California Legal Remedies Act, Cal. Civ. Code
§ 1750 *et seq.* ............................................................................ 2, 5, 16, 17

California Unfair Competition Law, Cal. Bus. & Prof. Code
§ 17200 *et seq.* ................................................................................. *passim*

**Other State Statutes**

Colorado Consumer Protection Act, COLO. REV. STAT.
§ 6-1-101 *et seq.* .............................................................................. *passim*

Illinois CFA ................................................................................ 6, 22, 23

Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILL.
COMP. STAT. 505/1 *et seq.* and 510/2 ............................................................ 2

IND. CODE ANN.
§ 24-5-0.5-2 ............................................................................................. 24

Indiana DCSA .................................................................................. *passim*

Indiana Deceptive Consumer Sales Act, IND. CODE
§ 24-5-0.5-3 *et seq.* ................................................................................... 2

Minnesota Consum Fraud Act
§ 325F.68 *et seq.* ...................................................................... 6, 22, 23

Minnesota Uniform Deceptive Trade Practices Act, MINN. STAT.
§ 325d.43, *et seq.* ("Minnesota DTPA") ......................................... *passim*

MISS. CODE. ANN.
§ 75-24-15 (4) ........................................................................................ 25

Mississippi Consumer Protection Act, MISS. CODE ANN.
§ 75-24-1 *et seq.* ("Mississippi CPA") ............................................. *passim*

Missouri Merchandising Practices Act, MO. REV. STAT.
§ 407.010 *et seq.* ............................................................................ *passim*

viii

MO. ANN. STAT.
 § 407.637 (2)(1) ........................................................................... 25

New Jersey CFA ................................................................... 6, 22, 23

New Jersey Consumer Fraud Act, N.J. STAT. ANN.
 § 56:8-1 *et seq.* ...................................................................... 2, 22, 23

TENN. CODE
 § 47-18-101, *et seq.* .................................................................. 2, 24

Tennessee CPA ......................................................................... *passim*

WIS. STAT. ANN.
 § 100.18 ..................................................................................... 2, 24

Wisconsin Deceptive Trade Practices Act .......................................... 2

Wyoming Consumer Protection Act, WYO. STAT.
 § 40-12-101 *et seq.* ................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .................................................................. 6

Fed. R. Civ. P. 9(b) ............................................................... *passim*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

Plaintiffs'[1] Consolidated Complaint is premised on allegations that Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. *dba* Wells Fargo Dealer Services (collectively "Wells Fargo"), in conjunction with National General and its alleged predecessors-in-interest, improperly placed Collateral Protection Insurance ("CPI") policies on Plaintiffs' auto loan accounts and charged Plaintiffs for CPI when they had their own auto insurance. Plaintiffs assert that Wells Fargo and its third party insurance administrators engaged in an enterprise to "unlawfully extract[] significant revenue and profits from Plaintiffs and the Class" in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"). In doing so, Plaintiffs allege that Wells Fargo violated a host of federal and state statutes, was unjustly enriched and engaged in fraud by concealment. However, Plaintiffs' conclusory allegations fail to meet the heightened pleading standards under Rule 9(b), which applies to each of Plaintiffs' claims as they are all predicated on the same underlying allegations of fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-1104 (9th Cir. 2003). Wells Fargo brings this Motion to Dismiss the following claims for the reasons stated below:

- Plaintiffs' first, second, and third claims for violation of RICO fail because Plaintiffs do not meet the heightened pleading standard prescribed under FRCP 9(b). Specifically, Plaintiffs fail to allege with the requisite specificity: (1) the existence of a RICO enterprise or a common purpose, (2) actionable conduct by Wells Fargo, or (3) predicate acts with the intent to defraud or a

---

[1] "Plaintiffs" collectively means and refers to the following individual plaintiffs: Angela Camacho, Odis Cole, Nyle Davis, Duane Fosdick, Brandon Haag, Paul Hancock, Dustin Harvard, Brian Miller, Analisa Moskus, Regina Gonzalez, Keith Preston, Victoria Reimche, Dennis Small, and Bryan Tidwell.

pattern of racketeering activity.

- Plaintiffs' fourth claim for violation of the Bank Holding Company Act, 12 U.S.C. § 1972 ("BHCA") fails because it is predicated on Plaintiffs' fraud allegations but is not pled with the requisite specificity. Plaintiffs also do not allege facts showing that Wells Fargo preconditioned Plaintiffs' loans on the placement of CPI, nor is it an "unusual banking practice" to require that collateral be insured, much less an "anti-competitive tying arrangement".

- Plaintiffs' fifth claim for violation of the California Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), fails because the statute does not apply to insurance and Plaintiffs do not allege reliance.

- Plaintiffs' sixth claim for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), fails because it is not pled with the requisite specificity and Plaintiffs do not sufficiently plead unlawful, unfair or fraudulent conduct by Wells Fargo.

- Plaintiffs' seventh claim for Fraud by Concealment fails because it lacks the requisite specificity required for fraud claims under Rule 9(b).

- Plaintiffs' eighth claim for Unjust Enrichment is not a cause of action.

- All of Plaintiffs' state sub-class counts[2] fail because they are predicated on

---

[2] Colorado Consumer Protection Act, COLO. REV. STAT. § 6-1-101 *et seq.* ("Colorado CPA"), Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILL. COMP. STAT. 505/1 *et seq.* and 510/2 ("Illinois CFA"), the Indiana Deceptive Consumer Sales Act, IND. CODE § 24-5-0.5-3 *et seq.* ("Indiana DCSA"), Minnesota Prevention of Consumer Fraud Act, MINN. STAT. § 325F.68(2) *et seq.* ("Minnesota CFA"), Minnesota Uniform Deceptive Trade Practices Act, MINN. STAT. § 325d.43, *et seq.* ("Minnesota DTPA"), Mississippi Consumer Protection Act, MISS. CODE ANN. § 75-24-1 *et seq.* ("Mississippi CPA"), Missouri Merchandising Practices Act, MO. REV. STAT. § 407.010 *et seq.* ("Missouri MPA"), New Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8-1 *et seq.* ("New Jersey CFA"), Tennessee Consumer Protection Act, TENN. CODE § 47-18-101, *et seq.* ("Tennessee CPA"), the Wisconsin Deceptive Trade Practices Act, WIS. STA. § 100.18 *et seq.* ("Wisconsin DTPA"),

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Plaintiffs' fraud allegations, yet fail to meet the heightened Rule 9(b) pleading standard.

- Plaintiffs' state sub-class counts for violation of the Indiana DCSA, the Mississippi MPA, and the Wisconsin DTPA fail because these statutes do not apply to insurance transactions.

