QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Michael Carlinsky
michaelcarlinsky@quinnemanuel.com
Jane M. Byrne
janebyrne@quinnemanuel.com
Corey Worcester
coreyworcester@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile:  (212) 849-7100

*Attorneys for Defendants National
General Insurance Company and National
General Holdings Corp.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WELLS FARGO COLLATERAL PROTECTION INSURANCE LITIGATION | Case No.: 8:17-ML-2797-AG-KES **NATIONAL GENERAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** Hearing Date:  June 4, 2018 Hearing Time: 10:00 a.m. Location: Courtroom 10-D, Ronald Regan Federal Building Judge:  Hon. Andrew Guilford |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 4, 2018, at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Andrew Guilford, in Courtroom 10-D of the United States District Court for the Central District of California, located in the Ronald Regan Federal Building and U.S. Courthouse, 411 W. Fourth Street, Santa Ana, CA, 92701, Defendants National General Insurance Company and National General Holdings Corp. (together, "National General") will, and hereby do, move for an order dismissing in its entirety as to National General the Consolidated Class Action Complaint (Dkt. 49) filed by Plaintiffs Angelina Camacho, Odis Cole, Nyle Davis, Duane Fosdick, Brandon Haag, Paul Hancock, Dustin Havard, Brian Miller, Analisa Moskus, Regina Gonzales, Keith Preston, Victoria Reimche, Dennis Small, and Bryan Tidwell on behalf of themselves and all others similarly situated.

National General makes the Motion pursuant to Rules 9(b) and 12(b)(6) of the *Federal Rules of Civil Procedure* on the grounds that Plaintiffs have not stated with particularity the circumstances constituting the alleged fraud and have not stated a claim on which relief may be granted.  This motion is made following a conference of counsel pursuant to L.R. 7-3 which took place on March 2, 2018.

Dated: March 9, 2018

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

By: /s/ Michael Carlinsky
Michael Carlinsky
michaelcarlinsky@quinnemanuel.com
Jane M. Byrne
janebyrne@quinnemanuel.com
Corey Worcester
coreyworcester@quinnemanuel.com
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

1

Facsimile: (212) 849-7100

2

*Attorneys for Defendants National*
*General Insurance Company and*
*National General Holdings Corp.*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ........................................................................................................... 1

    A.    Wells Fargo Placed CPI On Vehicles Bought With Loans ................... 2

    B.    National General Provided CPI Services To Wells Fargo..................... 2

    C.    Wells Fargo Announced It Would Pay $130 Million To Borrowers ..................................................................................... 3

    D.    Plaintiffs Attribute Conduct By Wells Fargo to National General And Fail To Identify Any Specific Representations By National General ........................................................................................ 4

STANDARD OF REVIEW ......................................................................................... 5

ARGUMENT ............................................................................................................... 6

I.    PLAINTIFFS' RICO CLAIMS FAIL ........................................................... 6

    A.    The RICO Claims Against National General Should Be Dismissed .......................................................................................... 6

        1.    National General Did Not Participate In Improper "Conduct" ......................................................................... 6

        2.    National General Was Not Part Of An "Enterprise" .................. 7

        3.    National General Did Not Participate In Racketeering Activity ............................................................................. 11

        4.    National General Did Not Participate In A "Pattern" Of Activity ............................................................................. 13

    B.    The RICO Claims Against National General As Successor To QBE And Balboa Should Be Dismissed.......................................... 14

        1.    Plaintiffs Fail To Plead RICO Claims Against QBE Or Balboa ............................................................................. 14

        2.    The Statute Of Limitations Has Run On Plaintiffs' RICO Claims Against Balboa And Certain Of Plaintiffs' Claims Against QBE ................................................................ 14

II.    PLAINTIFFS' STATE LAW CLAIMS FAIL............................................. 16

    A.    Plaintiffs Fail To State A Claim For Fraud By Concealment............... 16

    B.    Plaintiffs' State Statutory Claims Are Not Pled With Particularity ..... 18

    C.    Plaintiffs' Substantive Allegations Do Not State A Claim For Any State Law Statutory Violation By National General ................... 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1. Plaintiffs Fail To State A Claim Under The California CLRA ............................................................................ 19

2. Plaintiffs Fail To State A Claim Under The California UCL ............................................................................... 20

3. Plaintiffs' Other Statutory Claims Also Fail To State A Claim ........................................................................... 23

D. Plaintiffs Fail To State An Unjust Enrichment Claim .......................... 24

# TABLE OF AUTHORITIES

## Cases

*AARP v. Am. Family Prepaid Legal Corp.*,
  604 F. Supp. 2d 785 (M.D. N.C. 2009) .......................................... 8

*Albillo v. Intermodal Container Servs., Inc.*,
  114 Cal. App. 4th 190 (2003) ...................................................... 20

*Arch Ins. Co. v. Allegiant Professional Business Services, Inc.*,
  2012 WL 1400302 (C.D. Cal. 2012) ...................................17, 18, 22, 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................... 5

*Bank of America Corporation. v. Superior Court*,
  130 Cal. Rptr. 3d 504 (Cal. App. 2d Dist. 2011) ............................ 17

*Bedard v. Martin*,
  100 P.3d 584 (Colo. App. 2004) .................................................. 25

*Berryman v. Merit Prop. Mgmt., Inc.*,
  152 Cal. App. 4th 1544 (2007) .................................................... 21

*Biggs v. Bank of Am. Corp.*,
  2015 WL 3465739 (C.D. Cal. 2015) ............................................. 20

*Boyle v. U.S.*,
  556 U.S. 938 (2009) ................................................................... 7

*Buckley v. Cracchiolo*,
  2014 WL 545751 (C.D. Cal. 2014) .............................................. 20

*Carter v. Bank of Am., N.A.*,
  2012 WL 12887542 (C.D. Cal. 2012) ......................................21, 22

*Cirino v. Bank of America, N.A.*,
  2015 WL 3669078 (C.D. Cal. 2015) .............................................. 9

*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*,
  235 F. Supp. 3d 1132 (E.D. Cal. 2017) ......................................... 13

*In re Countrywide Fin. Corp. Mortgage-Backed Secs. Litig.*,
  2012 WL 10731957 (C.D. Cal. 2012) .......................................... 8, 9

*De Bouse v. Bayer*,
  235 Ill.2d 544 (Ill. 2009) ............................................................ 23

*Destfino v. Reiswig*,
  630 F.3d 952 (9th Cir. 2011) ...................................................18, 19

*Dugan v. LLoyds TSB Bank, PLC*,
  2012 WL 3860798 (N.D. Cal. 2012) ............................................ 13

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
   751 F.3d 990 (9th Cir. 2014)..................................................5, 6, 7, 11

*Edwards v. Marin Park, Inc.,*
   356 F.3d 1058 (9th Cir. 2004)....................................................5

*Ellis v. J.P.Morgan Chase & Co.,*
   2015 WL 78190 (N.D. Cal. 2015)..............................................9, 10

*Fairbanks v. Superior Court,*
   46 Cal. 4th 56 (Cal. 2009)........................................................19

*Farmer v. Countrywide Fin. Corp.,*
   2009 WL 1530973 (C.D. Cal. 2009)............................................12

*Forest Ambulatory Surgical Assocs., L.P. v. Ingenix, Inc.,*
   2013 WL 11323601 (C.D. Cal. 2013)............................................7

*Forest Ambulatory Surgical Assocs., L.P. v. United Healthcare,*
   2014 WL 11395929 (C.D. Cal. 2014)............................................7

*Forever 21, Inc. v. Seven Lions Inc.,*
   2012 WL 12888694 (C.D. Cal. 2012)..........................................25

*Franklin v. Franklin,*
   858 So. 2d 110 (Miss. 2003).....................................................25

*Freeman Indus., LLC v. Eastman Chem. Co.,*
   172 S.W.3d 512 (Tenn. 2005)....................................................25

*Gomez v. Guthy-Renker, LLC,*
   2015 WL 4270042 (C.D. Cal. 2015)....................................8, 14, 15

*Griffo v. Oculus VR, Inc.,*
   2016 WL 7495810 (C.D. Cal. 2016)............................................17

*Groth-Hill Land Co., LLC v. Gen. Motors LLC,*
   2013 WL 3853160 (N.D. Cal. 2013) .....................................15, 16

*Hadley v. Kellogg Sales Co.,*
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................21, 22

*Herrig v. Herrig,*
   844 P.2d 487 (Wyo. 1992)........................................................20

*Jacoby v. Jacoby,*
   100 P.3d 852 (Wy. 2004)..........................................................25

*Johnson v. Kansas City S. Ry. Co.,*
   208 F. App'x 292 (5th Cir. 2006)..............................................25

