Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:   (818) 839-2333
Facsimile:    (818) 986-9698

Roman M. Silberfeld (SBN 62783)
rsilberfeld@robinskaplan.com
Robins Kaplan LLP
2049 Century Park East, Suite 3400
Los Angeles, California  90067
Telephone: (310) 552-0130
Facsimile: (310) 229-5580

Aaron M. Sheanin (SBN 214472)
asheanin@robinskaplan.com
Robins Kaplan LLP
2440 W. El Camino Real, Suite 100
Mountain View, California  94040
Telephone:  (650) 784-4040
Facsimile:  (650) 784-4041

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WELLS FARGO COLLATERAL PROTECTION INSURANCE LITIGATION | Case No.  8:17-ML-2797-AG-KES |
| | **PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| | Date:            June 4, 2018 |
| | Time:           10:00 a.m. |
| | Courtroom:     10D |
| | Complaint Filed:   January 26, 2018 |
| | Hon. Andrew J. Guildford |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................... 1

FACTUAL BACKGROUND ......................................................................... 4

PROCEDURAL HISTORY ........................................................................... 8

STANDARD OF REVIEW ............................................................................ 8

ARGUMENT ................................................................................................. 9

I.  PLAINTIFFS PLEAD STRONG, COGNIZABLE RICO CLAIMS. .......... 9

A.  Plaintiffs' RICO Allegations Satisfy Rule 9(b). ................................ 10

B.  Plaintiffs Allege Wells Fargo and the Underwriters Formed an Ongoing and Continuous Enterprise with a Common Purpose. ......... 11

C.  Plaintiffs Allege the Role of Each Defendant in the Conduct of the CPI Enterprises................................................................................. 16

D.  Plaintiffs Allege a Pattern of Mail and Wire Fraud With Sufficient Particularity. ..................................................................... 17

E.  The RICO Claims against QBE and Balboa Are Not Time-Barred. ............................................................................................. 20

1.  Whether Plaintiffs discovered their injury prior to July 17, 2017 is a question of fact. ............................................................ 20

2.  Fraudulent concealment tolled the statute of limitations............ 22

3.  The separate accrual rule also preserves claims for all charges made within the limitations period. ................................ 24

II.  PLAINTIFFS ADEQUATELY PLEAD A BHCA CLAIM. ..................... 24

A.  Charging for Duplicative CPI and Obtaining Secret Kickbacks as "Commissions" Were Unusual Banking Practices. ....................... 25

B.  Wells Fargo Illegally Tied Its Extension of Ongoing Credit to Class Members' Payment of CPI. .................................................... 26

III.  PLAINTIFFS STATE A CLAIM UNDER THE CLRA. .......................... 27

A.  The Automobile Is a "Good," and the CPI Is an Integral Part of the Sale of the Good................................................................... 27

- i -

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

B.   The Non-Ancillary Services that Wells Fargo and Its Underwriters Provided Are Covered under the CLRA ..................... 28

C.   Plaintiffs Adequately Allege Reliance ................................................ 29

IV.   PLAINTIFFS ADEQUATELY PLEAD UCL CLAIMS. .......................... 30

A.   Plaintiffs Allege that Defendants' Conduct Was Unlawful ............... 30

B.   Plaintiffs Allege that Defendants' Conduct Was Unfair. ................... 31

C.   Plaintiffs Plead Fraudulent Business Practices with Sufficient Detail. ................................................................................................. 32

D.   Plaintiffs Can Obtain Restitution and Injunctive Relief from National General Under the UCL. ..................................................... 32

V.   PLAINTIFFS STATE A CLAIM FOR FRAUD BY CONCEALMENT. .................................................................................... 33

VI.   PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT. ......... 35

VII.   PLAINTIFFS STATE VALID CLAIMS UNDER THE STATE CONSUMER PROTECTION STATUTES .................................................. 37

A.   Plaintiffs' Claims Satisfy Rule 9(b). ................................................. 37

B.   Defendants' Arguments Regarding Class Action Prohibitions and Remedies Limitations Are Premature. .......................................... 37

C.   Plaintiffs Sufficiently Allege Affirmative Misrepresentations .......... 39

D.   Wells Fargo Is Not Exempt from the Missouri MPA. ........................ 40

VIII. LEAVE TO AMEND SHOULD BE GRANTED WHERE NECESSARY ....................................................................................... 40

CONCLUSION .................................................................................................... 40

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AARP v. American Family Prepaid Legal Corp., Inc.*,
   604 F. Supp. 2d 785 (M.D. N.C. 2009) ............................................................ 15

*Admiral Ins. Co. v. Paper Converting Mach. Co.*,
   811 N.W.2d 351 (Wis. 2012) ........................................................................... 36

*AIG Agency, Inc. v. Missouri Gen. Ins. Agency, Inc.*,
   474 S.W.3d 222 (Mo. Ct. App. 2015) ............................................................. 36

*Akiki v. Bank of Am., N.A.*,
   632 Fed. Appx. 965 (11th Cir. 2015) .............................................................. 26

*Amerifirst Props., Inc. v. Fed. Deposit Ins. Corp.*,
   880 F.2d 821 (5th Cir. 1989) ........................................................................... 27

*Arango v. Chase Home Fin., LLC*,
   No. 8:11-cv-2001, 2013 U.S. Dist. LEXIS 8998 (M.D. Fla. Jan. 23,
   2013) ................................................................................................................. 26

*Astiana v. Hain Celestial Group, Inc.*,
   783 F.3d 753 (9th Cir. 2015) ........................................................................... 36

*Baggett v. Hewlett-Packard Co.*,
   582 F. Supp. 2d 1261 (C.D. Cal. 2007) ........................................................... 33

*Balukjian v. Virgin Am., Inc.*,
   No. 18-CV-00185-SI, 2018 WL 1242179 (N.D. Cal. Mar. 9, 2018) ................ 30

*BBL, Inc. v. City of Angola*,
   809 F.3d 317 (7th Cir. 2015) ........................................................................... 39

*Becker v. Wells Fargo Bank, N.A., Inc.*,
   No. 2:10-CV-02799 LKK, 2011 WL 1103439 (E.D. Cal. Mar. 22, 2011),
   *adopted as modified* 2011 WL 3319577 (E.D. Cal. Aug. 1, 2011) .................... 29

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 8

*Beneficial Standard Life Ins. Co. v. Madariaga*,
  851 F.2d 271 (9th Cir. 1988) .............................................................. 21

*Berry v. Am. Exp. Publ'g, Inc.*,
  147 Cal. App. 4th 224 (2007) ............................................................ 29

*Bias v. Wells Fargo & Co.*,
  942 F. Supp. 2d 915 (N.D. Cal. 2013) .................................... 9, 10, 17

*Bieber v. State Bank of Terry*,
  928 F.2d 328 (9th Cir. 1991) .............................................................. 25

*Biggs v. Bank of Am. Corp.*,
  EDCV 15-00267-VAP (Kkx), 2015 WL 3465739 (C.D. Cal.
  June 1, 2015) ....................................................................................... 28

*Blades v. Countrywide Home Loans, Inc.*,
  No. 1:06CV1000-LG-JMR, 2007 WL 2746678 (S.D. Miss.
  Sept. 18, 2007) .................................................................................... 36

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*,
  162 Cal. App. 4th 858 (Cal. Ct. App. 2008) ....................................... 35

*Boyle v. United States*,
  556 U.S. 938 (2008) ............................................................................ 11

*Brakke v. Econ. Concepts, Inc.*,
  213 Cal. App. 4th 761 (2013) ............................................................. 32

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) ............................................................................ 18

*Buckley v. Cracchiolo*,
  2:13-cv-4609-CAS(PJWx), 2014 U.S. Dist. LEXIS 17517
  (C.D. Cal. Feb. 7, 2014) ..................................................................... 28

*Cafasso v. Gen. Dynamics C4 Sys.*,
  637 F.3d 1047 (9th Cir. 2011) .............................................................. 9

*Cannon v. Wells Fargo Bank. N.A.*,
  No. C-12-1376 EMC, 2014 WL 324556 (N.D. Cal.
  Jan 29, 2014) .............................................................. 9, 12, 13, 16, 24

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

*Carter v. Bank of Am. N.A.*,
   No. CV 12-06424, 2012 WL 12887542 MMM FMx (C.D. Cal.
   Dec, 12, 2012) ................................................................................ 30

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) .................................................................... 30

*Chaset v. Fleer/Skybox Intern.*,
   LP, 300 F.3d 1083 (9th Cir. 2002) .................................................. 17

*Cirino v. Bank of America, N.A.*,
   No. CV 13-8829 PSG, 2015 WL 3669078 (C.D. Cal. Feb. 10, 2015) ............... 15

*City of Arvada ex rel. Arvada Police Dep't v. Denver Health and
   Hosp. Auth.*,
   403 P.3d 609 (Colo. 2017) .............................................................. 35

*City of Farmington Hills Employees Ret. Sys. v. Wells Fargo Bank*, N.A.,
   979 F. Supp. 2d 981 (D. Minn. 2013) ............................................. 38

*Clancy v. The Bromley Tea Co.*,
   308 F.R.D. 564 (N.D. Cal. 2013) .................................................... 35

*Cook v. Brewer*,
   637 F.3d 1002 (9th Cir. 2011) .......................................................... 8

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1998) ............................................................ 9

*Dahl v. R.J. Reynolds Tobacco Co.*,
   742 N.W.2d 186 (Minn. Ct. App. 2007) ......................................... 36

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ................................................. 8, 14, 18

*Electrical Wholesale Supply Co., Inc. v. Fraser*,
   356 P.3d 254 (Wyo. 2015) .............................................................. 36

*Eminence Capital LLC v. Speon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ......................................................... 40

*Erie R.R. v. Tompkins*,
   304 U.S. 64 (1938) .......................................................................... 39

- v -

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

*Fairbanks v. Super. Ct.*,
  46 Cal. 4th 56 (2009) ..................................................................... 27, 28

*Falk v. General Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) .............................................. 33

*Fladell v. Wells Fargo Bank, N.A.*,
  No. 0:13-cv-60721-FAM (S.D. Fla. Mar. 28, 2013) ....................... 9, 10

*Forcellati v. Hyland's, Inc.*,
  876 F. Supp. 2d 1155 (C.D. Cal. 2012) .............................................. 35

*Forman v. Davis*,
  371 U.S. 178 (1962) ........................................................................... 40

*Freeman Indus., LLC v. Eastman Chem. Co.*,
  172 S.W.3d 512 (Tenn. 2005) ............................................................ 36

*Gomez v. Guthy-Renker, LLC*,
  No. EDCV 14-01425 JGB (KKx), 2015 WL 4270042 (C.D. Cal.
  July 13, 2015) .................................................................................... 15

*Gomez v. Guthy-Renker, LLC*,
  No. 14-cv-01425 JGB, 2015 WL 4270042 (C.D. Cal. July 13, 2015) ... 14

*Grace v. Apple Inc.*,
  No. 17-CV-00551, 2017 WL 3232464 (N.D. Cal. July 28, 2017) ...... 33

*Hadley v. Kellogg Sales Co.*,
  243 F.Supp.3d 1074 (N.D. Cal. 2017) ................................................ 30

*Hernandez v. Hilltop Fin. Mortg., Inc.*,
  622 F. Supp. 2d 842 (N.D. Cal. 2007) ............................................... 29

*Herrig v. Herrig*,
  844 P.2d 487 (Wyo. 1992) ................................................................. 37

*Howard v. America Online Inc.*,
  208 F.3d 741 (9th Cir. 2004) ............................................................. 20

*In re Carrier IQ, Inc.*,
  78 F.Supp.3d 1051 (N.D. Cal. 2015) .................................................. 31

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
No. 17-MD-02777-EMC, 2018 WL 1335901 (N.D. Cal. Mar. 15, 2018) ................................................................ 14, 18, 19, 37, 38, 39, 40

*In re Countrywide Financial Corp. Mortgage-Backed Securities*,
No. 2:11-CV-07166-MRP, 2012 WL 10731957 (C.D. Cal. June 29, 2012 ........ 15

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) .............................................................. 30

*In re Hardieplank Fiber Cement Siding Litig.*,
No. 12-MD-2359, 2015 WL 12827790 (D. Minn. Apr. 27, 2015) .............. 37, 39

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
299 F.R.D. 648 (S.D. Cal. 2014) ........................................................ 38

*In re Optical Disk Drive Antitrust Litig.*,
No. 3:10-md-2143 RS, 2012 WL 1366718 (N.D. Cal., Apr. 19, 2012) .............. 38

*In re Vioxx Class Cases*,
180 Cal. App.4th 116 (2009) .............................................................. 29

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
No. 16-2765 (JLL), 2017 WL 1902160 (D.N.J. May 8, 2017) ........................ 38

*James Wang v. OCZ Tech. Grp., Inc.*,
No. C 11-1415 PSG, 2012 WL 12924975 (N.D. Cal. June 6, 2012) ................ 34

*Jefferson v. Chase Home Fin. LLC*,
No. C06 6510 TEH, 2007 WL 1302984 (N.D. Cal. May 3, 2007) .................... 29

*Jubelirer v. MasterCard Intern., Inc.*,
68 F. Supp. 2d 1049 (W.D. Wisc. 1999) ................................................ 15

*Kagan v. Gibraltar Sav. & Loan Assn.*,
35 Cal. 3d 582 (1984) ...................................................................... 29

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*,
178 Cal. App.4th 830 (2009) .............................................................. 33

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............................................................ 10

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

*Labrador v. Seattle Mortg. Co.*,
  No. 08-2270SC, 2008 WL 4775239 (N.D. Cal. Oct. 29, 2008)..........................27

*Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*,
  940 F.2d 397 (9th Cir. 2001) ..................................................................17

