UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |

**Proceedings:** **[IN CHAMBERS] ORDER RE MOTIONS TO DISMISS**

This case concerns allegations that Wells Fargo Bank, together with National General Insurance and other related entities, forced auto-loan customers to pay for Collateral Protection Insurance that the customers didn't want, need, or (in some cases) know about. In a consolidated complaint, fourteen Plaintiffs, proceeding on behalf of various national and state classes, purport to assert numerous claims. (*See* Consolidated Complaint ("Complaint"), Dkt. No. 49.) The purported claims include fraud, unjust enrichment, violations of the Racketeer Influenced and Corrupt Organizations Act, violations of the Bank Holding Company Act, and violations of several states' consumer protection statutes. Wells Fargo and National General each move to dismiss Plaintiffs' consolidated complaint.

The Court GRANTS IN PART Wells Fargo's motion to dismiss. (Dkt. No. 68.) The Court GRANTS IN PART National General's motion to dismiss. (Dkt. No. 69.) The Court GRANTS Plaintiffs leave to amend their complaint.

**1. BACKGROUND**

Rather than awkwardly repeating "Plaintiffs allege" throughout this background section, the Court generally notes that it makes no findings of fact at this stage. Instead, the Court assumes the following facts, taken from Plaintiffs' complaint, are true for the purposes of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

this order.

### 1.1 The Players

Defendant Wells Fargo Bank, N.A. is a subsidiary of Defendant Wells Fargo & Company. (Complaint, Dkt. No. 49 at ¶ 125.) Because the complaint doesn't often distinguish between the two entities, the Court refers to these Defendants together as "Wells Fargo".

Defendant National General Insurance Company is a subsidiary of Defendant National General Holdings Corp. (*Id.* at ¶ 130.) Because the complaint doesn't often distinguish between the two entities, the Court refers to these Defendants as "National General".

Through a series of acquisitions in 2011 and 2015, National General purchased the assets and liabilities of QBE North America and Balboa Insurance Company—two insurance companies that performed various Collateral Protection Insurance-related services for Wells Fargo from 2005 through 2015. (*Id.* at ¶¶ 128–29.) National General also directly provided Collateral Protection Insurance services to Wells Fargo from 2011 to 2016. (*Id.* at ¶ 130.) Plaintiffs claims against National General stem from its own conduct and the conduct of QBE and Balboa.

Plaintiffs are fourteen individuals from various states who took out Wells Fargo auto loans and received unwanted Collateral Protection Insurance sometime between 2005 and 2016.

### 1.2 The Insurance

This case is fundamentally about Collateral Protection Insurance, also called "CPI" for short. But just what is CPI? In Plaintiffs' words, CPI is a type of insurance covering only "the cost of damage to the insured vehicle" rather than any liability "for collisions with other vehicles, property loss, and bodily injury." (*Id.* at ¶ 140.) When a customer takes out an auto loan, the lender may require the borrower to get CPI coverage for their car. That makes sense, because the lender wants to be sure it will have something of value to repossess if the borrower defaults on the loan. If the borrower doesn't purchase appropriate insurance coverage

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

themselves, the lender "may purchase [CPI] for" the borrower. (*Id.* at ¶ 141.) "To pay for the additional costs of CPI policies, lenders like Wells Fargo tack on an additional premium to the borrower's principal" auto loan amount, "thus raising the borrower's monthly payment." (*Id.*)

### 1.3 The Scheme

Plaintiffs allege that Defendants, on a massive scale, were forcing auto-loan borrowers to pay for unnecessary CPI policies. The alleged scheme worked like this. In 2005, Wells Fargo began requiring auto-loan customers who didn't have their own auto insurance policies "to accept CPI policies." (*Id.* at ¶ 146.) When a Wells Fargo customer took out an auto loan, Wells Fargo sent the customer's "information to its insurance partners, Balboa, QBE, and National General." (*Id.* at ¶ 5.) Balboa, QBE, and National General "were supposed to check an insurance database to confirm" whether the customer had insurance coverage. (*Id.*) But Wells Fargo, Balboa, QBE, and National General "all failed to check their internal databases" or "simply ignored what they learned" from any database checks. (*Id.*) After QBE, Balboa, and National General received the customer's information, they imposed "redundant" CPI policies on Plaintiffs, sometimes even charging Plaintiffs for multiple CPI polices at a time. (*See id.* at ¶¶ 5, 26, 34, 67, 83, 103, 119, 146.) Once a customer was signed up for a CPI policy through QBE, Balboa, or National General, Wells Fargo "assessed a full year's worth of CPI premium charges against borrowers' accounts," charging "interest each month on the CPI policy before applying payments to the principal loan balance." (*Id.* at ¶ 142.)