- Plaintiffs' claims under the Colorado CPA, the Tennessee CPA, the Mississippi CPA, and the Minnesota DTPA fail because the statutes either do not apply to class actions, or do not provide for damages and injunctive relief is not appropriate.

- Plaintiffs' claim under the Missouri MPA fails because the statute exempts credit service organizations.

For these reasons and as further set forth herein, Wells Fargo respectfully requests that the Court dismiss each of Plaintiffs' claims.

## II.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

### A.    General Background Allegations

Plaintiffs each financed the purchase of a vehicle with a loan from Wells Fargo. *See* Compl. ¶ 9 (Camacho), ¶ 17 (Cole), ¶ 25 (Davis), ¶ 33 (Fosdick), ¶ 41 (Haag), ¶ 48 (Hancock), ¶ 57 (Havard), ¶ 66 (Miller), ¶ 75 (Moskus), ¶ 82 (Gonzalez), ¶ 92 (Preston), ¶ 102 (Reimche), ¶ 110 (Small), ¶ 118 (Tidwell).  In or around 2005, "Wells Fargo began contractually obligating customers to accept CPI policies if the customer either failed to obtain sufficient auto insurance, or allowed their auto insurance to lapse." *Id*. ¶ 146.

Plaintiffs allege that Wells Fargo, together with co-defendants National General Holdings Corp., as alleged successor-in-interest to Balboa Insurance

---

and the Wyoming Consumer Protection Act, WYO. STAT. § 40-12-101 *et seq*. ("Wyoming CPA").

Company ("Balboa") and QBE North America ("QBE"), and National General Insurance Company (together with National General Holdings Corp., "National General"), collectively "Defendants", engaged in a scheme to force-place unnecessary CPI policies on Plaintiffs' vehicles in order to generate profits in the form of CPI premiums, interest, and other fees, as well as "undisclosed kickback commissions for each of the CPI policies they wrote." Compl. ¶¶ 2, 4.

As alleged, "Wells Fargo provided borrower information to…Balboa, QBE, and National General", who in turn were "supposed to check an insurance database to confirm whether Wells Fargo's customers had insurance coverage." *Id*. ¶ 5. Plaintiffs allege that Defendants either did not check the database, or ignored the information contained therein, and instead placed "redundant" CPI policies on customer accounts. *Id*. Defendants allegedly "automatically deducted the cost of the CPI insurance from the customers' bank accounts, along with the regularly scheduled principal and interest payment[s]". *Id*. Plaintiffs allege that when customers "complained and informed Defendants" that the CPI policies were unnecessary, Wells Fargo refused to remove the unlawful charges. *Id*. ¶ 2.

### B.   Allegations Regarding CPI Process and Defendants' Relationships

At different points in time relevant herein, Balboa, QBE and National General are alleged to have administered Wells Fargo's CPI program. *Id*. ¶¶ 128-130. As alleged, between 2005 and 2011 Balboa administered the program until QBE acquired Balboa in June 2011. *Id*. ¶ 129. QBE took over the administration of the CPI program from 2011 to July 2015, when National General Holdings Corp., allegedly acquired QBE's assets and liabilities. *Id*. ¶ 128. National General Insurance Company administered Wells Fargo's CPI program from 2011 to 2016. *Id*. 130. The scope of these third party provider services included "insurance tracking, borrower identification, and policy placement." *Id*. ¶¶ 128-130.

Plaintiffs allege that Wells Fargo partnered with Balboa, QBE, and National General to implement the force-placed CPI "scheme" dating back to 2005. *Id*. ¶ 141.

Plaintiffs claim that Wells Fargo received interest on the CPI policies, late fees when customer payments were insufficient to cover the premium, principal and interest, as well as "kickbacks" for each CPI policy. *Id*. ¶ 147.  Defendants also allegedly did not properly disclose these CPI policies to customers. *Id*. ¶ 151.

### C.     Summary of Plaintiffs' Individual Allegations

Each Plaintiff alleges that CPI was improperly placed on his or her auto loan account resulting in Plaintiffs being charged varying amounts, including late fees, for purportedly duplicative insurance at unspecified times. *See* Compl. ¶¶ 10-11 (Camacho), ¶¶ 18-20 (Cole), ¶¶ 26-28 (Davis), ¶¶ 34-36 (Fosdick), ¶¶ 42-43 (Haag), ¶¶ 49-52 (Hancock), ¶¶58-61 (Havard), ¶¶ 67-69 (Miller), ¶¶ 76-77 (Moskus), ¶¶ 83-87 (Gonzalez), ¶¶ 93-97 (Preston), ¶¶ 103-105 (Reimche), ¶¶ 111-112 (Small), ¶¶119-121 (Tidwell). Plaintiffs allege they contacted Wells Fargo, at unnamed times and in unspecified ways, to provide their insurance information. *Id*.  Four of the Plaintiffs further allege that the CPI charges caused them to become delinquent on their loans resulting in the repossession of their vehicles. *Id*. at ¶¶ 10-11 (Camacho), ¶ 28 (Davis), ¶ 61 (Havard), ¶ 87 (Gonzalez). Additionally, Plaintiffs allege that "had the CPI scheme been disclosed", they "would not have obtained an auto loan from Wells Fargo, would not have paid the CPI charges, and/or would have disputed the CPI charges and demanded full compensation." *Id*. ¶¶ 14, 22, 30, 38, 45, 54, 63, 72, 79, 89, 99, 107, 115, 123.

### D.     Procedural History

Plaintiffs filed the Consolidated Complaint on January 26, 2018. [Dkt. No. 49].  The Complaint asserts the following claims against Wells Fargo: (1) violation of RICO regarding the alleged "Wells Fargo-National General CPI Enterprise"; (2) violation of RICO regarding the alleged "Wells Fargo-QBE CPI Enterprise"; (3) violation of RICO regarding the alleged "Wells Fargo-Balboa CPI Enterprise"; (4) violation of the BHCA; (5) violation of the CLRA; (6) violation of the UCL; (7) Fraud by Concealment; (8) Unjust Enrichment. Plaintiffs also assert 10 counts

for violation of various state statutes: (9) the Colorado CPA, (10) the Illinois CFA; (11) the Indiana DCSA; (12) the Minnesota CFA; (13) the Minnesota DTPA; (14) the Mississippi CPA; (15) the Missouri MPA; (16) the New Jersey CFA; (17) the Tennessee CPA; (18) the Wisconsin DTPA; and (19) the Wyoming CPA. Wells Fargo moves to dismiss each of Plaintiffs' claims.