*Jubelirer v. Mastercard Int'l, Inc.,*
   68 F. Supp. 2d 1049 (W.D. Wis. 1999) .......................................8

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) .................................................................. 5

*Kelly v. Levandoski,*
  825 N.E.2d 850 (Ind. Ct. App. 2005) ...................................................... 25

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
  313 U.S. 487 (1941) ................................................................................. 24

*Lawson v. Hale,*
  902 N.E.2d 267 (Ind. App. 2009) ............................................................ 23

*Levitt v. Yelp! Inc.,*
  765 F.3d 1123 (9th Cir. 2014) .................................................................. 5

*In re Lidoderm Antitrust Litig.,*
  103 F. Supp. 3d 1155 (N.D. Cal. 2015) ................................................... 25

*Mazza v. American Honda Motor Co., Inc.,*
  666 F.3d 581 (9th Cir. 2012) ................................................................... 25

*McCann v. Foster Wheeler LLC,*
  48 Cal. 4th 68 (2010) .............................................................................. 24

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.,*
  790 F. Supp. 2d 1134 (C.D. Cal. 2011) ................................................... 12

*O. Thronas, Inc. v. Blake,*
  2010 WL 3185118 (D. Haw. 2010) .......................................................... 13

*Orr v. Bank of America, NT & SA,*
  285 F.3d 764 (9th Cir. 2002) ................................................................... 13

*Owen v. OCWen Loan Serv., LLC,*
  2011 WL 4101479 (C.D. Cal. 2011) .................................................... 6, 12

*In re Packaged Ice Antitrust Litig.,*
  779 F. Supp. 2d 642 (E.D. Mich. 2011) .................................................. 24

*In re Packaged Seafood Prod. Antitrust Litig.,*
  242 F. Supp. 3d 1033 (S.D. Cal. 2017) ................................................... 24

*Petrie v. LeVan,*
  799 S.W.2d 632 (Mo. Ct. App. 1990) ...................................................... 25

*Pincay v. Andrews,*
  238 F.3d 1106 (9th Cir. 2001) ............................................................ 15, 16

*Platt v. Creighton,*
  150 P.3d 1194 (Wy. 2007) ....................................................................... 25

*R Power Biofuels, LLC v. Chemex LLC,*
  2016 WL 6663002 (N.D. Cal. 2016) ........................................................ 12

*Reves v. Ernst & Young,*
  507 U.S. 170 (1993) ........................................................................................ 6, 7

*Ritchie Capital Management, Ltd. v. Costco Wholesale Corporation,*
  2017 WL 4990520 (D. Minn. 2017) ................................................................ 23

*Robbins v. Hyundai Motor Am.,*
  2014 WL 4723505 (C.D. Cal. 2014) ............................................................... 22

*Robinson v. Colorado State Lottery Div.,*
  179 P.3d 998 (Colo. 2008) .............................................................................. 24

*Rotella v. Wood,*
  528 U.S. 549 (2000) ........................................................................................ 15

*Sanders v. Apple Inc.,*
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ......................................................... 16, 17

*Sanders v. Choice Mfg. Co.,*
  2011 WL 6002639 (N.D. Cal. 2011) ............................................................... 20

*Sanford v. MemberWorks, Inc.,*
  625 F.3d 550 (9th Cir. 2010) .................................................................. 5, 11, 12

*Schwindt v. Hologic, Inc.,*
  2011 WL 3806511 (S.D. Ind. 2011) ................................................................ 25

*Scott v. King,*
  510 S.W.3d 887 (Mo. Ct. App. 2017) .............................................................. 25

*Shaw v. Nissan N. Am., Inc.,*
  220 F. Supp. 3d 1046 (C.D. Cal. 2016) ............................................................. 8

*Shin v. Kong,*
  80 Cal. App. 4th 498 (2000) ............................................................................ 17

*Sims v. Kia Motors Am., Inc.,*
  2014 WL 12558249 (C.D. Cal. 2014) .............................................................. 19

*Sonoda v. Amerisave Mortg. Corp.,*
  2011 WL 2690451 (N.D. Cal. 2011) ............................................................... 20

*Stadler v. John Hancock Life Ins. Co.,*
  2013 WL 5798555 (E.D. Wis. 2013) ............................................................... 20

*Stein v. O'Brien,*
  565 N.W.2d 472 (Minn. Ct. App. 1997) .......................................................... 25

*Stitt v. Citibank, N.A.,*
  2015 WL 75237 (N.D. Cal. 2015) ............................................................. 8, 9, 10

*Tapang v. Wells Fargo Bank, N.A.,*
  2012 WL 3778965 (N.D. Cal. 2012) ............................................................... 5, 7

*Taylor v. Southern Farm Bureau Cas. Co.*,
 954 So.2d 1045 (Miss. App. 2007) ........................................................20

*Tietsworth v. Harley-Davidson, Inc.*,
 677 N.W.2d 233 (Wis. 2004) ...............................................................23

*Todd v. Tempur-Sealy Int'l, Inc.*,
 2016 WL 344479 (N.D. Cal. 2016) .......................................................25

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &
 Prod. Liab. Litig.*,
 826 F. Supp. 2d 1180 (C.D. Cal. 2011) ..................................................8

*United States v. Jinian*,
 725 F.3d 954 (9th Cir. 2013) ...............................................................13

*Walter v. Drayson*,
 538 F.3d 1244 (9th Cir. 2008) ..........................................................7, 14

*Watts v. Watts*,
 137 Wis. 2d 506 (Wis. 1987) ...............................................................25

*Wisconsin, Buss v. Rosenow*,
 206 Wis. 2d 678, 1996 WL 635789 (Wis. Ct. App. 1996) ........................24

*Wonacott v. American Home Mortgage Acceptance, Inc.*,
 2013 WL 12131728 (C.D. Cal. 2013)................................................17, 20

**Statutes and Rules**

18 U.S.C. § 1341 ..................................................................................21

18 U.S.C. § 1343 ..................................................................................21

18 U.S.C. § 1962 ..................................................................................21

12 U.S.C. § 1972 ..................................................................................21

Cal. Civ. Code § 1572-1573, ..................................................................21

Cal. Civ. Code § 1709-1711 ...................................................................21

Cal. Civ. Code §1770(a) ........................................................................20

Colo. Rev. Stat. § 6-1-113(2)..................................................................23

Fed. R. Civ. P. 12 ...................................................................................5

Fed. R. Civ. P. 9 ...............................................................5, 11, 12, 18, 19

Ind. Code § 24–5–0.5–4.........................................................................23

Ind. Code § 24–5–0.5–5.........................................................................24

Miss. Code § 75–24–15 ....................................................................23, 24

Tenn. Code § 28–3–109 ...................................................................................25

Tenn. Code § 47–18–109 .................................................................................23

Wyo. Stat. § 40–12–108 .............................................................................23, 24

Wyo. Stat. § 40–12–109 .................................................................................24

Wyo. Stat. § 40–12–102 .................................................................................24

## PRELIMINARY STATEMENT

Plaintiffs claim that National General's ordinary business arrangement with defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively, "Wells Fargo") is a violation of federal RICO and a fraud under a variety of states' laws. However, the Complaint fails to list even one specific representation made by National General to the Plaintiffs—let alone a *mis*representation.   Instead, Plaintiffs rely on general allegations about alleged "representations" made by National General, without ever specifying the document in which the misrepresentation was made, the plaintiff it was made to, the defendant it was made by, when it was made, or even a quote of what the statement was.   That is plainly insufficient.

Plaintiffs' Complaint amounts to an allegation that National General served for a short period of time as an "outside service provider" to Wells Fargo's auto loan business by performing "insurance tracking, borrower identification, and policy placement."   Plaintiffs purport to characterize this ordinary business relationship as a "kickback" scheme perpetrated not only by National General, but also by QBE, which served as Wells Fargo's service provider before National General, and by Balboa before that.   Thus, the Complaint implausibly alleges that three successive corporations engaged in fraudulent conduct in providing certain administrative services relating to Wells Fargo auto loans.   The Complaint attempts to plead its claims against National General not by specifically identifying wrongful conduct by any of these servicing companies, but rather by making the blanket assertion that any conduct alleged against Wells Fargo is to be attributed to these outside service providers.   Plaintiffs' allegations are insufficient to state any cause of action against National General, let alone meet the heightened pleading standard required for the fraud-based claims in the Complaint. The claims against National General should, therefore, be dismissed with prejudice.

## BACKGROUND

A brief description of the allegations relevant to Plaintiffs' claims against National General follows.   For purposes of this motion, the allegations are taken as true.