*Lane v. Wells Fargo Bank, N.A.*,
  No. C 12-04026 WHA, 2013 WL 1758878 (N.D. Cal.
  April 24, 2013) ........................................................................9, 25, 26

*Leghorn v. Wells Fargo Bank, N.A.*,
  950 F. Supp. 2d 1093 (N.D. Cal. 2013)...............................................9, 10

*Lisk v. Lumber One Wood Preserving, LLC*,
  792 F.3d 1331 (11th Cir. 2015) ...............................................................38

*Living Designs, Inc. v. E.I. Dupont de Nemours, Inc.*,
  431 F.3d 353 (9th Cir. 2005) ..................................................................22

*Mace v. Van Ru Credit Corporation*,
  109 F. 3d 338 (7th Cir. 1997) .................................................................39

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ..................................................................8

*Martinez v. Nash Finch Co.*,
  No. 11-CV-02092-MSK-KLM, 2013 WL 1313899 (D. Colo.
  Mar. 29, 2013) .....................................................................................39

*McCune v. Nat'l City Bank*,
  701 F. Supp. 2d 797 (E.D. Va. 2010).......................................................26

*MDC Data Ctrs, Inc. v. Int'l Bus. Machs Corp.*,
  342 F. Supp. 502 (E.D. Pa. 1972)...........................................................26

*Miller v. Yokohama Tire Corp.*,
  358 F.3d 616 (9th Cir. 2004) ..................................................................17

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ....................................................................9

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ................................................................9, 14

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

*Noel v. Thrifty Payless, Inc.*,
  17 Cal. App. 5th 1315, 1334 (2017).....................................................29

*Nordic Bank PLC v. Trend Grp*,
  619 F. Supp. 542 (S.D.N.Y. 1985).................................................26, 27

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007)...............................................11, 14, 18

*People ex rel. Harris v. Aguayo*,
  11 Cal. App. 5th 1150, 1160 (2017).....................................................32

*Pincay v. Andrews*,
  238 F.3d 1106 (9th Cir. 2001).................................................20, 21, 23

*Pom Wonderful LLC v. Welch Foods, Inc.*,
  2009 WL 5184422 (C.D. Cal. Dec. 21, 2009) .....................................33

*RBC Bearings Inc. v. Caliber Aero, LLC*,
  No. SACV 121442 FMO (PLAx), 2013 WL 12129619 (C.D. Cal.
  Apr. 3, 2013)....................................................................................33

*Reiter v. Mutual Credit Corp.*,
  No. 09-0811 AG, 2012 WL 12960765 (C.D. Cal. Aug. 10, 2012).....................16

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) .........................................................................16

*Robbins v. Hyundai Motor Am.*,
  SACV 14-P00005-JLS (ANx), 2014 WL 4723505 (C.D. Cal.
  Aug. 7, 2014)....................................................................................32

*Rubio v. Capital One Bank*,
  613 F.3d 1195 (9th Cir. 2010)...........................................................30

*Rutherford Holdings, LLC v. Plaza Del Rey*,
  223 Cal. App. 4th 221 (2014).............................................................36

*S & N Equip. Co. v. Casa Grande Cotton Fin. Co.*,
  97 F.3d 337 (9th Cir. 1996)...............................................................25

*Schmuck v. United States*,
  489 U.S. 705 (1989) .........................................................................18

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ...................................................................... 38

*Shaw v. Nissan N.A., Inc.*,
   220 F. Supp. 3d 1046 (C.D. Cal. 2016) ................................... 14, 15

*Simpkins v. Wells Fargo Bank, N.A.*,
   No. 12-cv-00798-DRH-PMF, 2013 WL 4510166 (S.D. Ill.
   Aug. 26, 2013) ................................................................................ 9

*Sonoda v. Amerisave Mort. Corp.*,
   No. C-11-1803 EMC, 2011 WL 2690451 (N.D. Cal. July 8, 2011) ............. 28, 29

*Southern Calif. Dist. Council, Assemblies of God v. Shepherd of Hills
   Evangelical Lutheran Church*,
   144 Cal. Rptr. 46 (Cal. Ct. App. 1978) ...................................... 35

*State Comp. Ins. Fund v. Capen*,
   8:15-cv-01279 AG (CWx), 2015 WL 13298037 (C.D. Cal.
   Dec. 18, 2015) ........................................... 13, 17, 20, 21, 22, 23, 24

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) .................................................... 30

*Stitt v. Citibank, N.A.*,
   No. 12-cv-03892-YGR, 2015 WL 75237 (N.D. Cal. Jan. 6, 2015) ............. 14, 15

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ...................................................... 18

*Swerdloff v. Miami Nat'l Bank*,
   584 F.2d 54 (5th Cir. 1978) ........................................................ 26

*Tenet Healthsystem Desert, Inc. v. Blue Cross of California*,
   245 Cal. App. 4th 821 (2016) ..................................................... 34

*Todd v. Tempur-Sealy Int'l, Inc.*,
   No. 13-cv-04984-JST, 2016 WL 344479 (N.D. Cal. Jan. 28, 2016) ............. 36, 37

*Tucker v. Pac. Bell Mobile Servs*,
   208 Cal. App. 4th 201 (2012) ..................................................... 29

*U.S. v. Fernandez*,
   388 F.3d 1199 (9th Cir. 2004) .................................................... 16

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

*United States v. Christensen*,
  801 F.3d 970 (9th Cir. 2015) ................................................................ 11

*United States v. French*,
  748 F.3d 922 (9th Cir. 2014) ................................................................ 18

*United States v. Garlick*,
  240 F.3d 749 (9th Cir. 2004) ................................................................ 18

*United States v. Stapleton*,
  293 F.3d 1111 (9th Cir. 2002) .............................................................. 18

*United States v. Turkette*,
  452 U.S. 576 (1981) ............................................................................. 11

*Volk v. D.A. Davidson & Co.*,
  816 F.2d 1406 (9th Cir. 1987) .............................................................. 23

*Wilber v. Top Global Capital*,
  No. 12-1448 AG, 2013 WL 12133638 (C.D. Cal. Aug. 2, 2013) ......... 11

*Wilkinson v. S. City Ford*,
  A1214299, 2010 WL 4292631 (Cal. Ct. App. Oct. 29, 2010) .............. 28

*Williams v. Wells Fargo Bank N.A.*,
  No. 11-21233-CIV, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ....... 9, 10

*Wolf v. Hewlett Packard Co.*,
  No. 15-01221-BRO, 2016 WL 8931307 (C.D. Cal. Apr. 18, 2016) ....... 35

*Woodruff v. Indiana Family and Soc. Servs. Admin.*,
  964 N.E.2d 784 (Ind. 2012) .................................................................. 36

*Young v. Wells Fargo & Co.*,
  671 F. Supp. 2d 1006 (S.D. Iowa 2009) ................................................. 9

**Statutes**

12 U.S.C. § 1972 ....................................................................................... 25

18 U.S.C. § 1341 ....................................................................................... 31

18 U.S.C. § 1343 ....................................................................................... 31

18 U.S.C. § 1961(4) .................................................................................. 11

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

Cal. Bus. & Prof. Code § 17200 ......................................................... 30, 31

Cal. Civ. Code § 1572 ............................................................................ 31

Cal. Civ. Code § 1573 ............................................................................ 31

Cal. Civ. Code § 1709 ............................................................................ 31

Cal. Civ. Code § 1710 ............................................................................ 31

Cal. Civ. Code § 1711 ............................................................................ 31

Cal. Civ. Code § 1761(a) ....................................................................... 27

Cal. Civ. Code § 1761(b) ....................................................................... 28

Cal. Civ. Code § 1770 ............................................................................ 27

Colo. Rev. Stat. § 6-1-113(2) ................................................................ 39

Mo. Rev. Stat. § 407.010(5) ................................................................. 40

Mo. Rev. Stat. § 407.010(7) ................................................................. 40

Mo. Rev. Stat. § 407.020 ...................................................................... 40

Mo. Rev. Stat. § 407.025 ...................................................................... 40

Mo. Rev. Stat. §§ 407.635–407.644 .................................................... 40

Mo. Rev. Stat. § 407.637(2)(1) ............................................................ 40

**Rules**

Cal. R. 8.1115 ........................................................................................ 28

Fed. R. Civ. P. 8(a) ............................................................................... 25

Fed. R. Civ. P. 9(b) ...................................... 2, 3, 9, 10, 13, 17, 19, 20, 25, 32, 34, 37

Fed. R. Civ. P. 15(a) ............................................................................. 40

Fed. R. Civ. P. 23 .............................................................................. 38, 39

**Other Authorities**

*Ninth Cir. Manual of Model Civ. Jury Instrs.*, No. 8 ............................... 11

- xii -

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

**INTRODUCTION**

This litigation arises out of the latest in a series of abusive banking practices by Wells Fargo. As announced earlier today, Wells Fargo has agreed to pay $1 billion to federal regulators in part to settle claims it improperly charged auto loan customers for unnecessary and overpriced Collateral Protection Insurance ("CPI").[1] In a pair of Consent Orders, the Consumer Financial Protection Bureau and the Office of the Comptroller of the Currency ("OCC") found that Wells Fargo's CPI practices violated multiple federal statutes and warranted some of the largest fines in recent memory. Wells Fargo has largely admitted this misconduct. However, despite paying *regulators* a $1 billion fine for conduct which harmed Well Fargo's *customers*, Wells Fargo remarkably attempts to prevent such customers from seeking a recovery too. And, in this regard, Wells Fargo has the temerity to argue that its customers' claims lack "specificity." In light of the $1 billion fine and the Consent Orders— which confirm the essential allegations of Plaintiffs' Consolidated Class Action Complaint ("Complaint")—Defendants' arguments in support of their Motions to Dismiss border on frivolous.

Wells Fargo admits that, between 2005 and 2016,[2] in conjunction with

---

[1] *See In the Matter of Wells Fargo Bank*, No. 2018-BCFP-0001 (April 20, 2018), *available at* https://files.consumerfinance.gov/f/documents/cfpb_wells-fargo-bank-na_consent-order_2018-04.pdf; *In the Matter of Wells Fargo Bank, N.A.*, No. AA-EC-2018-16, (April 20, 2018), *available at* https://www.occ.gov/static/enforcement-actions/ea2018-026.pdf.

[2] Wells Fargo initially admitted to conduct that occurred between 2012 and 2016. *See* "Wells Fargo Forced Unwanted Auto Insurance on Borrowers," The New York Times (July 27, 2017), https://www.nytimes.com/2017/07/27/business/wells-fargo-unwanted-auto-insurance.html. After Wells Fargo's primary regulator, the OCC, criticized Wells Fargo's report, Wells Fargo admitted that the improper CPI practices began as early as 2005 and expanded its remediation program from $80 million to over $100 million. *See id.*; "Regulator Blasts Wells Fargo for Deceptive Auto Insurance Program, The New York Times (Oct. 20, 2017), https://www.nytimes.com/2017/10/20/business/wells-fargo-auto-insurance-comptroller.html; Wells Fargo, Q3 2017 Form 10-Q 3 (2017),

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

- 1 -

insurance underwriters National General and its predecessors, it force-placed CPI policies on a minimum of 800,000 auto loan customers that included undisclosed kickback commissions. In many instances, these policies were unnecessary and duplicative because customers carried their own independent insurance. Defendants' misconduct was not a mere failure of oversight, but rather a deliberate scheme between Wells Fargo and its underwriters to bilk millions of dollars from unsuspecting consumers. These practices wrongly caused at least 274,000 customer account delinquencies and over 25,000 vehicle repossessions. In hopes of winning back some customer goodwill, Wells Fargo announced that it created a $130 million "remediation" fund for cash refunds and account adjustments to its customers, but Plaintiffs remain in the dark about the fund's details, including eligibility and payment methodology. And, given the size and scope of affected class members, the regulators overseeing Wells Fargo have not surprisingly criticized the fund as inadequate. In August 2017, Wells Fargo pledged it would "take full responsibility" for the CPI scandal.[3]

Wells Fargo appears to have forgotten that promise. Wells Fargo and National General challenge the Complaint as making insufficiently particular allegations under Rule 9(b) of the Federal Rules of Civil Procedure. But, Defendants' assertion that they cannot defend themselves because they lack sufficient notice of the public relations and regulatory fiasco at the heart of the Complaint strains credulity. Plaintiffs' detailed allegations provide ample factual basis to allege plausible claims for violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), the Bank Holding Company Act ("BHCA"), the California Consumer

_____

https://www08.wellsfargomedia.com/assets/pdf/about/investor-relations/sec-filings/2017/third-quarter-10q.pdf.

[3] "Remediating auto loan customers impacted by insurance coverage charges," Aug. 4, 2017, https://stories.wf.com/remediating-auto-loan-customers-impacted-insurance-coverage-charges/.

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

Legal Remedies Act ("CLRA"), the California Unfair Competition Law ("UCL"), fraud by concealment, unjust enrichment, and state consumer protection statutes.

Plaintiffs allege that Defendants[4] Wells Fargo and its underwriters, National General and predecessors QBE and Balboa[5] (hereinafter, the "Underwriters"), formed associated-in-fact enterprises with the common purpose of improperly force-placing unnecessary CPI policies on hundreds of thousands of consumers to gain unlawful profits. Wells Fargo provided information about its customers to the Underwriters, which failed to check for proof of insurance, or simply ignored it, before issuing and selling overpriced CPI policies. Wells Fargo then force-placed those policies in exchange for lucrative, undisclosed kickbacks paid in the form of unearned "commissions." The bank also conditioned its continued extension of credit on borrowers paying CPI and related charges. The Complaint describes how Defendants conducted these enterprises and implemented their scheme through a pattern of mail and wire fraud. Plaintiffs also allege misconduct by each Defendant, including the dates of force-placement; the amounts Defendants falsely represented Plaintiffs owed; the harm Plaintiffs suffered including late charges, adverse credit reporting and vehicle repossessions; and that Plaintiffs would not have borrowed from Wells Fargo or paid for force-placed CPI if the scheme had been disclosed. These allegations support each cause of action and satisfy Rule 9(b) by detailing the "who", "what", "where", "when", and "how" of Defendants' CPI scheme.