The result? Even if Plaintiffs paid what they thought was enough to cover the principal and interest payments on the original auto loan, their payments wouldn't cover the undisclosed CPI premium and interest. (*Id.* at ¶ 151.) Because at least some portion of each payment went toward the CPI charges, less went to reducing the principal on the underlying loan. (*Id.* at ¶¶ 142, 150.) This led to higher interest charges. (*Id.* at ¶ 151.) Because of the hidden CPI charges, Plaintiffs often fell behind on their auto loan payments, incurring late fees and, at times, having their cars repossessed. (*Id.* at ¶¶ 142, 151, 152, 154.) After learning that they had been signed up for a CPI policy, many customers tried to get Defendants to cancel the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

unnecessary policy, even sending proof of separate insurance. (*Id.* at ¶ 152.) But "Defendants generally refused to fix the problem." (*Id.* at ¶ 152.)

Wells Fargo "benefitted greatly from force-placed CPI polices, because it received interest on the cost of the CPI policies and fees for late payments or insufficient funds." (*Id.* at ¶ 147.) Also, "Wells Fargo received kickbacks from Balboa, QBE, and National General for each CPI policy purchased for borrowers." (*Id.*) "At a minimum, 800,000 Wells Fargo customers, who maintained sufficient insurance on their vehicles, were billed by Wells Fargo for unnecessary CPI." (*Id.* at ¶ 149.)

### 1.4 The "Remediation"

In July 2017, the *New York Times* ran a report about at least some parts of Defendants' CPI scheme. (*Id.* at ¶ 153.) The same day, Wells Fargo announced a "remediation program" that included various refunds and account adjustments for customers who had been wrongfully signed up for CPI. (*Id.* at ¶ 156.) Plaintiffs say the "remediation program" is insufficient to redress for full scope of damages caused by Defendants' conduct. (*Id.* at ¶ 157.)

### 2. STANDARD

The same general standards apply to both Wells Fargo's motion to dismiss and National General's motion to dismiss.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." With that liberal pleading standard, the purpose of a motion under Rule 12(b)(6) is "to test the formal sufficiency of the statement of the claim for relief." 5B C. Wright & A. Miller, Federal Practice and Procedure § 1356, p. 354 (3d ed. 2004). "[D]etailed factual allegations" aren't necessary at this stage, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). And, of course, it's well settled that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)." *See Bell Atlantic Corp. v. Twombly*, 550 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

544, 555 (2007). At any rate, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Fraud claims require more precise allegations, as they must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1031 (9th Cir. 2016). Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." The "circumstances" include "the time, place, and specific content of false representations as well as the identities of the parties." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (quoting *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir.1986)). Plaintiffs can't simply allege "neutral facts necessary to identify the transaction," but must "set forth an explanation as to why the statement or omission complained of was false or misleading." *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir.1994)) (superceded by statute on other grounds); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."). But even under Rule 9(b), the pleading standard for state of mind is more relaxed. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally").

### 3. WELLS FARGO'S 12(b)(6) MOTION TO DISMISS

Wells Fargo moves to dismiss Plaintiffs' claims under Rule 12(b)(6) for failure to state a claim. The Court addresses the sufficiency of each claim or set of claims in turn.

    **3.1    RICO Claims**

Wells Fargo argues that Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act are insufficiently stated.

Before diving into the merits of Wells Fargo's RICO arguments, Plaintiffs make general

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

arguments about why, in effect, the heightened pleading standard shouldn't apply in this case. Plaintiffs argue (1) that Defendants "have more than sufficient notice" about Plaintiffs' claims through Defendants' own internal investigations, (2) that Wells Fargo's "widely-publicized culture" of wrongdoing means there's no chance the company's reputation could be harmed, and (3) that this case doesn't "impose an undue burden on the Court or society." (Opp'n, Dkt. No. 80 at 10–11.) While these arguments touch on some of the policy reasons behind Rule 9(b)'s heightened pleading standard, they are insufficient reasons to ignore Rule 9(b) all together. *See Kearns*, 567 F.3d at 1124 (listing notice, protection of reputation, and limitation of burden as some policy justifications for Rule 9(b)'s heightened pleading requirement).