## III. LEGAL STANDARD

Under Federal Rule 12(b)(6) a party may move to dismiss claims based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Such a motion challenges the legal sufficiency of the claims alleged. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). While the court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). In short, "a complaint . . . must plead enough facts to state a claim to relief that is plausible on its face." *Id.*   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

In addition, for claims sounding in fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud", and absent such specificity, the claim *must* be dismissed. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *see* Fed. R. Civ. P. 9(b). The "circumstances" required by Rule 9(b) are the "*who, what, when, where, and how*" of the fraudulent activity. *United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir.

2011) (emphasis added). Further, if the plaintiff claims a statement is false or misleading, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (quoting *Decker v. GlenFed, Inc.* (*In re GlenFed, Inc. Sec. Litig.*), 42 F.3d 1541, 1548 (9th Cir. 1994)).

Plaintiffs cannot "merely lump multiple defendants together" but must "differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016). This heightened pleading standard ensures that Defendants have "notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). This stringent standard applies to class actions. *See Kearns*, 567 F.3d at 1125. It also applies to all claims that are predicated on fraud allegations. *Vess*, 317 F.3d at 1103-1104.

## IV.   LEGAL ARGUMENT

### A.   Plaintiffs' RICO Claims Fail as They Lack The Required Specificity

Plaintiffs' first, second and third claims allege violations of RICO by Wells Fargo, National General, and its alleged predecessors-in-interest. *See generally* Compl. ¶¶ 194-280. The substance of each RICO claim is largely identical, the only distinction being the separate alleged "enterprises" between Wells Fargo and National General, QBE, and Balboa. *Id.* ¶¶ 196-204, 223-233, 254-262. In short, Plaintiffs allege that Wells Fargo, National General, QBE and Balboa "conducted their business through association-in-fact enterprises in violation of section 1962(c) by a pattern of racketeering activity, including mail and wire fraud, for the purpose of improperly profiting from unlawfully force-placed CPI policies," and that the "CPI scheme enabled Wells Fargo and each of the underwriters to enjoy undisclosed kickback payments derived, among other things, from the commissions generated on

7

1  the force-placed CPI policies." *Id*. ¶ 192.

2  RICO claims are subject to the heightened pleading requirements of Rule

3  9(b). *Vega v. Ocwen Fin. Corp.*, 676 F. App'x 647, 648 (9th Cir. 2017) ("Rule 9(b)'s

4  requirement that fraud must be pleaded with particularity applies to the plaintiffs'

5  federal RICO claims and their state-law claims because all of them allege fraudulent

6  conduct") (citing *Kearns*, 567 F.3d at 1125); *Edwards v. Marin Park, Inc.*, 356 F.3d

7  1058, 1065-66 (9th Cir. 2004). Rule 9(b) requires that Plaintiffs "detail with

8  particularity the time, place, and manner of each act of fraud, plus the role of each

9  defendant in each scheme." *Lancaster Cmty. Hos. v. Antelope Valley Hosp. Dist.*,

10 940 F.2d 397, 405 (9th Cir. 2001) (citing Fed. R. Civ. P. 9(b)). Plaintiffs, however,

11 fail to allege with the requisite specificity the existence of an enterprise, a common

12 purpose, actionable conduct, predicate acts or a pattern of racketeering activity.

13          **1.    Plaintiffs Fail To Sufficiently Plead The Existence of an**
14                  **Enterprise**

15 Plaintiffs allege that Defendants formed an "association-in-fact", which

16 necessitates that Plaintiffs plead specific allegations of "(A) a common purpose, (B)

17 a structure or organization, and (C) longevity necessary to accomplish the purpose."

18 *Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir.

19 2014) (citing *Boyle v. United States*, 556 U.S. 938, 946, (2009)). An associated-in-

20 fact enterprise must be "distinct" from the RICO persons identified as conducting

21 the enterprise. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, (2001).

22 Establishing a RICO violation requires "a showing of common purpose … by

23 evidence of an ongoing organization, formal or informal, and evidence that the

24 various associates function as a continuing unit." *Boyle*, 556 U.S. at 944 (quoting

25 *United States v. Turkette*, 452 U.S. 576, 583 (1981)). That is to say, Plaintiffs "must

26 . . . show the existence of an organization among the various [participants] and show

27 that the organization has some continuity." *Id.* With respect to outside service

28 providers, "there has been a remarkable uniformity in [courts'] conclusion[s] that

8

RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client." *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015); *see also Stitt v. Citibank, N.A.*, 2015 WL 75237 (N.D. Cal. Jan. 6, 2015).

Here, Plaintiffs acknowledge that National General, QBE and Balboa were "outside service providers" for the Wells Fargo CPI program, whose services included "insurance tracking, borrower identification, and policy placement, among other things." Compl. ¶¶ 128-130. Plaintiffs' allegations are insufficient to suggest "a relationship more substantial than a routine contract" between Defendants to administer a CPI program. Nor do Plaintiffs allege any *specific facts* to support their conclusory assertions that: (1) Defendants' "purpose" was to "unlawfully extract[] significant revenue and profits from Plaintiffs and the Class by force-placing automobile insurance policies on their automobile loans, and sharing undisclosed kick-back commission payments", (2) alleged commissions on the CPI policies were improper, (3) Defendants were "systematically linked through continually coordinated activities, financial ties, and contractual business arrangements" that were not routine, or (4) Defendants "reaped substantial profits from the conduct of the enterprise." Compl. ¶¶ 192, 196-200, 225-229, 254-258. In fact, although cloaked in conclusory assertions of fraud, the crux of Plaintiffs' claims is that there was a failure in the CPI placement process, whereby CPI was placed on certain customer accounts even when the customer had his/her own insurance. Because Plaintiffs have failed to adequately plead the existence of an enterprise, including a common purpose, beyond a routine contractual relationship between Defendants, Plaintiffs' three RICO claims fail as a matter of law.

### 2.     Plaintiffs Do Not Plead Actionable Conduct With Specificity

In addition to pleading the enterprise element, Plaintiffs must plead facts with specificity that Wells Fargo engaged in: "(1) conduct, (2) of an enterprise, (3) through a pattern; (4) of racketeering activity; and, additionally, must establish that

(5) [Wells Fargo] caused injury to plaintiff's business or property." *Chaset v. Fleer/Skybox Intern., LP*, 300 F.3d 1083, 1086 (9th Cir. 2002) (quoting 18 U.S.C. §§ 1962(c), 1964(c). *Each* Plaintiff is required to specifically "detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hos.*, 940 F.2d at 405. Plaintiffs fail to do so here.