### A.     Wells Fargo Placed CPI On Vehicles Bought With Loans

Beginning in 2005, when an automobile purchaser financed a purchase with a loan from Wells Fargo, Wells Fargo required the purchaser to provide proof that he or she held insurance which protected Wells Fargo's interest in the car.  (Dkt. 49, Consolidated Class Action Complaint (hereinafter "Cmpl.") ¶¶ 140, 141.)   If the purchaser did not provide that proof, or allowed a policy to lapse without providing proof of subsequent coverage, Wells Fargo's contract with the purchaser permitted Wells Fargo to obtain a form of insurance known as collateral protection insurance ("CPI") and to include the premium for CPI on the purchaser's monthly loan bill.  (*Id.* ¶¶ 2, 141.)  Generally, after CPI was placed, "Wells Fargo assessed a full year's worth of CPI premium charges against borrowers' accounts, and Wells Fargo then charged interest each month on the CPI policy before applying payments to the principal loan balance, ensuring that Wells Fargo's CPI charges got paid first."  (*Id.* ¶ 142.)

Each of the named Plaintiffs purchased a vehicle with financing obtained from Wells Fargo.  (*Id.* ¶¶ 9, 17, 25, 33, 41, 48, 57, 66, 75, 82, 92, 102, 110, 118.)  Wells Fargo placed CPI on each of Plaintiffs' vehicles and charged Plaintiffs for the policies it obtained.  (*Id.* ¶¶ 10, 18-20, 26-27, 34-36, 42-43, 49-51, 58-60, 67-69, 76-77, 83-85, 93, 103-105, 111-112, 119-121.)  Plaintiffs were informed that Wells Fargo was charging them for CPI.  (*See, e.g., id.* ¶ 19.)  Certain Plaintiffs contacted Wells Fargo to "inform the bank" that "the required auto insurance" was in place and CPI was, therefore, unnecessary. (*See, e.g., id.*)  Wells Fargo continued to charge Plaintiffs for CPI. (*See, e.g., id.* ¶ 20.)

### B.     National General Provided CPI Services To Wells Fargo

On July 15, 2015, National General announced it would acquire certain businesses of QBE North America ("QBE") and step into QBE's previously-held role as "an outside service provider for all aspects of Wells Fargo's CPI program."  (*Id.*

¶ 130.)[1]  Wells Fargo directed which services National General would provide.  For certain loans, National General provided tracking services to Wells Fargo, advising it of changes with respect to the loan, such as when a purchaser failed to confirm it had CPI.  Specifically, Wells Fargo "determined if[] a customer's application and/or information would be transmitted to National General for review," "generally directed National General regarding its review of automobile loan policies," and "ultimately, force-placed the CPI policies underwritten by National General, and collected payments for them." (*Id.* ¶ 207.)  The Complaint further alleges, without any specificity, that this ordinary servicing relationship constituted a kickback.  (*See, e.g, id.* ¶ 294.)

There are *no* allegations—nor could there be—that National General had direct financial dealings with Wells Fargo customers.  On the contrary, National General's role was limited (as the Complaint acknowledges) to "underwr[iting] CPI policies" for Wells Fargo's benefit, accepting payments from and paying rebates to Wells Fargo, and transmitting information regarding Wells Fargo's customers.  (*Id.* ¶ 208.)

## C.   Wells Fargo Announced It Would Pay $130 Million To Borrowers

On July 27, 2017, the New York Times reported that consultants retained by Wells Fargo determined that Wells Fargo had charged approximately 800,000 Wells Fargo customers for CPI policies that they did not need.  (*Id.* ¶¶ 153-54.)  Following publication of the New York Times article, Wells Fargo announced a "remediation" program pursuant to which "approximately $64 million of cash remediation will be sent to [Wells Fargo] customers . . . along with $16 million of account adjustments, for a total of approximately $80 million in remediation." (*Id.* ¶ 156.)  Subsequently, Wells Fargo increased its remediation pledge to approximately $130 million.  (*Id.* ¶ 161.)

---

[1]   QBE had held that role since June 1, 2011, when it acquired certain assets of Balboa Insurance Company ("Balboa"), which had been outside service provider to Wells Fargo's CPI program since 2005.  (*Id.* ¶¶ 128, 129.)

### D.   Plaintiffs Attribute Conduct By Wells Fargo to National General And Fail To Identify Any Specific Representations By National General

The Complaint attributes the conduct of Wells Fargo to National General through the threadbare assertion that "whenever reference is made to any act, deed, or conduct that Defendants committed in connection with Defendants' force-placed CPI scheme and the related enterprise, the allegations mean that each of the Defendants engaged in the act, deed, or conduct . . . ." (*Id.* ¶ 131.)  The Complaint then goes on to claim, without specificity, that Wells Fargo and National General formed an "association-in-fact enterprise" with "a hierarchical decision-making structure headed by Wells Fargo." (*Id.* ¶¶ 196, 207.)  The alleged purpose of the enterprise was to "unlawfully extract[] significant revenue and profits from Plaintiffs and the [National] Class by force-placing automobile insurance policies . . . and sharing undisclosed kick-back commission payments between the members of the enterprise." (*Id.* ¶ 196.)  The "scheme" was allegedly carried out "through a pattern of racketeering activity that employed the use of United States mail and wire facilities" in violation of the mail and wire fraud statutes.  (*Id.* ¶¶ 239-40.)

The Complaint does not specifically identify a single statement made by National General, instead claiming repeatedly that National General made "representations" (without specifying where, when, or to whom those representations were made). Nonetheless, Plaintiffs allege that all "Defendants" "knowingly and intentionally" used the mails and wires to send unspecified "[c]orrespondence . . . between [Defendants]," "correspondence between borrowers, Wells Fargo and/or National General," and correspondence with unspecified "affiliates, regional offices, divisions, and other third-party entities in furtherance of" the fraud. (*Id.* ¶¶ 212-214.)  Plaintiffs further allege that "Defendants" violated the federal mail and wire fraud statutes by "sending and/or receiving . . . materials via U.S. mail or commercial interstate carriers" and "transmitting and/or receiving . . . materials by wire," "for the purpose of executing the unlawful and fraudulent scheme to profit from force-placed CPI policies." (*Id.* ¶ 211.)

The Complaint does not identify any specific correspondence sent, transmitted, or received, however—including by failing to identify any correspondence between either Defendant and any Plaintiff.  The Complaint also fails to identify even a single fraudulent document, piece of correspondence, policy, loan document or notice sent by National General (*see id.* ¶ 213), much less identify any particular statement that included a misrepresentation or omission made by National General.

### STANDARD OF REVIEW

National General moves to dismiss the Complaint for failure to state a claim and for failure to state with particularity the circumstances constituting fraud or mistake.  *See* Fed. R. Civ. P. 12(b)(6), *id.* at 9(b).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Thus, Rule 12(b)(6) necessitates a "two-step process for evaluating pleadings": *first*, the complaint must contain sufficient allegations of the underlying facts to enable the opposing party to defend itself effectively; *second*, the factual allegations must plausibly suggest an entitlement to relief.  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  "When considering plausibility, courts must also consider an 'obvious alternative explanation' for defendant's behavior."  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 682).

In addition, a plaintiff who alleges fraud or mistake must allege those claims with particularity.  Fed. R. Civ. P. 9(b).  "Any averments which do not meet [the Rule 9(b) standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)."  *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010).  Rule 9(b)'s pleading requirement applies to both federal and state law claims, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009), including civil RICO fraud claims, *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004).  Indeed, courts should examine RICO claims with particular care "because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."  *See Tapang v. Wells Fargo Bank, N.A.*, 2012 WL 3778965, at *4

(N.D. Cal. 2012) (internal quotation marks and citation omitted).

To satisfy the particularity standard, a plaintiff's RICO allegations must state "the time and place of the fraud, the statements made and by whom made, an explanation of why or how such statements were false or misleading when made, and the role of each defendant in the alleged fraud." *Owen v. OCWen Loan Serv., LLC*, 2011 WL 4101479, at *2-*3 (C.D. Cal. 2011). Where members of the alleged enterprise also conduct legitimate businesses, the bar is even higher:

> When companies engage in ... transactions that are facially legitimate, pay rent and operate legitimate businesses for years thereafter, and otherwise act as routine participants in American commerce, a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme.

*Eclectic Props.*, 751 F.3d at 997-98.