The Court should deny Defendants' motions in their entirety.

---

[4] "Defendants" refers to Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively, "Wells Fargo") and National General Holdings Corp. and National General Insurance Company (collectively, "National General").

[5] "QBE" refers to QBE North America.  "Balboa" refers to Balboa Insurance Company.

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

- 3 -

1

## **FACTUAL BACKGROUND**

2    CPI is a type of insurance policy that covers the cost of damage to an insured

3  vehicle only. ¶ 140.[6] CPI coverage is far more limited in scope than owner-purchased

4  auto insurance, which covers not merely damage to the insured vehicle, but also

5  collision with other vehicles, property loss, and bodily injury. *Id.* Approximately

6  three-quarters of all insured drivers carry collision and comprehensive insurance in

7  addition to mandatory liability insurance. *Id.* A lender can require an auto loan

8  customer to carry CPI only if that customer lacks sufficient insurance to protect the

9  lender's collateral, namely the vehicle itself. ¶¶ 5, 141.

10    In 2005, Wells Fargo began force-placing CPI on auto loan customers'

11  vehicles. ¶¶ 146, 320. Wells Fargo's practice was to tack the costs of one year's

12  insurance premiums plus interest on borrowers' accounts, increasing their monthly

13  payments. ¶¶ 141-42, 150-51. Each of the CPI policies Wells Fargo force-placed on

14  its customers' auto loans included an undisclosed kickback that improperly inflated

15  the price of the CPI premium. ¶¶ 4, 6, 141–45, 147, 157, 172. Kickbacks aside, at

16  least 800,000 customers who received force-placed CPI already had sufficient

17  insurance and, therefore, were not obligated to pay for Defendants' CPI policies. ¶¶

18  2, 10, 19, 26, 35, 42, 50, 59, 67–68, 76, 84, 94, 104, 112, 120, 149. When some

19  borrowers discovered the charges and complained, Wells Fargo failed to remove the

20  charges and continued to bill them. ¶¶ 2, 19–20, 35–36, 50–51, 59–60, 68–69, 84–

21  85, 94–95, 104–05, 120–21, 152.

22    These practices were part of a deliberate scheme between Wells Fargo and the

23  Underwriters to enrich themselves at their customers' expense. ¶¶ 2–6, 141–42, 146–

24  52. Wells Fargo began the CPI scheme with Balboa in 2005, and continued it after

25  QBE purchased Balboa's assets and liabilities in June 2011 and National General

26  purchased QBE's assets and liabilities in July 2015. ¶¶ 5–6, 128–30, 161. Wells

27

28  ──────────────
[6] "¶ ___" refers to paragraphs of the Complaint filed January 26, 2018 (Dkt. No. 49).

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

Fargo provided information about its borrowers to the Underwriters, which were supposed to determine whether CPI would have been duplicative of existing coverage. ¶¶ 5, 206–08, 235–37, 264–66. However, the Underwriters either failed to do so or disregarded what they learned, so that they could issue the lucrative CPI policies. *Id.* Defendants knew that the costs associated with CPI would be assessed against customers' accounts and often deducted automatically, along with loan principal and interest payments. ¶¶ 5, 150.

Both the bank and the Underwriters had improper financial motives to churn the CPI policies. Wells Fargo profited by receiving undisclosed kickbacks in the form of unearned "commissions" from the underwriters. ¶¶ 4, 6, 141, 147, 220, 249, 278. Wells Fargo was so motivated to generate this revenue that it pushed employees to force-place CPI, ¶ 148, much like it had incentivized employees to defraud customers during the notorious fake account scandal. The CPI scheme was also lucrative for National General and its predecessors. ¶ 208, 235, 264. The Underwriters had a captive market of hundreds of thousands of borrowers. ¶ 143. By selling redundant CPI policies to those borrowers at inflated costs due the undisclosed kickbacks to Wells Fargo, the Underwriters earned substantial profits, knowing the likelihood they would have to pay claims on the CPI was minimal. ¶¶ 6, 141, 149, 200, 208, 229, 237, 258, 266. Defendants' forced-placement and churning of these CPI policies served no legitimate purpose. ¶¶ 4–6, 141, 166.

Defendants had superior, exclusive knowledge and, therefore, were under a continuous duty to disclose to Wells Fargo's customers the true character, quality, and nature of the charges they assessed. ¶¶ 173, 324. Nonetheless, Defendants misrepresented and concealed the following material facts:

- Wells Fargo received kickbacks in the form of unearned "commissions" from the Underwriters for every CPI policy, ¶¶ 4, 141, 206, 208, 235, 237, 264, 266;
- Defendants underwrote and force-placed CPI on customers who already had sufficient auto insurance, ¶¶ 2, 149, 151, 168, 206, 208, 235, 237, 264, 266;

- The Underwriters failed to search databases to determine whether borrowers maintained insurance coverage, ¶¶ 5, 208, 237, 266;

- Defendants ignored proof of insurance, ¶¶ 5, 152, 168, 208, 237, 266;

- Defendants collected premiums on redundant policies for which there was little risk they would have to pay claims, ¶¶ 142, 208, 237, 266;

- Wells Fargo conditioned auto loan financing and forbearance from collections on borrowers paying for CPI and related charges, ¶¶ 206, 235, 264, 288-89;

- Wells Fargo falsely represented to credit reporting agencies delinquencies for CPI charges that were not owed, ¶¶ 2-3, 150-51, 154, 206, 235, 254; and

- Wells Fargo repossessed vehicles in connection with borrowers' non-payment of CPI charges that were not owed, ¶¶ 2-3, 152, 154, 206, 235, 264.

Borrowers suffered financial harm by having to pay CPI premiums that were inflated by undisclosed kickback commissions, premiums that were unnecessary because customers already carried insurance, delinquency charges, late fees, repossession costs, increased interest rates, and overdraft fees, among others. ¶ 2. Compounding matters further, Wells Fargo applied customers' payments to CPI interest before loan principal. ¶ 150. This structure increased the overall interest customers paid, decreased the payment applied to outstanding loan principal, and enhanced the likelihood of late payments, delinquencies, credit damage, and vehicle repossessions. ¶¶ 2–3, 151.

After successfully concealing these practices for over a decade, the scandal finally came to light on July 27, 2017 when the *New York Times* published details from a leaked investigative report by consulting firm Oliver Wyman that Wells Fargo had commissioned in 2016. ¶¶ 3, 153–54. Wells Fargo then announced a remediation program for the class of consumers identified in the 2016 report, but that was a deliberate effort to limit the bank's exposure. The remediation program provides that consumers "may be eligible for a refund" if they submit proof of insurance, but fails to provide relief for the undisclosed kickbacks or the cramming of inflated premiums

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

and interest. ¶¶ 157–59. The OCC slammed the remediation program as insufficient and based on "an overly complicated reimbursement methodology, which lacked clear support for addressing all the customer costs incurred." ¶ 159. Senator Sherrod Brown of the U.S. Senate Banking Committee further accused Wells Fargo of having "lied to this committee—and lied to the public" for failing to disclose the CPI scheme to Congress much earlier. ¶¶ 162–63. After these reports, Wells Fargo admitted that its prior remediation program was insufficient and broadened the relief available to all consumers harmed between 2005 and 2016.[7] ¶ 161.

The arguments in Defendants' motions are similarly deficient. Plaintiffs[8] allege in great detail how they were defrauded. They identify where and when they purchased their vehicles and obtained financing from Wells Fargo. ¶¶ 8–9, 16–17, 24–25, 32–33, 40–41, 47–48, 56–57, 65–66, 74–75, 81–82, 91–92, 101–02, 109–10, 117–18. They state the approximate dates that CPI policies were force-placed on their accounts and the amounts charged. ¶¶ 10, 18, 26, 34, 42, 49, 58, 67, 76, 83, 93, 103, 111, 119. Plaintiffs describe their complaints to the bank, explaining how they provided proof of independent insurance but were charged for CPI anyway. ¶¶ 10–11, 19–20, 26–27, 35–36, 42–43, 50–51, 58–60, 67–69, 76–77, 84–85, 94–97, 104–05, 112, 120–21. They allege the harms they suffered such as payment of CPI premiums that were not owed, damage to their credit, vehicle repossessions, and numerous associated fees and charges. ¶¶ 10, 13, 18, 20, 27–29, 34, 36–37, 43–44, 49, 51–53, 58, 60–62, 69–71, 77–78, 85–88, 93, 97–98, 103, 105–06, 111, 113, 119, 121–22. Plaintiffs allege that they reviewed the documents made available to them with their auto loans, and would not have borrowed from Wells Fargo, had CPI force-

---

[7] Wells Fargo, SEC and Other Regulatory Filings, Q3 2017 Form 10-Q 3 (2017), https://www08.wellsfargomedia.com/assets/pdf/about/investor-relations/sec-filings/2017/third-quarter-10q.pdf.

[8] "Plaintiffs" are Angelina Camacho, Odis Cole, Nyle Davis, Duane Fosdick, Brandon Haag, Paul Hancock, Dustin Havard, Brian Miller, Analisa Moskus, Regina Gonzalez, Keith Preston, Victoria Reimche, Dennis Small, and Bryan Tidwell.

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

1  placed on their accounts, or paid CPI charges if the scheme had been disclosed. ¶¶

2  14, 22, 30, 38, 45, 54, 63, 72, 79, 89, 99, 107, 115, 123.

3  **PROCEDURAL HISTORY**

4       Plaintiffs filed the Complaint on January 26, 2018. Dkt. No. 49. Plaintiffs

5  assert three causes of action alleging RICO violations by Wells Fargo and its then-

6  Underwriters (National General in at least 2015-16, QBE in 2011-15, and Balboa in

7  2005-11). ¶¶ 186-280. Plaintiffs bring each of these RICO claims against National

8  General as well, either for conduct in its own right or as the successor-in-interest to

9  QBE and Balboa. Plaintiffs also sue Wells Fargo for violations of the BHCA, ¶¶ 281–

10  97, and all Defendants for violations of the CLRA, ¶¶ 298-307, and the UCL, ¶¶ 308-

11  316; fraud by concealment, ¶¶ 317-327; unjust enrichment, ¶¶ 328-334; and

12  violations of various state consumer protection statutes, ¶¶ 335-477. Defendants'

13  filed motions to dismiss on March 9, 2018. Dkt. Nos. 68-69.

14  **STANDARD OF REVIEW**

15       Courts must "accept factual allegations in the complaint as true and construe

16  the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St.*

17  *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Dismissal is

18  appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts

19  in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d

20  1002, 1004 (9th Cir. 2011).[9] A complaint "does not need detailed factual allegations"

21  but must plead "enough facts to state a claim to relief that is plausible on its face."

22  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). If there are competing

23  explanations, dismissal can only be made "when the defendant's plausible alternative

24  explanation is so convincing that the plaintiff's explanation is implausible." *Eclectic*

25  *Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).

26

27    [9]  Internal quotation marks and punctuation omitted throughout unless otherwise

28  noted.

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

- 8 -

"[A] party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Although a plaintiff should "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading, and why it is false," *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011), Rule 9(b) "may be relaxed as to matters within the opposing party's knowledge." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1998). In such situations, "plaintiffs can not be expected to have personal knowledge of the relevant facts." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Rule 9(b) is satisfied where plaintiffs allege "the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *Pickett*, 137 F.3d at 627. Plaintiffs satisfy these standards.

## ARGUMENT

### I.     PLAINTIFFS PLEAD STRONG, COGNIZABLE RICO CLAIMS.

Illicit behavior that implicates RICO has become commonplace within the walls of Wells Fargo. *See*, *e.g.*, *Cannon v. Wells Fargo Bank. N.A.*, No. C-12-1376 EMC, 2014 WL 324556 (N.D. Cal. Jan 29, 2014); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915 (N.D. Cal. 2013); *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006 (S.D. Iowa 2009). So has force-placed insurance fraud. *See*, *e.g.*, *Cannon*, 2014 WL 324556; *Young*, 671 F. Supp. 2d 1006; *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093 (N.D. Cal. 2013); *Simpkins v. Wells Fargo Bank, N.A.*, No. 12-cv-00798-DRH-PMF, 2013 WL 4510166 (S.D. Ill. Aug. 26, 2013); *Lane v. Wells Fargo Bank, N.A.*, No. C 12-04026 WHA, 2013 WL 1758878 (N.D. Cal. April 24, 2013); *Fladell v. Wells Fargo Bank, N.A.*, No. 0:13-cv-60721-FAM (S.D. Fla. Mar. 28, 2013); *Williams v. Wells Fargo Bank N.A.*, NO. 11-21233-CIV, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011). National General's predecessor in interest—QBE—also has a history of force-placed insurance litigation that preceded its acquisition. *See*

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

*Leghorn*, 950 F. Supp. 2d 1093; Second Amended Class Action Complaint, *Fladell v. Wells Fargo Bank, N.A.*, No. 0:13-cv-60721-FAM, (S.D. Fla. Mar. 3, 2014), ECF No. 155-1; *Williams*, 2011 WL 4901346. Despite this litany of misconduct and Wells Fargo's admission that it would take full responsibility for the CPI scandal, Defendants separately move to dismiss Plaintiffs' RICO claims by mischaracterizing Plaintiffs' allegations and asserting that the Complaint does not satisfy Rule 9(b). Their arguments lack merit, and the Court should deny both motions.