Instead, the Court looks at whether Plaintiffs have sufficiently stated a claim under the appropriate standards, analyzing allegations of "fraud" under Rule 9(b)'s heightened pleading standard.

### 3.1.1 RICO Elements

RICO provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Courts have broken this subsection down into five key elements: "(1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt [and] . . . [(5)] proximate cause." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Wells Fargo argues that Plaintiffs fail to plead enough facts to satisfy some of those required elements. The Court addresses each challenged element in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

### 3.1.2 Enterprise

Wells Fargo argues that Plaintiffs have failed to sufficiently plead an "enterprise" under RICO. RICO defines the term "enterprise" broadly: "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals *associated in fact* although not a legal entity." 18 U.S.C. § 1961(4) (emphasis added). Plaintiffs' complaint reveals that they are proceeding on the "associated in fact" theory of a RICO enterprise—the enterprise being National General (and Balboa and QBE, depending on the time frame) and Wells Fargo. (*See* Complaint, Dkt. No. 49 at ¶¶ 191, 196, 225, 254.) For an association-in-fact enterprise, Plaintiffs must plead "that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic*, 751 F.3d at 997.

Plaintiffs have alleged sufficient facts showing the existence of a RICO enterprise. Wells Fargo argues that Plaintiffs haven't alleged anything beyond a routine business relationship between Wells Fargo and its CPI providers. One court has noted that "there has been a remarkable uniformity in [courts'] conclusion that RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client." *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015). Taken at face value, this is an interesting conclusion, considering RICO's broad "enterprise" definition. Indeed, it would be strange to prevent RICO from reaching any case where two parties have a contractual relationship—a conclusion Wells Fargo seems to encourage the Court to adopt.

In any case, even if RICO's "enterprise" requirement means more than a routine business relationship between two parties, Plaintiffs have sufficiently pleaded that, subject to concerns discussed later about Plaintiffs' fraud allegations. Plaintiffs have alleged the role each Defendant played in a purportedly fraudulent scheme to "force-place" unnecessary CPI policies on Wells Fargo's clients. *See Odom*, 486 F.3d at 552 (concluding an enterprise was sufficiently alleged where Best Buy and Microsoft had "the common purpose of increasing the number of people using Microsoft's Internet Service, and doing so by fraudulent means"). And they allege that Wells Fargo and National General maintained an ongoing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

relationship from 2005 through 2016 with a common purpose to reap significant benefits (kickbacks, premiums, interest, and other fees) from the CPI scheme. Plaintiffs allege that Wells Fargo and National General created a continuing scheme where Wells Fargo would send National General information about auto-loan borrowers and National General would indiscriminately sign those borrowers up for insurance. All this plausibly shows the purpose, structure, and longevity necessary for a RICO enterprise, and Wells Fargo's arguments to the contrary are not convincing. *See Odom*, 486 F.3d at 541.

### 3.1.3 Participatory Conduct

Wells Fargo contends that Plaintiffs haven't stated anything more than "conclusory" allegations to show that Wells Fargo "participat[ed], directly or indirectly, in the conduct" of the RICO enterprise's affairs. *See* 18 U.S.C. § 1962(c). The Court disagrees. Plaintiffs' complaint includes fairly detailed allegations about the role that Wells Fargo played in the alleged enterprise, enough to show that Wells Fargo played, at the very least, "*some* part in directing [the] enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 178–79 (1993). Wells Fargo's alleged conduct meets that requirement. According to the complaint, Wells Fargo "determined if . . . a customer's application and/or information would be transmitted to National General for review" and "ultimately force-placed the CPI policies underwritten by National General, and collected payments for them." (Complaint, Dkt. No. 49 at 207.) These allegations, among others, are the foundation of the alleged enterprise, and Wells Fargo took the lead on them.

Plaintiffs sufficiently allege that Wells Fargo participated in the conduct of the enterprise's affairs.