Plaintiffs attempt to satisfy the conduct element by reciting a laundry list of conclusory allegations against Wells Fargo. For instance, Plaintiffs generally allege, with no allegation of any specific conduct related to any specific Plaintiff, that Wells Fargo (1) "misrepresent[ed] the terms of its auto loans" and the "circumstances" under which CPI would be placed, as well as National General's (and its predecessors') role in the application process, (2) "transmit[ed] loan application and other customer information" to National General, QBE and Balboa, (3) "force-plac[ed] unnecessary and undisclosed CPI policies", (5) "receiv[ed] kick-back commission payments" for CPI policies; (6) "conceal[ed] the true nature of its relationship with National General", QBE and Balboa; and (7) "collect[ed] monthly payments from Class members, including premium charges and interest"; and (8) misrepresented delinquencies and the validity of repossessions to credit reporting agencies, class members and courts.  Compl. ¶¶ 206 (a-k), 235(a-k), 264 (a-k).

These allegations consist of general, overly broad statements lacking any *specific* facts as to the named Plaintiffs, or the "time, place, and manner of each [alleged] act of fraud." *Lancaster Cmty. Hos.*, 940 F.2d at 405. Indeed, Plaintiffs fail to even specify the exact representations they claim Defendants made, much less how those were false. This deficiency is fatal to Plaintiffs' RICO claims.

### 3. Plaintiffs Do Not Adequately Allege Predicate Acts or a Pattern of Racketeering Activity

Plaintiffs' burden does not end with adequately pleading an enterprise and actionable conduct. They must also plead "(1) a scheme or artifice devised with (2)

10

specific intent to defraud and (3) use of the United States mail or interstate telephone wires in furtherance thereof." *Orr v. Bank of America*, 285 F.3d 764, 782 (9th Cir. 2002). At a minimum, this requires that the complaint "state the time, place and specific content of the false representation as well as the identities of the parties to the misrepresentation." *Edwards*, 356 F.3d at 1065-66.  The plaintiff must also set forth more than neutral facts necessary to identify the transaction; he must explain why the statement complained of was false or misleading. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1548 (superseded by statute on other grounds). Further, "[a]bsent such specific intent to defraud or, indeed, actual transmissions through the mail or wires in furtherance of that intent", Plaintiffs cannot prove the existence of any indictable predicate acts in connection with the alleged vendor scheme. *Howard v. Am. Online Inc.*, 208 F.3d 741, 748 (9th Cir. 2000).

Here, Plaintiffs plead myriad conclusory allegations of mail and wire fraud, without even attempting to "state the time, place and specific content of the false representation" or the specific Plaintiffs to whom these purported acts were directed. By way of example, Plaintiffs generally assert that Defendants sent "marketing materials regarding Defendants' auto loans and CPI insurance policies," but fail to identify to whom those materials were sent, when and what misrepresentations they allegedly contained. *See e.g.*, Compl. ¶¶ 213, 242, 271. Similarly, Plaintiffs perfunctorily allege that Defendants sent insurance policies, as well as correspondence to one another regarding the "enterprise, and the issuance of auto loans and/or CPI policies." *Id*. Plaintiffs go on to assert that unspecified loan documents, late payment notices, statements, and collection notices were sent to unidentified borrowers, with no indication as to the timing or the nature of the alleged misrepresentations. *Id*. Each of these allegations is conclusory on its face.

Plaintiffs attempt to plead around their failure to allege specific facts in support of their mail and wire fraud allegations by claiming that "[m]any of the precise dates of Defendants' fraudulent use of the U.S. Mail and interstate wire

11

facilities have been deliberately hidden, and cannot be alleged without access to Defendants' books and records." *Id.* ¶ 212. However, Plaintiffs surely could have pleaded, with specificity, the alleged fraudulent communications Defendants transmitted to Plaintiffs. Plaintiffs are not excused from their pleading obligations by simply alleging that some specifics regarding alleged predicate acts are unknown to them. Since it is clear that Plaintiffs' conclusory allegations are insufficient for purposes of pleading predicate acts in support of a RICO claim, Plaintiffs have necessarily failed to adequately allege a pattern of racketeering activity.[3]

Plaintiffs have likewise failed to specifically plead fraudulent intent on the part of Defendants as they must. *Howard*, 208 F.3d at 748. Plaintiffs allege only that Defendants intended to "use" the mail and wire facilities, and "intended that" Plaintiffs and putative class members would rely on unspecified "material misrepresentations and omissions."  Compl. ¶ 212, 215. These vague conclusory allegations are insufficient to show intent to defraud.

For all of these reasons, Plaintiffs' RICO claims must be dismissed.

**B.    Plaintiffs' BHCA Claim Fails Because CPI Was Not a Precondition to Financing and Requiring Insurance is Not "Unusual"**

In support of their fourth claim for violation of the BHCA, Plaintiffs allege that "[d]espite purporting to allow Plaintiffs and members of the Nationwide Class to maintain their own automobile insurance in lieu of purchasing CPI, Wells Fargo in practice required Plaintiffs and members of the Nationwide Class to pay for CPI

---

[3] A "pattern of racketeering activity" is established when a plaintiff proves that a defendant committed two or more predicate acts. 18 U.S.C. § 1961(5). Where a plaintiff asserts a RICO claim against multiple defendants, the plaintiff must establish each individual defendant committed at least two predicate acts. *Out-of-Network UCR Rates Litig.,* 865 F.Supp.2d 1002, 1035 (C.D. Cal. 2011) ("Where RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by each defendant.").

in exchange for financing." Compl. ¶ 288. Plaintiffs then appear to assert that every Wells Fargo auto loan customer "was subsequently charged for CPI, regardless of whether he or she maintained independent coverage." *Id.*  However, Plaintiffs offer no facts in support of this conclusion.  Elsewhere in the Complaint, it is clear that Plaintiffs understand that CPI was *not* placed on every auto loan account. *See e.g.* Compl. ¶ 174 (Nationwide Class defined as "All residents of the United States of America who obtained an auto loan through Wells Fargo Bank, N.A.,…, *and who* were assessed charges for CPI auto insurance and/or related fees) (emph. added).

The BHCA provides that "[a] bank shall not in any manner extend credit . . . *on the condition or requirement* -- (A) that the customer shall obtain some additional . . . property . . . from such bank other than a loan, discount, deposit, or trust service. . . ." 18 U.S.C. § 1972 (emph. added). To state a claim for violation of the BHCA, Plaintiffs must allege that: "(1) 'the banking practice in question was unusual in the banking industry,' (2) 'an anti-competitive tying arrangement' existed, and (3) 'the practice benefits the bank.'" *Bieber v. State Bank of Terry*, 928 F.2d 328, 330 (9th Cir. 1991) (quoting *Rae v. Union Bank*, 725 F.2d 478, 480 (9th Cir. 1984).   Plaintiffs must allege sufficient facts to establish each of the three elements constituting a tying arrangement prohibited by 12 U.S.C. Section 1972(1)(A) and (C); *Rae*, 725 F.2d 478 at 480. Further, because Plaintiffs' BHCA claim is premised on their fraud allegations that Defendants engaged in a "scheme" to place unnecessary CPI policies on customer accounts when customers maintained their own insurance coverage[4], Plaintiffs must plead their BHCA claim with the

---

[4] In ¶ 281, Plaintiffs incorporate all preceding allegations into BHCA claim, which necessarily includes allegations relating to the allegedly "fraudulent" CPI "scheme" (Compl., ¶¶ 1, 2, 5, 131, 137, 149, 153, 162, 169), the purported "concealment" of alleged kickbacks (*id.* ¶ 141), and the tolling of any BHCA statute of limitations by reason of the "fraudulent concealment doctrine". *Id.* ¶¶ 170-173.

heightened specificity required under Rule 9(b). *Vess,* 317 F.3d at 1103-1104.