## ARGUMENT

### I.  PLAINTIFFS' RICO CLAIMS FAIL

#### A.  The RICO Claims Against National General Should Be Dismissed

The RICO claims against National General should be dismissed because Plaintiffs have not adequately alleged that National General (i) participated in improper conduct; (ii) was part of an enterprise that affected interstate commerce; or (iii) engaged in a pattern of racketeering. Where, as here, National General engaged in "facially legitimate" business activity, "operate[d] legitimate businesses for years thereafter," and "otherwise act[ed] as routine participants in American commerce, a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." *Eclectic Props.*, 751 F.3d at 997-98. The Complaint fails to meet that standard against National General.

##### 1.  National General Did Not Participate In Improper "Conduct"

The Complaint does not plausibly allege that National General participated in the "conduct" of any alleged enterprise. Liability for participating in the "conduct" of a RICO enterprise extends only to those who "have some part in directing [the enterprise's] affairs . . . ." *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

"Simply performing services for the enterprise does not rise to the level of direction." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008); *see also Forest Ambulatory Surgical Assocs., L.P. v. Ingenix, Inc.*, 2013 WL 11323601, at *6 (C.D. Cal. 2013), *on reconsideration in part sub nom. Forest Ambulatory Surgical Assocs., L.P. v. United Healthcare*, 2014 WL 11395929 (C.D. Cal. 2014) (allegations that "show[ed] only a business relationship between Defendants" were insufficient to show participation in conduct of an enterprise).

The Complaint fails to allege that National General "directed" the affairs of any "enterprise" with Wells Fargo.  On the contrary, the Complaint alleges clearly that Wells Fargo directed National General.  Specifically, it alleges an enterprise that "has a hierarchical decision-making structure *headed by Wells Fargo*."  (Cmpl. ¶ 207 (emphasis added).)  According to the Complaint, Wells Fargo "directed" the terms and costs of loans; "determined" when and to whom loans would be issued; "determined" if an application would be transmitted to National General; and "directed" National General's review.  (*Id.*)  Plaintiffs do not, and cannot, allege that National General directed or controlled Wells Fargo's CPI business; instead, Plaintiffs concede that National General was an "outside service provider."  (*Id.* ¶ 130.)  As such, Plaintiffs have failed to allege that National General had "some part in directing [the enterprise's] affairs," and the Complaint's RICO claims against National General must be dismissed.

### 2. National General Was Not Part Of An "Enterprise"

The RICO claims against National General also fail for the independent reason that the Complaint fails to plausibly allege that National General was involved in an "enterprise that affect[ed] interstate commerce." *Eclectic Props.*, 751 F.3d at 997.

Plaintiffs allege that National General and Wells Fargo "formed an association-in-fact enterprise."  (Cmpl. ¶ 196).   To allege an association-in-fact enterprise, Plaintiffs "must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props.*, 751 F.3d at 997 (citing *Boyle v. U.S.*, 556 U.S. 938, 946 (2009)).  However, Plaintiffs'

allegations regarding a common purpose are insufficient because they allege nothing more than that National General fulfilled its contractual relationship with Wells Fargo.

"[T]here has been a remarkable uniformity in [courts'] conclusion[s] that RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client." *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *11 (C.D. Cal. 2015) (collecting cases). "Parties that enter commercial relationships 'for their own gain or benefit' do not constitute an 'enterprise.'" *In re Countrywide Fin. Corp. Mortgage-Backed Secs. Litig.*, 2012 WL 10731957, at *1 (C.D. Cal. 2012); *see also Shaw v. Nissan N. Am., Inc*., 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016) (dismissing RICO claim against automobile manufacturer and supplier for failure to show common purpose where "[a]t best, the allegations here only demonstrate that the parties are associated in a manner directly related to their own primary business activities.") (citing *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig*., 826 F. Supp. 2d 1180, 1203 (C.D. Cal. 2011)); *AARP v. Am. Family Prepaid Legal Corp*., 604 F. Supp. 2d 785, 796 (M.D. N.C. 2009) ("Simple contractual relationships are not ordinarily the stuff of which RICO enterprises are made."); *Jubelirer v. Mastercard Int'l, Inc.*, 68 F. Supp. 2d 1049, 1053 (W.D. Wis. 1999) (dismissing RICO claim for failure to meet the enterprise requirement where plaintiff "attempt[ed] to characterize a routine contractual relationship for services as an independent enterprise").

California courts have repeatedly dismissed RICO claims that attempt to characterize ordinary business relationships between banks and service providers as RICO "enterprises" by alleging that the parties schemed to charge customers for unnecessary services. For example, in *Stitt v. Citibank, N.A.*, plaintiffs brought civil RICO claims against Citibank and several property inspection vendors alleging that the defendants formed an enterprise for the purpose of charging class members for unnecessary inspection services. 2015 WL 75237, at *2-*3 (N.D. Cal. 2015). The court dismissed the claims, finding that the alleged enterprise lacked a common

purpose.  *Id.* at *4.  The court found that "[e]ven construing the facts alleged in the light most favorable to plaintiffs, the [complaint] alleges only that [the property inspection vendors] acted pursuant to a service contract . . . ."  *Id.* at *5.  The court also held that the complaint "allege[d] merely that [the vendors] acted pursuant to their ordinary contractual obligation to perform inspections when Citi sent a request."  *Id.* at *6.

Similarly, in *In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation*, plaintiffs alleged that defendant Countrywide and non-party lenders, RMBS underwriters, and others, were part of an enterprise "organized for the purpose of originating risky loans, packaging those loans into RMBS, selling the RMBS to investors, and then failing to service the loans properly."  2012 WL 10731957, at *1 (interpreting Ohio RICO statute) ("The OCAA is patterned on the federal RICO statute, and Ohio courts look to federal decisions to interpret the OCAA.").  The Court granted defendants' motion to dismiss, finding that even if it credited plaintiffs' assertions that "the non-parties' actions assisted Countrywide in a scheme to profit illegally from the sale, securitization, and servicing of Countrywide mortgage loans, the [complaint] makes clear that the assistance was in response to each entity's own business incentives.  Parties that enter commercial relationships 'for their own gain or benefit' do not constitute an 'enterprise.'"  *Id.* at *8 (citations omitted); *id.* at *9-*11 (considering allegations against each group of non-parties and finding that, *inter alia*, plaintiffs had "identified exactly the type of arms-length business transaction, with each party pursuing its own independent economic interests, that does not constitute a RICO enterprise"); *see also Cirino v. Bank of America, N.A.*, 2015 WL 3669078, at *5 (C.D. Cal. 2015) (dismissing RICO claim where plaintiff alleged only that loan servicing vendors "conduct[ed] the inspections according to policies and procedures developed collaboratively with Defendants; and . . . sen[t] information about the results of the inspections to Defendants"); *Ellis v. J.P.Morgan Chase & Co.*, 2015 WL 78190, at *5-6 (N.D. Cal. 2015) (dismissing RICO claim where the complaint "allege[d] merely that the property inspection vendors acted pursuant to their ordinary contractual obligation

to perform inspections when Chase sent a request").

Here, Plaintiffs' Complaint is similarly deficient.  Much like the allegation in *Stitt* regarding Citi, Plaintiffs allege that "Wells Fargo generally directed the terms and cost of auto loans it used, determined who those loans would be issued to as well as when, and determined if, a customer's application and/or information would be transmitted to National General for review [and] generally directed National General regarding its review of automobile loan policies and, ultimately, force-placed the CPI policies underwritten by National General, and collected payments for them."  (Cmpl. ¶ 207.)  Plaintiffs also aver that the alleged enterprise had a "hierarchical decision-making structure headed by Wells Fargo."  (*Id.*)

Plaintiffs' allegations regarding National General, by contrast, fall into two camps.  First, Plaintiffs allege that National General "underwr[ote] CPI policies that Wells Fargo force-placed," accepted payments from and paid rebates to Wells Fargo, transmitted information regarding Wells Fargo's customers, and "authorized the issuance of unnecessary and unauthorized CPI policies."  (Cmpl. ¶ 208(a), (c), (e), (f), (g), and (i).)  Plaintiffs' misleading characterizations of these actions aside, the Complaint alleges nothing more than that Wells Fargo directed National General to fulfill its duties, and that National General in turn "acted pursuant to [its] ordinary contractual obligation."  *See Stitt*, 2015 WL 75237 at *6.  And, even if the Complaint's "kickback" allegations were stated with the required specificity, which they are not, simply calling any fees paid by a vendor in connection with these services as "kickbacks" does not make them improper.  Second, Plaintiffs allege that National General made misrepresentations regarding insurance verifications, disregarded proof of insurance, "misrepresented its role in the loan application process," and "conceal[ed] the true nature of its relationship with Wells Fargo."  (Cmpl. ¶ 208(b), (d), (h), and (j).)  These claims, which allege fraud on the part of National General, are not pled with anything like the requisite particularity.  For example, Plaintiffs fail to allege that they had *any* communications with National General, but still claim that National General

made misrepresentations—without specifying when, how, or to whom.  And Plaintiffs allege that National General "ignor[ed] and/or disregard[ed] proof of insurance submitted by borrowers" (Cmpl. ¶ 208(d)) but do not allege that they submitted any such proof to National General—only to Wells Fargo.  (*See, e.g.*, ¶¶ 10, 11, 19, 26, 35, 42, 50, 51, 58, 59, 67, 68, 76, 84, 94, 104, 111, 112, and 120.)  Because Plaintiffs' "averments do not meet [the Rule 9(b)] standard," those allegations "should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)."  *Sanford*, 625 F.3d at 558.  That is especially true here, where there are simply *no* factual allegations supporting Plaintiffs' pleadings.  To the extent those allegations are considered, however, they merely demonstrate that National General acted pursuant to its ordinary contractual obligation to respond to information provided by Wells Fargo.  Such allegations of normal business activity are insufficient to plead the existence of a common purpose.