### A.    Plaintiffs' RICO Allegations Satisfy Rule 9(b).

"Rule 9(b) serves three purposes, including: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

The Complaint easily satisfies these purposes. First, Defendants have more than sufficient notice to defend the charges and "not just deny that they have done nothing wrong." *Bias*, 942 F. Supp. 2d at 932. Notably, this case arises out of Wells Fargo's *own* internal investigation into the CPI scheme, for which the bank acknowledged it would "take full responsibility." ¶¶ 3, 153–154. National General contributed to the investigation and performed many of the day-to-day functions of the illicit scheme, rendering it equally familiar with Plaintiffs' allegations. ¶¶ 141–42, 147, 208. Thus, there can be no concern about "discovery of unknown wrongs." Second, Wells Fargo's widely-publicized culture of abusive lending practices, including its admission to the wrongdoing at the heart of this case, belies any suggestion that this suit could besmirch the bank's already-tarnished reputation. ¶¶ 5, 153 n.10. Third, Plaintiffs' claims will not impose an undue burden on the Court or society, because this case seeks to do what Wells Fargo and National General have

- 10 -

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

1  not: make Wells Fargo's customers whole.

2  **B.  Plaintiffs Allege Wells Fargo and the Underwriters Formed an
3  Ongoing and Continuous Enterprise with a Common Purpose.**

4  A RICO enterprise is "any individual partnership, corporation, association, or

5  other legal entity, and any union or group of individuals associated in fact although

6  not a legal entity." 18 U.S.C. § 1961(4); *Boyle v. United States*, 556 U.S. 938, 944

7  (2008); *United States v. Christensen*, 801 F.3d 970, 985 (9th Cir. 2015). The

8  definition of a RICO enterprise "is obviously broad . . . [with] a wide reach." *Wilber*

9  *v. Top Global Capital*, No. 12-1448 AG (JPRx), 2013 WL 12133638, *5 (C.D. Cal.

10  Aug. 2, 2013) (brackets in original); *Odom v. Microsoft Corp.*, 486 F.3d 541, 548

11  (9th Cir. 2007). "No particular organizational structure, separate or otherwise, is

12  necessary for an associated-in-fact enterprise." *Ninth Cir. Manual of Model Civ. Jury*

13  *Instrs.*, No. 8 Civil RICO Cmts. at 112 (updated July 2017); *Boyle*, 556 U.S. at 948.

14  To plead a RICO enterprise, Plaintiffs must allege: (1) a "union or group of

15  individuals associated together for a common purpose"; (2) with "an ongoing

16  organization, formal or informal"; and (3) the "various associations function as a

17  continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *Odom*, 486

18  F.3d at 548.

19  Plaintiffs' Complaint readily satisfies these requirements. Nevertheless, in an

20  attempt to avoid RICO liability, Defendants disregard Plaintiffs' detailed enterprise

21  allegations and seek to recast their unlawful scheme as a "routine contractual

22  relationship" between a bank and "outside service providers." WF at 8–9; NG at 7–

23  11.[10] Denying they held a "common purpose," Wells Fargo mischaracterizes the

24  _____

25  [10] "WF" refers to Defendants Wells Fargo & Company and Wells Fargo Bank, N.A.
dba Wells Fargo Dealer Services' Notice of Motion and Motion to Dismiss Plaintiffs'

26  Complaint; Memorandum of Points and Authorities in Support Thereof (Dkt. No.
68).  "NG" refers to National General Defendants' Notice of Motion and Motion to

27  Dismiss Plaintiffs' Consolidated Class Action Complaint; Memorandum of Points
and Authorities in Support Thereof (Dkt. No. 69).

28

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

1    Complaint as alleging a mere "failure in the CPI placement process." WF at 9.
2    National General argues that Plaintiffs only allege it carried out "ordinary contractual
3    obligations." NG at 11.

4         Even a cursory reading of the Complaint demonstrates otherwise. Plaintiffs
5    allege that Wells Fargo and the Underwriters jointly oversaw, carried-out, and
6    manipulated a highly unconventional CPI program for the common purpose of
7    profiting from fraudulent CPI premiums and kickbacks. ¶¶ 192, 196, 225, 254. In
8    coordination with Wells Fargo, the Underwriters purposefully: (a) underwrote CPI
9    policies for loans they knew or should have known were secured by sufficient auto
10   insurance and thus were unlikely to be subject to payouts, ¶¶ 208(c) & (i), 237(c) &
11   (i), 266(c) & (i); (b) ignored proof of independent insurance, ¶¶ 5, 208(d), 237(d),
12   266(d); (c) misrepresented that they would investigate whether borrowers had
13   independent insurance, ¶¶ 5, 208(b), 237(b), 266(b); (d) priced CPI at more expensive
14   rates than the insurance policies borrowers could obtain on their own, ¶ 6; and (e)
15   paid undisclosed kickbacks to Wells Fargo, ¶¶ 4, 6, 141, 147, 172, 196, 208(f), 225,
16   237(f), 254, 266(f). Each of these actions was indispensable to the scheme's success,
17   ¶ 196–198, 200, and, contrary to Defendants' arguments, far exceeded the type of
18   work performed by any lawful "outside service provider."

19        Plaintiffs' allegations suffice to show Defendants' common purpose. *Cannon*
20   *v. Wells Fargo* is instructive. 2014 WL 324556. In *Cannon*, plaintiffs sued Wells
21   Fargo and its underwriter, ASIC, for RICO violations, alleging that defendants
22   engaged in a scheme to force-place flood and hazard insurance on their homes by
23   charging inflated premiums that included unlawful "tracking fees" and "kickbacks"
24   disguised as commissions to Wells Fargo. Judge Chen held that plaintiffs adequately
25   alleged a RICO enterprise:

26             ASIC allegedly agreed with Wells Fargo and WFI to pay
27             them kickbacks in exchange for purchasing force-placed
               insurance exclusively from ASIC, the premiums of which
28             were twice to ten times market rates. TAC ¶¶ 4-7. The

common purpose was to "increase and maximize revenues of Wells Fargo and ASIC by forcing Plaintiffs and members of the Classes to pay artificially inflated premiums for flood and hazard insurance through a scheme that manipulated the premiums to cover kickbacks and expenses associated with monitoring Wells Fargo's entire loan portfolio." TAC ¶ 166. The ongoing agreements show that the Defendants functioned as a "continuing unit." This suffices to allege a RICO enterprise.

*Id.* at *3.

Plaintiffs' allegations here are even stronger than those in *Cannon*. Plaintiffs allege that National General, QBE and Balboa agreed to pay kickbacks to Wells Fargo in exchange for force-placing CPI on a captive market of hundreds of thousands of borrowers at above-market rates, and forced that insurance on customers who already had coverage. ¶¶ 4, 146–48. The common purpose of these enterprises was to "unlawfully extract[] significant revenue and profits from Plaintiffs and the Class by force-placing automobile insurance policies on their automobile loans, and sharing undisclosed kick-back commission payments between the members of the enterprise." ¶¶ 196, 225, 254. These ongoing agreements, coordinated activities, financial ties, and regular exchanges of information between Defendants show that the enterprises operated as "continuing units." ¶¶ 199–202, 228–31, 257–60.

These allegations satisfy Rule 9(b). They identify the "who" (Wells Fargo and the Underwriters), the "what" (force-placed CPI policies that included undisclosed kickbacks to Wells Fargo and were unnecessary because customers maintained their own insurance), the "when" (with National General in 2015-16, QBE in 2011-15, and Balboa in 2005-11, and the dates alleged by each Plaintiff), and the "how" (Wells Fargo provided borrower information to the Underwriters which failed to check for, or ignored proof of, insurance before issuing CPI policies that Wells Fargo then force-placed in exchange for kickbacks). *State Comp. Ins. Fund v. Capen*, SACV 8:15-cv-01279 AG (CWx), 2015 WL 13298037, *11 (C.D. Cal. Dec. 18, 2015)

1  (Guilford, J.) ("*SCIF*") (citing *Neubronner*, 6 F.3d at 671–72).

2      Defendants cannot evade liability by arguing they were engaged in facially

3  legitimate business activity. NG at 6 (citing *Eclectic Props.*, 751 F.3d at 997–98).

4  The court in *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod.*

5  *Liab. Litig.*, No. 17-MD-02777-EMC, 2018 WL 1335901, at *33 (N.D. Cal. Mar. 15,

6  2018) ("*Ecodiesel*"), recently rejected this exact argument, concluding that plausible

7  allegations of a deceitful purpose render even legitimate business transactions subject

8  to RICO. Moreover, that Defendants coordinated their scheme under the guise of

9  normal business contracts does not negate that they shared a common purpose; if

10  anything, such contracts provide further evidence of their coordinated enterprise. *See*

11  *Odom*, 486 F.3d at 552 (holding that a lawful promotional contract between

12  Microsoft and Best Buy "provided *additional* evidence," not less evidence, that the

13  companies formed a RICO enterprise) (emphasis added); *Ecodiesel*, 2018 WL

14  1335901, at *36 (distinguishing *Shaw v. Nissan North Am., Inc.*, 220 F. Supp. 3d

15  1046 (C.D. Cal. 2016) and *Gomez v. Guthy-Renker, LLC*, No. 14-cv-01425 JGB,

16  2015 WL 4270042 (C.D. Cal. July 13, 2015), upon which Defendants here rely)).

17      Defendants' arguments to the contrary are unsupported. National General

18  relies exclusively on case law in which plaintiffs failed to allege sufficient facts

19  beyond arms-length business relationships, generally between Defendants and

20  nonparty vendors. NG at 7–11, 14. In *Stitt v. Citibank, N.A.*, plaintiffs alleged that

21  Citibank and a nonparty property inspector formed a RICO enterprise for purposes

22  of charging for unnecessary property services. No. 12-cv-03892-YGR, 2015 WL

23  75237, at *2 (N.D. Cal. Jan. 6, 2015). The court found that no "common purpose"

24  existed between Citibank and the property inspector because plaintiffs offered no

25  facts that the property inspector even knew of Citibank's fraudulent practices, let

26  alone engaged in any conduct beyond performing routine third-party inspections. *Id.*

27  at *5. Unlike the Underwriters here, which themselves oversaw and manipulated the

28  fraudulent CPI verification system, it was Citibank—not the nonparty property

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

inspectors—that oversaw the allegedly fraudulent system that led to the unnecessary inspections. *Id.*

*In re Countrywide Financial Corp. Mortgage-Backed Securities* is similarly inapposite. Plaintiffs there alleged that Countrywide and "thousands of diverse and disparate" nonparty entities violated the Ohio Corrupt Activities Act ("OCAA") by forming an enterprise for purposes of issuing and selling risky loans and derivatives. No. 2:11-CV-07166-MRP, 2012 WL 10731957, at *1, 9 (C.D. Cal. June 29, 2012). The court dismissed the OCAA claim, finding it implausible that "thousands of diverse and disparate entities shared a common purpose and cooperated with each other in furtherance of that purpose." *Id.* at *9. The Court held that far from coordinating their behavior, the third-parties "actively compet[ed] with each other for Countrywide's business," thus precluding them from sharing a common purpose. *Id.* [11]

---

[11] The other cases Defendants cite in support are similarly distinguishable. *See Shaw,* 220 F. Supp. 3d at 1051, 1057 (the parties were "associated in a manner directly related to their own primary business activities" because despite their knowledge of a defect in the subject vehicle part "[e]ach company conducted their own testing to confirm the nature of the defect" and "the parties demonstrated that they lacked common purpose by reaching independent conclusions."); *Gomez*, 2015 WL 4270042, at *11 (dismissing RICO claims because the complaint did not allege an enterprise beyond "a routine contractual relationship for services as an independent enterprise;" the plaintiff had done nothing more than allege that the defendant's business activities were the common purpose and payment processors did not share in that purpose); *Cirino v. Bank of America, N.A.*, No. CV 13-8829 PSG (MRWx), 2015 WL 3669078, at *5 (C.D. Cal. Feb. 10, 2015) (dismissing RICO allegations because the "[p]laintiff did not allege that the vendors were involved in deciding when or why to conduct inspections," "vendors [came] into play when [d]efendants' automated loan management system orders inspections," and "[d]efendants used the vendors 'as instrumentalities to carry out the fraudulent scheme'"); *AARP v. American Family Prepaid Legal Corp., Inc.*, 604 F. Supp. 2d 785, 796–97 (M.D. N.C. 2009) (rejecting defendants' argument that there were insufficient allegations of a common purpose, but dismissing the RICO claim because plaintiff "fail[ed] to sufficiently allege a RICO enterprise that existed separate and apart from the alleged racketeering activity"); *Jubelirer v. MasterCard Intern., Inc.*, 68 F. Supp. 2d 1049

The present case is easily distinguishable and far more akin to *Cannon*. Plaintiffs allege that the Underwriters, each of which is identified in the Complaint, successively performed key functions that were indispensable to the CPI enterprises, such as knowingly misrepresenting customers' insurance coverage and paying undisclosed kickbacks to Wells Fargo. ¶¶ 2, 141, 192, 208, 237, 266. These actions defy explanation other than what Plaintiffs allege: a common purpose to maximize revenues through unnecessary and inflated CPI premiums. Defendants' motions to dismiss should be denied.

### C.   Plaintiffs Allege the Role of Each Defendant in the Conduct of the CPI Enterprises.

"In order to 'participate, directly or indirectly, in the conduct of [an] enterprise's affairs,' one must have some part in directing those affairs. Of course, the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs … but *some* part in directing the affairs is required." *Reves v. Ernst & Young*, 507 U.S. 170, 178-79 (1993) (italics in original); *see also*, *Reiter v. Mutual Credit Corp.*, No. 09-0811 AG (RNBx), 2012 WL 12960765, *4 (C.D. Cal. Aug. 10, 2012) (same). As such, "[a]n enterprise is operated not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *U.S. v. Fernandez*, 388 F.3d 1199, 1228 (9th Cir. 2004).