### 3.1.4 Pattern of Racketeering Activity

RICO's "pattern of racketeering activity" element "requires at least two acts of racketeering activity," which may include mail or wire fraud. 18 U.S.C. § 1961(1), (5). Claims for mail or wire fraud have three elements: "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails [or wires] . . . in furtherance of the scheme;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

and (3) the defendants did so with the specific intent to deceive or defraud." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004).

Wells Fargo argues that Plaintiffs provide only "conclusory allegations of mail and wire fraud, without even attempting to 'state the time, place and specific content of the false representation' or the specific Plaintiffs to whom these purported acts were directed." (Mot., Dkt. No. 68 at 11.) Plaintiffs argue that they sufficiently identify "the dates and content of Wells Fargo's fraudulent communications via wires or mails indicating that they were on the hook for CPI premiums and interest when, in fact, they were not." (Opp'n, Dkt. No. 80 at 19.) Further, Plaintiffs argue that the elements of mail or wire fraud don't require that the communications sent via mail or wire must be fraudulent in and of themselves. *See Schmuck v. United States*, 489 U.S. 705, 715 (even "routine" mailings containing "no false information" support mail fraud). Instead, Plaintiffs argue that the communications need only be a part of the larger fraudulent scheme. (Opp'n, Dkt. No. 80 at 18.) This may be true, but Plaintiffs' RICO claims fail either way. They haven't particularly alleged either (A) fraudulent communications or (B) some related fraudulent scheme.

The Court here focuses on Plaintiffs' allegations concerning fraudulent misrepresentations, and addresses later Plaintiffs' fraudulent omissions allegations. Plaintiffs' allegations concerning fraudulent misrepresentations include hardly any specifics about the alleged communications. Instead, the complaint lists fourteen types of communications Wells Fargo and National General sent either between themselves or to borrowers. (*See* Complaint, Dkt. No. 49 at ¶¶ 213, 242, 271.) The list includes general descriptions of things like loan documents sent to borrowers, demands for payment sent to borrowers, marketing materials sent to borrowers, and correspondence sent between Wells Fargo and the CPI providers "establishing their relationship regarding the enterprise." (*See id.* at ¶¶ 213, 242, 271.)

The scant descriptions provided for some of the communications don't reveal any fraud. (*See* Complaint, Dkt. No. 49 at ¶ 10 (Plaintiff Comacho "started receiving late notices"), ¶ 11 (Wells Fargo confirmed in a letter that they had "received [Comacho's] insurance prior to the CPI placement")). Further, many of the allegations Plaintiffs cite to show Wells Fargo's fraud are allegations that Plaintiffs "repeatedly contacted Wells Fargo to inform the bank that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

[they] maintained the required auto insurance." (*See* Complaint, Dkt. No. 49 at ¶¶ 19, 35, 50, 59, 68, 84, 94, 96, 104, 112, 120.) Or Plaintiffs cite paragraphs alleging that "Wells Fargo placed a CPI policy" on Plaintiffs' "auto loan account and charged them" specified amounts of money. (*See id.* at ¶¶ 18, 26, 34, 42, 49, 58, 67, 76, 83, 93, 103, 111, 119.) These allegations do not satisfy Rule 9(b)'s heightened pleading standards because they do not sufficiently identify the "circumstances" of the fraudulent communications, including their contents and timing. *See Kearns*, 567 F.3d at 1124. Similarly, they do not explain why any particular communication was false or misleading. *Cooper*, 137 F.3d at 625.

Even though many of the communications were purportedly directed to Plaintiffs themselves, Plaintiffs fail to particularly identify any fraudulent conduct under Rule 9(b). Consequently, they've failed to show that Defendants engaged in a "pattern of racketeering activity" through predicate acts of mail or wire fraud.

The Court dismisses Plaintiffs' RICO claims.

### 3.2   Fraud by Concealment Claim

Wells Fargo contends that Plaintiffs' fraud by concealment claim is insufficiently stated. "Claims of fraudulent omissions, like claims of fraudulent misrepresentations, are subject to Rule 9(b)'s heightened pleading standards." *Sims v. Kia Motors Am., Inc.*, No. SACV 13-1791 AG (DFMx), 2014 WL 12558251, at *4 (C.D. Cal. Oct. 8, 2014). To meet Rule 9(b)'s requirements, "Plaintiffs at a minimum must describe the content of the omission and where the omitted information should or could have been revealed." *Id.* (internal citation marks and quotations omitted).