### 1. Plaintiffs Cannot Allege an "Unusual" Banking Practice

By enacting the tying provision to protect against the misuse of economic power, Congress did not intend to "interfere with the conduct of appropriate traditional banking practices." *Bieber*, 928 F.2d at 330-331 (quoting Sen. Rep. No. 1084, 91st Cong., 2nd Sess., reprinted in 1970 U.S. Code Cong. & Admin. News 5519, 5535).  Further, an "unusual" banking practice alone is insufficient to make out a BHCA claim; rather, it must be an unusual banking practice that is also anti-competitive and benefits the bank. *Parsons Steel, Inc. v. First Alabama Bank of Montgomery, N.A.*, 679 F.2d 242, 245 (11th Cir. 1982).

Here, Plaintiffs acknowledge that it is not unusual for lenders to require auto loan customers to carry insurance for "cost of damage to the insured vehicle," and that if the customers do not maintain such insurance, "the lender may purchase it for them." Compl. ¶¶ 140-141. Although the Ninth Circuit has not yet ruled on this issue, Courts around the country agree that requiring collateral to be insured as a precondition to financing is not unusual.[5] *See Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384 (6th Cir. 1996), *abrogated on other grounds; Humana Inc. v. Forsyth*, 525 U.S. 299 (1999), as recognized, *Riverview Health Institute LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 516-17 (6th Cir. 2010) ("[A]t least with respect to the loss and

_____

[5] In the absence of controlling case law or when there is a dearth of binding precedent addressing an issue, courts may rely on persuasive case law from sister districts. *NessCap Co. v. Maxwell Techs., Inc.*, No. 07cv0704-JLS (BLM), 2008 U.S. Dist. LEXIS 3357 at *4 (S.D. Cal. Jan. 16, 2008) (court relied on published and unpublished precedent from sister districts as persuasive authority.); *City of Los Angeles v. County of Kern*, No. 06-5094 GAF (VBKx), 2006 U.S. Dist. LEXIS 81417 at *33 (C.D. Cal. Oct. 24, 2006) (court relied on persuasive case law from sister districts to weigh in on the court's analysis regarding the Clean Water Act); *Bischoff v. DirecTV, Inc.,* 180 F. Supp. 2d 1097 (C.D. Cal. 2002) (court considered persuasive case law from the Seventh District in its analysis in its case).

damage insurance, it is a common practice in the banking industry for banks to require borrowers to insure collateral."); *McClain v. S.C. Nat. Bank*, 105 F.3d 898, 902 (4th Cir. 1997) ("It is not unusual for a bank to require a borrower to insure collateral, nor is it unusual for a bank to protect its interest by insuring the collateral at the expense of the borrower when the borrower fails to do so.").  Plaintiffs' claim fails for this reason alone.

### 2. Plaintiffs Fail to Plead an Anti-Competitive Tying Arrangement

Even if Plaintiffs could establish that requiring collateral to be insured and reserving the right to purchase such insurance is unusual, they cannot establish that CPI was a *precondition* to financing and an anti-competitive tying arrangement. Indeed, tying arrangements that "have no anticompetitive effect but are aimed at protecting the bank's investment" do not violate § 1972. *Graue Mill Dev. Corp. v. Colonial Bank & Tr. Co. of Chicago*, 927 F.2d 988, 992 (7th Cir. 1991), citing *Davis v. First Nat. Bank of Westville*, 868 F.2d 206, 207 (7th Cir. 1989); s*ee also Tose v. First Penn. Bank,* 648 F.2d 879, 897 (3d Cir.), *cert. denied,* 454 U.S. 893 (1981); *B.C. Recreational Indus. v. First Nat'l Bank,* 639 F.2d 828, 832 (1st Cir. 1981); *McCoy v. Franklin Savings Assoc.,* 636 F.2d 172, 175 (7th Cir. 1980).

In an effort to get around the fact CPI was clearly not a precondition, as Plaintiffs were required only to maintain *their own* insurance as a prerequisite to financing, Plaintiffs assert that in practice, Wells Fargo "required Plaintiffs and members of the Nationwide Class to pay for CPI in exchange for financing." *Id*. ¶ 288. Yet, there is no allegation that Wells Fargo placed CPI on any customer *prior* to entering into a loan agreement, in practice or otherwise. Plaintiffs also claim that "Wells Fargo conditioned its forbearance from collecting on its existing automobile loans on payment of CPI charges." *Id*. ¶ 289.  However, this assertion is wholly unsupported and indeed illogical – there are no factual allegations even remotely suggesting that Wells Fargo agreed not to collect at all on customer loans if those

15

customers only paid CPI charges. Because Plaintiffs cannot establish that CPI was unusual or an anti-competitive tying arrangement, they cannot state a BHCA claim.

### C.    Plaintiffs' CLRA Claim Fails Because Insurance Is Not a "Good or Service" and Plaintiffs Fail to Allege Reliance

#### 1.    Insurance is Not a "Good or Service" Subject to the CLRA

In their CLRA claim, Plaintiffs allege Wells Fargo, National General and its alleged predecessors failed to disclose their practice of force-placing CPI, and misrepresented certain aspects of the CPI policies. Compl. ¶¶ 298-307.  However, the CLRA only proscribes specified "unfair methods of competition and unfair or deceptive acts or practices" in a "transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). "Goods" are defined as "tangible chattels bought or leased for use primarily for personal, family, or household purposes ....," and "Services" mean "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." *Id.* at § 1761(a),(b).