### 3.   National General Did Not Participate In Racketeering Activity

A RICO claim requires that the defendant participate in "a pattern of racketeering activity."  *Eclectic Props.*, 751 F.3d at 997 (citations omitted).  Here, the Complaint alleges that National General and Wells Fargo "sent and/or received . . . materials via U.S. mail or commercial interstate carriers" and "transmitted and/or received . . . materials by wire" "for the purpose of executing the unlawful and fraudulent scheme to profit from force-placed CPI policies."  (Cmpl. ¶ 211.)  Plaintiffs allege that "Wells Fargo and National General's use of the mail and wire includes" correspondence between the Defendants, correspondence between Wells Fargo and borrowers, and correspondence with unspecified "affiliates, regional offices, divisions, and other third-party entities in furtherance of" the fraud.  (*Id.* ¶¶ 213, 214.)  Despite alleging that they received much of this correspondence, however, Plaintiffs do not identify *any* specific correspondence whatsoever.

"Wire or mail fraud consists of the following elements: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing

such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Sanford*, 625 F.3d at 557.  "[W]hen mail fraud and wire fraud are the alleged RICO predicate acts, a plaintiff must meet heightened pleading standards under Rule 9(b) for those acts." *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 790 F. Supp. 2d 1134, 1148-49 (C.D. Cal. 2011) (citing *Sanford*, 625 F.3d at 558).  This requires that plaintiffs state "the time and place of the fraud, the statements made and by whom made, an explanation of why or how such statements were false or misleading when made, and the role of each defendant in the alleged fraud." *Owen*, 2011 WL 4101479, at *2-*3 (citations omitted).  Plaintiffs "cannot simply list what kinds of communications Defendants tended to send by mail or wire." *Farmer v. Countrywide Fin. Corp.*, 2009 WL 1530973, at *4 (C.D. Cal. 2009).  The Complaint fails to meet this standard.

*First,* the Complaint generally avers that "thousands of communications" were sent using the mails and wires but does not specifically identify even one fraudulent marketing document, piece of correspondence, policy, loan document or notice.  (*See* Cmpl. ¶ 213.)  While Plaintiffs allege that the facts of the communications were "deliberately hidden" (*id.* ¶ 212)—which is untrue—even if true, that allegation does not explain why Plaintiffs fail to identify any of the thousands of communications that they allege were sent *to them*.  (*See, e.g. id.* ¶ 213 (citing "loan documents," "loan payment notices exchanged between Wells Fargo and borrowers," and "correspondence between borrowers, Wells Fargo and/or National General").)  Plaintiffs cannot obfuscate the details of correspondence they allege they received.  *Sanford*, 625 F.3d at 558 (mail and wire fraud were not pled with specificity where plaintiff relied on phone calls and mailings from defendant, but did not plead details of the alleged calls and mailings, as "it is not unreasonable to expect the [plaintiff] who placed the phone calls to have personal knowledge of the relevant facts").  Plaintiffs' general allegations are insufficient and require dismissal of the Complaint.  *See R Power Biofuels, LLC v. Chemex LLC*, 2016 WL 6663002, at *14 (N.D. Cal. 2016) (fraud allegations did not

satisfy the "when" requirement of pleading with particularity where plaintiff alleged only that phone calls "occurred between May 2012 and December 2012"); *Dugan v. LLoyds TSB Bank, PLC*, 2012 WL 3860798, at *7 (N.D. Cal. 2012) (dismissing fraud based claims for failure to plead time, place and content of false representations).

*Second,* Plaintiffs do not allege that National General's use of the mails or wires was done with the intent to defraud. *O. Thronas, Inc. v. Blake*, 2010 WL 3185118, at *6 (D. Haw. 2010) ("[a]llegations of mail fraud . . . depend upon a finding that the mail was sent with the intent to defraud"). Instead, Plaintiffs simply allege that "U.S. Mail or interstate wire facilities were knowingly and intentionally used to further the enterprise's pattern of racketeering activity." (Cmpl. ¶ 212.) The intentional use of the mail and wires, of course, does not indicate any intent to defraud. *United States v. Jinian*, 725 F.3d 954, 967 (9th Cir. 2013) ("the wire fraud statute . . . requires an intent to defraud, . . . not the intent to utilize an interstate wire communication"). And, Plaintiffs' only other allegation of intent—that National General "intended that[] Plaintiffs and the members of the Class would rely on [its] material misrepresentations" (*id.* ¶ 215)—is not linked to any alleged use of the mail or wires. It is certainly not linked to any statement—let alone any misrepresentation—by National General that Plaintiffs purportedly relied upon. As such, Plaintiffs' claim that National General committed predicate acts of mail or wire fraud fails.

### 4.   National General Did Not Participate In A "Pattern" Of Activity

As discussed, *supra*, Plaintiffs have not adequately pled that National General participated in any instances of wire or mail fraud. "Because [P]laintiffs have failed to sufficiently allege an instance of racketeering activity under RICO, [P]laintiffs have necessarily failed to sufficiently allege a pattern of such activity. Thus, [P]laintiffs' RICO claims as pled fail for this reason as well." *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1180 (E.D. Cal. 2017) (citing *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 782 (9th Cir. 2002).

**B.** **The RICO Claims Against National General As Successor To QBE And Balboa Should Be Dismissed**

1.   Plaintiffs Fail To Plead RICO Claims Against QBE Or Balboa

Plaintiffs' claims against National General as a successor to QBE and Balboa fail for the same reason as those claims fail against National General.

*First*, Plaintiffs have not pled that QBE or Balboa participated in improper conduct, as "[s]imply performing services for the enterprise" is insufficient to show participation. *Walter*, 538 F.3d at 1249. Plaintiffs have instead alleged only that both QBE and Balboa were "outside service provider[s] for Wells Fargo's CPI program" (Cmpl. ¶¶ 128, 129), and that each entity took part in an enterprise with a "hierarchical decision-making structure headed by Wells Fargo" (*id.* ¶¶ 236, 265). As discussed *supra*, Section I(A)(1), that is insufficient.

*Second*, Plaintiffs have not pled that QBE or Balboa was part of an "enterprise," because they have not pled that QBE or Balboa had a common purpose with Wells Fargo. The Complaint alleges nothing more than that Wells Fargo directed QBE or Balboa to fulfill their contractual obligations, which they did. "RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client," *Gomez*, 2015 WL 4270042, at *11, and as discussed *supra*, Section I(A)(2), Plaintiffs' Complaint is insufficient.

*Third*, Plaintiffs have not pled that QBE or Balboa participated in racketeering activity because, as with National General, the Complaint fails to identify any fraudulent statements made to Plaintiffs or to plead that QBE or Balboa used the mails or wires with the intent to defraud. *See supra*, § I(A)(3).

*Fourth and finally*, without pleading any instance of fraud, Plaintiffs have not pled that QBE or Balboa participated in a pattern of racketeering. *See supra*, § I(A)(4).

2.   The Statute Of Limitations Has Run On Plaintiffs' RICO Claims Against Balboa And Certain Of Plaintiffs' Claims Against QBE

In addition, Plaintiffs' Second Claim and, in part, Third Claim should be

-14-

dismissed because the statute of limitations has expired.  Plaintiffs' Second and Third Claims for Relief purport to state RICO claims against National General as successor to QBE and Balboa.  (Cmpl. ¶¶ 223, 252.)  The Complaint alleges that Balboa "was the outside service provider for all aspects of Wells Fargo's CPI program during the period from at least 2005 to 2011" (*id.* ¶129) and that QBE acted as outside service provider "during the period 2011 to 2015" (*id.* ¶ 128).