Defendants challenge Plaintiffs' allegations by disputing they engaged in actionable "conduct." Wells Fargo argues that Plaintiffs do not plead actionable conduct with specificity, WF at 9-10, while National General argues that Plaintiffs fail to allege the Underwriters directed the enterprises because they were mere

_____

(W.D. Wisc. 1999) (dismissing RICO allegations because the plaintiffs could not allege that MasterCard engaged in anything more than a "routine contractual relationships for services as an independent enterprise" when it processed approved payment applications on behalf of an online casino).

1  "outside service providers." NG. at 7, 14. Both arguments fail. Plaintiffs allege

2  sufficient facts showing each Defendant played a critical role in directing the CPI

3  enterprises.[12] Wells Fargo "was a knowing, willing, and active participant" in the

4  enterprises. ¶¶ 197, 226, 255. It directed the terms of its auto loans, selected loan

5  customers, transmitted customer information to the underwriters, force-placed CPI

6  policies, collected payments from customers, received undisclosed kickbacks from

7  National General, and repossessed customers' vehicles. ¶¶ 207, 236, 265. The

8  Underwriters performed equally important functions. They underwrote CPI policies

9  they knew or should have known were redundant, ignored proof of independent

10  insurance, misrepresented their efforts to verify customers' insurance status, and paid

11  undisclosed kickbacks to Wells Fargo. ¶¶ 208, 237, 266. Both sets of actions lay at

12  the heart of the CPI enterprises and were indispensable to achieve the enterprises'

13  purpose. ¶¶ 200, 229, 258. At a very minimum, these actions demonstrate that each

14  Defendant played at least "*some* part" in directing the affairs of the CPI enterprises.

15
16  **D.  Plaintiffs Allege a Pattern of Mail and Wire Fraud With Sufficient Particularity.**

17  "Racketeering activity" includes mail and wire fraud. *Bias*, 942 F. Supp. 2d at

18  937. A claim for mail or wire fraud requires allegations that defendants (1) formed a

19  scheme or artifice to defraud, (2) used the U.S. mails or wires in furtherance of the

20  scheme, and (3) did so with the specific intent to deceive or defraud. *Miller v.*

21  *Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004). Rule 9(b) only requires a

22  "plaintiff to plead the *predicate fraudulent acts* for RICO with particularity." *State*

23
24  [12] Wells Fargo attempts to impose a stricter pleading obligation than required even
25  under the cases it cites.  For example, *Chaset v. Fleer/Skybox Intern.*, LP, 300 F.3d
    1083, 1086 (9th Cir. 2002), states the elements of a RICO claims without addressing
26  Rule 9(b).  And, *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940
    F.2d 397 (9th Cir. 2001), recognizes that Rule 9(b) applies to allegations of the RICO
27  predicate act of mail fraud, but does not state that the conduct element must be
28  pleaded with particularity.

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

*Comp. Ins. Fund v. Capen*, 8:15-cv-01279 AG (CWx), 2015 WL 13298073, at *11 (C.D. Cal. Dec. 18, 2015) (emphasis in original) (requiring mail and wire fraud to be pleaded with particularity, but not kickbacks that motivated fraud); *Odom*, 486 F.3d at 554. Intent can be pled generally and inferred from the scheme itself or by circumstantial evidence. *Eclectic Props.*, 751 F.3d at 997*; United States v. French*, 748 F.3d 922, 935 (9th Cir. 2014). Contrary to both Defendants' assertions, *see* WF at 10–12; NG at 11–13, Plaintiffs plausibly allege a pattern of mail and wire fraud with particularity.

First, as described throughout this brief, the Complaint is replete with allegations that Defendants formed a scheme to defraud. *See, e.g.*, ¶¶ 2, 4–5, 141–43, 166, 192. Second, Plaintiffs make non-conclusory allegations regarding Defendants' use of U.S. mail and interstate wires. ¶¶ 213(a)-(n), 242(a)-(n), 271(a)-(n). "[A]ny 'mailing that is incident to an essential part of the scheme satisfies the mailing element, even if the mailing itself contain[s] no false information.'" *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (quoting *Schmuck v. United States*, 489 U.S. 705, 712 (1989)). "The use of the mails or wires instead only needs to be 'a step in the plot.'" *Ecodiesel*, 2018 WL 1335901, at *34 (quoting *United States v. Garlick*, 240 F.3d 749, 792 (9th Cir. 2004) (internal quotation marks omitted)).

Wells Fargo's placement of unauthorized CPI premiums and interest on borrowers' accounts alone—which falsely represented that such payments were owed and omitted the kickback payments from the Underwriters to Wells Fargo — satisfies the "use of wires or mails" element for *all* Defendants. *Ecodiesel*, 2018 WL 1335901, at *34–35 ("When the predicate acts are of mail or wire fraud, however, the Ninth Circuit has held that 'knowing participants in the scheme are legally liable for their *co-schemers* use of the mails or wires.'") (quoting *United States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir. 2002)); *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("[T]here is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

*false statements* made by each and every defendant.") (emphasis in original). Similarly, Defendants' exchange of data about customer accounts, demands for customer payments, issuance of collections notices, transmission of delinquencies to credit agencies, correspondence concerning repossessions, and the like, all constitute use of the mails or wires in furtherance of the scheme. These acts took place on a regular basis for a decade.

The Complaint belies both Defendants' assertions that Plaintiffs have not specifically alleged any fraudulent communications made to them personally. *See* WF at 11–12; NG at 12. Each Plaintiff identifies the dates and content of Wells Fargo's fraudulent communications via wires or mails indicating that they were on the hook for CPI premiums and interest when, in fact, they were not. ¶¶ 10–11, 19, 35, 50, 59, 68, 84, 94, 96, 104, 112, 120. For example, Wells Fargo sent late notices to Ms. Camacho in 2016 following its imposition of unauthorized CPI, falsely representing that her account was delinquent despite her timely payments. ¶ 10. Similarly, Wells Fargo imposed an unauthorized CPI policy in July 2016 on Mr. Cole, falsely represented he owed $1,036, and charged him at least one late fee. ¶ 18. *See also* ¶ 26 (Davis); ¶ 34 (Fosdick); ¶ 53 (Haag); ¶ 49 (Hancock); ¶ 58 (Havard); ¶ 67 (Miller); ¶ 76 (Moskus); ¶ 83 (Gonzalez); ¶ 93 (Preston); ¶ 103 (Reimche); ¶ 111 (Small); ¶ 119 (Tidwell). These allegations readily satisfy Rule 9(b).

Third, Plaintiffs' allegations that Defendants sought to, and did, bilk millions of dollars from consumers plausibly establish fraudulent intent. Defendants' intent also can be inferred from the magnitude and longevity of the scheme, ¶¶ 2-3, 161; their rigging the market to increase borrower costs through concealed kickbacks, ¶ 141; structuring loan payments to maximize the payment of CPI interest, ¶ 150; and "refus[al] to fix the problem, or even grant leniency to [Wells Fargo's] customers whose vehicles were wrongfully being repossessed," ¶ 152.[13] *See Ecodiesel*, 2018

---

[13] Wells Fargo's assertion that intent to defraud must be pleaded with specificity

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

WL 1335901, at *33 (finding plausible allegations of intent where underlying object of the racketeering conspiracy had deceitful and unlawful purpose); *SCIF*, 2015 WL 13298073, at *12 (finding that intent was sufficiently pleaded because "Defendants knew of the nature of Surgical Entity Enterprise's conspiracy to defraud State Fund by paying kickbacks for referrals and overbilling State Fund for spinal implants and other medical procedures while taking active steps to conceal the fraud").

Finally, the fraudulent billing of at least 800,000 consumers for more than a decade, by definition, demonstrates a pattern of racketeering activity, not isolated events. ¶¶ 2-3, 149, 154 (pattern of racketeering activity requires the commission of at least two predicate acts within 10 years). The Complaint states plausible RICO claims.

### E.   The RICO Claims against QBE and Balboa Are Not Time-Barred.

National General argues that *all* claims against Balboa and any claims against QBE alleging injury suffered before July 30, 2013 are time-barred. NG at 14–16. But three independent principles undercut this argument and render Plaintiffs' RICO claims timely, including: (1) the injury discovery rule; (2) tolling by fraudulent concealment; and (3) the separate accrual principle.

#### 1.   Whether Plaintiffs discovered their injury prior to July 17, 2017 is a question of fact.

Under the "injury discovery rule," the statute of limitation for civil RICO claims "begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir.

---

contravenes the text of Rule 9(b): "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Moreover, *Howard v. America Online Inc.*, 208 F.3d 741 (9th Cir. 2004), does not require more specific pleading of intent. There, the court specified that "[a]t issue is whether Plaintiffs properly pleaded a pattern of racketeering activity." *Id.* at 746. The Court expressly declined to address the application of Rule 9(b) to claims that failed to establish a RICO pattern. *Id.* at 751.

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

2001). A plaintiff has constructive knowledge of an injury (the plaintiff "should have known") "if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Id.* at 1110 (citing *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 276 (9th Cir. 1988)). Based on this, National General argues that all claims for injuries sustained before July 30, 2013 are time-barred because all injuries were "immediately discoverable when they were imposed." NG at 15. But this argument discounts the nature of Plaintiffs' injuries, as well as Defendants' deceptive and non-transparent billing practices, both of which routinely prevented Plaintiffs from discovering their harm.

Among the types of injuries Plaintiffs could not have discovered immediately, even with due diligence, were: (1) their payment of artificially inflated CPI premiums caused by undisclosed kickbacks, ¶¶ 2, 10, 18, 20, 26–27, 36, 69, 85, 105, 121, 141–42, (2) the damage to their credit scores caused by Wells Fargo's adverse credit reporting, ¶¶ 13, 70, 87, 220, 249, 278, 326, and (3) increased interest payments caused by the deceptive manner in which Wells Fargo credited customer accounts. ¶¶ 50–51. Even when Wells Fargo billed Plaintiffs for ostensibly straightforward charges like CPI premiums and related fees, it failed to notify customers that such charges were being imposed, disguised the true nature of the charges, and failed to disclose that the charges were duplicative of existing insurance and inflated by kickbacks. ¶¶ 141–66, 170–73, 206, 208, 237, 266. These acts similarly deprived Plaintiffs of actual or constructive notice of their injury, ¶¶ 5, 151–52, as did Wells Fargo's practice of automatically deducting charges from customers' bank accounts without warning. ¶¶ 5, 10.

This Court's ruling in *SCIF*, 2015 WL 13298073, is directly on point. There, a medical insurance fund brought RICO claims against medical providers who allegedly overbilled the plaintiff by fraudulently inflating the costs of medical services and medications, including by paying kickbacks to doctors. *Id.* at *1–2. Defendants argued that the plaintiff's claims were time-barred because they last sent fraudulent bills to

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

the plaintiff more than four years before the complaint was filed, and that such injury

was immediately discoverable. *Id.* at *5. This Court rejected that argument, holding

that the date on which the plaintiff had constructive knowledge of its injury was a

factual question:

> [Defendant's] argument essentially equates the timing of the allegedly fraudulent bills to when Plaintiff was "aware of its alleged injury." But the Complaint gives no reason to think that Plaintiff knew those bills were fraudulent or excessive when it paid them. . . . For instance, when Defendant [] submitted his allegedly fraudulent bills in 2007 did Plaintiff have reasons to suspect that those bills were fraudulent? Most importantly, did Plaintiff['s] detection of "certain instances of overbilling" constitute "enough information to warrant an investigation, if reasonably diligent, would have led to discovery of the fraud?" *Pincay*, 238 F.3d at 1110. Those questions, among others, counsel the Court against determining at this early stage when Plaintiff was on actual or constructive notice of its injuries.

*Id.* (citing *Living Designs, Inc. v. E.I. Dupont de Nemours, Inc.*, 431 F.3d 353, 365 (9th Cir. 2005) ("Ordinarily, [this court] leave[s] the question of whether a plaintiff knew or should have become aware of a fraud to the jury.")).

The present case involves parallel facts. When Wells Fargo billed Plaintiffs for CPI and related charges, Plaintiffs had no reason to believe such charges were fraudulent or inflated and were often unaware that the charges were even occurring. Even when Plaintiffs did complain about the charges, Wells Fargo's response further obscured the scheme, precluding Plaintiffs from conducting a reasonably diligent investigation that would have led to the discovery of the fraud. ¶¶ 152, 168. As in *SCIF*, this lack of knowledge counsels against determining at this early stage when Plaintiffs were on actual or constructive notice of their injuries. National General's statute of limitations argument is unpersuasive and premature.

### 2.    Fraudulent concealment tolled the statute of limitations.

Even if the statute of limitations begins to run, the limitations period is tolled

PLAINTIFFS' OMNIBUS OPP. TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' COMPL.

1    if a defendant "fraudulently concealed" the information that prevented the plaintiff

2    from learning about the claim. *Pincay*, 238 F.3d. at 1110. A plaintiff can invoke

3    fraudulent concealment if the "plaintiff establishes affirmative conduct upon the part

4    of the defendant which would, under the circumstances, lead a reasonable person to

5    believe that he did not have a claim for relief." *Id.* (*citing Volk v. D.A. Davidson &*

6    *Co.*, 816 F.2d 1406, 1415 (9th Cir. 1987)).