Plaintiffs' fraud by concealment claim doesn't meet these standards. Plaintiffs allege that Wells Fargo concealed (1) that it received kickback payments for force-placing CPI policies; (2) that it force-placed unnecessary CPI policies; (3) that it either didn't check or ignored whether Plaintiffs already had appropriate insurance; and (4) that it conditioned auto-loan financing on borrowers paying for CPI. (*See* Opp'n, Dkt. No. 80 at 33.) Missing from Plaintiffs' complaint are particular allegations about when and where Wells Fargo should

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

have disclosed this information, a problem compounded by many Plaintiffs' allegations that they eventually learned of the forced CPI policies anyway. Plaintiffs' allegation that "as early as 2005" Wells Fargo "represented to Plaintiffs and Class members that they needed to maintain active insurance" but failed to discuss "force-placed collateral insurance" also isn't enough.

Without particular facts about the content of the alleged omission and when and where Wells Fargo should have disclosed important facts, Plaintiffs' fraudulent concealment claim fails and must be dismissed.

### 3.3 Bank Holding Company Act Claim

Wells Fargo argues that Plaintiffs' claim under the Bank Holding Company Act fails because the alleged conduct doesn't fit within the Act's scope. The BHCA provides, among other things, that a bank "shall not in any manner extend credit . . . on the condition or requirement" that the borrower "shall obtain some additional credit, property, or service from such bank" or from "a bank holding company of such bank, or from any other subsidiary of such bank holding company." 12 U.S.C. § 1972(1)(A)–(B). To state a claim for a violation of this provision, a plaintiff must allege that "(1) the banking practice in question was unusual in the banking industry, (2) an anti-competitive tying arrangement existed, and (3) the practice benefits the bank." *Bieber v. State Bank of Terry*, 928 F.2d 328, 330 (9th Cir. 1991) (internal quotation marks and citations omitted).

Defendants argue (and Plaintiffs concede in their complaint) that it isn't "unusual" for lenders to purchase CPI on behalf of auto-loan borrowers who do not independently maintain appropriate insurance coverage for their cars. (*See* Complaint, Dkt. No. 49 at ¶ 141.) But Plaintiffs say their BHCA claim is rooted in a narrower practice: "Wells Fargo's practice of charging Plaintiffs for duplicative and unnecessary CPI even when customers maintained their own insurance." (Opp'n, Dkt. No. 80 at 25.) That does seem unusual.

Still, Plaintiffs' BHCA claim fails. Wells Fargo's practice of charging Plaintiffs for unnecessary CPI wasn't an "anti-competitive" arrangement. The force-placed CPI policies

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

were "unnecessary" and "duplicative" because Plaintiffs had *already purchased* their own insurance. In economic terms, Plaintiffs had gone out into the auto insurance market and purchased (presumably) the most competitively-priced policy. *See Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 395 (6th Cir. 1996) (dismissing BHCA anti-tying claim where "plaintiffs were free to purchase . . . insurance on the open market at fully competitive prices"), abrogated on other grounds by *Riverview Health Inst. LLC v. Medical Mutual of Oh.*, 601 F.3d 505, 516 (6th Cir. 2010). Wells Fargo later tacking on an unnecessary auto insurance policy didn't stifle competition. No market firms were competing for that business. Plaintiffs simply didn't need the additional policy.

Further, Plaintiffs don't sufficiently allege that accepting the unnecessary CPI policies was a "condition or requirement" to receiving the auto loans. Plaintiffs received the auto loans before Wells Fargo force-placed the CPI policies. More to the point, Plaintiffs allege that they didn't want or even know about the CPI policies until well after taking out the loans. *Kenty*, 92 F.3d at 395 (dismissing BHCA anti-tying claim where "plaintiffs never agreed to purchase the additional insurance and therefore its purchase simply was not a 'condition or requirement' of . . . receiving the automobile loan").

Put simply, Plaintiffs' BHCA claim fails and must be dismissed.