California courts have consistently held that insurance is not a "good or service" under the CLRA. *Fairbanks v. Sup. Ct*, 205 P.3d 201, 282 (Cal. 2009) (holding the CLRA does not apply to life insurance); *Buckley v. Cracchiolo*, 2014 WL 545751 at *8 (C.D. Cal. Feb. 7, 2014) ("the weight of authority supports the Court's conclusion that the CLRA does not apply to the sale of the insurance policies at issue in the present case."); *Sanders v. Choice Mfg. Co., Inc.*, 2011 WL 6002639, at *5-6 (N.D. Cal. Nov. 30, 2011) (dismissing CLRA claim with prejudice, stating "The Court finds that the CLRA does not apply to actions brought in connection with the sale of insurance."); *Berry v. Am. Exp. Publishing, Inc.*, 147 Cal. App. 4th 224, 232-33 (4th Dist. 2007) (explaining that the Supreme Court has observed the CLRA does not apply to automobile insurance because "insurance is technically neither a 'good' nor a 'service' within the meaning of the [CLRA]").  Because the CPI policies at issue in this case are not considered a "good

or service" for purposes of the CLRA, Plaintiffs' fifth claim fails as a matter of law.

### 2.     The CLRA Claim Also Fails as Plaintiffs Fail to Allege Reliance

Even if insurance products, like CPI, were covered under the CLRA, Plaintiffs have failed to plead the element of reliance. To state a claim under the CLRA, Plaintiffs "must allege: (1) a misrepresentation; (2) reliance on that misrepresentation; and (3) damages caused by that misrepresentation." *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1112 (N.D. Cal. 2016) citing *In re Sony PS3 Other OS Litig.*, 551 Fed. Appx. 916, 920 (9th Cir.2014).

Here, while Plaintiffs allege that Defendants "intended to induce consumers to obtain automobile loans" and "intended for the Plaintiffs and the other Class members to rely on them," they fail to allege actual reliance by Plaintiffs on any misrepresentation. *See Durell v. Sharp Healthcare,* 183 Cal. App. 4th 1350, 1367 (2010) (dismissing CLRA claim where plaintiff did not allege reliance on any representation by defendant, despite allegation of suffering damage as a "proximate result" of defendant's "deception"). For this reason as well, the CLRA claim should be dismissed.

### D.     Plaintiffs Fail to Adequately Plead a UCL Violation

In support of their sixth claim for violation of the UCL, brought on behalf of California Plaintiffs Fosdick, Moskus, and Preston, Plaintiffs allege that "Defendants have engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL." Compl. ¶ 310. However, Plaintiffs have failed to adequately allege a UCL violation under any of those prongs.

In certain circumstances, the UCL's "**unlawful**" prong can make violations of other laws actionable under the UCL. *Abramson v. Marriott Ownership Resorts, Inc.*, 155 F. Supp. 3d 1056, 1066–67 (C.D. Cal. 2016), *citing Rose v. Bank of Am., N.A.,* 57 Cal.4th 390, 394 (2013). Plaintiffs attempt to tether their UCL claim to Wells Fargo's alleged violations of RICO, the BHCA, the CLRA and the California

17

fraud statute. Compl. ¶ 312. However, as set forth herein, Plaintiffs have failed to sufficiently plead a violation of any of those statutes, thus precluding Plaintiffs from predicating a UCL claim on any of them.

With respect to the **unfairness** prong, this Court recently applied the following test: "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided", which requires that Plaintiffs meet the heightened pleading standard.[6] *Abramson*, 155 F. Supp. 3d at 1066–67, *quoting Camacho v. Auto. Club of S. Cal.,* 142 Cal.App.4th 1394, 1403 (2006). Here, Plaintiffs offer nothing but conclusory allegations in support of their assertion that Wells Fargo's alleged conduct was "unfair" and thus, in violation of the UCL. Compl. ¶ 311 ("Defendants' practice of force-placing CPI policies and charging customers for inflated charges due to undisclosed kickback commissions and interest…constitutes unfair business acts or practices because Defendants' conduct was injurious to customers, offended public policy, and was unethical and scrupulous."). Their allegations are simply inadequate to state a claim for violation of the UCL under the unfairness prong.

Lastly, the **fraudulent** prong also requires that Plaintiffs meet the heightened pleading standard set forth in Rule 9(b). As this Court noted, "this prong of the UCL is 'governed by the reasonable consumer test': a plaintiff may demonstrate a

---

[6] *In re Experian Data Breach Litig.*, 2016 WL 7973595, at *9 (C.D. Cal. Dec. 29, 2016) ("Defendants' argument that [the UCL claim] should be dismissed for failing to meet the particularity requirements of Rule 9(b) is convincing….The Ninth Circuit has held that the heightened pleading standards of Rule 9(b) apply to claims that are 'grounded in fraud' or 'sound in fraud.'"), *quoting Vess*, 317 F.3d. at 1103-1104. ("Court finds each claim "sounds in fraud" and Plaintiffs must plead their misrepresentation and omission claims under the UCL with particularity under Rule 9(b)").

18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

violation by 'show[ing] that [reasonable] members of the public are likely to be deceived.'" *Abramson*, 155 F. Supp. 3d at 1066–67, *quoting Rubio v. Capital One Bank,* 613 F.3d 1195, 1204 (9th Cir.2010) (alterations in original) and *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir.2008)). Just as Plaintiffs have failed to adequately allege any of their fraud claims with the requisite specificity, so too have they failed to state a UCL claim premised on alleged fraudulent conduct.

Based on the foregoing, Plaintiffs have failed to state a UCL claim and their sixth claim for relief must be dismissed as a matter of law.

### E.    Plaintiffs' Fraud by Concealment Claim is Inadequately Pled

In support of their seventh claim for Fraud by Concealment, Plaintiffs allege that Wells Fargo "intentionally concealed, suppressed, omitted, and failed to disclose the material facts" that Defendants placed CPI policies "without regard" for insurance maintained by Plaintiffs, and "that it received kickback commission payments". Compl. ¶ 321.

To state a claim for fraudulent concealment, Plaintiffs must allege: "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to plaintiff; (3) the defendant intended to defraud plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result." *Grant v. Aurora Loan Servs*., 736 F. Supp. 2d 1257, 1272 (C.D. Cal. 2010) (internal quotes and citations omitted). Plaintiffs "must describe the content of the omission and where the omitted information should or could have been revealed.'" *Erickson v. Boston Scientific Corp.*, 846 F. Supp. 2d 1085, 1092 (C.D. Cal. 2011) *quoting Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1005 (N.D. Cal. 2009). Rule 9(b) requires the "who, what, when, where, and how" of the fraudulent activity. *Fazio v. Apple, Inc. (In re iPhone 4S Consumer Litig.)*, 637 F.App'x 414, 415 (9th Cir. 2016). Conclusory allegations are insufficient. *Moore v. Kayport Package Exp.,*

19

1    *Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

2        Here, Plaintiffs fail to adequately allege any *specific* details of what exactly

3    Wells Fargo is alleged to have concealed as to each Plaintiff, much less when, where

4    and how those alleged misrepresentations were made. Each Plaintiff also fails to

5    specifically describe the "content of the omission and where the omitted information

6    should or could have been revealed." *Erickson*, 846 F. Supp. 2d at 1092. It is not

7    enough to perfunctorily allege that "had the CPI scheme been disclosed," Plaintiffs

8    "would have seen and been aware of it and would not have obtained an auto loan

9    from Wells Fargo." Compl. ¶ 326. In addition, Plaintiffs concede that, at some point,

10   they became aware of the CPI charges and attempted to contact Wells Fargo

11   regarding the same. *See*, Sec. II(C), *supra*. This admission further renders Plaintiffs'

12   seventh claim deficient insofar as it is unclear exactly what material *facts* were

13   concealed, or when and how those material facts should have been revealed.