RICO claims are subject to a four year statute of limitations.  *Pincay v. Andrews*, 238 F.3d 1106, 1108 (9th Cir. 2001).  The Ninth Circuit "has continuously followed the 'injury discovery' statute of limitations rule for civil RICO claims.  Under this rule, the civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action."  *Id.* at 1109 (internal quotation marks and citations omitted).  Plaintiffs allege that they "did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants conspired to force-place hundreds of thousands of unnecessary CPI policies and refuse to honor proof of insurance, when provided."  (Cmpl. ¶ 168.)  But, for RICO claims, it is the "discovery of the injury, not discovery of the other elements of a claim, [that] starts the clock."  *Rotella v. Wood*, 528 U.S. 549, 555 (2000).  Plaintiffs also claim that they were harmed when they "paid inflated charges for CPI policies . . . [and by] increased interest on their automobile loans, diminished credit scores, and costs of repossession."  (Cmpl. ¶¶ 249, 278.)  But those costs were immediately discoverable when they were imposed.  The statute of limitations has therefore run on all claims asserted against Balboa and on claims asserted against QBE alleging injury before July 30, 2013.

While Plaintiffs allege that the statute of limitations was tolled under the doctrine of fraudulent concealment, the allegations in the Complaint are insufficient to invoke the doctrine.  "Plaintiffs seeking tolling based on fraudulent concealment must plead with particularity the facts giving rise to the fraudulent concealment claim."  *Groth-Hill Land Co., LLC v. Gen. Motors LLC*, 2013 WL 3853160, at *7 (N.D. Cal. 2013) (internal quotation marks and citations omitted).  "The doctrine is properly invoked

only if a plaintiff establishes affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief." *Pincay*, 238 F.3d at 1110.

Here, Plaintiffs have not alleged any such affirmative conduct, let alone with the requisite particularity. Rather, the Complaint simply alleges that Defendants were "under a continuous duty to disclose . . . the true character, quality, and nature of the charges they assess on borrowers' accounts" but instead "actively and affirmatively concealed the true character, quality, and nature of their assessment." (Cmpl. ¶ 173). The Complaint, however, fails to further identify any "affirmative conduct on the part of the defendant[s]." *Pincay*, 238 F.3d at 1110. And, a "[d]efendant's failure to 'own up' to the alleged conspiracy. . . is plainly insufficient to support tolling based on fraudulent concealment." *Groth-Hill Land Co.*, 2013 WL 3853160, at *7 (internal quotation marks and citations omitted).

## II.   PLAINTIFFS' STATE LAW CLAIMS FAIL[2]

### A.   Plaintiffs Fail To State A Claim For Fraud By Concealment

Plaintiffs fail to state a fraud by concealment claim against National General because the Complaint does not allege with particularity either a concealment by National General or a legal duty to disclose any information to Plaintiffs. *See Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 985 (N.D. Cal. 2009) (listing elements of fraud by concealment).

*First*, the Complaint's conclusory allegation that National General "represented" that CPI policy premiums were "necessary and proper"—asserted "[o]n information and belief," even though the communications were allegedly made *to Plaintiffs* (Cmpl.

---

[2]   Each of Plaintiffs' state law claims is asserted "against National General, on behalf of itself and as successor to the assets and liabilities of Balboa and QBE." (*See* Cmpl. ¶¶ 298, 308, 317, 328, 336, 349, 362, 375, 387, 398, 410, 424, 438, 451, 464.) The arguments in Section III are applicable to each of National General, Balboa and QBE, and all claims should be dismissed.

¶ 322)—does not state the "who, what, when, where, and how" necessary to state a fraud claim with particularity. *See Wonacott v. American Home Mortgage Acceptance, Inc.*, 2013 WL 12131728, at *3 (C.D. Cal. 2013).  And, even if pled with particularity, Plaintiffs' allegations simply amount to a complaint that National General "concealed" the alleged fraud. (*See, e.g.*, Cmpl. ¶ 319 (alleging Defendants "concealed" a "pattern of practice of force-placing CPI policies . . . and sharing in kickback payments").)  But there is no duty to disclose a scheme to defraud separate and apart from the general obligation "to refrain from committing fraud."  *Griffo v. Oculus VR, Inc.*, 2016 WL 7495810, at *4 (C.D. Cal. 2016) (quoting *Bank of America Corporation. v. Superior Court*, 130 Cal. Rptr. 3d 504  (Cal. App. 2d Dist. 2011)).

*Second*, the Complaint fails to specifically allege that National General—an "outside service provider" for Wells Fargo (Cmpl. ¶ 128)—owed *any* duty to Plaintiffs.  The Complaint does not allege a fiduciary relationship, or that National General had "exclusive knowledge of material facts not known to the plaintiff," and Plaintiffs do not plead sufficient facts to allege that National General "actively conceal[ed] a material fact" or made any representations, much less "partial representations," to Plaintiffs.  *See Sanders*, 672 F. Supp. 2d at 985 (listing elements of a duty to disclose and holding that the allegations regarding defendant's duty to disclose were not pled with sufficient particularity); *see also Shin v. Kong,* 80 Cal. App. 4th 498, 509 (2000) ("A duty to disclose facts arises only when the parties are in a relationship that gives rise to the duty, such as seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement.")  Indeed, the Complaint does not specifically allege even a single communication between National General and Plaintiffs.  This is fatal to Plaintiffs' claim.  *See Arch Ins. Co. v. Allegiant Professional Business Services, Inc.*, 2012 WL 1400302, at *6 (C.D. Cal. 2012) (plaintiff did not allege duty to disclose where the complaint "failed to allege any specific dealings between [plaintiff] and [defendant] that could give rise to such a duty" because  "all of the allegations against [defendant] concern his relationship with third parties").  The

1   fraud by concealment claim should be dismissed on this basis, too.

2       **B.      Plaintiffs' State Statutory Claims Are Not Pled With Particularity**

3       Plaintiffs' state law statutory claims are derivative of their fraud by concealment

4   claim and also fail to state a claim.[3]

5       As an initial matter, Plaintiffs fail to differentiate between National General and

6   Wells Fargo.  Instead, the Complaint impermissibly lumps National General and Wells

7   Fargo together in a series of conclusory allegations asserted against "Defendants."

8   (*See, e.g.,* Cmpl. ¶ 300 ("Defendants' failure to disclose their pattern of practice"); *id.*

9   ¶ 301 ("Defendants engaged in unfair or deceptive practices"); *id.* ¶ 311 ("Defendants'

10  practice of force-placing CPI"); *id.* ¶ 315 (alleging damages from "Defendants'

11  misrepresentations").)  Plaintiffs' failure to allege conduct specifically by National

12  General is fatal to its state law statutory claims.  *See Destfino v. Reiswig*, 630 F.3d 952,

13  958 (9th Cir. 2011) (Rule 9(b) requires plaintiffs to "differentiate their allegations when

14  suing more than one defendant").

15      The Complaint also fails to allege the substantive elements of its claims against

16  National General with specificity.  For example, the Complaint's CLRA claim alleges

17  _____

18      [3]    Plaintiffs' state law statutory claims are asserted under: (1) the California

19  Consumer Legal Remedies Act (the "CLRA") (Cmpl. ¶¶ 298-307); (2) the California

20  Unfair Competition Law (the "UCL") (*id.* ¶¶ 308-316); (3) the Colorado Consumer

21  Protection Act (the "Colorado CPA") (*id.* ¶¶ 335-347); (4) the Illinois Consumer Fraud

    and Deceptive Trade Practices Act (the "Illinois CFA") (*id.* ¶¶ 348-360); (5) the

22  Indiana Deceptive Consumer Sales Act (the "Indiana DCSA") (*id.* ¶¶ 361-373); (6) the

    Minnesota Prevention of Consumer Fraud Act (the "Minnesota CFA") (*id.* ¶¶ 374-385);

23  (7) the Minnesota Uniform Deceptive Trade Practices Act (the "Minnesota DTPA") (*id.*

24  ¶¶ 386-396); (7) the Mississippi Consumer Protection Act (the "Mississippi CPA") (*id.*

    ¶¶ 397-408); (8) the Missouri Merchandizing Practices Act (the "Missouri MPA") (*id.*

25  ¶¶ 409-422); (10) the New Jersey Consumer Fraud Act (the "New Jersey CFA") (*id.*

26  ¶¶ 423-436); (11) the Tennessee Consumer Protection Act (the "Tennessee CPA") (*id.*

    ¶¶ 437-449); (12) the Wisconsin Deceptive Trade Practices Act (the "Wisconsin

27  DTPA") (*id.* ¶¶ 450-462); and (13) the Wyoming Consumer Protection Act (the

28  "Wyoming CPA") (*id.* ¶¶ 463-477).

vaguely that "Defendants . . . made materially incomplete representations" to Plaintiffs (Cmpl. ¶ 301) but does not allege where or when such "incomplete" representations were made, or by whom; nor does it explain when and how Plaintiffs were exposed to the alleged representations or set forth any of the other "particular circumstances" required by Rule 9(b).  Incredibly, the Complaint does not even state *what the alleged misrepresentation was.*  A misrepresentation cannot be pled with particularity if it is not identified.  Similarly, Plaintiffs provide no specific allegations regarding any alleged "kickback commissions" (*see id.* ¶ 300); conclusory allegations that any payments for vendor services are "kickbacks" are insufficient to state a claim.