7         As detailed below, *infra* Section V, Plaintiffs allege fraudulent concealment

8    with particularity, providing an independent basis for denying National General's

9    limitations argument. Plaintiffs allege that until July 27, 2017, when the *New York*

10   *Times* exposed the scheme, Defendants successfully concealed their misconduct

11   through the following acts: misrepresenting the circumstances under which

12   customers would receive a force-placed CPI policy, ¶¶ 3, 153, 206(d), 235(d), 264(d),

13   321–22, concealing their undisclosed kick-back arrangement, ¶¶ 4, 141, 321–22,

14   failing to notify customers of CPI placements and automatic deductions, ¶ 5 and

15   wrongfully assuring customers that its CPI charges and vehicle repossession were

16   lawful. ¶¶ 320–22. Moreover, Defendants continued to conceal their misconduct long

17   after they officially recognized it internally. Defendants commissioned (and began

18   collaborating) on the Oliver Wyman report in July 2016, but did not disclose the

19   existence of the report or its underlying facts until a year later when it was leaked to

20   the press. ¶ 154. During this period, Wells Fargo misled the United States Senate

21   Banking Committee in public testimony and subsequent written submissions, and

22   appears to have engaged in retaliatory conduct towards employees who flagged the

23   issue. ¶¶ 162–63, 165.

24        Just as in *SCIF*, these specific acts of concealment deprived Plaintiffs of "a

25   reasonable opportunity to investigate [Defendants'] individual bills or the scheme[]

26   as a whole, … [such that they] had reason to suspect the extent and systemic nature

27   of the fraud." *SCIF*, 2015 WL 13298073, at *5. Further, the deceptive nature of Wells

28   Fargo's billing practices prevented Plaintiffs from "detecting instances of

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

overbilling," ¶¶ 2, 4–6, 141–42, 147, 151–52, 170–173, a fact Defendants "took advantage of . . . to maximize their chances of getting their fraudulently inflated bills [paid]." *SCIF*, 2015 WL 13298073, at *5. Because these acts of fraudulent concealment toll the statute of limitations, Plaintiffs' RICO claims are all timely.

### 3. The separate accrual rule also preserves claims for all charges made within the limitations period.

Finally, National General argues that all RICO claims against Balboa, and certain claims against QBE, should be dismissed because Balboa and QBE served as Wells Fargo's CPI underwriter before July 30, 2013, the date on which National General contends the statute of limitations began to run. NG at 14. Notwithstanding National General's misstatement of the limitations period, this argument fails because it disregards the difference between the date on which a policy was issued and the dates on which premiums and other charges were assessed. For example, Plaintiffs were assessed charges and made payments on Balboa-issued and QBE-issued CPI policies long after July 30, 2013. *See, e.g.,* ¶¶ 93–97, 103–105. To the extent Plaintiffs were assessed or paid charges within the applicable limitations period, those charges "are actionable under the separate accrual rule," regardless of when the policy was first issued. *Cannon v. Wells Fargo Bank. N.A.*, No. C-12-1376 EMC, 2014 WL 324556 (N.D. Cal. Jan 29, 2014) (applying separate accrual rule for force-placed insurance premiums charged by Wells Fargo within the statutory period). For this reason alone, National General is not entitled to dismissal of claims arising from CPI policies underwritten by Balboa or QBE, and any claims based on charges assessed within the limitations period survive.

## II. PLAINTIFFS ADEQUATELY PLEAD A BHCA CLAIM.

To prevent banks from abusing their economic power over borrowers, the BHCA provides that banks shall not in any manner "extend credit" or "fix or vary the consideration for any of the foregoing [credit]" on the condition or requirement - - (A) that the customer shall obtain some additional credit, property or service from

1    such bank . . . ." 12 U.S.C. § 1972. To state a BHCA claim, Plaintiffs must allege
2    that: "(1) 'the banking practice in question was unusual in the banking industry,' (2)
3    'an anti-competitive tying arrangement' existed, and (3) 'the practice benefits the
4    bank.'" *S & N Equip. Co. v. Casa Grande Cotton Fin. Co.*, 97 F.3d 337, 345 (9th Cir.
5    1996) (quoting *Bieber v. State Bank of Terry*, 928 F.2d 328, 330 (9th Cir. 1991)).[14]
6    Rule 8(a) applies to claims under the BHCA. *Lane v. Wells Fargo, N.A.*, 2013 WL
7    1758878 at \*4-5 (analyzing BHCA claim under Rule 8(a)).[15]

### A.    Charging for Duplicative CPI and Obtaining Secret Kickbacks as "Commissions" Were Unusual Banking Practices.

10    Wells Fargo mischaracterizes Plaintiffs' BHCA allegations by contending that
11    "requiring collateral to be insured as a precondition to financing is not unusual." WF
12    at 14. That is not Plaintiffs' allegation, however. Rather, what was unusual was Wells
13    Fargo's practice of charging Plaintiffs for duplicative and unnecessary CPI even
14    when customers maintained their own insurance. ¶¶ 290–91. Wells Fargo admits this
15    practice was improper, ¶¶ 156–65, and cannot now claim it was somehow "usual"
16    within the banking industry. In any case, what qualifies as "unusual" is a factual
17    inquiry, and Plaintiffs have more than satisfied their pleading burden. *Lane*, 2013
18    WL 1758878, at \*5 ("Whether a practice is unusual or not is a factual inquiry.")
19    (citing *S & N Equip.*, 97 F.3d at 346).

20    Additionally, Plaintiffs allege Wells Fargo received undisclosed kickbacks in
21    the form of unearned "commissions" for force-placing customers into CPI, a
22    separate, profit-driven scheme that artificially inflated the cost of CPI for all force-
23    placed customers. ¶¶ 141–43. These kickbacks were an unusual banking practice

---

25    [14] Under the BHCA, a plaintiff is *not* required to demonstrate that a tying arrangement
26    had anticompetitive effects. *S & N Equip.* 97 F.3d at 346.

27    [15] Although Wells Fargo fails to cite a single case to support its contention that
      Plaintiffs' BHCA claim subject to Rule 9(b), Plaintiffs' allegations satisfy Rule 9(b)
28    in any event.

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

under the BHCA, as multiple courts have held in previous CPI litigation, including litigation against Wells Fargo. *See Lane,* 2013 WL 1758878, at *5; *Arango v. Chase Home Fin., LLC*, No. 8:11-cv-2001, 2013 U.S. Dist. LEXIS 8998, at *18–19 (M.D. Fla. Jan. 23, 2013). Plaintiffs satisfy their pleading burden.

### B.    Wells Fargo Illegally Tied Its Extension of Ongoing Credit to Class Members' Payment of CPI.

Wells Fargo argues that Plaintiffs do not adequately plead an anti-competitive tying arrangement because Plaintiffs "cannot establish that CPI was a *precondition* to financing." WF at 15. This argument is wrong on the law and facts.

The BHCA does not apply solely to a bank's initial extension of credit. As the statute's "fix or vary" language makes clear, the BHCA prohibits banks from threatening to foreclose on or modify an existing loan if a customer does not obtain an additional service or product from the bank.[16] *Nordic Bank PLC v. Trend Grp*, 619 F. Supp. 542, 553–55 (S.D.N.Y. 1985) (threatening to foreclose existing loan can constitute anticompetitive tying because a "bank can as easily tie the purchase of products . . . to its forbearance [from foreclosing on an existing loan] as it can to the purchase of a new loan"); *Swerdloff v. Miami Nat'l Bank*, 584 F.2d 54 (5th Cir. 1978) (upholding BHCA claim alleging bank threatened to terminate existing loan); *Akiki v. Bank of Am., N.A.*, 632 Fed. Appx. 965, 969, (11th Cir. 2015) (BHCA violation may occur when bank "threaten[s] alteration of the terms or conditions" of existing loan). In determining whether a bank illegally tied a product or service to an extension of credit, "courts have construed the phrase ['extend credit'] liberally to include nearly any credit decision." *McCune v. Nat'l City Bank*, 701 F. Supp. 2d 797,

---

[16] CPI was a "precondition" to financing regardless of whether Wells Fargo informed customers of the charges and kickbacks when they received their loans. A tied product need not be disclosed to consumers at the time of the transaction to give rise to an anticompetitive tying arrangement. *See, e.g., MDC Data Ctrs, Inc. v. Int'l Bus. Machs Corp.*, 342 F. Supp. 502, 504 (E.D. Pa. 1972).

801–02 (E.D. Va. 2010). "A particular practice should be considered an 'extension of credit' if it manifests the improper use of economic leverage that the Act seeks to prevent." *Amerifirst Props., Inc. v. Fed. Deposit Ins. Corp.*, 880 F.2d 821, 823–824 (5th Cir. 1989) (quoting *Nordic Bank*, 619 F. Supp. at 554).

Such improper use of economic leverage is precisely what Wells Fargo engaged in here. After extending credit, Wells Fargo billed Plaintiffs and other consumers for duplicative CPI and then threatened to, and often did, foreclose on the loans, repossess vehicles, assess additional fees, and downgrade credit scores if they did not pay. ¶¶ 10, 18, 27-28, 34, 43, 52, 61, 69–70, 77, 86–87, 93, 103, 111, 119, 154–55, 213, 289–93. Through these threats and actions, Wells Fargo conditioned its ongoing extension of credit to Plaintiffs on their payment of CPI and related fees, thereby engaging in a textbook example of illegal tying under the BHCA.

## III.   PLAINTIFFS STATE A CLAIM UNDER THE CLRA.

The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices . . . which result in the sale or lease of goods or services." Cal. Civ. Code § 1770. The statute must be "liberally construed . . . to protect consumers against unfair and deceptive business practices." *Labrador v. Seattle Mortg. Co.*, No. 08-2270SC, 2008 WL 4775239, at *5 (N.D. Cal. Oct. 29, 2008). Although Defendants argue that the CLRA does not apply because insurance is not a "good" or "service," WF at 16; NG at 19–20, they ignore that Plaintiffs' CLRA claim pertains to the vehicles in which Wells Fargo had an ownership interest, and Defendants' acts in servicing those loans. Thus, they are covered under the CLRA.

### A.   The Automobile Is a "Good," and the CPI Is an Integral Part of the Sale of the Good.

The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes." Cal. Civ. Code § 1761(a). While a transaction for the sale of insurance by itself is not covered under the CLRA, *see Fairbanks v. Super. Ct.*, 46 Cal. 4th 56 (2009), the statute applies to the sale of a

tangible good, where an insurance transaction is an integral component, *see Buckley v. Cracchiolo*, 2:13-cv-4609-CAS(PJWx), 2014 U.S. Dist. LEXIS 17517, at *25–26 (C.D. Cal. Feb. 7, 2014) (citing *Wilkinson v. S. City Ford,* A1214299, 2010 WL 4292631, at *11 (Cal. Ct. App. Oct. 29, 2010) (applying CLRA to auto insurance transaction where "plaintiff could not have bought the car without the conditional sales contract and insurance to protect the collateral interest in the vehicle")).[17] Wells Fargo made loans to Plaintiffs for the purchase of tangible goods, the vehicles, and took an ownership interest in those vehicles as a lienholder with the right of repossession. The forced-placed CPI was an integral part of the purchase and financing of the vehicle. Thus, the CLRA applies.

### B. The Non-Ancillary Services that Wells Fargo and Its Underwriters Provided Are Covered under the CLRA.

The CLRA defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b). Although the CLRA does not apply to "ancillary" services (services related directly to the sale of an intangible good such as insurance), *see Fairbanks*, 46 Cal. 4th at 65,[18] here Defendants provided services beyond merely extending credit. These non-ancillary services included tracking and placement, loan processing, responding to borrower inquiries, maintaining an accounting of charges, billing and payment collection, reporting delinquencies to collection agencies, and determining whether borrowers had their own insurance.

---

[17] Although *Wilkinson* has not been certified for publication or ordered published for purposes of Rule 8.1115 of the California Rules of Court, the case was cited in this District in *Buckley*, and its reasoning is valid.

[18] *Sonoda v. Amerisave Mort. Corp.,* No. C-11-1803 EMC, 2011 WL 2690451 (N.D. Cal. July 8, 2011), and *Biggs v. Bank of Am. Corp.,* EDCV 15-00267-VAP (Kkx), 2015 WL 3465739 (C.D. Cal. June 1, 2015), on which National General rely, are not controlling, because, unlike Wells Fargo, the lenders in *Sonoda* or *Biggs* did not have an ownership interest in a good.  Rather, they made loans on real property, and any ancillary services related to those mortgages.

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

1   The forced-placement of CPI purportedly was to protect Wells Fargo's ownership

2   interests in the event of damage to the vehicle. ¶ 140. As such, the non-ancillary

3   services are covered under the CLRA.

4       California courts have applied the CLRA to allegations involving financial

5   services, including loans. *See Jefferson v. Chase Home Fin. LLC*, No. C06 6510 TEH,

6   2007 WL 1302984, at *3 (N.D. Cal. May 3, 2007) (credit card services) (citing *Kagan*

7   *v. Gibraltar Sav. & Loan Assn.*, 35 Cal. 3d 582, 596–97 (1984) (applying the CLRA

8   to claims regarding management fees in connection with individual retirement

9   accounts)); *Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d 842 (N.D. Cal.

10  2007); *Becker v. Wells Fargo Bank, N.A., Inc.*, No. 2:10-CV-02799 LKK, 2011 WL

11  1103439, at *13 (E.D. Cal. Mar. 22, 2011), *adopted as modified* 2011 WL 3319577

12  (E.D. Cal. Aug. 1, 2011) (collecting cases in which a "defendant provided additional

13  services over and above the extension of credit" and were found subject to CLRA).[19]

14  ## C.    Plaintiffs Adequately Allege Reliance.