### 3.4    CLRA Claim

Wells Fargo argues that Plaintiffs' claim under the California Consumer Legal Remedies Act fails. Wells Fargo's most convincing argument is that the transaction between Wells Fargo and Plaintiffs wasn't for "goods or services" as defined in the CLRA. The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of *goods or services* to any consumer." Cal. Civ. Code § 1770(a) (emphasis added). Under the CLRA, "goods" means "tangible chattels bought or leased for use primarily for personal, family, or household purposes," Cal. Civ. Code § 1761(a), while "services" means "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods," Cal. Civ. Code § 1761(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

While Plaintiffs concede that "insurance" itself isn't a "good or service" under the CLRA, they argue that they have two other grounds for their CLRA claim. First, Plaintiffs contend the CLRA "applies to the sale of a tangible good"—in this case, the car underlying the auto loan—"where an insurance transaction is an integral component." (Opp'n, Dkt. No. 80 at 28.) For this proposition, Plaintiffs cite two cases, one unpublished California Court of Appeal decision and one District Court case relying on that unpublished position. Because unpublished decisions from California appellate courts aren't good authority, the Court declines to follow this reasoning. Instead, the rule that the CLRA doesn't apply to the sale of insurance governs. *See Fairbanks v. Super. Ct.*, 46 Cal. 4th 56, 61 (2009) ("Because life insurance is not a 'tangible chattel,' it is not a 'good' as that term is defined in the Consumers Legal Remedies Act," nor is life insurance "a 'service' under the act.")

Second, Plaintiffs argue that the "non-ancillary services" provided by Wells Fargo "beyond merely extending credit" for auto loans to consumers qualify as "services" under the CLRA. (Opp'n, Dkt. No. 80 at 28.) This argument also isn't convincing. First, Plaintiffs do little to distinguish between "ancillary" and "non-ancillary" services relating to an auto loan. Second, in the deed of trust context, most "federal district courts that have considered the issue since [the California Supreme Court's decision in] *Fairbanks* . . . have held that the CLRA does not apply to mortgage loan servicing." *Jaimson v. Bank of Am., N.A.*, 194 F. Supp. 3d 1022, 1031 (E.D. Cal. 2016). Plaintiffs do not draw a sufficient line between real estate and auto lending, such that one would qualify as a "service" under the CLRA while the other wouldn't.

Because the subject matter of the transaction between Defendants and Plaintiffs was not a "good or service" under the CLRA, the Court dismisses this claim.

### 3.5 UCL Claim

Wells Fargo argues that Plaintiffs' California Unfair Competition Law claim fails because Plaintiffs don't allege an "unlawful, fraudulent, or unfair" business practice under the UCL. "The UCL defines unfair competition as 'any unlawful, unfair or fraudulent business act or practice.'" *In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009) (citing Cal. Bus. & Prof. Code § 17200). "Therefore, under the statute 'there are three varieties of unfair competition:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

practices which are unlawful, unfair or fraudulent.'" *Id.* (citing *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006)).

As for the "unlawful" variety, an "unlawful business activity includes *anything* that can properly be called a business practice and that at the same time is forbidden by law." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 717–18 (2001), *as modified* (Nov. 20, 2001) (citation omitted). Plaintiffs' UCL claim relies on their RICO, mail and wire fraud, CLRA, and fraud claims. (*See* Complaint, Dkt. No. 49 at ¶ 311–12.) But as discussed, Plaintiffs haven't sufficiently stated these underlying claims, so they cannot serve as the basis for the "unlawful" variety of their UCL claim.

As for the "unfair" variety, the best test available amid California's fluctuating precedent on "unfairness" has three elements: "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Abramson v. Marriott Ownership Resorts, Inc.*, 155 F. Supp. 3d 1056, 1066 (C.D. Cal. 2016) (quoting *Camacho v. Auto Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006)). Plaintiffs sufficiently plead these requirements. As Plaintiffs put it, "force-placing duplicative, unwanted, and unnecessary CPI on at least 800,000 consumers" is unfair. (Opp'n, Dkt. No. 80 at 31.) Plaintiffs' UCL claim survives under the "unfair" theory.

Similarly, Plaintiffs' UCL claim is insufficiently stated under the "fraudulent" theory, which requires a "show[ing] that [reasonable] members of the public are likely to be deceived." *Abramson*, 155 F. Supp. 3d at 1066 (quoting *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) (alterations in original)). Because it's unclear which particular statements or omissions would likely deceive members of the public, Plaintiffs' "fraudulent" UCL theory is inadequately stated.