14       Plaintiffs have also failed to specifically allege that the purported

15   concealment by Wells Fargo was "intentional". Simply including the word

16   "intentionally" in a pleading is conclusory and falls short of the heightened pleading

17   requirements of Rule 9(b). *See, e.g., Miranda v. SCME Mortg. Bankers, Inc.* 2017

18   WL 3131965 (C.D. Cal. July 24, 2017) ("Nor does [the complaint] allege

19   knowledge of falsity or any factual allegations establishing intent to defraud, other

20   than [a] conslusory statement."); *Sec. & Exch. Comm'n v. Jammin Java Corp.*, 2016

21   WL 6595133, at *21 (C.D. Cal. July 18, 2016). ("While 'knowledge and intent may

22   be averred generally ... the circumstances of fraud must be stated with particularity.

23   A plaintiff must allege sufficient facts to support an inference or render-plausible

24   that the defendant acted with the requisite intent'" (citations omitted)).  For the

25   foregoing reasons, Plaintiffs' fraudulent concealment claim against Wells Fargo

26   must be dismissed as a matter of law.

27

28

### F.     Plaintiffs Fail To Allege A Claim For Unjust Enrichment

Plaintiffs' eighth claim for unjust enrichment maintains that the placement of CPI unjustly enriched Defendants at Plaintiffs' expense. Compl. ¶¶ 330-331. The claim is alleged on behalf of the Colorado, Indiana, Mississippi, Minnesota, Missouri, Tennessee, Wisconsin, and Wyoming state sub-classes. *Id*. ¶¶ 329.

As an initial matter, Plaintiffs' unjust enrichment claim fails because Plaintiffs fail to identify which law(s) govern their claims.  *See, e.g., Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, 2014 WL 4774611, at *11 (N.D. Cal. Sept. 22, 2014) ("Plaintiffs must identify and plead the elements of unjust enrichment for each state."); *Glenn v. Hyundai Motor Am.,* 2016 WL 3621280, at *13 (C.D. Cal. June 24, 2016) ("The Court is unclear whether Plaintiffs are asserting an unjust enrichment claim under California law for all Plaintiffs, whether each Plaintiff is asserting an unjust enrichment claim under his or her home state's law, or something else….The Court finds it prudent to refrain from guessing what state law or laws Plaintiffs are using as the basis for their unjust enrichment claims. Following other courts in this Circuit, the Court concludes that "until Plaintiffs indicate which States' laws support their claim, the Court cannot assess whether the claim has been adequately plead[ed].").

In any event, California law applies to the unjust enrichment claims[7], and, as this Court recently noted, "in California, there is not a standalone cause of action for

---

[7]A federal district court should apply the choice-of-law rules of the state in which it sits. *Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1111 (9th Cir. 2006). Under California law, there is a three-step governmental interest test to determine which state's laws apply. *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-CV-04984-JST, 2016 WL 344479, at *7 (N.D. Cal. Jan. 28, 2016).

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the

21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

'unjust enrichment,' which is synonymous with 'restitution.'"  *Browning et. al. v. Univlever United States, Inc.* 2017 WL 7660643, at *3 (C.D. Cal. Apr. 26, 2017) (citations omitted).  Accordingly, Plaintiffs' unjust enrichment claim fails.

### G.    Plaintiffs' State Law Claims Likewise Fail As A Matter of Law

As a preliminary matter, each of Plaintiffs' state sub-class claims are based on Plaintiffs' fraud-based allegations and, thus, are subject to the heightened Rule 9(b) pleading standard.[8] *Vess, 317* F.3d at 1103–04; *see also In re Sony Gaming*

---

> court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinate to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

As set forth in *Todd*, under California law, "the place of the wrong has the predominant interest." *Todd v. Tempur-Sealy Int'l, Inc.*, 2016 WL 344479, at *7 (N.D. Cal. Jan. 28, 2016). "California considers the 'place of the wrong' to be the state where the last event necessary to make the actor liable occurred." *Id.* "For a claim of unjust enrichment, the last event necessary for liability appears to be acceptance of a benefit that is inequitable to retain." *Id.* "In this case, the final act is the alleged acceptance of money for the purchase of a Tempur product, and so each class member's unjust enrichment claim should be governed by the unjust enrichment laws of the jurisdiction in which the money was accepted." *Id.* Here, Plaintiffs allege their loans were serviced—and the money was accepted—in California. Compl. ¶ 125 ("Wells Fargo Bank, N.A., originates and services loans to consumers through its Wells Fargo Dealer Services Division, headquartered in Irvine, California.").

[8] Plaintiffs incorporate their preceding fraud-based allegations into each of their state sub-class claims for violation of the Colorado CPA (¶ 335), Illinois CFA (¶ 348), Indiana DCSA (¶ 361), Minnesota CFA (¶ 347), Minnesota DTPA (¶ 386), Mississippi CPA (¶ 397), Missouri MPA (¶ 409), New Jersey CFA (¶ 423), Tennessee CPA (¶ 437), Wisconsin DTPA (¶ 450), and Wyoming CPA (¶ 463).

*Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d at 989-990. Indeed, Plaintiffs expressly rely on allegations of Defendants' purported "fraudulent CPI scheme", "intentional misrepresentations and omissions", and "concealment" to support these claims. *See* Compl. ¶¶ 341-343 (Colorado CPA), ¶¶ 354-356 (Illinois CFA), ¶¶ 367-369 (Indiana DSCA), ¶¶ 378-381 (Minnesota CFA), ¶¶ 390-392 (Minnesota DTPA), ¶¶ 401-403 (Mississippi CPA), ¶¶ 414, 416-418 (Missouri MPA), ¶¶ 429-432 (New Jersey CFA), ¶¶ 443-445 (Tennessee CPA), ¶¶ 456-458 (Wisconsin DTPA), and ¶¶ 471-473 (Wyoming CPA).