The same pleading failure is fatal to Plaintiffs' UCL and other state law statutory claims. (*See, e.g., id.* ¶ 313 (alleging that "Defendants'" representations were "false, misleading, and likely to deceive" but not identifying the representations at issue or explaining why they were "likely to deceive"); *id.* ¶¶ 342-43, 355-56, 368-69, 380-881, 391-92, 402-3, 417-18, 431-32, 444-45, 457-58, 472-73 (alleging "false or misleading" representations, "deception," and "omi[ssions]" by "Defendants").)   Each of the Complaint's state law statutory claims should be dismissed on this basis, too.  *See, e.g., Sims v. Kia Motors Am., Inc.*, 2014 WL 12558249, at *6 (C.D. Cal. 2014) (dismissing CLRA and UCL claims not pled with particularity).

## C.   Plaintiffs' Substantive Allegations Do Not State A Claim For Any State Law Statutory Violation By National General

Even if, *arguendo*, its allegations against National General were asserted with particularity under Rule 9(b), the Complaint's state law statutory claims would fail because Plaintiffs' substantive allegations are insufficient to state a claim.

### 1.   Plaintiffs Fail To State A Claim Under The California CLRA

Plaintiffs' CLRA claim must be dismissed because the CLRA does not apply to insurance transactions.  The CLRA only prohibits "specified unfair and deceptive acts and practices in a 'transaction intended to result or which results in the sale or lease of goods or services to any consumer.'"  *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 59

(Cal. 2009) (quoting Cal. Civ. Code §1770(a)).  Insurance transactions involve neither "goods" nor "services" under the statute and are, therefore, not covered.  *Id.* at 60-61; *see also Buckley v. Cracchiolo*, 2014 WL 545751, at *8 (C.D. Cal. 2014) (CLRA does not apply to auto insurance transactions); *Sanders v. Choice Mfg. Co.*, 2011 WL 6002639, at *6 (N.D. Cal. 2011) (CLRA does not apply to insurance sales).  The same is true of lending transactions.  *Sonoda v. Amerisave Mortg. Corp.*, 2011 WL 2690451, at *2 (N.D. Cal. 2011) ("If a contractual obligation to *pay* money (under an insurance contract) is not a service, then neither is a contractual obligation to *lend* money.") (emphasis supplied); *Biggs v. Bank of Am. Corp.*, 2015 WL 3465739, at *7 (C.D. Cal. 2015) (CLRA does not apply to loan transactions).  Plaintiffs' CLRA claim alleges that Defendants improperly placed CPI—collateral protection *insurance*—on vehicles purchased with Wells Fargo loans.  (Cmpl. ¶¶ 298-307.)  The CLRA does not apply to such transactions.  Plaintiffs' CLRA claim must be dismissed.[4]

### 2. Plaintiffs Fail To State A Claim Under The California UCL

Plaintiffs' UCL claim is derivative of its fraud by concealment claim and therefore fails for the reasons set forth above.  *See Wonacott*, 2013 WL 12131728, at *5 (dismissing derivative UCL claim).  Furthermore, to state a UCL claim, a plaintiff must establish that the defendant's business practice is "unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit), or fraudulent (i.e., is likely to deceive members of the public)." *Albillo v. Intermodal Container Servs., Inc.*, 114 Cal.

---

[4]   Plaintiffs' claims under the Indiana DCSA, Mississippi CPA, and Wisconsin DTPA must be dismissed for this reason too.  *See* Ind. Code § 24-5-0.5-2 (excluding "contracts of insurance" from covered "consumer transactions"); *Taylor v. Southern Farm Bureau Cas. Co.*, 954 So.2d 1045, 1049 (Miss. App. 2007) (Mississippi CPA does not apply to auto insurance); *Stadler v. John Hancock Life Ins. Co.*, 2013 WL 5798555, at *4 (E.D. Wis. 2013) (Wisconsin DTPA "does not apply to the insurance business").  And, while it has not addressed an analogous dispute, the Wyoming Supreme Court has looked with disfavor on plaintiffs bringing Wyoming CPA claims arising out of insurance transactions.  *See Herrig v. Herrig*, 844 P.2d 487, 495-96 (Wyo. 1992) (affirming denial of motion to amend to add Wyoming CPA claim).

App. 4th 190, 206 (2003).  Plaintiffs do not state a claim against National General under any prong, and the Complaint does not adequately plead that they are entitled to a remedy under the UCL.  The UCL claim must be dismissed.

*First*, the Complaint does not state a claim as to any predicate violation of law by National General.  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) ("If a plaintiff cannot state a claim under the predicate law, however, the UCL claim also fails.") (alteration and citation omitted); *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) ("a violation of another law is a predicate for stating a cause of action" under the unlawful practices prong).  "Allegations supporting a claim under the unlawful prong of the UCL must state with reasonable particularity the facts supporting the elements of the alleged violation."  *Carter v. Bank of Am., N.A.*, 2012 WL 12887542, at *10 (C.D. Cal. 2012) (internal quotation marks and citation omitted).  The Complaint's allegation that Defendants "violate multiple state, federal and common laws" (Cmpl. ¶ 312) is entirely conclusory.  And, the Complaint does not state any facts sufficient to support a claim that National General violated any of the statutes Plaintiffs list.  Plaintiffs do not state a claim that National General violated the civil RICO statute or committed mail or wire fraud in violation of 18 U.S.C. §§ 1341, 1343 or 1962.  *See supra*, § I.  The Complaint's Bank Holding Company Act, 12 U.S.C. § 1972 claim is asserted against Wells Fargo only.  (Cmpl. ¶¶ 281-297).  And, while Plaintiffs fail to make any substantive allegations, let alone with particularity, regarding any purported violations of the California Civil Code's fraud and deceit provisions (Cal. Civ. Code §§ 1572-1573, 1709-1711), the Complaint's allegations do not support a claim that National General violated those statutes for the same reasons that Plaintiffs' other fraud based claims are deficient.  *See, e.g.*, *supra*, § II(A).

*Second*, Plaintiffs do not plead with particularity that National General's conduct was fraudulent.  The Complaint does not state a fraud by concealment claim.  *See supra*, § II(A).  In addition, the Complaint's threadbare and general allegations that Plaintiffs "relied on the reasonable expectation that Defendants comply with the law"

and "relied on Defendants' representations that the force-placed CPI charges were lawful and necessary" (Cmpl. ¶ 314) are insufficient. *See Robbins v. Hyundai Motor Am.*, 2014 WL 4723505, at *9 (C.D. Cal. 2014) (dismissing UCL claim where plaintiff failed to set forth with particularity why defendant's alleged omission was false or misleading and failed to plausibly allege actual reliance).

*Third*, Plaintiffs do not state a claim against National General under the "unfair business practices" prong. A consumer seeking relief under that prong "must show that the business practice violates an established law or policy, or that it is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Carter*, 2012 WL 12887542, at *11. Plaintiffs' conclusory allegations, asserted as to "Defendants" generally (Cmpl. ¶ 310-316), do not state a claim against National General. *See Carter,* 2012 WL 12887542, at *11 (dismissing claim not pled with specificity). For example, Plaintiffs' conclusory allegation that Defendants "charg[ed] customers for inflated charges due to undisclosed kickback commissions and interest . . . ." (*id.* at 313) does not specify how or by how much the alleged charges were "inflated," or why charges disclosed to Plaintiffs were fraudulent or unfair, and does not explain why alleged commissions or interest was anything other than contract payments for services rendered. In any event, where, as here, "the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley*, 243 F. Supp. 3d at 1104-05.

*Finally*, the UCL claim fails because the Complaint does not sufficiently allege that Plaintiffs are entitled to any remedy from National General. Remedies under the UCL are "generally limited to injunctive relief and restitution." *Arch Ins. Co.*, 2012 WL 1400302, at *6. Plaintiffs are not entitled to injunctive relief because they do not allege a continuing violation by National General. *See id.* Plaintiffs are not entitled to restitution because they do not adequately allege that they paid any money to National

General or that National received any payments from Plaintiffs to which it was not entitled.  *See id.*, at *7 (dismissing UCL claim where nothing in the complaint supported a conclusion that defendant took money from plaintiff).  Plaintiffs' UCL claim against National General should be dismissed for each of these reasons, too.