15      Individual reliance for each plaintiff is not required under the CLRA. *Tucker*

16  *v. Pac. Bell Mobile Servs*, 208 Cal. App. 4th 201, 222 (2012). Instead, where

17  plaintiffs plead the materiality of a misrepresentation or omission as a violation of

18  the CLRA, reliance can be presumed. *In re Vioxx Class Cases*, 180 Cal. App.4th 116,

19  129 (2009). A misrepresentation or omission is material if it induced the consumer

20  to alter his position to his detriment. *Noel v. Thrifty Payless, Inc.*, 17 Cal. App. 5th

21

22  [19] While the extension of credit alone, *i.e.*, through the issuance of a credit cards, is
    not a service under the CLRA, *see Berry v. Am. Exp. Publ'g, Inc.*, 147 Cal. App. 4th

23  224 (2007), the CLRA does reach the extension of credit where it is tied to non-

24  ancillary services or ownership of a tangible good. *Hernandez*, 622 F. Supp. 2d 842,

25  851 ("[U]nlike *Berry*, the situation in the present case involves more than the mere
    extension of a credit line. Instead, the circumstances here deal not just with the

26  mortgage loan itself, but also with the services involved in developing, securing and
    maintaining plaintiffs' loan."); *Jefferson*, 2007 WL 1302984, at *3 (distinguishing

27  *Berry*; defendant had "failed to persuade this Court that financial services agreements

28  related to real estate transactions are excepted from CLRA's scope").

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

1315, 1334 (2017). Moreover, materiality is generally a question of fact that cannot be determined in connection with a motion to dismiss. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011).

Contrary to Defendants' assertion, Plaintiffs amply plead reliance. Plaintiffs allege they paid CPI charges based on the material misrepresentation that such charges were owed. ¶ 304. Plaintiffs further allege the documents available to them with their loans omitted material facts—specifically, that Defendants would force-place unnecessary CPI in connection with their auto loans, and that the cost of such CPI would include kickbacks to Wells Fargo. Additionally, Plaintiffs allege that, had the CPI scheme been disclosed, they would not have borrowed from Wells Fargo or paid the charges. These reliance allegations are sufficient.

## IV.   PLAINTIFFS ADEQUATELY PLEAD UCL CLAIMS.

The UCL establishes separate causes of action for unlawful, unfair, or fraudulent business practices. *See* Cal. Bus. & Prof. Code § 17200; *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (1999). Plaintiffs' UCL claim under each of these three prongs must be evaluated individually. *Rubio v. Capital One Bank,* 613 F.3d 1195, 1293 (9th Cir. 2010); *Hadley v. Kellogg Sales Co.,* 243 F.Supp.3d 1074, 1089 (N.D. Cal. 2017). The scope of the UCL "is sweeping, embracing anything that can properly be called a business practice." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006) (citation omitted). Plaintiffs sufficiently plead claims under each prong of the UCL.

### A.   Plaintiffs Allege that Defendants' Conduct Was Unlawful.

The unlawful prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Carter v. Bank of Am. N.A.,* No. CV 12-06424, 2012 WL 12887542 MMM (FFMx), at *9 (C.D. Cal. Dec. 12, 2012) (quoting *Cel-Tech Commc'ns,* 20 Cal. 4th at 180). Virtually any state, federal, or local law can serve as the predicate for an action under Section 17200. *See Balukjian v. Virgin Am., Inc.,* No. 18-CV-00185-SI, 2018 WL 1242179, at *7 (N.D.

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

Cal. Mar. 9, 2018). Here, Plaintiffs plausibly allege that all Defendants' business practices are unlawful because they violated RICO, the federal mail and wire fraud statutes (18 U.S.C. §§ 1341, 1343), the CLRA, and California's fraud and deceit statutes (Cal. Civ. Code §§ 1572–73, 1709–11). Plaintiffs also allege that Wells Fargo's business practices violated the BHCA. Contrary to Defendants' arguments, each element of these claims is alleged with the necessary specificity where required and, therefore, Plaintiffs sufficiently pleaded a violation of the unlawful prong of Section 17200.

### B.      Plaintiffs Allege that Defendants' Conduct Was Unfair.

A business practice is "unfair" if it is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *See In re Carrier IQ, Inc.,* 78 F.Supp.3d 1051, 1115 (N.D. Cal. 2015) (citations omitted). Both Defendants argue that Plaintiffs' allegations are conclusory, WF at 18; NG at 22, with National General asserting that Plaintiffs do not allege how the CPI premiums were inflated, why the charges were unfair, or why the commissions and interest were not legitimate. NG at 22. But there can be no question that force-placing duplicative, unwanted, and unnecessary CPI on at least 800,000 consumers is immoral, unethical, oppressive, and unscrupulous. Charging undisclosed kickback commissions that inflate the price of force-placed CPI premiums is similarly unfair. Wells Fargo acknowledged that the CPI scheme was substantially injurious to consumers when it announced its remediation program. ¶¶ 3, 156. Defendants' conduct wrongfully caused thousands of customer accounts to become delinquent and automobiles to be repossessed. Such acts are unfair within the meaning of the UCL, irrespective of whether they support a claim under the unlawful or fraudulent prongs of the statute. Defendants cannot legitimately contend that the scheme served any utility. It merely lined their pockets. Thus, Plaintiffs' allegations plausibly support an unfair business practices claim.

1

2

### C. Plaintiffs Plead Fraudulent Business Practices with Sufficient Detail.

3

There is no merit to Wells Fargo's assertion that Plaintiffs fail to state a claim

4

for fraudulent practices under Rule 9(b), WF at 18–19, or National General's attempt

5

to equate a claim under the fraudulent practices prong of the UCL with a claim for

6

common law fraud. NG at 21–22. "Unlike common law fraud, a [UCL] violation can

7

be shown even without allegations of actual deception, reasonable reliance and

8

damage. Historically, the term 'fraudulent,' as used in the UCL, has required only a

9

showing that members of the public are likely to be deceived." *Brakke v. Econ.*

10

*Concepts, Inc.*, 213 Cal. App. 4th 761, 772 (2013) (citation omitted); *see also People*

11

*ex rel. Harris v. Aguayo,* 11 Cal. App. 5th 1150, 1160 (2017). Here Plaintiffs more

12

than adequately allege the who, what, where, when and how of Defendants'

13

misstatements and omissions of material fact. At no point did Defendants inform

14

Plaintiffs of the CPI scheme, the undisclosed kickbacks, or that Defendants would

15

ignore proof of independent insurance. ¶ 313. Defendants also falsely represented

16

that Plaintiffs owed payment for force-placed CPI.[20] ¶ 314. This conduct was likely

17

to, and did, deceive Plaintiffs. Thus, Plaintiffs plausibly allege that Defendants

18

engaged in fraudulent business practices in violation of the UCL.

19

### D. Plaintiffs Can Obtain Restitution and Injunctive Relief from National General under the UCL.

20

21

National General is wrong to argue that Plaintiffs have not alleged a valid

22

claim for injunctive relief or restitution. NG at 22. "Under the UCL, an individual

23

may recover profits unfairly obtained to the extent that these profits represent monies

24

given to the defendant or benefits in which the plaintiff has an ownership interest."

25

[20] Unlike *Robbins v. Hyundai Motor Am.*, SACV 14-P00005-JLS (ANx), 2014 WL

26

4723505 (C.D. Cal. Aug. 7, 2014), cited by National General, Plaintiffs do not allege

27

that National General merely failed to disclose a point of law, but rather misrepresented and concealed that it underwrote duplicative and unnecessary CPI on

28

captive customers while paying kickback commissions and inflating premiums.

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

*Grace v. Apple Inc.*, No. 17-CV-00551, 2017 WL 3232464, at *15 (N.D. Cal. July 28, 2017) (quoting *Pom Wonderful LLC v. Welch Foods, Inc*., 2009 WL 5184422, at *2 (C.D. Cal. Dec. 21, 2009)). Here, Plaintiffs allege they are entitled to restitution of all the monies National General obtained directly or indirectly from them, ¶ 316, and injunctive relief to repair continued harm to their credit, ¶¶ 155, 316. National General's motion to dismiss Plaintiffs' UCL claims should be denied.

## V.   PLAINTIFFS STATE A CLAIM FOR FRAUD BY CONCEALMENT.

A claim for fraud by concealment must allege: (1) the defendant concealed a material fact; (2) the defendant had a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiffs; (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed fact; and (5) the plaintiff sustained damage as a result. *RBC Bearings Inc. v. Caliber Aero, LLC*, No. SACV 121442 FMO (PLAx), 2013 WL 12129619, at *5 (C.D. Cal. Apr. 3, 2013) (citing *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App.4th 830, 850 (2009)). A plaintiff may state a claim for fraud by concealment without being able "to specify the time, place and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007); *Baggett*, 582 F. Supp. 2d at 1267. Defendants both challenge the specificity of the omissions and separately challenge the allegations of intent and duty. WF at 20; NG at 16–17. These arguments fail.

First, Plaintiffs allege that Wells Fargo concealed material facts, including that it: (1) obtained kickback payments for force-placing CPI policies; (2) would force-place duplicative CPI policies; (3) failed to confirm proof of independent insurance; (4) rejected such proof when provided; and (5) conditioned auto loan financing and forbearance from collections on borrowers paying for CPI. ¶¶ 319–21. Similarly, Plaintiffs allege on information and belief that the Underwriters represented to them and members of the proposed Class that the premiums for the CPI policies were necessary and proper because they were required by Wells Fargo, and that the CPI

policies would not be force-placed if the borrowers maintained their own auto insurance. ¶ 322. The named Plaintiffs allege in detail where and when they purchased their vehicles and obtained financing from Wells Fargo, the approximate dates of force-placement, the amounts charged, that Defendants ignored their proof of independent insurance, and that neither the bank nor the Underwriters ever disclosed the scheme to them. ¶¶ 8–11, 16–20, 24–27, 32–36, 40–43, 47–52, 56–60, 65–69, 74–77, 81–85, 91–96, 101–105, 109–112, 117–121.

These non-conclusory allegations state a plausible claim for fraud by concealment against each Defendant under Rule 9(b). Second, National General argues that it did not owe a duty to Plaintiffs.[21] Not so. Under California law, a duty to disclose arises under several circumstances including where the defendant has exclusive knowledge of material facts not known to the plaintiff, actively conceals a material fact from the plaintiff, or makes representations but does not disclose facts that make the representations likely to deceive. *Tenet Healthsystem Desert, Inc. v. Blue Cross of California*, 245 Cal. App. 4th 821, 844 (2016); *James Wang v. OCZ Tech. Grp., Inc.*, No. C 11-1415 PSG, 2012 WL 12924975, at *6 (N.D. Cal. June 6, 2012). All such circumstances are present here. Plaintiffs allege that all Defendants, including the Underwriters: (1) had superior knowledge in that the true facts were known only to them and were not reasonably discoverable by Plaintiffs or other borrowers; (2) actively concealed the truth from Plaintiffs and the members of the Class; and (3) made partial or incomplete representations about the circumstances under which they would force-place CPI policies. ¶¶ 324–25. These allegations are sufficient to establish a plausible duty owed by National General to Plaintiffs and members of the Class.

Third, Plaintiffs allege that Defendants' concealment was intentional.

---

[21] Wells Fargo does not dispute the allegations that it owed a duty to Plaintiffs and other auto loan customers.

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

Plaintiffs must plead "intent to *induce conduct* – action or inaction – that differs from what the plaintiff would have done if informed of the concealed fact." *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 869 (Cal. Ct. App. 2008) (emphasis in original); *see also Southern Calif. Dist. Council, Assemblies of God v. Shepherd of Hills Evangelical Lutheran Church*, 144 Cal. Rptr. 46, 50 n.5 (Cal. Ct. App. 1978). Wells Fargo, National General, and its predecessors intended Plaintiffs and members of the proposed Class to pay for unnecessary CPI. ¶¶ 2, 4–5, 10, 18, 20, 26, 27, 34, 36, 42, 43, 49, 51, 58, 60, 67, 69, 76, 77, 83, 85, 93, 97, 103, 105, 111, 119, 121, 141–42, 321–22. Defendants achieved their objective as to Plaintiffs and at least 800,000 Wells Fargo auto loan customers. Thus, Plaintiffs' allegations plausibly satisfy the element of intent and state a claim for fraud by concealment against all Defendants.

## VI.   PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT.

Defendants argue that California law applies to Plaintiffs' unjust enrichment claim based on California's choice-of-law rules, and that California does not recognize a standalone cause of action for unjust enrichment. WF at 21-22 & n.7; NG at 24–25. However, any choice-of-law analysis is premature. Such a fact-intensive inquiry should occur at class certification after thorough discovery. *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013); *Wolf v. Hewlett Packard Co.*, No. 15-01221-BRO, 2016 WL 8931307, at *8 (C.D. Cal. Apr. 18, 2016).

Choice of law aside, Plaintiffs properly allege a claim for unjust enrichment under the laws of Colorado, Indiana, Mississippi, Minnesota, Missouri, Tennessee, Wisconsin and Wyoming, each of which recognizes a common law claim for unjust enrichment.[22] *See City of Arvada ex rel. Arvada Police Dep't v. Denver Health and*

---

[22] Defendants argue Plaintiffs fail to identify which laws govern their claim. WF at 21; NG at 24. The eight Plaintiffs who bring the unjust enrichment claim are residents of Missouri, Minnesota, Wisconsin, Indiana, Mississippi, Colorado Tennessee, and

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

1   *Hosp. Auth.*, 403 P.3d 609, 616 (Colo. 2017); *Woodruff v. Indiana Family and Soc.*

2   *Servs. Admin.*, 964 N.E.2d 784, 788 (Ind. 2012); *Dahl v. R.J. Reynolds Tobacco Co.*,

3   742 N.W.2d 186, 195–96 (Minn. Ct. App. 2007); *Blades v. Countrywide Home*

4   *Loans, Inc.*, No. 1:06CV1000-LG-JMR, 2007 WL 2746678, at *5 (S.D. Miss. Sept.