Because Plaintiffs sufficiently allege that Wells Fargo engaged in unfair business practices, the Court declines to dismiss Plaintiffs' UCL claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

### 3.6 Unjust Enrichment Claim

Wells Fargo alleges that Plaintiffs' unjust enrichment claim also fails.

There's a dispute among the parties about which state's law should apply to this claim. Several Plaintiffs assert the claim on behalf of the Colorado, Indiana, Mississippi, Minnesota, Missouri, Tennessee, Wisconsin, and Wyoming sub-classes. (*See* Complaint, Dkt. No. 49 at ¶ 329.) Nonetheless, Wells Fargo argues (mostly in a footnote) that California's law should apply. (Mot., Dkt. No. 68 at 21–22 n.7.) In its opposition, Plaintiffs argue (also in a footnote) that their single unjust enrichment claim is governed by the laws of eight different states. (Opp'n, Dkt. No. 80 at 35 n.22.) But that conclusion isn't clear from the face of the complaint, which doesn't identify any particular law governing the unjust enrichment claim. (*See* Complaint, Dkt. No. 49 at ¶ 328–34.)

Recognizing that decisions made at this early stage will have a lasting effect on this multi-district litigation, the "Court finds it prudent to refrain from guessing what state law or laws Plaintiffs are using as the basis for their unjust enrichment claims," especially since the parties decided to brief this fairly important issue mostly in lengthy footnotes. *Glenn v. Hyundai Motor Am.*, No. SACV 15-2052 DOC (KESx), 2016 WL 3621280, at *13 (C.D. Cal. 2016). Consequently, the Court dismisses Plaintiffs' unjust enrichment claim and will grant them leave to amend it to plead the elements of unjust enrichment, identifying which states' laws they hope to pursue their claims under.

### 3.7 State Claims Relying on Fraudulent Conduct

Wells Fargo argues that Plaintiffs' claims under various states' consumer protection statutes fail because they are all based on defectively pleaded fraudulent misrepresentations and omissions. Plaintiffs don't dispute that these claims are all based on the same purportedly fraudulent misrepresentations and omissions previously discussed. (Opp'n, Dkt. No. 80 at 37.) Because Plaintiffs' state consumer protection statute claims all rely on insufficiently stated fraudulent misrepresentations and omissions, the Court dismisses those claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

Wells Fargo raised several other arguments for why Plaintiffs' state law consumer protection claims should be dismissed. The Court need not address them here, since Plaintiffs' failure to adequately plead fraud is reason enough to dismiss these claims. Further, Plaintiffs have stated that they wish to cure at least some of the potential deficiencies identified. (*See* Opp'n, Dkt. No. 80 at 39.) Consequently, the Court will wait to address these other issues at a later time, if necessary.

**4. NATIONAL GENERAL'S 12(b)(6) MOTION TO DISMISS**

National General also moves to dismiss Plaintiffs' claims under Rule 12(b)(6) for failure to state a claim. National General raises many of the same arguments that Wells Fargo raised, and many of Plaintiffs' claims against National General fail for reasons similar to those already discussed. But the Court addresses the thrust of National General's arguments separately for the sake of clarity.

    **4.1    RICO Claims**

National General attacks Plaintiffs' RICO claims primarily by arguing that National General wasn't part of the "enterprise", that it didn't "direct" the enterprise's affairs, and that it didn't participate in any "racketeering activity". (Mot., Dkt. No. 69 at 6–14.) Fundamentally, National General's arguments rely on the notion that it was merely providing legitimate business services to Wells Fargo as an outside services provider. But a key allegation in Plaintiffs' complaint is that National General (and the other CPI providers) either didn't check or ignored whether Plaintiffs had the appropriate insurance. This coupled with appropriate allegations of fraudulent conduct or purpose might sufficiently state a RICO claim against National General.