However, Plaintiffs do not plead any of the "circumstances" required by Rule 9(b), including the "*who, what, when, where, and how*" of the alleged fraud, much less what representations or omissions they claim were false or misleading and why false. *See supra United States ex rel Cafasso.*, 637 F.3d at 1055; *Vess*, 317 F.3d at 1106 (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1548); *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997).[9]

Here, all of Plaintiffs' state sub-class claims are comprised of conclusory allegations directed at "Defendants" generally with no specific facts relating to any of the named Plaintiffs, much less facts specifying what the representations were, why they were allegedly false, and the "*who, what, when, where, and how*" of the alleged fraudulent activity.  As a result, Defendants lack adequate notice of the "particular misconduct" that forms the basis of Plaintiffs' fraud allegations against

---

[9] Moreover, the Colorado CPA, the Illinois CFA, the Indiana DCSA, and the Minnesota CFA and DTPA, all independently require that allegations of fraud be pled with particularity. *Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1220 (D. Colo. 2012); *Barry v. St. Mary's Hosp. Decatur*, 2016 IL App (4th) 150961, ¶ 73, 68 N.E.3d 964, 974, appeal denied, 80 N.E.3d 1 (Ill. 2017); Minn. Stat. §325F.68 (Minnesota CFA); Minn. Stat. § 325D.43 (Minnesota DTPA); *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850 (D. Minn. 2012); *McKinney v. State*, 693 N.E.2d 65, 71 (Ind. 1998).

23

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

them, warranting dismissal of these claims. *Semegen v. Weidner*, 780 F.2d at 731.

### 1. The Indiana DCSA, Mississippi CPA and Wisconsin DTPA Do Not Apply to Insurance Transactions[10]

Plaintiffs' counts for violations of the Indiana DCSA, the Mississippi CPA, and the Wisconsin DTPA fail because these statutes do not apply to insurance transactions. See IND. CODE ANN. § 24-5-0.5-2 (excepting insurance policies from definition of "consumer transaction"); *Taylor v. S. Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1050 (Miss. Ct. App. 2007) ("insurance policies and the adjusting of insurance policies are not subject to the provisions of the MCPA."); WIS. STAT. ANN. § 100.18(12)(a) (excepting the "insurance business"). Plaintiffs' claims under the Indiana DSCA, Mississippi CPA, and Wisconsin DTPA are all premised on the forced-placement of insurance. *See, e.g.,* Compl. ¶¶ 366, 400 ("in force-placing CPI policies and sharing in kick-back commission payments, Defendants engaged in one or more of the following unfair or deceptive acts or practices…."). Accordingly, these claims must be dismissed without leave to amend.

### 2. The Colorado, Tennessee, and Mississippi CPA and the Minnesota DTPA Do Not Apply to Class Actions, or Do Not Provide For Damages and Injunctive Relief is Inappropriate

Plaintiffs' claims pursuant to the Colorado CPA, the Tennessee CPA, the Minnesota DTPA, and the Mississippi CPA fail because the statutes either do not apply to class actions, or do not provide for class-wide damages. *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1219 (D. Colo. 2012) (the CPA creates no statutory liability for a defendant in a private class action); TENN. CODE ANN. § 47-

---

[10] In addition, while it has not been presented an analogous case, the Wyoming Supreme Court has expressed disfavor regarding Wyoming CPA claims related to insurance disputes. *Herrig v. Herrig*, 844 P.2d 487, 495–96 (Wyo. 1992) (affirming denial of insured's motion to add Wyoming CPA claim against insurer).

18-109 (g); *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301 (Tenn. 2008) (class actions prohibited); *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1070 (D. Minn. 2013) ("the sole statutory remedy for deceptive trade practices is injunctive relief"); *Am. Bankers Ins. Co. of Fla. v. Booth*, 830 So. 2d 1205 (Miss. 2002) (no class actions); MISS. CODE. ANN. § 75-24-15 (4) (same).

To the extent Plaintiffs seek injunctive relief, they do not—and cannot— allege any risk of future harm. *See, e.g., Bd. of Cnty. Comm'rs v. Vandemoer,* 205 P.3d 423, 430 (Colo. App. 2008) ("An injunction is an extraordinary and discretionary equitable remedy" that is "intended to prevent future harm."); *Morse v. City of Waterville*, 458 N.W.2d 728, 729-30 (Minn. App. 1990) (failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction). The article Plaintiffs reference in Footnote 3 of their Complaint confirms "[t]he bank stopped placing CPI policies from National General in September 2016." Accordingly, Plaintiffs cannot demonstrate a risk of future harm, or that injunctive relief would be appropriate.  Their claims under the Colorado, Tennessee, Minnesota, and Mississippi consumer protection statutes all fail as a matter of law.

### 3.    The Missouri MPA Exempts Credit Service Organizations

Plaintiffs' claim for violation of the Missouri MPA fails because Wells Fargo is exempt from the statute as a credit service organization.  MO. ANN. STAT. § 407.637 (2)(1) (exempting "a person authorized to make loans or extensions of credit under the laws of this state or the United States who is subject to regulation and supervision by this state or the United States …[.]").  Wells Fargo is authorized to make loans and is regulated by the Office of the Comptroller of Currency. Accordingly, Plaintiffs' Missouri MPA claim fails as a matter of law.

## V.    CONCLUSION

For the foregoing reasons, Wells Fargo's Motion to Dismiss should be granted in its entirety.

25

1

DATED:  March 9, 2018                          **MCGUIREWOODS LLP**

2

3                                              By: */s/ David C. Powell*
                                                   _____
4                                                  David C. Powell

5                                                  David C. Powell (SBN 129781)
                                                   dpowell@mcguirewoods.com
6                                                  Carolee A. Hoover (SBN 282018)
                                                   choover@mcguirewoods.com
7                                                  Alicia A. Baiardo (SBN 254228)
                                                   abaiardo@mcguirewoods.com
8                                                  Aaron R. Marienthal (SBN 273154)
                                                   amarienthal@mcguirewoods.com
9
                                                   Two Embarcadero Center, Suite 1300
10                                                 San Francisco, CA 94111-3821
                                                   Telephone: (415) 844-9944
11                                                 Facsimile:   (415) 844-9922
12

13                                                 *Counsel for Defendants Wells Fargo &*
                                                   *Company and Wells Fargo Bank N.A.*
14                                                 *d/b/a Wells Fargo Dealer Services*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

26

I hereby certify that on March 9, 2018, I electronically filed the foregoing document entitled **DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A. dba WELLS FARGO DEALER SERVICES' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** and **[PROPOSED] ORDER GRANTING DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A. dba WELLS FARGO DEALER SERVICES' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS COMPLAINT** with the Clerk of the Court for the United States District Court, Central District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

DATED:  March 9, 2018

By: */s/David C. Powell*_____