### 3.   Plaintiffs' Other Statutory Claims Also Fail To State A Claim

Fatal defects also plague the Complaint's remaining statutory claims.  For example, the Mississippi CPA and Tennessee CPA bar class actions, and the Colorado CPA bars class action plaintiffs from seeking damages and bars private litigants from seeking injunctive relief.  *See* Miss. Code § 75-24-15(4); Tenn. Code § 47-18-109(a)(1); *see also* Colo. Rev. Stat. § 6-1-113(2) (damages available "[e]xcept in a class action"); *id.*§ 6-1-110(1) (injunctive relief available in actions brought by "the attorney general or a district attorney").  The Minnesota DTPA permits only injunctive relief, and Plaintiffs do not allege any "risk of future harm," *see Ritchie Capital Management, Ltd. v. Costco Wholesale Corporation*, 2017 WL 4990520, at *4 (D. Minn. 2017); indeed, the absence of any allegation of future harm is fatal to Plaintiffs' ability to obtain injunctive relief under any theory.  Plaintiffs' failure to allege any representations by National General is fatal to their claims under the Illinois CFA, Indiana DCSA, and Wisconsin DTPA, as those statutes require affirmative statements by the defendant to state a claim.  *See De Bouse v. Bayer*, 235 Ill.2d 544, 555 (Ill. 2009) ("A consumer cannot maintain an action under the Illinois [CFA] when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant."); *Lawson v. Hale*, 902 N.E.2d 267, 274 (Ind. App. 2009) (Indiana DCSA "requires an oral or written act or representation, [and] does not apply to non-disclosures"); *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245 (Wis. 2004) ("Silence—an omission to speak—is insufficient to support a claim" under the Wisconsin DTPA).  Plaintiffs' failure to identify any statement by National General is also fatal to their claims under the Indiana DCSA and Wyoming CPA, as both require Plaintiffs to plead reliance to state a claim.  *See* Ind. Code § 24-5-0.5-4; Wyo. Stat.

§ 40-12-108(a) (same).  Finally, Plaintiffs do not plead compliance with the statutory notice provisions required by the Mississippi CPA, Indiana DCSA, and Wyoming CPA. *See* Miss. Code § 75–24–15(2); Ind. Code § 24-5-0.5-5(a); Wyo. Stat. §§ 40–12–109, 40–12–102(a)(ix).  In short, the Complaint does not state a claim against National General for violation of any of the statutes at issue; its remaining statutory claims must be dismissed for these reasons, too.

### D.    Plaintiffs Fail To State An Unjust Enrichment Claim

Plaintiffs' claim for unjust enrichment also fails.  Plaintiffs fail to "identify any specific state unjust enrichment law under which [they] purport to proceed."  *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 667 (E.D. Mich. 2011).  "This alone is fatal to [their] unjust enrichment claim."  *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1088 (S.D. Cal. 2017).  If properly pled, the appropriate state law to apply to Plaintiffs' claim would be California law, which requires dismissal of Plaintiffs' claim.  As it sits in California, this Court applies California choice of law rules.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  California requires a three-step analysis into: whether the laws of potentially affected jurisdictions differ; if so, each jurisdiction's interest in the application of its own law; and, if there is a true conflict, "the nature and strength of the interest of each jurisdiction in the application of its own law."  *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81-82 (2010).  The law of the state whose interest would be most impaired governs.  *Id.*

Here, Plaintiffs assert their claim on behalf of eight state classes; those states have materially different standards for unjust enrichment law which pose a true conflict.[5]  Under California law, "the place of the wrong"—i.e. "the state where the last

---

[5]  For example, the limitations period for an unjust enrichment claim varies widely across the eight states: from no set period (Colorado, *Robinson v. Colorado State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008) (applying case-by-case analysis to determine whether claim sounds in contract or tort); Wisconsin, *Buss v. Rosenow*, 206 Wis. 2d 678, 1996 WL 635789, at *2 (Wis. Ct. App. 1996) (noting existence of

1  event necessary to make the actor liable occurred"—has "the predominant interest" in

2  having its law applies.  *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 590

3  (9th Cir. 2012).  "For a claim of unjust enrichment, the last event necessary for liability

4  appears to be acceptance of a benefit that is inequitable to retain."  *Todd v. Tempur-*

5  *Sealy Int'l, Inc.*, 2016 WL 344479, at *7 (N.D. Cal. 2016).  Here, Plaintiffs claim that

6  they were improperly charged fees and premiums for CPI, which they paid to Wells

7  Fargo (Cmpl. ¶¶ 150-51), which operated and was headquartered in California (*id.*

8  ¶¶ 136, 143).  As such, California law applies to Plaintiffs' unjust enrichment claim.

9  　　California law requires the dismissal of the unjust enrichment claim because

10  California does not recognize a standalone claim for unjust enrichment.  *In re Lidoderm*

11  *Antitrust Litig.*, 103 F. Supp. 3d 1155, 1176 (N.D. Cal. 2015) (dismissing claim because

12  "unjust enrichment does not state an independent claim under California law"); *Forever*

13  *21, Inc. v. Seven Lions Inc.,* 2012 WL 12888694, at *3 (C.D. Cal. 2012) (collecting

14  cases and dismissing separate claim for unjust enrichment under California law).

15  Plaintiffs' unjust enrichment claim must be dismissed.

16

_____

17  conflicting case law on whether laches or statute of limitations applies); Indiana,

18  *Schwindt v. Hologic, Inc.*, 2011 WL 3806511, at *7 (S.D. Ind. 2011) (governing statute

19  of limitations varies because it is "ascertained by reference to the nature of the harm

   alleged rather than by reference to theories of recovery")); 3 years (Mississippi,

20  *Johnson v. Kansas City S. Ry. Co.*, 208 F. App'x 292, 296 (5th Cir. 2006)); 4 years

21  (Wyoming, *Platt v. Creighton*, 150 P.3d 1194, 1198 (Wy. 2007)); 5 years (Missouri,

   *Scott v. King*, 510 S.W.3d 887, 893 (Mo. Ct. App. 2017)); to 6 years (Minnesota, Minn.

22  Stat. § 541.05(5); Tennessee, Tenn. Code § 28-3-109).  The states also vary by whether

23  an unjust enrichment claim would be precluded by the contracts between Plaintiffs and

   Wells Fargo; in Minnesota, Mississippi, Tennessee, Colorado, and Wisconsin such

24  claims are precluded.  *Stein v. O'Brien*, 565 N.W.2d 472, 474-75 (Minn. Ct. App.

25  1997); *Franklin v. Franklin*, 858 So. 2d 110, 121 (Miss. 2003); *Freeman Indus., LLC v.*

   *Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005); *Watts v. Watts*, 137 Wis. 2d

26  506, 530 (Wis. 1987); *Bedard v. Martin*, 100 P.3d 584, 592 (Colo. App. 2004).  In

27  Indiana, Missouri, and Wyoming they would not.  *Jacoby v. Jacoby*, 100 P.3d 852, 855

   (Wy. 2004); *Kelly v. Levandoski*, 825 N.E.2d 850, 860 (Ind. Ct. App. 2005); *Petrie v.*

28  *LeVan*, 799 S.W.2d 632, 635 (Mo. Ct. App. 1990).

1    Dated: March 9, 2018                    Respectfully submitted,

2                                            QUINN EMANUEL URQUHART &
                                             SULLIVAN LLP
3
                                     By:    */s/* Michael Carlinksy
4                                            Michael Carlinsky
                                             michaelcarlinsky@quinnemanuel.com
5                                            Jane M. Byrne
6                                            janebyrne@quinnemanuel.com
                                             Corey Worcester
7                                            coreyworcester@quinnemanuel.com
8                                            QUINN EMANUEL URQUHART
                                             & SULLIVAN, LLP
9                                            51 Madison Avenue, 22nd Floor
10                                           New York, NY 10010
                                             Telephone: (212) 849-7000
11                                           Facsimile:  (212) 849-7100
12
13                                           *Attorneys for Defendants National*
                                             *General Insurance Company and*
14                                           *National General Holdings Corp.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-26-

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2018, I electronically filed the foregoing document entitled **NATIONAL GENERAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** and **[PROPOSED] ORDER GRANTING NATIONAL GENERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT** with the Clerk of the Court for the United States District Court, Central District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

Dated: March 9, 2018                    */s/* Corey Worcester
                                        Corey Worcester