5   18, 2007); *AIG Agency, Inc. v. Missouri Gen. Ins. Agency, Inc.*, 474 S.W.3d 222, 228

6   (Mo. Ct. App. 2015); *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512,

7   525 (Tenn. 2005); *Admiral Ins. Co. v. Paper Converting Mach. Co.*, 811 N.W.2d

8   351, 360 n.16 (Wis. 2012); *Electrical Wholesale Supply Co., Inc. v. Fraser*, 356 P.3d

9   254, 261 (Wyo. 2015).[23]

10      Finally, Defendants rely on *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984-

11   JST, 2016 WL 344479 (N.D. Cal. Jan. 28, 2016), to support the application of

12   California law to dismiss the unjust enrichment claim because it accepted payment

13   in California. WF at 21 n.7; NG at 25. *Todd* is off-point. Wells Fargo is headquartered

14   in California, but has nationwide business operations. Whether Wells Fargo received

15   money from Plaintiffs within California was not a fact specifically pled and requires

16   confirmation through discovery. Moreover, the *Todd* court performed a choice-of-

17   law analysis only after the litigation was in an "advanced stage" and "extensive

18   discovery" had been completed. *Todd*, 2016 WL 344479, at *6. That is not the case

19   here. The Court should deny the motions to dismiss the unjust enrichment claim.

20

21

22

23

_____

24   Wyoming, ¶¶ 23, 39, 46, 55, 80, 100, 108, 116, and representatives of those state
    subclasses.  A common sense reading of the Complaint confirms that Plaintiffs bring
25   claims for unjust enrichment under the laws of those states.

26   [23] Alternatively, if the Court finds that California law applies to the unjust enrichment
    claim, the Court may "construe the cause of action as a quasi-contract claim seeking
27   restitution."  *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231
    (2014); *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

28

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

1

2

## VII.   PLAINTIFFS STATE VALID CLAIMS UNDER THE STATE CONSUMER PROTECTION STATUTES.[24]

3

### A.   Plaintiffs' Claims Satisfy Rule 9(b).

4

5

6

Contrary to Defendants' motions, Plaintiffs' state law claims are pleaded with sufficient particularity. As discussed above, Plaintiffs amply answer the "who," "what," "where," "when," and "how" questions regarding the fraud.

7

8

### B.   Defendants' Arguments Regarding Class Action Prohibitions and Remedies Limitations Are Premature.

9

10

11

12

Just last month, the court in *Ecodiesel*, rejected, at the pleadings stage, several of the same arguments Defendants raise here in challenging Plaintiffs' remaining consumer-protection claims. 2018 WL 1335901, at *64–67, *69–70. Here too, these arguments do not support dismissal, let alone with prejudice.

13

14

15

16

17

18

19

Defendants contend that the Colorado, Tennessee, Mississippi, and Minnesota claims do not apply to class actions or provide for class-wide damages. WF at 24–25; NG at 23. The *Ecodiesel* court, however, refused to dismiss these claims, concluding that these same arguments are "premature," "better addressed" at class certification, and "do not dispose of Plaintiffs' *individual* claims for relief." *Ecodiesel*, 2018 WL 1335901, at *64 (italics in original); *see also*, *In re Hardieplank Fiber Cement Siding Litig.*, No. 12-MD-2359, 2015 WL 12827790, at *4 (D. Minn.

20

21

22

23

24

25

26

27

---

[24] Defendants are incorrect in arguing that the Wyoming CPA does not apply to insurance related transactions. WF at 24 n.10; NG at 20 n.4. In *Herrig v. Herrig*, 844 P.2d 487, 495-96 (Wyo. 1992), the court merely rejected "a private cause of action for third-party claimants to sue a tortfeasor's liability insurer over settlement disputes." Plaintiffs allege no such claim here. Plaintiffs acknowledge that the Indiana DCSA, Mississippi CPA and Wisconsin DTPA do not apply to a transaction for the sale of insurance itself. However, as discussed in Section III.A *supra*, the force-placed CPI here was an integral part of the purchase and finance of the vehicle in which Wells Fargo maintained an ownership interest. While Plaintiffs have not found case law on this exact point, they submit that those statutes are broad enough to cover these claims.

28

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

Apr. 27, 2015) (reserving for class certification question whether monetary relief is available under Colorado law). Defendants' arguments fail for these same reasons.

Moreover, Rule 23 governs class actions in federal court so long as applying Rule 23 does not "abridge, enlarge or modify any substantive right." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (determining that state prohibitions against class actions are procedural and that class action could proceed under Rule 23 despite New York statute prohibiting class actions). Following *Shady Grove*, courts have allowed statutory consumer protection claims to proceed as class actions despite state prohibitions.[25] Wells Fargo's arguments regarding state-specific class action bars should be addressed on class certification.

Defendants erroneously contend that Plaintiffs fail to allege an injury that could be remedied by a request for injunctive relief under the Minnesota DTPA. WF at 23; NG at 23. To the contrary, Plaintiffs allege that they are still suffering ongoing harm to their credit based on the CPI scheme. ¶¶ 87, 204, 233, 262, 395. These allegations are sufficient. *Ecodiesel*, 2018 WL 1335901, at *65 (finding standing under Minnesota law to seek injunctive relief based on allegations that defective class vehicles had not been fixed); *City of Farmington Hills Employees Ret. Sys. v. Wells Fargo Bank, N.A.*, 979 F. Supp. 2d 981, 997–98 (D. Minn. 2013) (ongoing or future harm can justify injunctive relief under the DTPA).[26]

---

[25] *See, e.g.*, *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 652–54 (S.D. Cal. 2014) (class claims under Georgia, Louisiana, Montana, South Carolina, and Tennessee statutes proceed despite states' prohibitions); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143 RS, 2012 WL 1366718, at *8 (N.D. Cal., Apr. 19, 2012) ("[C]laims under South Carolina law are not subject to dismissal notwithstanding a limitation on class actions in the state statute."); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765 (JLL), 2017 WL 1902160, at *24 (D.N.J. May 8, 2017) (Colorado, Georgia, and South Carolina claims allowed to proceed); *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015) (allowing Alabama class claim).

[26] While Wells Fargo also contends that Plaintiffs were wrong to ask for damages under the Minnesota DTPA, WF at 23, this is not a reason to dismiss Plaintiffs' well-

Defendants are also wrong to argue that Colorado law "bars" Plaintiffs from seeking injunctive relief. WF at 23; NG at 23. Courts have held that Colo. Rev. Stat. § 6-1-113(2) "does not bar class claims for injunctive relief" in actions brought by private parties. *Hardieplank Fiber*, 2015 WL 12827790, at *4; *Martinez v. Nash Finch Co.*, No. 11-CV-02092-MSK-KLM, 2013 WL 1313899, at *3 (D. Colo. Mar. 29, 2013).

Finally, National General argues that Plaintiffs did not comply with the pre-suit notice provisions under Mississippi, Indiana, and Wyoming law. NG at 24. That Plaintiffs did not plead compliance with state statutory notice requirements does not bar their claims. Those state procedural requirements have no effect in federal court. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). Consequently, state notice statutes are trumped by Rule 23. *See, e.g., Mace v. Van Ru Credit Corporation*, 109 F. 3d 338, 345–46 (7th Cir. 1997) (refusing to dismiss action for non-compliance with Wisconsin consumer protection statute's pre-suit notice requirement in federal diversity class action). In any event, such deficiencies may be cured. *See, e.g., Ecodiesel*, 2018 WL 1335901, at *64 (granting leave to amend to comply with Iowa prerequisites to filing class action).

## C.   Plaintiffs Sufficiently Allege Affirmative Misrepresentations

The Complaint sufficiently identifies Defendants' misrepresentations as required by the Illinois CFA, Indiana DCSA, and Wisconsin DTPA, and statements for purposes of Plaintiffs' claims under the Indiana DCSA and Wyoming CPA. Plaintiffs allege representations that Defendants' loans and CPI policies have approval, characteristics, uses, or benefits that they do not have, ¶ 353; advertisement

---

pleaded claim for injunctive relief. *See Ecodiesel*, 2018 WL 1335901, at *65 (denying motion to dismiss claim for injunctive relief under the Minnesota DTPA, despite plaintiffs' request for damages not authorized by this law); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims[.]").

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

of Defendants' loans and CPI policies with the intent not to sell them as advertised, *id*.; incomplete representations about the CPI policies including when they would be force-placed and the associated charges, ¶ 459; representations that Defendants' loans and CPI policies were supplied in accordance with previous representations, when they were not, ¶ 470; and misleading statements of fact concerning Defendants' loans and CPI policies, *id*. These allegations suffice under the relevant statutes.

### D.  Wells Fargo Is Not Exempt from the Missouri MPA.

Wells Fargo misreads Missouri law in arguing that it is exempt from the Missouri MPA because it is a qualifying credit service organization. WF at 25 (citing Mo. Rev. Stat. § 407.637(2)(1)). Although Wells Fargo is exempt from Mo. Rev. Stat. §§ 407.635–407.644 as a credit service organization under § 407.637(2)(1), these provisions have nothing to do with Plaintiffs' claims. Those claims are based on Mo. Rev. Stat. §§ 407.010(5), 407.010(7), 407.020, and 407.025. ¶¶ 411–14 and 422. The exemption cannot support dismissal.

## VIII.  LEAVE TO AMEND SHOULD BE GRANTED WHERE NECESSARY.

If this Court is inclined to grant any portion of Defendants' motions, Plaintiffs request leave to amend. Leave to amend should be "freely granted when justice so requires." Fed. R. Civ. P. 15(a). This policy is to be applied with "extreme liberality." *Eminence Capital LLC v. Speon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Liberal amendment policy strongly favors determination of cases on their merits, so leave to amend is freely granted unless the opposing party can make a showing of undue prejudice, bad faith, or dilatory motive. *Forman v. Davis*, 371 U.S. 178, 182 (1962). No such showing can be made here.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motions to dismiss, or allow leave to amend on any dismissed claims.

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

1     Dated:  April 20, 2018              Respectfully submitted,

2

3                    By:    */s/ Roland Tellis*
                          Roland Tellis

4

5                           Roland Tellis (SBN 186269)

6                           Dan Alberstone (SBN 105275)
                          Mark Pifko (SBN 228412)

7                           Sterling Cluff (SBN 267142)
                          David Fernandes (SBN 280944)

8                           BARON & BUDD, P.C.
                          15910 Ventura Boulevard, Suite 1600

9                           Encino, California  91436

10                         Telephone:  (818) 839-2333
                        Facsimile:   (818) 986-9698

11

12

13                      By:    */s/ Roman M. Silberfeld*
                          Roman M. Silberfeld

14

15                           Roman M. Silberfeld (SBN 62783)

16                           rsilberfeld@robinskaplan.com
                          ROBINS KAPLAN LLP

17                           2049 Century Park East, Suite 3400

18                           Los Angeles, California  90067
                          Telephone: (310) 552-0130

19                           Facsimile: (310) 229-5580

20

21                           Aaron M. Sheanin (SBN 214472)
                          asheanin@robinskaplan.com

22                           ROBINS KAPLAN LLP
                          2440 W. El Camino Real, Suite 100

23                           Mountain View, California  94040

24                           Telephone:  (650) 784-4040
                          Facsimile:  (650) 784-4041

25

26

27

28

                                           PLAINTIFFS' OMNIBUS OPP. TO
                                       DEFENDANTS' MOTIONS TO DISMISS
                                             PLAINTIFFS' COMPL.

1

Kellie Lerner (*pro hac vice*)

2

klerner@robinskaplan.com
Benjamin D. Steinberg

3

bsteinberg@robinskaplan.com
Shannon R. Rozell

4

srozell@robinskaplan.com

5

ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600

6

New York, New York  10022

7

Telephone:  (212) 980-7400

8

Facsimile:  (212) 980-7499

9

*Plaintiffs' Co-Lead Counsel*

10

11

GIBBS LAW GROUP LLP
Eric H. Gibbs (SBN 178658)

12

Michael L. Schrag (SBN 185832)

13

505 14th Street, Suite 1110

14

Oakland, California 94612
Telephone:   (510)-350-9700

15

Facsimile:    (510 350-9701

16

Levin Sedran & Berman

17

Charles E. Schaffer (*Pro Hac Vice*)

18

510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106

19

Telephone:  (215) 592 1500

20

Facsimile:    (215) 592-4663

21

WEITZ & LUXENBERG, P.C.

22

Paul F. Novak (*Pro Hac Vice*)
Chrysler House

23

719 Griswold, Suite 620

24

Detroit, Michigan 48226
Telephone:  (313) 800-4170

25

Facsimile:    (646) 293-7992

26

*Plaintiffs' Steering Committee*

27

28

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASEY GERRY SCHENK
FRANCAVILLA BLATT & PENFIELD, LLP
David S. Casey, Jr. (SBN 060768)
Gayle M. Blatt (SBN 122048)
110 Laurel Street
San Diego, California
Telephone:  (619) 238-1811
Facsimile:   (619) 544-9232

*Plaintiffs' Liaison Counsel*

PLAINTIFFS' OMNIBUS OPP. TO
DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' COMPL.

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

   I hereby certify that on April 20, 2018, I electronically filed the foregoing

4

document entitled **PLAINTIFFS' OMNIBUS OPPOSITION TO**

5

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT** with

6

the Clerk of the Court for the United States District Court, Central District of

7

California using the CM/ECF system and served a copy of same upon all counsel of

8

record via the Court's electronic filing system.

9

10

                              */s/ Aaron M. Sheanin*

11

                              Aaron M. Sheanin

12

                              ROBINS KAPLAN LLP

13

                              2440 W. El Camino Real, Suite 100

14

                              Mountain View, California  94040
                              Telephone:  (650) 784-4040
                              Facsimile:  (650) 784-4041

15

16

17

18

19

20

21

22

23

24

25

26

27

28