As the complaint now stands, Plaintiffs' complaint includes only conclusory allegations that National General did things like "[m]isrepresenting that it did or would search a database of insurance coverage" and "[m]isrepresenting its role in the loan application process." (*See, e.g.*, Complaint, Dkt. No. 49 at ¶ 208.) These imprecise allegations, lacking information about when these "misrepresentations" were made and to whom, don't rise to the level of fraud.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

Plaintiffs' vague allegations that National General "concealed" information about the CPI scheme are similarly insufficient. (*See, e.g.*, *id.* at ¶ 322.) Consequently, Plaintiffs' RICO claims against National General fail.

National General also argues that many of Plaintiffs' RICO claims against it (particularly through the actions of QBE and Balboa) are barred by the statute of limitations. "The statute of limitations for civil RICO actions is four years." *Pincay v. Andrews*, 238 F.3d 1106, 1008 (9th Cir. 2001). The "limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Id.* (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)).

National General argues that Plaintiffs' RICO claims alleging injuries sustained before July 30, 2013 (four years before this case was filed) are barred. But there are many factual issues about how much and when Plaintiffs knew about their injuries and the alleged scheme. Importantly, it's unclear whether Plaintiffs could have known their CPI premiums were "inflated" (as the complaint puts it) when charged. These and other questions "counsel the Court against determining at this early stage when" Plaintiffs were "on actual or constructive notice of [their] injuries." *State Comp. Ins. Fund v. Capen*, No. SACV 15-1279 AG (CWx), 2015 WL 13298073, at *5 (C.D. Cal. Dec. 18, 2015).

    **4.2    Fraudulent Concealment**

National General also argues that Plaintiffs' fraudulent concealment claim against it fails, both because Plaintiffs' haven't sufficiently pleaded either concealment or a requisite duty to disclose. As discussed, the Court agrees that Plaintiffs fail to sufficiently plead any particular concealment. Indeed, it's unclear precisely when and where National General would have had any direct contact with Plaintiffs such that they would need to disclose anything. (*See* Complaint, Dkt. No. 49 at ¶ 322 (alleging "*on information and belief*" that the CPI providers "represented *to Plaintiffs* . . . that premiums for the force-placed CPI policies were necessary and proper.") Similarly, because the direct relationship (if any) between National General and Plaintiffs is unclear, the Court cannot determine whether National General owed Plaintiffs a duty to disclose any information. *See Tenet Healthsystems Desert, Inc. v. Blue Cross of Cal.*, 245 Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

App. 4th 621, 844 (2016) (duty to disclose arises in non-fiduciary "transactions" between parties in limited circumstances).

Dismissal of Plaintiffs' fraudulent concealment claim against National General is appropriate.

### 4.3 UCL Claim

The Court's conclusion that Plaintiffs sufficiently state a claim against Wells Fargo under the UCL's "unfair" theory (but not any other theory) applies equally to National General. National General argues that Plaintiffs are not entitled to any remedies available under the UCL. This argument is unavailing.

Because Plaintiffs sufficiently state a claim against National General under the UCL's "unfair" theory, the Court declines to dismiss that claim.

### 4.4 State Consumer Protection Statute, CLRA, and Unjust Enrichment Claims

National General also raises arguments similar to those Wells Fargo raised for dismissing Plaintiffs' state consumer protection statute, CLRA, and unjust enrichment claims. The Court's previous conclusions about those claims apply equally to National General. Consequently, the Court dismisses those claims against National General.

## 5. LEAVE TO AMEND

If a court dismisses a complaint, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts,'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)), or "if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | IN RE WELLS FARGO INSURANCE MARKETING AND SALES PRACTICES LITIGATION | | |

Leave to amend is appropriate for all Plaintiffs' claims except the Consumer Legal Remedies Act claim, which is incurable. The Court cannot conclude that Plaintiffs' other claims are incurable. Further, Plaintiffs have not yet amended their consolidated complaint.

The Court grants Plaintiffs leave to amend.

**6. DISPOSITION**

The Court GRANTS IN PART Wells Fargo's motion to dismiss. (Dkt. No. 68.) The Court GRANTS IN PART National General's motion to dismiss. (Dkt. No. 69.) The Court GRANTS Plaintiffs leave to amend their complaint as to all claims except their Consumer Legal Remedies Act claim.

The Court ORDERS Plaintiffs to file their amended consolidated complaint, if any, by no later than **August 17, 2018**.

Any arguments that the Court did not address in this order either were not convincing or didn't need to be addressed at this time.

| | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |