Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Sterling L. Cluff (SBN 267142)
scluff@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:  (818) 839-2333
Facsimile:   (818) 986-9698

Roman M. Silberfeld (SBN 62783)
rsilberfeld@robinskaplan.com
Robins Kaplan LLP
2049 Century Park East, Suite 3400
Los Angeles, California  90067
Telephone: (310) 552-0130
Facsimile: (310) 229-5580

Aaron M. Sheanin (SBN 214472)
asheanin@robinskaplan.com
Robins Kaplan LLP
2440 W. El Camino Real, Suite 100
Mountain View, California  94040
Telephone:  (650) 784-4040
Facsimile:  (650) 784-4041

*Plaintiffs' Co-Lead Counsel*

*\* Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WELLS FARGO COLLATERAL PROTECTION INSURANCE LITIGATION | Case No.  8:17-ML-2797-AG-KES<br><br>**PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:          December 3, 2018<br>Time:          10:00 a.m.<br>Courtroom:          10-D<br>Complaint Filed:   August 17, 2018<br><br>Hon. Andrew J. Guildford |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

SUMMARY OF PLAINTIFFS' ALLEGATIONS ................................................ 3

ARGUMENT ........................................................................................................... 7

I.     PLAINTIFFS ALLEGE A PLAUSIBLE  RICO CLAIM.................... 7

      A.    The CPI Vendor Participated in the Conduct of the CPI Enterprise. ................................................................................ 8

      B.    The CPI Vendor Was an Active Member of the CPI Enterprise. ................................................................................ 9

      C.    The CPI Vendor and Wells Fargo Participated in a Pattern of Racketeering Activity............................................................ 13

II.    THE MCCARRAN-FERGUSON ACT DOES NOT BAR PLAINTIFFS' RICO CLAIM............................................................. 17

III.   PLAINTIFFS' RICO CLAIMS ARE TIMELY. ............................... 19

      A.    Plaintiffs's RICO Claims Are Timely Under the Injury Discovery Rule. ........................................................................ 19

      B.    Plaintiffs' Claims Are Timely Under the Continuing Accrual Doctrine........................................................................ 22

      C.    Fraudulent Concealment Tolls the Statute of Limitations. ...... 23

      D.    Wells Fargo's Attempt to Truncate the Class Period is Premature and Has No Basis in Law. ...................................... 24

      E.    There is No Statute of Limitations Issue for the Payment of Secret Commissions by National General...................................... 25

IV.   PLAINTIFFS SUFFICIENTLY PLEAD A BHCA CLAIM. ............ 26

      A.    Wells Fargo's CPI Program Was Highly Unusual. ................. 27

      B.    Forcing Auto Loan Customers into Additional CPI Transactions Was an Illegal Tying Arrangement Under the BHCA. ................................................................................ 28

      C.    Under Controlling Ninth Circuit Precedent, Plaintiffs Need Not Allege that Wells Fargo's Practices Had Anti-Competitive Effects. .................................................................. 30

      D.    Wells Fargo's Practice of Conditioning Plaintiffs' Existing Auto Loans on Additional CPI Payments Violated the BHCA. .................................................................. 31

V.    PLAINTIFFS STATE A CLAIM AGAINST NATIONAL GENERAL UNDER THE UCL. ....................................................... 33

      A.    Plaintiffs State a Claim Under the Unfair Prong of the UCL. ........................................................................................ 33

# TABLE OF CONTENTS
(continued)

**Page**

B. Plaintiffs State A Claim Under the Unlawful Prong of the UCL. ...................................................................................... 34

C. Plaintiffs State A Claim Under the Fraudulent Prong of the UCL. ................................................................................. 35

D. The UCL Applies to Out-of-State Residents Harmed By Conduct Occurring In California. ............................................. 36

E. Plaintiffs' UCL Claims Are Timely. ...................................... 37

VI. THE ECONOMIC LOSS RULE DOES NOT BAR THE FRAUD BY CONCEALMENT AND UNJUST ENRICHMENT CLAIMS. ................................................................ 37

A. Plaintiffs' Fraud Claim Does Not Arise Out of Contract. ......... 37

B. The Fraud Exception to the Economic Loss Rule Applies. ..... 38

C. The Economic Loss Rule Does Not Apply Because Defendants' Duties Arose Independent of Any Contract. ......... 38

D. The Economic Loss Rule Does Not Bar Plaintiffs' Unjust Enrichment Claim. ............................................................. 39

VII. PLAINTIFFS STATE A CLAIM FOR FRAUD BY CONCEALMENT. ................................................................ 39

A. Defendants Omitted Material Facts. ...................................... 40

B. National General Committed Fraud. ...................................... 42

C. Defendants Were Obligated to Disclose the CPI Scheme. ........ 43

D. The CPI Vendor Intended to Defraud Plaintiffs. ..................... 45

VIII. PLAINTIFFS STATE CLAIMS FOR UNJUST ENRICHMENT. ................................................................. 45

A. California Recognizes a Cause of Action for Unjust Enrichment. ..................................................................... 46

B. Plaintiffs State A Claim Under Various States Laws. .............. 47

C. Defendants' Remaining Arguments Are Without Merit. .......... 48

1. Plaintiffs Adequately Allege They Conferred a Benefit on National General. ...................................... 48

2. Plaintiffs Adequately Pled That Defendants Appreciated and Knowingly Accepted the Benefit. ....... 49

3. The Claims Are Not Barred by Contract. ................... 49

IX. LEAVE TO AMEND SHOULD BE GRANTED IF NECESSARY. ..................................................................... 50

CONCLUSION. ................................................................................ 50

-iii-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admiral Ins. Co. v. Paper Converting Mach. Co.*,
  811 N.W.2d 351 (Wis. 2012) ...............................................................47

*AIG Agency, Inc. v. Missouri Gen. Ins. Agency, Inc.*,
  474 S.W.3d 222 (Mo. App. 2015)........................................................47

*Akiki v. Bank of Am., N.A.*,
  632 F. App'x 965 (11th Cir. 2015)......................................................32

*Amerifirst Props., Inc. v. Fed. Deposit Ins. Corp.*,
  880 F.2d 821 (5th Cir. 1989)...............................................................31

*Arango v. Chase Home Fin., LLC*,
  No. 8:11-cv-2001, 2013 U.S. Dist. LEXIS 8998 (M.D. Fla. Jan. 22,
  2013)........................................................................................................27

*ARC Welding Supply Co., Inc. v. American Welding & Gas, Inc.*,
  No. 3:16-cv-00173-RLY-MPB, 2017 WL 4012106 (S.D. Ind. Sept.
  12, 2017)................................................................................................39

*Arch Ins. Co. v. Allegiant Prof'l Bus. Servs., Inc.*,
  No. CV 11-1675 CAS .........................................................................45

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015)...............................................................47

*Baggett v. Hewlett-Packard Co.*,
  582 F. Supp. 2d 1261 (C.D. Cal. 2007)..............................................40

*Baumer v. Pachl*,
  8 F.3d 1341 (9th Cir. 1993) ...................................................................9

*Beneficial Standard Life Ins. Co. v. Madariaga*,
  851 F.2d 271 (9th Cir. 1988)...............................................................20

*Bias v. Wells Fargo & Co.*,
  942 F. Supp. 2d 915 (N.D. Cal. 2013).................................................13

*Blades v. Countrywide Home Loans, Inc.*,
    No. CIVA1:06CV1000LG-JMR, 2007 WL 2746678 (S.D. Miss.
    Sept. 18, 2007)............................................................................................47

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*,
    162 Cal. App. 4th 858 (2008)....................................................................45

*Boyce v. Freeman*,
    39 P.3d 1062 (Wyo. 2002) .........................................................................48

*Boyle v. United States*,
    556 U.S. 938 (2008) .....................................................................................9

*Brakke v. Econ. Concepts, Inc.*,
    213 Cal. App. 4th 761 (2013)....................................................................35

*Brazil v. Dole Packaged Foods, LLC*,
    660 F. App'x 531 (9th Cir. 2016)...............................................................47

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008) ...................................................................................14

*Browning v. Unilever United States, Inc.*,
    No. SACV1602210AGKESX, 2017 WL 7660643 (C.D. Cal. Apr.
    26, 2017)....................................................................................................47

*Bruton v. Gerber Prod. Co.*,
    703 F. App'x 468 (9th Cir. 2017)...............................................................47

*Cannon v. Wells Fargo Bank N.A.*,
    917 F. Supp. 2d 1025 (N.D. Cal. 2013)......................................................49

*Cannon v. Wells Fargo Bank, N.A.*,
    No. C-12-1376, 2013 U.S. Dist. LEXIS 93080 (N.D. Cal. July 2,
    2013) .........................................................................................................29

*Cannon v. Wells Fargo Bank, N.A.*,
    No. C-12-1376 EMC, 2014 WL 324556 (C.D. Cal. Jan. 29, 2014).............10, 11

*CCA Glob. Partners, Inc. v. Yates Carpet, Inc*,
    No. 4:06 CV 15 JCH, 2006 WL 2883376 (E.D. Mo. Oct. 5, 2006)....................48

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999)...............................................................................34

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- v -

*Century of Progress Prods. v. Vivendi S.A.*,
   No. CV 16-7733 DMG, 2018 WL 4191340 (C.D. Cal. Aug. 28,
   2018) .................................................................................................. 38

*Cirino v. Bank of America, N.A.*,
   No. CV 13-8829 PSG, 2015 WL 3669078 (C.D. Cal. Feb. 10,
   2015) .................................................................................................. 13

*City of Arvada ex rel. Arvada Police Dep't v. Denver Health & Hosp.
   Auth.*,
   403 P.3d 609 (Colo. 2017) ................................................................ 47

*Clancy v. The Bromley Tea Co.*,
   308 F.R.D. 564 (N.D. Cal. 2013) ...................................................... 46

*Cohen v. Trump*,
   No. 10-CV-0940-GPC-WVG, 2014 WL 690513 (S.D. Cal. Feb. 21,
   2014) .................................................................................................. 22

*Dahl v. R.J. Reynolds Tobacco Co.*,
   742 N.W.2d 186 (Minn. App. 2007) ................................................ 47

*Dibidale of La., Inc. v. Am. Bank & Tr. Co.*,
   916 F.2d 300 (5th Cir. 1990) ............................................................ 30

*DSU Aviation, LLC v. PCMT Aviation, LLC*,
   No. 07-1478 SC, 2007 WL 3456564 (N.D. Cal. Nov. 14, 2007)....... 50

*Dugan v. Lloyds TSB Bank, PLC*,
   Nos. C 12–02549 WHA, C 12–02937 WHA, 2012 WL 3860798
   (N.D. Cal. Sept. 5, 2012) .................................................................. 16

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,751 F.3d 990,
   997 (9th Cir. 2014) ........................................................................... 14

*Ellis v. J.P. Morgan Chase & Co.*,
   Case No. 12-cv-03897-YGR, 2015 WL 78190 (N.D. Cal. Jan. 6,
   2015) .................................................................................................. 12

*Ellsworth v. U.S. Bank, N.A.*,
   908 F. Supp. 2d 1063 (N.D. Cal. 2012)................................46, 47, 50

*Eminence Capital LLC v. Speon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) .......................................................... 50

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- vi -

*Erlich v. Menezes*,
   981 P.2d 978 (Cal. 1999) ........................................................................ 38

*Falk v. General Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ............................................... 40

*First Am. Title Ins. Co. v. Westbury Bank*,
   No. 12-CV-1210, 2013 WL 1677911 (E.D. Wis. Apr. 17, 2013) ...... 48

*Foman v. Davis*,
   371 U.S. 178 (1962) ............................................................................ 50

*Forcellati v. Hyland's, Inc.*,
   876 F. Supp. 2d 1155 (C.D. Cal. 2012) ............................................. 46

*Freeman Indus., LLC v. Eastman Chem. Co.*,
   172 S.W.3d 512 (Tenn. 2005) ............................................................ 47

*Gasser v. Kiss My Face, LLC*,
   No. 17-CV-01675-JSC, 2017 WL 4773426 (N.D. Cal. Oct. 23,
   2017) ..................................................................................................... 47

*Ghirardo v. Antonioli*,
   14 Cal. 4th 39 (1996) .................................................................... 46, 47

*Gomez v. Guthy-Renker, LLC*,
   No. 14-01425 JGB, 2015 WL 4270042 (C.D. Cal. July 13, 2015) .... 13

*Grimmett v. Brown*,
   75 F.3d 506 (9th Cir. 1996) ............................................................... 22

*Gustafson v. BAC Home Loans Servicing, LP*,
   No. SACV 11-915-JST ANX, 2012 WL 7071469 (C.D. Cal. Dec.
   20, 2012) .............................................................................................. 46

*Hamilton v. Suntrust Mortg. Inc.*,
   6 F. Supp. 3d 1312 (S.D. Fla. 2014) .................................................. 46

*Harris v. Atlantic Richfield Co.*,
   17 Cal. Rptr. 2d 649 (1993) ............................................................... 38

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
   61 Cal. 4th 988 (2015) .................................................................. 46, 47

*Hernandez v. Path, Inc.*,
   12-CV-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) .................. 34

*Highland Capital, Inc. v. Franklin Nat'l Bank*,
   350 F.3d 558 (6th Cir. 2003) ........................................................ 28, 30

*Hirsch v. Bank of Am.*,
   107 Cal. App. 4th 708 (2003) ................................................................ 47

*Humana Inc. v. Forsyth*,
   525 U.S. 299 (1999) .......................................................... 17, 18, 19

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prod.*
   *Liab. Litig.*,
   No. 17-MD-02777-EMC, 2018 WL 1335901 (N.D. Cal. Mar. 15,
   2018) ..................................................................... 12, 14, 15, 16

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*,
   No. 2:11-CV-07166-MRP, 2012 WL 10731957 (C.D. Cal. June 29,
   2012) ...................................................................................... 12

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014) ........................................... 39, 44

*In re National Western Life Ins. Deferred Annuities Litig.*,
   467 F. Supp. 2d 1071 (S.D. Cal. 2006) ............................................ 19

*In re Wal-Mart Stores, Inc.*,
   505 F. Supp. 2d 609 (C.D. Cal. 2007) ............................................ 25

*Zoeller v. E. Chicago Second Century, Inc.*,
   904 N.E.2d 213 (Ind. 2009) ................................................................ 47

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
   880 F. Supp. 2d 1029 (N.D. Cal. 2012) ............................................ 37

*Jorgensen v. Colorado Rural Properties, LLC*,
   226 P.3d 1255 (Colo. App. 2010) ................................................... 39

*Kane v. Cook*,
   8 Cal. 449 (1857) ...................................................................... 45

*Kang-Shen Chen v. T.T. Grp.*,
    No. SACV140138DOCDFMX, 2014 WL 12725598 (C.D. Cal.
    June 20, 2014) ................................................................................ 23

*Kenty v. Bank One, Columbus, N.A.*,
    92 F.3d 384 (6th Cir. 1996) ........................................................... 32

*Kevin Breyer Concrete, Inc. v. Beutel*,
    No. A09-1547, 2010 WL 2732384 (Minn. Ct. App. Apr. 13, 2010) ................ 49

*Koenig v. Bank of America, N.A.*,
    2013 WL 6839625, at *6 (E.D. Cal. 2013) ........................................ 16

*Lane v. Wells Fargo Bank, N.A.*,
    No. C 12-04026, 2013 U.S. Dist. LEXIS 147022 (N.D. Cal. Oct.
    10, 2013) ......................................................................................... 29

*Lane v. Wells Fargo Bank N.A.*,
    No. C 12-04026 WHA, 2013 WL 269133 (N.D. Cal. Jan. 24, 2013) .............. 46

*Lane v. Wells Fargo, N.A.*,
    No. C 12-04026, 2013 U.S. Dist. LEXIS 58920 (N.D. Cal. Apr. 24,
    2013) ........................................................................................ 28, 30

*Lass v. Bank of Am., N.A.*,
    695 F.3d 129 (1st Cir. 2012) .......................................................... 50

*Le v. Kohls Dep't Stores, Inc.*,
    160 F. Supp. 3d 1096 (E.D. Wis. 2016) ......................................... 49

*Lectrodryer v. SeoulBank*,
    77 Cal. App. 4th 723 (2000) .......................................................... 46

*Leghorn v. Wells Fargo Bank, N.A.*,
    950 F. Supp. 2d 1093 (N.D. Cal. 2013) ......................................... 46

*Lewis v. Wells Fargo & Co.*,
    No. C 08-02670 CW, 2009 WL 1033823 (N.D. Cal. Apr. 16, 2009) .............. 24

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
    431 F.3d 353 (9th Cir. 2005) .......................................................... 20

*Longest v. Green Tree Servicing LLC*,
    74 F. Supp. 3d 1289 (C.D. Cal. 2015) ........................................... 46

*Low v. Wheeler*,
  207 Cal. App. 2d 477 (1962) ........................................................ 39

*Luckey v. Alside, Inc.*,
  245 F. Supp. 3d 1080 (D. Minn. 2017) ........................................ 48

*Marceau v. Int'l Bhd. of Elec. Workers*,
  No. 05-02874-PHX-MHM, 2006 WL 1889600 (D. Ariz. July 7,
  2006) ............................................................................................ 22

*McCune v. Nat'l City Bank*,
  701 F. Supp. 2d 797 (E.D. Va. 2010) ........................................... 31

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*,
  863 F. Supp. 2d 928 (N.D. Cal. 2012) ................................... 46, 50

*MDC Data Ctrs., Inc. v. Int'l Bus. Machs. Corp.*,
  342 F. Supp. 502 (E.D. Pa. 1972) ................................................ 32

*Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co.*,
  50 F.3d 1486 (9th Cir. 1995) ....................................................... 17

*MidCities Metro. Dist. No. 1 v. U.S. Bank Nat. Ass'n*,
  No. 12-CV-03322-LTB, 2013 WL 3200088 (D. Colo. June 24,
  2013) ............................................................................................ 49

*Miller v. Yokohama Tire Corp.*,
  358 F.3d 616 (9th Cir. 2004) ....................................................... 13

*Molus v. Swan*,
  No. CIV. 05CV0452BWMC, 2007 WL 2326132 (S.D. Cal. Aug.
  13, 2007) ...................................................................................... 23

*Morris v. Wells Fargo Bank N.A.*, No. 2:11-cv-474, 2012 WL
  3929805, at *10 (W.D. Penn. Sep. 7, 2012) ................................ 49

*Negrete v. Allianz Life Ins. Co. of North America*,
  927 F. Supp. 2d 870 (C.D. Cal. 2013) .............................. 17, 18, 19

*Newton v. Am. Debt Servs., Inc.*, 75 F. Supp.3d 1048, 1057 (N.D. Cal.
  2014) ............................................................................................ 34

*Nordic Bank PLC v. Trend Grp., Ltd.*,
  619 F. Supp. 542 (S.D.N.Y. 1985) ............................................... 32

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- x -

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) .............................................................. 9, 10, 12, 14

*Oliver v. SD-3C LLC*,
   751 F.3d 1081 (9th Cir. 2014) ........................................................................ 23

*Parsons Steel, Inc. v. First Ala. Bank of Montgomery*,
   679 F.2d 242 (11th Cir. 1982) ........................................................................ 31

*People ex rel. Harris v. Aguayo*,
   11 Cal. App. 5th 1150, 1160 (2017) ............................................................... 35

*People v. Toomey*,
   157 Cal. App. 3d 1 (1984) ............................................................................... 34

*Pincay v. Andrews*,
   238 F.3d. 1106 (9th Cir. 2001) ....................................................................... 23

*R Power Biofuels, LLC v. Chemex LLC*,
   No. 16-CV-00716-LHK, 2016 WL 6663002 (N.D. Cal. Nov. 11,
   2016) ............................................................................................................... 16

*Ravet v. Solomon, Ward, Seidenwurm & Smith, LLP*,
   No. 07 CV 0031 JM (CAB), 2007 WL 2088381 (S.D. Cal. July 17,
   2007) ................................................................................................................. 9

*RBC Bearings Inc. v. Caliber Aero, LLC*,
   No. SACV 121442 FMO (PLAx), 2013 WL 12129619, at *5 (C.D.
   Cal. Apr. 3, 2013) ............................................................................................ 40

*Reiter v. Mutual Credit Corp.*,
   No. 09-0811 AG, 2012 WL 12960765 (C.D. Cal. Aug. 10, 2012) ..................... 8

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) .......................................................................................... 8

*Riverview Health Institute LLC v. Medical Mutual of Ohio*,
   601 F.3d 505 (6th Cir. 2010) .......................................................................... 18

*Robbins v. Hyundai Motor Am.*,
   SACV 14-P00005-JLS (ANx), 2014 WL 4723505 (C.D. Cal. Aug.
   7, 2014), ......................................................................................................... 35

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- xi -

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
  102 P.3d 268 (Cal. 2005)..................................................................38

*Rutherford v. FIA Card Servs., N.A.*,
  No. CV 11-04433 DDP ....................................................................24

*S & N Equip. Co. v. Casa Grande Cotton Fin. Co.*,
  97 F.3d 337 (9th Cir. 1996)........................................................26, 30

*Sandford v. Wells Fargo & Co.*,
  No. SACV 11-502-JST, 2012 WL 12886416 (C.D. Cal. Mar. 5,
  2012)................................................................................................38

*Sanford v. MemberWorks, Inc.*,
  625 F.3d 550 (9th Cir. 2010) ...........................................................16

*Shin v. Kong*,
  80 Cal. App. 4th 498 (2000)..............................................................45

*Simon v. Starbucks Corp.*,
  No. CV 09-9074-GW(PLAX), 2010 WL 11597622 (C.D. Cal. Apr.
  1, 2010)............................................................................................45

*Southern Calif. Dist. Council, Assemblies of God v. Shepherd of Hills*
  *Evangelical Lutheran Church*,
  144 Cal. Rptr. 46 (1978)...................................................................45

*State Comp. Ins. Fund v. Capen*,
  SACV 8:15-cv-01279 AG (CWx), 2015 WL 13298073, *11 (C.D.
  Cal. Dec. 18, 2015)......................................................11, 14, 16, 21, 24

*Steele v. GE Money Bank*,
  No. 08 C 1880, 2009 WL 393860 (N.D. Ill. Feb. 17, 2009) ...............25

*Stitt v. Citibank, N.A.*,
  No. 12-cv-03892-YGR, 2015 WL 75237 (N.D. Cal. Jan. 6, 2015) ....12

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ............................................................15

*Swerdloff v. Miami Nat'l Bank*,
  584 F.2d 54 (5th Cir. 1978)...............................................................32

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- xii -

*Tatung Co., Ltd. v. Shu Tze Hsu,*
   217 F. Supp. 3d 1138 (C.D. Cal. 2016) ........................................... 20, 26

*Tenet Healthsystem Desert, Inc. v. Blue Cross of Calif.,*
   245 Cal. App. 4th 821 (2016) ..................................................... 39, 44

*TRC & Assocs. v. NuScience,*
   No. 2:13-CV-6903-ODW, 2013 WL 6073004 (C.D. Cal. Nov. 18,
   2013) ............................................................................................. 37

*U.S. v. Fernandez,*
   388 F.3d 1199 (9th Cir. 2004) ......................................................... 8

*United States v. Christensen,*
   801 F.3d 970 (9th Cir. 2015) ........................................................... 9

*United States v. French,*
   748 F.3d 922 (9th Cir. 2014) ......................................................... 14

*United States v. Turkette,*
   452 U.S. 576 (1981) ...................................................................... 10

*Utah v. McKesson Corp.,*
   No. C 10-04743 SI, 2011 WL 2884922 (N.D. Cal. July 19, 2011) ................... 22

*Vega v. Jones, Day, Reavis & Pogue,*
   121 Cal. App. 4th 282 (2004) ......................................................... 44

*Walter v. Drayson,*
   538 F.3d 1244 (9th Cir. 2008) .......................................................... 9

*Wang v. OCZ Tech. Grp., Inc.,*
   276 F.R.D. 618 (N.D. Cal. 2011) ..................................................... 36

*Ward v. Chanana,*
   No. C 07-06290 JW, 2008 WL 5383582 (N.D. Cal. Dec. 23, 2008) ................ 22

*Westways World Travel v. AMR Corp.,*
   182 F. Supp. 2d 952 (C.D. Cal. 2001) ................................................. 9

*Wilber v. Top Global Capital,*
   No. 12-1448 AG, 2013 WL 12133638 (C.D. Cal. Aug. 2, 2013) ...................... 9

*Williams v. Wells Fargo Bank N.A.*,
   No. 11-21233-CIV, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011) ............. 46, 49

*Wu v. Sunrider Corp.*,
   No. CV 17-4825 DSF (SSX), 2017 WL 6880087 (C.D. Cal. Oct.
   10, 2017) ................................................................................................ 47

*Young v. Cree, Inc.*,
   No. 17-CV-06252-YGR, 2018 WL 1710181 (N.D. Cal. Apr. 9,
   2018) ...................................................................................................... 47

*Zoeller v. E. Chicago Second Century, Inc.*,
   904 N.E.2d 213 (Ind. 2009) .................................................................. 47

**Statutes**

12 U.S.C. § 1972(1) ...................................................................................... 31

12 U.S.C. §§ 1972(1)(A), (C) ...................................................................... 26

18 U.S.C. § 1961(4) ........................................................................................ 9

Cal. Civ. Proc. Code § 338 ........................................................................... 45

Cal. Ins. Code §§ 790.01-03 ........................................................................ 18

Cal. Ins. Code § 790.02 ............................................................................... 19

California's Unfair Competition Law .............................................................. 2

McCarran-Ferguson Act
   ............................................................................................ 2, 17, 18, 19

**Rules**

Fed. R. Civ. P. 15(a) ................................................................................... 50

Federal Rule of Civil Procedure 12(b)(6) ..................................................... 34

L.R. 7-18 ...................................................................................................... 33

Rule 9(b) .................................................................... 11, 13, 14, 16, 42

Rule 30(b)(6) ................................................................................................ 43

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

**Other Authorities**

Manual for Complex Litigation Fourth, §21.222 ..................................................... 25

*Ninth Cir. Manual of Model Civ. Jury Instrs.*, No. 8 Civil RICO Cmts.
    at 112 (updated July 2017); ................................................................... 9

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- xv -

# <u>GLOSSARY</u>

| | |
|---|---|
| ¶ — | Paragraph number of the Amended Complaint |
| Amended Complaint | Amended Consolidated Class Action Complaint filed August 17, 2018 (ECF No. 129-1) |
| BHCA | Bank Holding Company Act |
| Balboa | Balboa Insurance Company, ¶ 30 |
| Complaint | Consolidated Class Action Complaint filed January 26, 2018 (ECF No. 49) |
| CPI | Collateral Protection Insurance |
| CPI Vendor | National General and its predecessors including Balboa, Meritplan, Newport, and QBEF |
| Defendants | Defendants Wells Fargo & Company, Wells Fargo Bank, N.A., National General Holdings Corp., and National General Insurance Company |
| GAA | General Agency Agreements, ¶ 51 |
| IAA | Insurance Administration Agreements, ¶ 51 |
| Meritplan | Meritplan Insurance Company, ¶ 30 |
| MFA | McCarran-Ferguson Act |
| National General | Defendants National General Holdings Corp. and National General Insurance Company |
| Newport | Newport Management Corporation, ¶ 30 |
| NG | National General Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint and Memorandum of Points and Authorities in Support Thereof, filed October 1, 2018 (ECF No. 146-1) |
| Order | [In Chambers] Order re Motions to Dismiss entered June |

|   |   |   |
|---|---|---|
| 1 |  | 18, 2018 (ECF No. 98) |
| 2 | Plaintiffs | Plaintiffs Angelina Camacho, Odis Cole, Nyle Davis, Duane Fosdick, Regina Gonzalez, Brandon Haag, Paul Hancock, Dustin Harvard, Brian Miller, Analisa Moskus, Keith Preston, Victoria Reimche, Dennis Small, and Bryan Tidwell |
| 6 | QBEF | QBE First Insurance Agency, Inc., ¶ 31 |
| 7 | RICO | Racketeer Influenced and Corrupt Organizations Act |
| 8 | RISC | Retail Installment Sale Contract |
| 10 | UCL | California's Unfair Competition Law |
| 11 | Wells Fargo | Wells Fargo & Company and Wells Fargo Bank, N.A. |
| 12 | WestFin | WestFin Insurance Agency, Inc. |
| 13 | WF | Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. dba Wells Fargo Dealer Services' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint; Memorandum of Points and Authorities in Support Thereof, filed October 1, 2018 (ECF No. 142) |

## **PRELIMINARY STATEMENT**

This case challenges a multi-year scheme by which Wells Fargo and National General, along with its predecessors, forced millions of unsuspecting consumers to pay for unnecessary and unwanted Collateral Protection Insurance, or "CPI."  The Amended Complaint indisputably cures the Court's prior concerns over the lack of specificity in Plaintiffs' fraud and RICO allegations and clarifies points of controlling authority for Plaintiffs' Bank Holding Company Act ("BHCA") claim.  Plaintiffs identify the particulars of the scheme in exacting detail with references to, and quotations from, dozens of Defendants' internal documents as well as the testimony of several Wells Fargo corporate representatives.  Defendants cannot legitimately argue that the Amended Complaint lacks sufficient detail about the fraudulent CPI scheme, their roles in directing and conducting it, and their misrepresentations and omissions of material fact that defrauded millions of borrowers.

Plaintiffs allege that, in effectuating a 14-year long scheme to bilk hundreds of millions of dollars from consumers by force-placing CPI, Defendants maintained a practice of sending standardized form letters to borrowers 42 and 77 days after they appeared in Defendants' records, which falsely represented that:  (1) Wells Fargo had not received proof of insurance, when in fact it had; (2) Wells Fargo would need to purchase insurance to protect its interest in borrowers' vehicles, when Defendants knew that it did not; and (3) Wells Fargo's affiliate would "earn" a commission, when that payment was actually a kickback for force-placing CPI.  Plaintiffs allege exactly why these false statements are attributable to both Defendants:  National General wrote and mailed the deceptive letters, while Wells Fargo approved their content and authorized their mailing on its own letterhead.  As if this were not enough, Wells Fargo compounded the fraud by issuing billing statements that failed to identify CPI charges at all.  It is no surprise that a Wells Fargo audit concluded:  "***Customers may not be aware that CPI charges are included and the balance due has increased and are negatively impacted with potential NSF and late fees.  Risks:  Negative impact***

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

1     ***to customer (deceptive)….***" ¶ 141 (emphasis added).

2        Defendants' arguments in favor of dismissal all lack merit.  As the Court

3 previously concluded, Plaintiffs' allegations satisfy the RICO enterprise and conduct

4 elements.  Plaintiffs allege the "who, what, where, when, and how" of Defendants'

5 false and misleading statements and omissions of material fact with more than

6 sufficient specificity to demonstrate a pattern of racketeering activity through mail

7 and wire fraud.  The same allegations support Plaintiffs' claims for unlawful, unfair,

8 and fraudulent business practices under California's Unfair Competition Law

9 ("UCL") and for fraud by concealment.  Defendants' duty to disclose is evident from

10 their superior knowledge of the fraudulent CPI scheme, active concealment of the

11 true nature of their scheme, and deliberate half-truths they made to Plaintiffs and

12 other borrowers.  Defendants' own internal documents and testimony belie their

13 contention that they somehow completely disclosed the CPI scheme and that National

14 General was merely an outside service provider, rather than a knowing, willing, and

15 active participant in the CPI Enterprise.

16        Defendants' remaining contentions are also unavailing.  Their efforts to

17 dismiss certain individual Plaintiffs' claims or truncate the class period on statute of

18 limitations grounds are premature and meritless.  Plaintiffs are entitled to the benefit

19 of the injury discovery rule, continuing accrual doctrine, and tolling from fraudulent

20 concealment, especially in light of Wells Fargo's internal acknowledgment that its

21 CPI billing practices were "deceptive."  Wells Fargo's attempt to invoke reverse-

22 preemption under the McCarran-Ferguson Act ignores controlling legal authority to

23 the contrary.  Wells Fargo's forcing Plaintiffs and other borrowers to pay for

24 unnecessary CPI charges, lest their cars be repossessed, is exactly the type of unusual,

25 exploitative conditioning of credit that the BHCA prohibits.  Finally, Plaintiffs allege

26 the elements of unjust enrichment to state a claim under California law as well as the

27 law of eight additional states.

28        The Court should deny Defendants' motions to dismiss in their entirety.

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

## <u>SUMMARY OF PLAINTIFFS' ALLEGATIONS</u>

From 2002 until 2016, Wells Fargo force-placed CPI on millions of automobile loan borrowers regardless of whether they maintained sufficient independent insurance.  ¶ 51.  This nearly decade-and-a-half-long fraudulent scheme was accomplished through a continuous enterprise with National General and its predecessors (the "CPI Vendor").  To achieve the common goal of this enterprise—increasing revenues from unlawful CPI and ancillary charges—Wells Fargo and the CPI Vendor worked together to draft, review, approve, and sign false and misleading communications to borrowers.  ¶¶ 113–44. These communications hid the true nature of the unnecessary charges—CPI premium and interest—added to borrowers' accounts, as well as unearned commissions (that is, kickbacks).  As a result, borrowers were billed for charges that they did not actually owe, and often did not detect, with lasting damage to their finances and creditworthiness.  ¶¶ 113–36, 172, 190, 194, 199, 202, 207, 210, 215–16, 218, 223, 225, 228, 229, 234–36, 241–42, 245, 250, 252–53, 258, 262, 267–69, 274, 277, 282, 284, 287, 292, 295, 300, 302.

Federal regulators have already fined Wells Fargo $1 billion in part for the CPI scheme.  ¶ 185.  While a 2017 report prepared by Wells Fargo's outside consulting firm Oliver Wyman estimated that the bank owed $73 million to its customers for CPI practices occurring between 2012 and 2016, ¶ 172, discovery has shown that the CPI scheme *actually* began in 2002, when Wells Fargo affiliates WFS and WestFin entered into agreements with National General's predecessors.  ¶¶ 51–52, 58.

The CPI scheme worked this way:  Wells Fargo opened a loan file for a borrower and then transferred it to the CPI Vendor, which was responsible for determining whether a borrower maintained acceptable auto insurance.  Yet both Defendants routinely disregarded borrowers' proof of insurance in order to charge borrowers for force-placed CPI.  ¶¶ 53, 109–110.  Forty-two days after a borrower appeared in Defendants' records, and regardless of whether the borrower supplied proof of insurance, the CPI Vendor mailed to the borrower a so-called "Insurance

- 3 -

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

Request"—a form letter written and sent by the CPI Vendor, and reviewed, approved, and signed by Wells Fargo. ¶ 113–16. The Insurance Request Letter contained several false or misleading representations of material fact.

*First*, the Insurance Request Letter stated: "Please be advised that we have not received insurance information for your financed vehicle," and "[i]f we do not receive evidence of adequate insurance with an effective date on or before [date], we may buy insurance to protect our interest in your vehicle." ¶¶ 118–19. In truth, borrowers, including the named Plaintiffs, had furnished Wells Fargo with proof of insurance, which was also available electronically. ¶ 118. Thus, ***Defendants misrepresented that Plaintiffs had to purchase insurance***. ¶ 119.

*Second*, Insurance Request Letters prior to February 2013 stated that "the insurance agency, which is an affiliate of Wells Fargo Dealer Services [or its predecessors], will earn a commission if this insurance is purchased." In reality, the agency, WestFin, did not perform any service to "earn" this commission; the commission was a pure kickback for the placement of CPI. ¶ 120. Wells Fargo's corporate representative testified that the only reason WestFin existed was to collect commissions, which it could do as an insurance agency, while Wells Fargo as a lender could not. ¶ 59. Although Wells Fargo at first justified WestFin's commission as covering administrative costs, nothing within borrowers' Retail Installment Sale Contracts ("RISCs") authorized Wells Fargo to charge for administrative fees, and no communications sent by Wells Fargo to customers disclosed such charges; thus, ***Defendants misrepresented the reasons for WestFin's commission***. ¶ 121.

*Third*, many letters issued between October 2005 and February 2013 stated that the commission was "15% of the premium." In truth, it was *never* 15 percent; it was almost always 17.3 percent during that period; thus, ***Defendants misrepresented the actual cost of WestFin's commission***. ¶ 122.

Twenty-one days after sending the Insurance Request Letter, the CPI Vendor would attempt to place telephone calls to the borrower, or the borrower's insurance

agent or insurance company.  ¶ 125–26.  Then, fourteen days later (77 days after the borrower's appearance in the relevant records), the CPI Vendor would mail to the borrower a letter entitled "Coverage Issued."  ¶ 129.  Like the first letter, this second letter was written and sent by the CPI Vendor, and reviewed, approved, and signed by Wells Fargo.  ¶ 131.  The second letter contained similar misrepresentations.

For instance, the Coverage Issued Letter stated:  "Our records indicate an absence of required insurance coverage since [date]," and "[s]ince we have not received proof of the required coverage, we have exercised our contractual right to purchase insurance coverage at your expense to protect our interest in your financed vehicle."  ¶ 132–33.  The named Plaintiffs had already furnished proof of insurance; thus, *Defendants again misrepresented that Plaintiffs had to purchase insurance*.  *Id*.  The Coverage Issued Letter also omitted the material fact that charges paid between March 2002 and February 2013 included WestFin's unearned commission.  Wells Fargo's corporate representative testified that Defendants had consciously chosen not to disclose this; thus, *Defendants again misrepresented the nature of WestFin's commission*.  ¶ 136.

Wells Fargo's own audit concluded that the bank's CPI billing practices were "deceptive" and perhaps unlawful.  ¶ 141.  As the audit explained:

> Current billing statement does not provide an itemized break down of charges including CPI that makes up the total due balance.  As a result the monthly statements do not clearly identify monthly payment requirements, payment allocation, and charges and fees.  *Customers may not be aware that CPI charges are included and balance due has increased and are negatively impacted with potential NSF* [non-sufficient funds] *and late fees.*
>
> *Risks: Negative impact to customer (deceptive)* and violation of regulations (CFBP)

*Id*.  Wells Fargo's corporate representative testified that such "deceptive" practices

1   had been in place throughout the CPI Program's existence.  ¶ 142.

2          Wells Fargo did nothing to change them.  ¶ 71.  Between 2002 and 2016

3   borrowers were unable to remove falsely reported CPI-related delinquencies from

4   their credit reports.  ¶ 149.  Customers who paid their bills at a Wells Fargo branch

5   bank regularly became delinquent because the branch bankers could not "see the

6   correct amount due when there is an increase due to the addition of CPI."  ¶ 151.

7   This problem was known but not corrected before 2016.  *Id.*  Wells Fargo's

8   management was briefed regarding the seriousness of the problems with the CPI

9   Program in April and July 2012, but left the scheme in place with "[m]inimal

10  changes" for four more years.  ¶¶ 162–63.  Finally, fearing that "[k]eeping the

11  program could lead to reputational risk and potential legal exposure," Wells Fargo

12  discontinued the CPI Program effective September 30, 2016, yet continued to assess

13  CPI charges on borrowers for whom it had previously force-placed CPI.  ¶¶ 165- 166.

14         The CPI Vendor was critical to the enterprise.  Among other responsibilities,

15  National General and its predecessors underwrote CPI, accepted payments for

16  premiums on CPI, paid unearned commissions to WestFin, drafted and sent the

17  Insurance Request and Coverage Issued Letters, placed CPI-related calls to

18  borrowers, and participated in regular meetings with Wells Fargo to discuss the state

19  of the CPI Enterprise.  ¶¶ 29-32, 49, 57, 59-65, 68–70, 113–15, 125, 129–31.  Further,

20  the CPI Vendor knew that borrowers maintained sufficient insurance and that the

21  letters it sent to borrowers were fraudulent.  ¶¶ 53–56, 111.

22         The named Plaintiffs were all victims of Defendants' scheme.  Each Plaintiff

23  maintained sufficient insurance, which Defendants knew because each Plaintiff had

24  furnished proof of insurance.  ¶¶ 189–90, 198–99, 206–07, 214, 216, 222–23, 233–

25  34, 240–41, 249, 252, 257–58, 266–67, 273–74, 281–82, 291–92, 299–300.  Each

26  Plaintiff nonetheless had CPI charges added to his or her balance.  ¶¶ 190, 199, 207,

27  215–16, 223, 225, 228, 234–35, 241–42, 250, 252, 258, 267–68, 274, 282, 284, 292,

28  300.  Defendants sent to each Plaintiff the Insurance Request and Coverage Issued

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 6 -

Letters 42 days and 77 days after loan origination, which falsely stated that Wells Fargo lacked proof of adequate insurance and would therefore add CPI fees.  ¶¶ 194, 202, 210, 218, 229, 236, 245, 253, 262, 269, 277, 287, 295, 302.

Due to the admittedly "deceptive" nature of Defendants' practices, no Plaintiff learned, or could have learned, of the true nature of Defendants' scheme before the *New York Times* published an article identifying the fraud on July 27, 2017, nearly a year after Wells Fargo terminated the CPI Program.  ¶¶ 166, 171, 195, 203, 211, 219, 230, 237, 246, 254, 263, 270, 278, 288, 296, 303.

## <u>ARGUMENT</u>

## I.   <u>PLAINTIFFS ALLEGE A PLAUSIBLE  RICO CLAIM.</u>[1]

In its Order on Defendants' first motions to dismiss, this Court explained:

> National General attacks Plaintiffs' RICO claims primarily by arguing that National General wasn't part of the 'enterprise', that it didn't 'direct' the enterprise's affairs, and that it didn't participate in any 'racketeering activity' … Fundamentally, National General's arguments rely on the notion that it was merely providing legitimate business services to Wells Fargo as an outside services provider.  But a key allegation in Plaintiffs' complaint is that National General (and the other CPI providers) either didn't check or ignored whether Plaintiffs had the appropriate insurance.  This coupled with appropriate allegations of fraudulent conduct or purpose might sufficiently state a RICO claim against National General.

Order at 16.  Plaintiffs bolster these allegations against National General and its predecessors in the Amended Complaint.  Nonetheless, National General again argues that Plaintiffs fail to allege that the CPI Vendor:  (1) participated in improper

---

[1] National General makes the same arguments made on behalf of each CPI Vendor. NG at 22.  Plaintiffs allege that Wells Fargo, National General, and National General's predecessors "operated the CPI Program, as a single continuous enterprise from its inception in March 2002 until its termination in September 2016."  ¶ 66. There were no material changes in the administration of the CPI Program. ¶¶ 71, 82. Therefore, Plaintiffs' arguments and allegations apply equally to National General, QBEF, and Balboa.

conduct; (2) was part of an enterprise; (3) engaged in a pattern of racketeering; and (4) participated in a pattern of racketeering activity.  These arguments fail.

### A. The CPI Vendor Participated in the Conduct of the CPI Enterprise.

National General's claim that Plaintiffs do not plausibly allege that the CPI Vendor participated in, and directed the affairs of, the CPI Enterprise is baseless.  "In order to 'participate, directly or indirectly, in the conduct of [an] enterprise's affairs,' one must have some part in directing those affairs.  Of course, the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs … but *some* part in directing the enterprise's affairs is required."  *Reves v. Ernst & Young*, 507 U.S. 170, 178-79 (1993) (italics in original); *see also Reiter v. Mutual Credit Corp*., No. 09-0811 AG (RNBx), 2012 WL 12960765, *4 (C.D. Cal. Aug. 10, 2012).   A defendant need not be in-charge or have "significant control over or within [the] enterprise" to be liable.  *Reves*, 507 U.S. at 179 n.4.  This is because "[a]n enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management."  *U.S. v. Fernandez*, 388 F.3d 1199, 1228 (9th Cir. 2004).

The CPI Vendor played a vital role in the CPI Enterprise by:  (1) issuing CPI certificates knowing they were redundant; (2) ignoring proof of insurance; (3) misrepresenting its efforts to verify customers' insurance; (4) authoring and mailing false and misleading "Insurance Request" and "Coverage Issued" Letters to borrowers; and (5) paying undisclosed kickbacks to Wells Fargo.  ¶¶ 58-65, 109-24, 129-39, 345.  The CPI Vendor also played an active role in monthly and quarterly review meetings with Wells Fargo.  ¶¶ 68-70.   During these meetings, the CPI Vendor and Wells Fargo discussed performance metrics for the CPI scheme.  ¶¶ 68-69.  The CPI Vendor prepared and circulated to Wells Fargo monthly "scorecard" and decks of metrics for the CPI Program including data about loan volume and CPI penetration; CPI premiums, commissions, and trends; CPI distribution by state; borrower account balances and premium rate percentages; CPI letter volume; cancel

percentages, loss experiences, and trends; CPI financial results; CPI claims experience, performance, severity, and payments; and other results. ¶ 69. Put simply, the CPI Enterprise could not have operated without National General and its predecessors. At a very minimum, the CPI Vendor played at least "*some* part" in directing the affairs of the CPI Enterprise.[2]

## B. The CPI Vendor Was an Active Member of the CPI Enterprise.

A RICO enterprise is "any individual partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *Boyle v. United States*, 556 U.S. 938, 944 (2008); *United States v. Christensen*, 801 F.3d 970, 985 (9th Cir. 2015). A RICO enterprise "is obviously broad … [with] a wide reach." *Wilber v. Top Global Capital*, No. 12-1448 AG (JPRx), 2013 WL 12133638, *5 (C.D. Cal. Aug. 2, 2013) (brackets in original); *Odom v. Microsoft Corp.*, 486 F.3d 541, 548 (9th Cir. 2007). "No particular organizational structure, separate or otherwise, is necessary for an associated-in-fact enterprise." *Ninth Cir. Manual of Model Civ. Jury Instrs.*, No. 8 Civil RICO Cmts. at 112 (updated July 2017); *Boyle*, 556 U.S. at 948. To plead a RICO enterprise, Plaintiffs must allege: (1) a "[union] or group of individuals associated together for a common purpose"; (2) with "an ongoing organization,

---

[2] National General's authorities do not support its arguments. *See Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (no conduct where attorney merely provided legal services but was not "indispensable to the achievement of the enterprise's goal"); *Ravet v. Solomon, Ward, Seidenwurm & Smith, LLP*, No. 07 CV 0031 JM (CAB), 2007 WL 2088381, at *4 (S.D. Cal. July 17, 2007) (no allegation that the "entities and individuals exhibit a structure or mechanism for controlling and directing their collective affairs on an ongoing basis," and the plaintiff's complaint appeared to be "based on two separate, isolated legal disputes having little relation to each other"); *Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952, 961-62 (C.D. Cal. 2001) (no facts that the defendant "participated in the operation or management of any of the alleged RICO enterprises"); *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) (attorney who did some "sporadic" legal work over only half the duration of the enterprise did not conduct its affairs).

formal or informal"; and (3) the "various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *Odom*, 486 F.3d at 548.

The Amended Complaint readily satisfies these requirements. It shows that the CPI Vendor far exceeded the type of work performed by any lawful outside service provider and was indispensable to the CPI Enterprise's success. ¶¶ 334-36, 338. The CPI Vendor oversaw and executed a highly unconventional CPI program for the common purpose of profiting from fraudulent CPI premiums and kickbacks. ¶¶ 8, 100-102, 330, 334. The CPI Vendor: force-placed unnecessary CPI, knowing that the loans were secured by sufficient automobile insurance, ¶ 345(c); ignored proof of insurance, ¶¶ 6, 109-12, 345(d); misrepresented that it would investigate whether borrowers had insurance, ¶¶ 6, 345(b); inflated premiums to pay undisclosed kickbacks to Wells Fargo, ¶¶ 5, 44-45, 58-65, 334, 345(f); and authored and mailed false and misleading communications to borrowers. ¶¶ 113-124, 129-39, 345(g).

Plaintiffs' allegations show Defendants' common purpose. *Cannon v. Wells Fargo Bank, N.A.*, No. C-12-1376 EMC, 2014 WL 324556 (C.D. Cal. Jan. 29, 2014), is instructive. In *Cannon*, plaintiffs sued Wells Fargo and its underwriter, ASIC, for RICO violations, alleging that defendants engaged in a scheme to force-place flood and hazard insurance on their homes by charging inflated premiums that included unlawful tracking fees and kickbacks disguised as commissions to Wells Fargo. Judge Chen held that plaintiffs adequately alleged a RICO enterprise:

> ASIC allegedly agreed with Wells Fargo and WFI to pay them kickbacks in exchange for purchasing force-placed insurance exclusively from ASIC, the premiums of which were twice to ten times market rates. TAC ¶¶ 4-7. The common purpose was to "increase and maximize revenues of Wells Fargo and ASIC by forcing Plaintiffs and members of the Classes to pay artificially inflated premiums for flood and hazard insurance through a scheme that manipulated the premiums to cover kickbacks and expenses associated with monitoring Wells Fargo's entire loan portfolio." TAC ¶ 166. The ongoing agreements show that the Defendants functioned as a "continuing unit." This

- 10 -

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

suffices to allege a RICO enterprise.

*Id.* at *3.

Plaintiffs' allegations are even stronger than those in *Cannon*. Plaintiffs allege that the CPI Vendor agreed to pay kickbacks to Wells Fargo in exchange for force-placing CPI at above-market rates on a captive market of millions of borrowers who already had coverage. ¶¶ 5, 44-46, 51, 58-65, 138. Their common purpose was to unlawfully extract hundreds of millions of dollars from Plaintiffs and the Class by collecting premiums, kickback commissions, and other payments. ¶¶ 79-93, 334. The ongoing agreements, coordinated activities, financial ties, and regular exchanges of information between Defendants show that the CPI Enterprise operated as a "continuing unit." ¶¶ 66-78, 337–340.

The alleged misrepresentations by the CPI Vendor easily satisfy Rule 9(b). Plaintiffs allege that the CPI Vendor authored and systematically mailed false and misleading Insurance Request and Coverage Issued Letters within a specified period after loan origination, even though the borrowers had provided proof of insurance. ¶¶ 113-39, 187-89, 194, 196-98, 204-06, 210, 212-14, 218, 220-22, 229, 231-33, 236, 238-40, 245, 247-49, 253, 255-57, 262, 264-66, 269, 271-73, 277, 279-81, 287, 289-91, 295, 297-99, 302.[3] Plaintiffs also allege, in detail, why these letters were false and misleading, ¶¶ 118-122, 132-137, and that Wells Fargo provided the CPI Vendor with borrower information, but failed to check for, or ignored proof of, insurance before force-placing CPI. ¶¶ 6, 52-57, 66-67, 103-112. *See State Comp. Ins. Fund*

---

[3] National General argues that Plaintiffs fail to allege that they had *any* communications with, or submitted any proof of insurance to, the CPI Vendor. But, this argument conveniently ignores that the CPI Vendor owned and operated all means identified in the Insurance Request Letters by which borrowers could provide responsive information, including a post office box, toll-free telephone number, fax number, and website. ¶ 123. As a result, any responsive communications were with the CPI Vendor, even though the borrowers reasonably believed they were communicating with Wells Fargo. ¶¶ 115, 123.

*v. Capen*, SACV 8:15-cv-01279 AG (CWx), 2015 WL 13298073, *11 (C.D. Cal. Dec. 18, 2015) ("*Capen*") (citing *Neubronner*, 6 F.3d at 671–72).

National General cannot evade liability by arguing that the CPI Vendor was engaged in facially legitimate business activity. The Ninth Circuit rejected that premise in *Odom*, 486 F.3d at 552, holding that a lawful promotional contract between Microsoft and Best Buy "provided additional evidence," not less evidence, that the companies formed a RICO enterprise. Not surprisingly, National General ignores *Odom*, even though this Court relied on it in upholding the sufficiency of Plaintiffs' RICO enterprise allegations on the first motions to dismiss. Order at 7-8. *Odom* is not alone. The court in *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 17-MD-02777-EMC, 2018 WL 1335901, at *33 (N.D. Cal. Mar. 15, 2018) ("*EcoDiesel*"), similarly rejected National General's "legitimate business activity" argument, concluding that plausible allegations of a deceitful purpose render even legitimate business transactions subject to RICO.

National General's authorities—which were cited in the first motions to dismiss *and* rejected by this Court—are inapposite because they dealt with plaintiffs who merely alleged arms-length business relationships, generally between the defendants and nonparty vendors. *See Stitt v. Citibank, N.A.*, No. 12-cv-03892-YGR, 2015 WL 75237, at *5 (N.D. Cal. Jan. 6, 2015) (plaintiffs offered no facts that the property inspector even knew of Citibank's fraudulent practices, let alone engaged in any conduct beyond performing routine third-party inspections); *Ellis v. J.P. Morgan Chase & Co.*, Case No. 12-cv-03897-YGR, 2015 WL 78190, at *6 (N.D. Cal. Jan. 6, 2015) (no factual allegations that "third-party vendors share Chase's fraudulent purpose of performing unnecessary property inspections, or that these entities have in any way participated in the development of a scheme to achieve this end"); *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, No. 2:11-CV-07166-MRP, 2012 WL 10731957, at *1, 9 (C.D. Cal. June 29, 2012) (finding it implausible that "thousands of diverse and disparate entities shared a common purpose and

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

cooperated with each other in furtherance of that purpose," when they were "actively compet[ing] with each other for Countrywide's business").[4]

As in *Cannon*, Plaintiffs here allege coordination far beyond an arms-length business relationship.  Plaintiffs allege that the CPI Vendor performed key functions that were indispensable to the CPI Enterprise, such as authoring and mailing false and misleading correspondence to borrowers, knowingly misrepresenting customers' insurance coverage, and paying undisclosed kickbacks to Wells Fargo.  These actions defy any explanation other than what Plaintiffs allege:  a common purpose to profit on fraudulent CPI premiums and kickbacks from millions of captive customers.

## C.  The CPI Vendor and Wells Fargo Participated in a Pattern of Racketeering Activity.

Plaintiffs plausibly allege that all Defendants participated in a pattern of racketeering activity.  There is no merit to either National General's argument that Plaintiffs have not sufficiently alleged the CPI Vendor committed at least two acts of mail or wire fraud, or Wells Fargo's assertion that the fraud was somehow disclosed.

"Racketeering activity" includes mail and wire fraud.  *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 937 (N.D. Cal. 2013).  A claim for mail or wire fraud requires allegations that defendants (1) formed a scheme or artifice to defraud, (2) used the U.S. mails or wires in furtherance of the scheme, and (3) did so with the specific intent to deceive or defraud.  *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004).  Rule 9(b) only requires a "plaintiff to plead the predicate

---

[4] The remainder of National General's cases are also inapposite. *See Gomez v. Guthy-Renker, LLC*, No. 14-01425 JGB (KKx), 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015) (complaint did not allege anything beyond "a routine contractual relationship for services as an independent enterprise"; plaintiff failed to allege payment processors shared in defendant's common purpose); *Cirino v. Bank of America, N.A.*, No. CV 13-8829 PSG (MRWx), 2015 WL 3669078, at *4 (C.D. Cal. Feb. 10, 2015) (dismissing RICO allegations where "[p]laintiff does not allege that the vendors were involved in deciding when or why to conduct inspections").

fraudulent acts for RICO with particularity." *Capen*, 2015 WL 13298073, at \*11; *Odom*, 486 F.3d at 554.  Intent can be pled generally and inferred from the scheme itself or by circumstantial evidence. *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014); *United States v. French*, 748 F.3d 922, 935 (9th Cir. 2014).

First, the Amended Complaint includes extensive allegations that the CPI Vendor and Wells Fargo formed a scheme to defraud.  *See, e.g.*, ¶¶ 2, 5-6, 43-48, 330.   Defendants conveniently ignore paragraph 348(d)-(g) of the Amended Complaint, which succinctly alleges each Defendant's use of the mails and wires to send false and misleading letters, telephone calls, and billing statements to borrowers at specified times.  This paragraph is supported by pages of detail recounting the "who, what, where, when, and how" of the CPI Vendor's false and misleading Insurance Request and Coverage Issued Letters and telephone calls.   ¶¶ 113-39. "[A]ny 'mailing that is incident to an essential part of the scheme satisfies the mailing element, even if the mailing itself contain[s] no false information.'" *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (quoting *Schmuck v. United States*, 489 U.S. 705, 712 (1989)).  "The use of the mails or wires instead only needs to be 'a step in the plot.'" *EcoDiesel*, 2018 WL 1335901, at \*34 (quoting *United States v. Garlick*, 240 F.3d 749, 792 (9th Cir. 2004) (internal quotation marks omitted)).  Plaintiffs' allegations more than satisfy Rule 9(b).

Plaintiffs allege in detail that Wells Fargo charged borrowers for CPI—thereby falsely representing that those charges were due and owed—while mailing billing statements that failed to provide an itemized breakdown of CPI charges.  ¶¶ 141-44. This concealed the CPI charges and allowed Defendants to perpetuate the scheme for years.  An internal Wells Fargo audit admitted that, because of these billing practices, "***Customers may not be aware that CPI charges are included and balance due has increased and are negatively impacted with potential NSF and late fees.  Risks: Negative impact to custom (deceptive)....***"  ¶ 141 (emphasis in Complaint).  These

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 14 -

billing practices alone satisfy the "use of wires or mails" element for *all* Defendants. *See EcoDiesel*, 2018 WL 1335901, at *34–35 ("'[K]nowing participants in the scheme are legally liable for their *co-schemers* use of the mails or wires.'") (quoting *United States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir. 2002)); *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("[T]here is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify *false statements* made by each and every defendant.") (emphasis in original).

In addition, Plaintiffs provide detailed allegations about the CPI Vendor's and Wells Fargo's daily use of the mail and wires to exchange data about customer accounts, demand customer payments, issue collections notices, misrepresent borrower delinquencies to credit agencies, and falsely identify that repossession of borrowers' vehicles was authorized. *See, e.g.,* ¶¶ 6-7, 51-57, 66-67, 109-12, 140-44, 190-94, 199-202, 207-10, 215-18, 223-29, 234-36, 241-45, 250-53, 258-62, 267-69, 274-77, 282-87, 292-95, 300-02, 348(a)-(i). These types of unlawful acts took place on a systematic basis for nearly a decade-and-a-half.

Second, as detailed in Section VII *infra*, Wells Fargo's claims that it disclosed (1) the fraud surrounding its placement of CPI, (2) the CPI charges on borrowers' billing statements, and (3) its receipt of kickbacks in the form of unearned commissions and other compensation, each defy logic. Plaintiffs' allegations are not pled in a vacuum. Wells Fargo's own internal audit and corporate representative confirm that the bank's CPI billing practices were "*deceptive*." ¶¶ 7, 141-42. This audit and the subsequent $1 billion fine for fraudulent behavior speak volumes.

Third, the Amended Complaint demonstrates that Defendants fraudulently communicated to Plaintiffs personally. Plaintiffs: (1) allege that the CPI Vendor authored and sent false and misleading Insurance Request and Coverage Issued Letters within specified times after loan origination, ¶¶ 113, 129; (2) explain that the letters were sent directly to borrowers, including Plaintiffs, ¶¶ 194, 202, 210, 218,

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 15 -

236, 245, 253, 262, 269, 277, 287, 295, 302; and (3) detail the misrepresentations in those letters, ¶¶ 118-22, 132-34, 136-37.  These allegations readily satisfy Rule 9(b).

National General's authorities are inapposite.  In *Koenig v. Bank of America, N.A.*, the court dismissed a RICO claim brought by a *pro per* plaintiff for failing to allege "any of the circumstances surrounding the fraud, such as the dates the letters were sent, to whom the letters were sent, who sent the letters on behalf of Defendant, and what statements contained in the letters were false and why those statements are untrue." 2013 WL 6839625, at *6 (E.D. Cal. 2013).  But, Plaintiffs have done all of those things here.  The courts in *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2016 WL 6663002, at *14 (N.D. Cal. Nov. 11, 2016), and *Dugan v. Lloyds TSB Bank, PLC*, Nos. C 12–02549 WHA, C 12–02937 WHA, 2012 WL 3860798, at *1 (N.D. Cal. Sept. 5, 2012), were not faced with a RICO claim.  In *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010), the Ninth Circuit rejected the plaintiffs' mail and wire fraud claims because the plaintiffs were unable "to remember phone calls *they* made or mailings *they* received."  *Id.* (emphasis in original).  The Amended Complaint alleges the specifics of the CPI Vendor's false statements to borrowers, including Plaintiffs, with more than requisite detail.

Fourth, Plaintiffs' allegations that Defendants worked in concert to bilk millions of dollars from consumers establishes fraudulent intent.  Defendants' intent can also be inferred from the magnitude and longevity of the scheme, ¶¶ 2-3, 180; their rigging the market to increase borrower costs through concealed kickbacks, ¶¶ 44-47, 65; structuring loan payments to maximize the payment of CPI interest, ¶¶ 96-99; and "refus[al] to fix the problem, or even grant leniency to [Wells Fargo's] customers whose vehicles were wrongfully repossessed," ¶ 144.  *See EcoDiesel*, 2018 WL 1335901, at *33 (intent sufficiently pleaded by racketeering conspiracy's deceitful and unlawful purpose); *Capen*, 2015 WL 13298073, at *12 (intent sufficiently pleaded because defendants knew the nature of the conspiracy to defraud plaintiff through kickbacks and overbilling, while taking active steps to conceal the

- 16 -

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

fraud).

Finally, the admittedly deceptive billing of millions of auto loan borrowers "since the inception of the program," ¶ 142, by definition, demonstrates a pattern of racketeering activity, not isolated events. *See, e.g.,* ¶¶ 2-3, 51, 79, 172-173.

In sum, the Amended Complaint states a plausible RICO claim, and the Court should deny Defendants' motions to dismiss.

## II.   THE MCCARRAN-FERGUSON ACT DOES NOT BAR PLAINTIFFS' RICO CLAIM.

Wells Fargo inexplicably omits controlling legal authority that squarely rejects its new argument that the McCarran Ferguson Act ("MFA") bars Plaintiffs' RICO claims. In *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999), the Supreme Court held: "When federal law is applied in aid or enhancement of state regulation, and does not frustrate any declared state policy or disturb the State's administrative regime, the McCarran-Ferguson Act does *not* bar the federal action." *Id.* at 303. Judge Snyder's on-point decision in *Negrete v. Allianz Life Ins. Co. of North America*, 927 F. Supp. 2d 870, 875 (C.D. Cal. 2013), relies on *Humana* and rejects the very argument Wells Fargo makes here. That Wells Fargo fails to even attempt to distinguish either *Humana* or *Negrete* demonstrates the weakness of its argument.

In *Negrete*, Judge Snyder conducted a thorough analysis of the MFA and whether RICO claims implicating the laws of more than one dozen states were reverse-preempted. Using a three-part test, Judge Snyder found that these RICO claims were *not* barred by the MFA.[5] According to Judge Snyder, under the MFA, "state law preempts a federal statute if (1) 'the federal law does not specifically relate to insurance'; (2) the purpose of the state enactment is to regulate the business of insurance; and (3) 'the application of federal law to the case might invalidate, impair,

---

[5] Wells Fargo relies on a four-prong test outlined in *Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co.*, 50 F.3d 1486, 1489 (9th Cir. 1995). As Judge Snyder explains, *Merchant Homes* predates *Humana*. *Negrete*, 927 F. Supp. 2d at 875, n.1.

or supersede the state law.'" *Negrete*, 927 F. Supp. 2d at 875 (quoting *Ojo v. Farmers Group, Inc.*, 600 F.3d 1201, 1203 (9th Cir. 2010) (*per curiam*; *en banc*)).

Plaintiffs do not dispute the first two factors. The dispute here, as in *Negrete*, is whether applying RICO here would "invalidate, impair, or supersede the state law." *Negrete*, 927 F. Supp. 2d at 875. The answer is no.[6]

As a threshold issue, Wells Fargo does not—and cannot—point to one insurance law that would be invalidated, impaired, or superseded by the application of RICO. This is not surprising given that Plaintiffs' allegations are grounded on fraud. Indeed, accepting Wells Fargo's argument would require finding that state law authorized Defendants to charge for unnecessary and undisclosed CPI policies, and receive concealed kickbacks for placing CPI. That is not, and cannot be, the law.

Wells Fargo cites to Cal. Ins. Code §§ 790.01-03, and several cases that pre-date *Humana* and *Negrete*, to contend that "all states have enacted comprehensive legislation regulating the insurance business[.]"[7] WF at 30. But, that statute merely

---

[6] "'[I]nvalidate' ordinarily means to 'to render ineffective, generally without providing a replacement rule or law' … [and] 'supersede' ordinarily means 'to displace (and thus render ineffective) while providing a substitute rule.'" *Humana*, 525 U.S. at 307 (citations omitted). In defining the term "impair," the Court "reject[ed] any suggestion that Congress intended to cede the field of insurance regulation to the States, saving only instances in which Congress expressly orders otherwise" and instead found that to "impair" a law is "to hinder its operation or 'frustrate a goal'" of that law." *Id.* at 308-311.

[7] Wells Fargo cites *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505 (6th Cir. 2010), which held that a RICO claim impaired Ohio's insurance regulatory scheme because "Ohio's insurance scheme does not afford a private right of action" and "[p]laintiffs have no common law remedies available." *Id.* Judge Snyder rejected *Riverview* in favor of the better-reasoned view of the Third, Fourth, and Tenth Circuits that "the absence of a private right of action under state insurance law is *not* dispositive as to whether there is a reverse-preemption under the McCarran-Ferguson Act." *Negrete*, 927 F. Supp. 2d at 876-77 (emphasis added). *Riverview* is also easily distinguishable, because common law remedies for fraud and unjust enrichment are available to Plaintiffs here.

states that, "[n]o person shall engage in this State in any trade practice which is defined in this article as, or determined pursuant to this article to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." Cal. Ins. Code § 790.02.  This is the same practice Plaintiffs challenge through their RICO claim.  As such, § 790.02 *complements*, rather than "conflicts" with, RICO. *See In re National Western Life Ins. Deferred Annuities Litig.*, 467 F. Supp. 2d 1071, 1079 (S.D. Cal. 2006) ("Allowing a RICO claim here would (1) advance California's interest in combating insurance fraud, and (2) not frustrate California's policy prohibiting private actions against insurers for bad faith refusal to settle. Rather, applying RICO would complement California's allowance for common law and non-insurance code statutory private remedies.").

Moreover, in arguing that RICO is reverse-preempted by the MFA, Wells Fargo asks this Court to adopt the very type of field preemption that *Humana* explicitly rejected.  *Humana*, 525 U.S. at 309 ("we reject any suggestion that Congress intended to cede the field of insurance regulation to the States"); *see Negrete*, 927 F. Supp. 2d at 876 ("'[T]he [*Humana*] Court rejected the implicit presumption against the application of federal law in insurance contexts[.]'") (quoting *Dehoyos v. Allstate Corp.*, 345 F.3d 290, 294 (5th Cir. 2003)).

The relevant inquiry is not whether a state regulates the sale of insurance, but whether the application of RICO so frustrates or impairs state law that an injured party should be precluded from pursuing a RICO claim.  *Humana*, 525 U.S. at 308. That is not the case here.  The MFA does not reverse-preempt Plaintiffs' RICO claim.

## III.   PLAINTIFFS' RICO CLAIMS ARE TIMELY.

### A. Plaintiffs's RICO Claims Are Timely Under the Injury Discovery Rule.

In its Order on the prior motions to dismiss, this Court held that dispositive factual questions "counsel the Court against determining at the pleading stage when" Plaintiffs had actual or constructive knowledge of their injuries.  Order at 17.

Undeterred, Defendants try to revive their statute of limitations argument, asserting that the RICO claims of three named plaintiffs—Moskus, Preston, and Reimche—are time-barred because Defendants sent inflated bills or perplexing insurance demands to them before July 30, 2017.  WF at 6-10, NG at 13-14.  But under the "injury discovery rule," the statute of limitations did not begin to run until Plaintiffs were put on notice of the *fraudulent nature* of those bills and demands—something that did not occur until much later.

Accrual of the limitations period for RICO is delayed until the plaintiff "had actual or constructive knowledge of [the defendant's] fraud."  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 365 (9th Cir. 2005); Order at 17. Because actual or constructive notice of fraud is a fact-intensive inquiry, "a court must leave the question of whether a plaintiff knew or should have known of his injury to the jury."  *Living Designs, Inc.*, 431 F.3d at 365 (citing *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 275 (9th Cir. 1988)).[8]

Attempting to elude this precedent, Wells Fargo argues that Plaintiffs' allegations regarding their inability to detect the fraud are "conclusory" and that certain allegations supposedly show Plaintiffs were "aware of the allegedly improper charges years before July 27, 2017."  WF at 9-10 (italics omitted).  The first claim is false, and the latter misunderstands the law.

Plaintiffs' allegations are not conclusory.  The Amended Complaint extensively details how Wells Fargo, working with a succession of CPI Vendors, needlessly forced CPI on borrowers while hiding that they were being billed for it. Right until the last month of the scheme, Wells Fargo did not include CPI-related

---

[8]  *See also Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1160 (C.D. Cal. 2016) (triable issue of material fact regarding when Plaintiff discovered its injuries, and thus which injuries are within the limitations period); *Beneficial Standard Life Ins. Co.*, 851 F.2d at 275 (genuine dispute as to whether plaintiff had actual or constructive knowledge of the fraud within statutory period).

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 20 -

charges as separate line items on borrowers' bills, a practice its own internal audit labeled "deceptive."  ¶¶ 141-143, 306-307.   While some particularly attentive customers might have noticed that their monthly payment increased, they certainly would have not understood why.  And that was just the tip of the iceberg.  Wells Fargo also concealed:  (1) the gerrymandered order in which it applied loan payments, ¶¶ 95-97; (2) the commissions charged to the borrower;[9] (3) the amount of the commission and illegitimate tracking fees baked into the charge, ¶¶ 84, 87-93, 122; (4) Wells Fargo's deliberate targeting of subprime borrowers with high interest rates, ¶¶ 98-99; (5) the bank's refusal to remove the fraudulent charges even after customers complained, ¶ 144; and (6) Wells Fargo's unwillingness to reverse negative credit reports caused by the fraud. ¶ 149.

Plaintiffs' allegations that they could not have discovered Defendants' subterfuge through the exercise of reasonable diligence are detailed and eminently plausible.  ¶ 305.  The average auto loan customer cannot be expected to divine a sophisticated and far-reaching fraudulent scheme from seemingly bureaucratic insurance notifications and increased loan payments.

Defendants' claim that such notifications and charges alone put Plaintiffs on notice of the scheme is undermined by the case law.[10]  Knowledge of overpayment by itself does not automatically equate to constructive notice of a RICO scheme.

---

[9]   The original RISC signed by the borrower said nothing about commissions, tracking fees, or administrative costs.  ¶ 134.  Nor did the later Coverage Issued Letters.  ¶ 136.  The Insurance Request Letters did mention commissions (although many of them misrepresented the amount of the commission), ¶¶ 120, 122, but borrowers who had insurance would have had no reason to believe the Insurance Request Letters were anything other than a mistake.

[10]  Wells Fargo's argument also incorrectly presumes higher loan payments are the only damages being claimed by the three named plaintiffs. Not so. For example, because of its CPI scheme, Wells Fargo ultimately deemed Moskus delinquent and reported that delinquency to credit agencies.  ¶ 268. And, Preston had to incur late charges and other fees from the bogus CPI additions.  ¶¶ 275-76.

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 21 -

1   *Capen*, 2015 WL 13298073, at \*5 (whether plaintiff's detection of "certain instances

2   of overbilling" warranted an investigation that would lead to discovery of fraud

3   cannot be determined at pleading stage); *Ward v. Chanana*, No. C 07-06290 JW,

4   2008 WL 5383582, at \*4 (N.D. Cal. Dec. 23, 2008) ("As a predicate for dismissing

5   Plaintiff's RICO claim on the grounds that Plaintiff had constructive notice of his

6   RICO injury, the Court requires that Plaintiff have had the ability to connect his

7   nominal 'injury' to an actual violation of the RICO statute."); *Utah v. McKesson*

8   *Corp.*, No. C 10-04743 SI, 2011 WL 2884922, at \*3 (N.D. Cal. July 19, 2011) (drug

9   price increases not constructive notice of fraud because plaintiffs "could not possibly

10   have known that a price increase was the result of a fraud perpetrated by a wholesaler

11   in cahoots with the price reporting service"); *Marceau v. Int'l Bhd. of Elec. Workers*,

12   No. 05-02874-PHX-MHM, 2006 WL 1889600, at \*3 (D. Ariz. July 7, 2006) (holding

13   it would be "premature for this Court to make a determination that the Plaintiffs

14   contemporaneously discovered their injuries when the alleged scheme commenced").

15       These courts all hold that constructive notice requires more than just an

16   increased bill or notification.  It requires facts that put the plaintiff on notice that an

17   increased bill or notification is related to some type of illegitimate business practice

18   or at least warrants an investigation that may reasonably uncover such misconduct.

19   Simply put, discovery of the "injury" requires some discovery of wrongdoing, not

20   just discovery of its downstream effects.  *Cohen v. Trump*, No. 10-CV-0940-GPC-

21   WVG, 2014 WL 690513, at \*5 (S.D. Cal. Feb. 21, 2014) ("[T]he Ninth Circuit has

22   held that RICO fraud claims accrue when plaintiffs have 'actual or constructive

23   knowledge' of the fraud.") (citing *Living Designs*, 431 F.3d at 365).

24       **B.** **Plaintiffs' Claims Are Timely Under the Continuing Accrual**

25          **Doctrine.**

26       The three Plaintiffs' claims are also timely under the "separate accrual rule"

27   because they suffered distinct injuries within four years of the first-filed complaint.

28   *Grimmett v. Brown*, 75 F.3d 506, 514 (9th Cir. 1996).  Although Plaintiffs Moskus,

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 22 -

Preston, and Reimche were first billed for CPI more than four years before filing suit, Wells Fargo did not stop billing these Plaintiffs for bogus CPI-related charges on July 31, 2013.  Reimche continued paying her loan through August 2015, ¶ 286,  Moskus continued to be billed even after she called Wells Fargo, ¶ 268, and Preston continued to pay extra amounts on his loan from the CPI.  ¶¶ 275-76.

These were "new and independent" injuries.  While later demands for payment of the *same* bills do not constitute an independent injury, *Kang-Shen Chen v. T.T. Grp.*, No. SACV140138DOCDFMX, 2014 WL 12725598, at *4 (C.D. Cal. June 20, 2014), sending *new and different bills* does.   *Molus v. Swan*, No. CIV. 05CV0452BWMC, 2007 WL 2326132, at *7 (S.D. Cal. Aug. 13, 2007); *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014).

## C. Fraudulent Concealment Tolls the Statute of Limitations.

Even if the statute of limitations begins to run, the limitations period is tolled if a defendant "fraudulently concealed" information that prevented the plaintiff from learning about the claim.  *Pincay v. Andrews*, 238 F.3d 1106, 1110 (9th Cir. 2001). Fraudulent concealment occurs when the "plaintiff establishes affirmative conduct upon the part of the defendant which would, under the circumstances, lead a reasonable person to believe that he did not have a claim for relief."  *Id.* (*citing Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415 (9th Cir. 1987)).

As detailed in Section VII, *infra*, the Amended Complaint alleges fraudulent concealment with particularity.  Plaintiffs allege that until the *New York Times* article was published on July 27, 2017, Defendants concealed that:  (1) they had received borrowers' insurance information and it was available electronically, ¶ 118; (2) they force-placed CPI regardless of whether borrowers had insurance, ¶ 135; (3) the commissions were unearned kickbacks, ¶¶ 120, 136; and (4) borrowers were being billed for CPI, a practice Wells Fargo recognized was "deceptive." ¶ 141.

Moreover, Defendants continued to affirmatively conceal their misconduct long after they officially recognized it internally.  Wells Fargo commissioned the

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 23 -

Oliver Wyman Report in July 2016, on which National General collaborated, but did not disclose the existence of the report or its underlying facts until it was leaked to the press a year later.  ¶¶ 171-72.  In contrast, Wells Fargo senior executives and board members were briefed about significant concerns with the CPI Program beginning in at least 2012, ¶¶ 162-70, but they made no substantive changes before ending it in September 2016 after determining that "[k]eeping the program could lead to reputational risk and potential legal exposure." ¶ 165.

As in *Capen*, Defendants' acts deprived Plaintiffs of "a reasonable opportunity to investigate [Defendants'] individual bills or the scheme[] as a whole, and had no reason to suspect the extent and systemic nature of the fraud." *Capen*, 2015 WL 13298073, at *5.  Further, Defendants' deceptive billing practices prevented Plaintiffs from detecting instances of overbilling, ¶¶ 141-43, 169, a fact Defendants "took advantage of . . . to maximize their chances of getting their fraudulently inflated bills [paid]." *Capen*, 2105 WEL 13298073, at *5.  In short, Defendants' fraudulent concealment tolls the statute of limitations, and Plaintiffs' RICO claims are timely.

### D. <u>Wells Fargo's Attempt to Truncate the Class Period is Premature and Has No Basis in Law.</u>

Wells Fargo cites no authority for its argument that the Court should narrow the class period at the pleading stage solely because none of the named class representatives were assessed CPI before May 1, 2008.[11]  WF at 10.  The case cited by Wells Fargo, *Rutherford v. FIA Card Servs., N.A.*, No. CV 11-04433 DDP MANX, 2012 WL 5830081 (C.D. Cal. Nov. 16, 2012), does not support such an unprecedented request.  *Rutherford* merely holds that a named plaintiff whose claim

---

[11] This is not the first time Wells Fargo has attempted to redefine a class prematurely. *See Lewis v. Wells Fargo & Co.*, No. C 08-02670 CW, 2009 WL 1033823, at *2 (N.D. Cal. Apr. 16, 2009) (denying motion to dismiss class allegations where Wells Fargo cite "no cases supporting the assertion that this case should be dismissed on the pleadings because the class is not narrowly defined").

1    is time-barred cannot rely on the potential timely claims of unnamed class members
2    to salvage the case—a point not at issue here.  Nor have Plaintiffs uncovered any
3    authority supporting Wells Fargo's request.  To the contrary, the Manual for
4    Complex Litigation describes the "class period" as "the period during which
5    members of the class incurred the claimed injury."  Manual for Complex Litigation,
6    Fourth, §21.222.  Nothing requires that the named plaintiffs' injuries span the entire
7    class period, since doing so would be absurd.

8        *Steele v. GE Money Bank*, No. 08 C 1880, 2009 WL 393860 (N.D. Ill. Feb. 17,
9    2009), also cited by Wells Fargo, provides the correct procedure here—determining
10   the appropriate length of the class period at class certification. *Id*. at *10.  "Generally,
11   courts review class allegations through a motion for class certification." *In re Wal-*
12   *Mart Stores, Inc.*, 505 F. Supp. 2d 609, 614 (C.D. Cal. 2007).  Until that time, the
13   court will not have sufficient facts to decide the question. *Id*.

14       **E.  <u>There is No Statute of Limitations Issue for the Payment of Secret</u>**
15       **<u>Commissions by National General.</u>**

16       Wells Fargo claims that "Plaintiffs' commissions theory is time barred," WF
17   at 15, because Wells Fargo stopped receiving kickbacks in February 2013.  This
18   argument fails for two reasons.  First, it ignores the injury discovery rule, separate
19   accrual rule, and fraudulent concealment—each of which render Plaintiffs' claims
20   timely, as discussed above.  Second, the commissions were a part of a greater whole.
21   There is no independent "commissions theory" separate and apart from Defendants'
22   overall RICO plot.  The unlawful kickbacks were part of a larger fraudulent scheme
23   to force unneeded CPI on class members while hiding the inflated bills (and the
24   reasons for their inflation) from them.  Even after the commissions ceased, Wells
25   Fargo preserved its illicit revenue stream by reducing the tracking fee it paid to the
26   CPI vendor and pocketing some of the profits.  ¶¶ 87-93.  Wells Fargo perpetuated
27   the fraud by slightly altering the means. *Id*.

28       Wells Fargo cites no authority holding that a RICO defendant can excise one

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

1   specific component of RICO enterprise based on the statute of limitations.  As Judge
2   Carter recently explained, "[i]t cannot be the case that all events, interactions, and
3   communications that are evidence of the RICO enterprise (or conspiracy) must occur
4   during the limitations period." *Tatung*, 217 F. Supp. 3d at 1158.  The reason is
5   obvious:  "If that were so, civil RICO could not be used to hold accountable
6   enterprises that, for example, take a long time to set up an injurious act or cause an
7   injury that takes a long time to discover." *Id.*

8   ## IV.     <u>PLAINTIFFS SUFFICIENTLY PLEAD A BHCA CLAIM.</u>

9         Wells Fargo's requirement that its customers engage in additional transactions
10   with the bank to maintain their auto loans—paying for overpriced and unnecessary
11   CPI—is precisely the type of exploitative conditioning of credit that the BHCA
12   prohibits.  The BHCA provides that a bank shall not "extend credit" or "fix or vary
13   the consideration" of such credit on the condition that a customer *either:*  (1) "*obtain*
14   some additional credit, property or service *from* such bank"; *or* (2) "*provide* some
15   additional credit, property, or service *to* such bank."  12 U.S.C. §§ 1972(1)(A), (C)
16   (emphasis added).  To state a claim, Plaintiffs must allege that (1) Wells Fargo's CPI
17   practices were unusual in the banking industry, (2) an anti-competitive tying
18   arrangement existed, and (3) Wells Fargo's practices benefited the bank.  *S & N*
19   *Equip. Co. v. Casa Grande Cotton Fin. Co.*, 97 F.3d 337, 345 (9th Cir. 1996).  Under
20   controlling Ninth Circuit precedent, Plaintiffs need not show that Wells Fargo's
21   practices had anti-competitive effects.  *Id.* at 346.

22         Plaintiffs satisfy each of these requirements.  Precisely as the BHCA's text
23   prohibits, Wells Fargo conditioned its ongoing extension of auto loans on the
24   requirement that customers make additional payments to Wells Fargo (*i.e.* provide
25   additional "***property***" to the bank) and obtain additional CPI fees and services from
26   Wells Fargo (*i.e.* obtain additional ***"credit"*** and ***"services"*** from the bank).  This
27   practice was unusual in the banking industry because Wells Fargo billed customers
28   for duplicative CPI regardless of whether they maintained their own insurance and

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

did so at prices inflated by undisclosed kickbacks.  Wells Fargo does not deny these CPI practices were improper or that they benefited the bank.

Nonetheless, Wells Fargo mischaracterizes Plaintiffs' allegations and the established case law, just as it did in its first motion to dismiss.  To avoid combating these misstatements for a second time—and to provide more clarity to the Court regarding issues raised for the first time in Wells Fargo's prior reply brief, ECF No. 93 at 10-13, and the Court's Order at 11-12—Plaintiffs added detailed allegations to the Amended Complaint and cited controlling Ninth Circuit precedent for matters of settled BHCA law.  ¶¶ 359–84.  But Wells Fargo ignores these enhanced allegations and authorities and repeats the same flawed arguments that Plaintiffs have now fully rebutted.  None of Wells Fargo's baseless arguments justifies dismissal.

## A. Wells Fargo's CPI Program Was Highly Unusual.

Wells Fargo first argues that its CPI practices did not violate the BHCA because it is "not unusual" for banks to require that collateral be insured as a precondition to financing.  WF at 22.  That is not what Plaintiffs allege.  Even putting aside that Wells Fargo was the only bank in the U.S. that forced auto loan borrowers into CPI, ¶ 376, Wells Fargo charged customers for *unnecessary* CPI even when they maintained their own insurance, and did so at costs inflated by *undisclosed kickbacks*.  ¶¶ 136, 138, 141.  Wells Fargo has acknowledged these practices were unusual,[12] as have several courts, including this one.  Order at 11 ("That does seem unusual"); *Arango v. Chase Home Fin., LLC*, No. 8:11-cv-2001, 2013 U.S. Dist. LEXIS 8998, at *18–19 (M.D. Fla. Jan. 22, 2013) (Chase's practice of charging customers for alleged force-place kickbacks was "unusual" under the BHCA).  Wells Fargo cannot now claim that its CPI practices were somehow "usual" in the banking industry.  In

---

[12] *See* ¶ 141 (describing its CPI practices as "deceptive" and a "violation of regulations (CFPB)"; ¶ 376 ("WFDS is the only large auto finance company with a CPI program … [N]one of the big banks or captives force place at the customer level. We are a 55 billion dollar portfolio … we should be able to self-insure!!").

any event, this fact-specific inquiry is unsuitable for resolution at the pleading stage. *Lane v. Wells Fargo, N.A.*, No. C 12-04026, 2013 U.S. Dist. LEXIS 58920, at \*14 (N.D. Cal. Apr. 24, 2013).

## B. Forcing Auto Loan Customers into Additional CPI Transactions Was an Illegal Tying Arrangement Under the BHCA.

Wells Fargo next argues that Plaintiffs do not adequately allege a tying arrangement under the BHCA because the "product" of CPI was not purchased from Wells Fargo itself, but rather from its CPI Vendor. WF at 22–23. But this argument badly distorts Plaintiffs' allegations and the plain language of the statute.

Contrary to Wells Fargo's claims, the BHCA does not solely prohibit banks from tying credit to additional "products" sold by the bank. Rather, the BHCA prohibits banks from tying credit to additional *transactions* involving the bank and defines such "tied" transactions broadly to include virtually any type of additional exchange of money, credit, or services. This includes requiring customers to pay additional money to a bank ("*provide some additional... property*"), incur additional fees from a bank ("*obtain some additional credit*"), or obtain additional services from a bank ("*obtain some additional . . . services")*. Requiring customers to engage in any of these transactions as a condition for maintaining their credit constitutes a prohibited "tying arrangement" under the BHCA.[13]

Wells Fargo violated the BHCA in at least three ways. *First,* as a condition for maintaining their loans, Wells Fargo required customers to "provide additional property" to the bank in the form of monetary payments for CPI premiums, commissions, and other fees. ¶ 369. *Highland Capital,* 350 F.3d at 566 (6th Cir.

---

[13] *See Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 565 (6th Cir. 2003) (holding that a plaintiff satisfies the "tying arrangement" prong of the BHCA's three-part test by showing that a bank violated the plain language of the statute—*i.e.*, by conditioning "its extension of credit upon the borrowers' obtaining or offering additional credit, property, or services to or from the bank").

- 28 -

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

2003) (paying money to a bank constitutes providing "property" for purposes of the BHCA). Tellingly, Wells Fargo does not even address this allegation, conceding the point. *Second*, Wells Fargo required customers to "obtain additional credit" from the bank by billing customers for CPI premiums and fees that customers were forced to repay. ¶ 369. It is clear that Wells Fargo considered these CPI premiums to constitute an additional loan or "credit" to customers, because it forced them to pay interest on the premiums. ¶ 47. *Third,* Wells Fargo required customers to "obtain additional services" from Wells Fargo by forcing customers to obtain CPI through the Wells Fargo's force-placement process. *Id.*[14] In traditional antitrust parlance, each of these additional transactions constitutes a so-called "tied product," whereas Wells Fargo's ongoing extension of credit constitutes the so-called "tying product."

The dismissals of BHCA claims in *Cannon v. Wells Fargo Bank, N.A.*, No. C-12-1376, 2013 U.S. Dist. LEXIS 93080, at *13 (N.D. Cal. July 2, 2013), and *Lane v. Wells Fargo Bank, N.A.*, No. C 12-04026, 2013 U.S. Dist. LEXIS 147022 (N.D. Cal. Oct. 10, 2013), do not support Wells Fargo in the slightest. In *Cannon* and *Lane,* the plaintiffs devised unique allegations to plead around the fact that the force-placed insurance was not truly "tied" to their loans because they could have avoided it altogether by purchasing independent insurance (*i.e.* the plaintiffs were not charged for duplicative force-placed insurance, as Plaintiffs were here). Because the plaintiffs in *Cannon* and *Lane* could not allege that Wells Fargo tied additional insurance-related transactions to their existing loans, they alleged, in essence, that Wells Fargo tied force-placed insurance services to the insurance itself. Both courts dismissed these allegations, holding that the services and insurance were not sufficiently separate to constitute a tying arrangement. *Cannon,* 2013 U.S. Dist. LEXIS 93080, at *10-12; *Lane*, 2013 U.S. Dist. LEXIS 147022, at *7–8. After the *Lane* plaintiffs

---

[14] Whether Wells Fargo itself performed its purported CPI-placement services is both irrelevant and a factual question not properly decided at the pleading stage.

1    sought to recast their allegations similarly to what Plaintiffs allege here, the court

2    held that there was "no forced tie" between the plaintiffs' loans and the force-placed

3    insurance because, as noted above, the plaintiffs could have avoided the charges

4    simply by "purchas[ing] insurance on the open market."  *Id.* at *8–9.

5         The opposite is true here.  Unlike in *Lane*, there *was* a "forced tie" between

6    Plaintiffs' auto loans and additional CPI charges because Plaintiffs were charged for

7    duplicative CPI even when they purchased their own insurance.   Indeed, *Lane*

8    supports Plaintiffs' claims insofar as it rejects Wells Fargo's other arguments for

9    dismissal based on controlling Ninth Circuit precedent.  The Court should follow the

10   same Ninth Circuit precedent here and uphold Plaintiffs' claims.

11        **C. <u>Under Controlling Ninth Circuit Precedent, Plaintiffs Need Not</u>**

12        **<u>Allege that Wells Fargo's Practices Had Anti-Competitive Effects.</u>**

13        In an argument comprised of a single sentence, Wells Fargo cites the Court's

14   previous Order, and no other authority, to argue that Plaintiffs' BHCA claim fails

15   because Wells Fargo's CPI practices were not "anti-competitive" and did not "stifle

16   competition."  WF at 23.  But the Ninth Circuit has expressly rejected any such "anti-

17   competitive" requirement under the BHCA.  In *S & N Equip.*, 97 F.3d at 346 (9th

18   Cir. 1996), the Ninth Circuit held that unlike under general antitrust statutes, a BHCA

19   plaintiff is not required to allege the anti-competitive effects of a tie-in, the bank's

20   market share, or any showing of coercion by the bank.  This is because Congress

21   perceived conditional transactions involving credit as inherently anti-competitive and

22   sought to regulate them more stringently than under other laws.  *Id.*  Accordingly, the

23   Ninth Circuit holds that while the three-part test under the BHCA "***speaks in terms***

24   ***of an 'anti-competitive' tying, the modifier either drops out or is presumed to exist***."

25   *Id.* (emphasis added)*; see also Lane*, 2013 U.S. Dist. LEXIS 58920, at *12

26   ("Plaintiffs need not show that the defendant's practice is anti-competitive") (*citing*

27

28

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

*S & N Equip.*, 97 F.3d at 346).  Other Circuits concur.[15]  It is therefore irrelevant under the BHCA whether Wells Fargo's CPI practices had any anti-competitive effects or stifled competition.  Nonetheless, Plaintiffs allege that Wells Fargo caused such effects, as it forced borrowers to pay over-inflated CPI charges because they lacked the ability to exert market power over prices.  ¶ 46.  This is a form of "reverse competition," in that benefits or inducements (*i.e.*, kickbacks) flowed to Wells Fargo, while the costs were passed on to borrowers.  ¶¶ 45-46.

### D.  Wells Fargo's Practice of Conditioning Plaintiffs' *Existing* Auto Loans on Additional CPI Payments Violated the BHCA.

Wells Fargo's final argument, which also fails to cite a single outside case, is that Plaintiffs' BHCA claim should be dismissed because Plaintiffs cannot show that paying for unnecessary CPI was an up-front requirement of receiving their initial auto loan.  WF at 23–24.  Yet both the plain text of the BHCA and settled case law make clear that the BHCA does not solely prohibit banks from tying transactions to an *initial* loan offering.  The statute equally prohibits banks from tying transactions to *existing* loans, such as by threatening to foreclose or modify an existing loan if a customer does not pay for an additional service or fee, just as Wells Fargo did here.

The text of the BHCA expressly prohibits both types of tying.  It provides that "[a] bank shall not in any manner extend credit … *or fix or vary the consideration for [such credit]*," (*i.e.,* existing credit) on the condition that a customer engage in an additional transaction with the bank.   12 U.S.C. § 1972(1) (emphasis added).[16]

---

[15] *See, e.g.*, *Highland Cap.*, 350 F.3d at 565; *Dibidale of La., Inc. v. Am. Bank & Tr. Co.*, 916 F.2d 300, 305 (5th Cir. 1990); *Parsons Steel, Inc. v. First Ala. Bank of Montgomery*, 679 F.2d 242, 245 (11th Cir. 1982).

[16] In any case, the phrase "extend credit" encompasses changes to existing loans.  "[C]ourts have construed the phrase liberally to include nearly any credit decision." *McCune v. Nat'l City Bank*, 701 F. Supp. 2d 797, 801–02 (E.D. Va. 2010).  "A particular practice should be considered an 'extension of credit' if it manifests the improper use of economic leverage that the Act seeks to prevent." *Amerifirst Props.,*

Courts are virtually unanimous that this encompasses threats to alter or foreclose existing loans. *See Swerdloff v. Miami Nat'l Bank*, 584 F.2d 54 (5th Cir. 1978) (reversing judgment for BHCA defendant where bank had allegedly threatened to terminate existing loan); *Akiki v. Bank of Am., N.A.*, 632 F. App'x 965, 969 (11th Cir. 2015) (BHCA may be violated where a bank "threaten[s] alteration of the terms or conditions" of existing loan); *Nordic Bank PLC v. Trend Grp., Ltd.*, 619 F. Supp. 542, 553–55 (S.D.N.Y. 1985) (threatening to foreclose existing loan can constitute anticompetitive tying because "[a] bank can as easily tie the purchase of products … to its forbearance [from foreclosing] as it can to the purchase of a new loan").[17] Here, Wells Fargo cannot deny that it "var[ied] the consideration" of its existing auto loans to Plaintiffs on the condition that Plaintiffs make additional CPI payments to Wells Fargo. When Plaintiffs did not pay, Wells Fargo threatened to, and often did, repossess their vehicles, assess new fees, and downgrade their credit scores. ¶¶ 143-44, 164, 173. Such conditioning of ongoing credit is a textbook BHCA violation.

*Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 395 (6th Cir. 1996), does not shield Wells Fargo from BHCA liability. Unlike here, *Kenty* did not involve allegations that a bank required borrowers to purchase CPI as a condition for *maintaining their existing* loans. Rather, the *Kenty* plaintiffs alleged that the bank required customers to purchase CPI as a condition for *receiving their initial* loan—something the court found did not actually occur. *Id.* Plaintiffs here more accurately allege that CPI was a condition of receiving *ongoing* financing, a different type of BHCA violation that has been upheld by virtually every court that has addressed the issue. Wells Fargo's Motion to Dismiss, which asks the Court to upend this settled

_____

*Inc. v. Fed. Deposit Ins. Corp.*, 880 F.2d 821, 823–24 (5th Cir. 1989) (quoting *Nordic Bank*, 619 F. Supp. at 554).

[17] A tied product need not even be disclosed to consumers at the time of the transaction to give rise to an anticompetitive tying arrangement. *See*, *e.g.*, *MDC Data Ctrs., Inc. v. Int'l Bus. Machs. Corp.*, 342 F. Supp. 502, 504 (E.D. Pa. 1972).

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 32 -

1    case law and Ninth Circuit precedent, should be denied.

2    **V.    PLAINTIFFS STATE A CLAIM AGAINST NATIONAL GENERAL**

3    **UNDER THE UCL.**

4        **A. Plaintiffs State a Claim Under the Unfair Prong of the UCL.**

5        The Court already found the Plaintiffs stated a claim under the unfair prong of

6    the UCL.  Order at 14 ("Plaintiffs sufficiently plead these requirements [for unfair

7    business practices].  As Plaintiffs put it, 'force-placing duplicative, unwanted, and

8    unnecessary CPI on at least 800,000 consumers' is unfair.").  While Wells Fargo

9    accepts the Court's ruling, National General does not, asserting as it did previously

10   that Plaintiffs' allegations are conclusory and "overlap entirely" with the business

11   practices alleged to violate the fraudulent and unlawful prongs.  *Compare* NG at 21

12   *with* ECF No. 69 at 21.  There is no reason for the Court to depart from its prior

13   ruling, particularly given that National General has not made any new arguments or

14   moved for reconsideration.  *See* L.R. 7-18.

15       The Court previously identified the test for unfairness:  "'(1) the consumer

16   injury must be substantial; (2) the injury must not be outweighed by any

17   countervailing benefits to consumers or competition; and (3) it must be an injury that

18   consumers themselves could not reasonably have avoided.'"  Order at 14 (quoting

19   *Abramson v. Marriott Ownership Resorts, Inc.*, 155 F. Supp. 3d 1056, 1066 (C.D.

20   Cal. 2016); *Camacho v. Auto Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006)).

21       The Amended Complaint details the CPI Vendor's unfair business practices

22   and resulting injuries that satisfy this test.  Plaintiffs allege how the CPI Vendor and

23   Wells Fargo worked together to force-place CPI on millions of consumers.  ¶¶ 40-

24   186, 345(c).  It did so even if the consumer was already insured.  ¶¶ 110, 345(b)-(d).

25   It did so by disregarding the available information about consumers' proof of

26   insurance.  ¶¶ 6, 110, 117, 132.  And it continued to do so even though it knew most

27   of the CPI it had force-placed later had to be canceled.  ¶¶ 148-49, 345(h).  Because

28   the CPI Vendor played a vital role in the scheme, "[t]he Court's conclusion that

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 33 -

Plaintiffs sufficiently state a claim against Wells Fargo under the UCL's 'unfair' theory … applies equally to National General."  Order at 18.[18]

### B.  **Plaintiffs State A Claim Under the Unlawful Prong of the UCL.**

The unlawful prong of the UCL "borrows" violations of other laws and makes them independently actionable as unlawful business practices.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  "Virtually any law or regulation—federal or state, statutory or common law—can serve as predicate for a § 17200 'unlawful' violation."  *Newton v. Am. Debt Servs., Inc.*, 75 F. Supp.3d 1048, 1057 (N.D. Cal. 2014).  Although the Court previously rejected Plaintiffs' claim of unlawful business practices based on inadequate allegations of predicate violations, Order at 14, the Amended Complaint alleges RICO violations, mail and wire fraud, and fraudulent concealment in sufficient detail to withstand a motion to dismiss.  Those allegations therefore state a UCL claim under the unlawful prong.

In addition, Plaintiffs allege that Defendants violated five States' laws that prohibit force-placing insurance without first meeting certain disclosure requirements.  Wells Fargo admitted internally that the standardized letters sent to borrowers did not comply with these statutes.  ¶ 172, n.161.  These allegations also support a claim of unlawful business practices under the UCL.

National General argues that it was not the creditor and thus could not have violated these disclosure statutes.  NG at 20.  But, "if the evidence establishes defendant's participation in the unlawful practices, either directly or by aiding and abetting the principal, liability under sections 17200 and 17500 can be imposed."  *People v. Toomey*, 157 Cal. App. 3d 1, 15 (1984).  Having authored and mailed the

---

[18] As Plaintiffs have stated a claim for unfair business practices under the UCL, there is no need for the Court to assess whether they could also state a claim for unlawful or fraudulent business practices.  *See Hernandez v. Path, Inc.*, 12-CV-01515 YGR, 2012 WL 5194120, at *6, n.7 (N.D. Cal. Oct. 19, 2012) ("Federal Rule of Civil Procedure 12(b)(6) is not an appropriate device to eliminate a portion of a claim.").

- 34 -

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

false and misleading communications on behalf of Wells Fargo, ¶¶ 115, 130, 345(g), the CPI Vendor is liable for unlawful business practices under the UCL.

### C. **Plaintiffs State A Claim Under the Fraudulent Prong of the UCL.**

Although the Court previously found that Plaintiffs' fraudulent-prong allegations did not adequately specify "which particular statements or omissions would likely deceive members of the public," Order at 14, the Amended Complaint cures this defect. Plaintiffs allege that the CPI Vendor authored and sent Insurance Request Letters to borrowers that falsely stated that Wells Fargo had not received their insurance information, despite the fact that it had been provided at the purchase transaction and was available through EDI. ¶¶ 113-14, 118, 132. Plaintiffs further allege that National General sent Coverage Issued Letters that falsely stated that Wells Fargo's records indicated an absence of required coverage, and that Wells Fargo would charge the borrower for CPI to protect its interest in the financed vehicle. ¶¶ 129-130, 132-33. As described here and in Section VII, *infra*, the Amended Complaint more than adequately alleges the "who, what, where, when and how" of National General's misrepresentations and omissions of material fact. These statements were likely to deceive a reasonable consumer and thus state a plausible claim under the fraudulent prong of the UCL. *See Brakke v. Econ. Concepts, Inc.*, 213 Cal. App. 4th 761, 772 (2013) ("Unlike common law fraud, a [UCL] violation can be shown even without allegations of actual deception, reasonable reliance and damage. Historically, the term 'fraudulent,' as used in the UCL, has required only a showing that members of the public are likely to be deceived.") (citation omitted); *People ex rel. Harris v. Aguayo,* 11 Cal. App. 5th 1150, 1160 (2017).[19]

---

[19] As explained in *Brakke*, National General is wrong to attempt to equate a claim under the fraudulent practices prong of the UCL with a claim for common law fraud. National General's citation to *Robbins v. Hyundai Motor Am.*, SACV 14-P00005-JLS (ANx), 2014 WL 4723505 (C.D. Cal. Aug. 7, 2014), is also unavailing. Unlike in *Robbins*, Plaintiffs do not allege that National General merely failed to disclose a point of law, but misrepresented its conduct and the very nature of the CPI scheme.

- 35 -

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

D. **The UCL Applies to Out-of-State Residents Harmed By Conduct Occurring In California.**

National General acknowledges that "the UCL reaches claims made by out-of-state residents harmed by unlawful conduct occurring inside of California," but argues that it cannot be held liable because it is a Missouri corporation headquartered in North Carolina. NG at 21. National General ignores that its predecessors-in-interest, who served as the CPI Vendor until July 2015, and its co-conspirator, Wells Fargo, were all headquartered in California.

The Complaint alleges that the CPI Program was operated as a single, continuous enterprise from March 2002 until September 2016. ¶ 66. That program was rooted exclusively in California between March 2002 and July 2015. Wells Fargo's participation in the CPI Program—including its decision to establish and maintain the enterprise through agreements with the CPI Vendor—was directed from the company's offices in San Francisco, California. ¶¶ 23, 48. Until July 2015, the CPI Vendor's participation in the CPI scheme was managed by Newport, Meritplan, Balboa, and QBEF executives in Irvine, California. ¶¶ 30-31, 48. These companies provided tracking services and force-placed CPI from their Irvine offices. ¶¶ 30-31. And when the companies met several times each year to discuss the details of the CPI scheme and review its performance, those meetings occurred in California, as well, either at Wells Fargo's offices or the CPI Vendor's offices. ¶¶ 69-70.

When National General acquired both the assets and liabilities of its predecessor CPI Vendors on July 15, 2015, ¶ 31, it assumed the role of CPI Vendor and continued the scheme. ¶¶ 66, 77. As such, the CPI scheme emanated from California and may fairly be addressed through the UCL. *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 629–30 (N.D. Cal. 2011) ("Courts evaluating the sufficiency of a state's contacts with the individual class plaintiffs' claims look to the offending activity alleged to have taken place in the state, not solely whether a defendant is incorporated or headquartered there.").

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS TO DISMISS PLS.' AM. CONSOLIDATED CLASS ACTION COMPL.

- 36 -

Wells Fargo's participation in the CPI scheme also defeats National General's extraterritoriality argument. *See TRC & Assocs. v. NuScience*, No. 2:13-CV-6903-ODW, 2013 WL 6073004, at *5 (C.D. Cal. Nov. 18, 2013) (rejecting an out-of-state defendant's challenge to extraterritorial application of the UCL: "it is the existence of [a California-based] co-defendant that is fatal to the extraterritoriality claim").

### E. **Plaintiffs' UCL Claims Are Timely.**

National General also argues that three Plaintiffs' UCL claims are barred by the statute of limitations. NG at 22-23. For the same reasons that those Plaintiffs' RICO claims are not time-barred, neither are their UCL claims. Section III, *supra*.

## VI. **THE ECONOMIC LOSS RULE DOES NOT BAR THE FRAUD BY CONCEALMENT AND UNJUST ENRICHMENT CLAIMS.**

### A. **Plaintiffs' Fraud Claim Does Not Arise Out of Contract.**

The Court should reject Wells Fargo's argument that the economic loss rule bars Plaintiffs fraud by concealment and unjust enrichment claims. WF at 11.[20] The economic loss rule provides that "no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement." *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012). In other words, the rule prevents plaintiffs from bringing tort claims in a breach of contract action for pure economic loss unless they can demonstrate harm distinct from a broken contractual promise. The policy behind the rule is to "prevent every breach of contract from giving rise to tort liability and the threat of punitive damages." *Id.*

The economic loss rule does not apply because the Amended Complaint does not assert, and is not based on, a claim for breach of contract, implied or express. Plaintiffs do not allege that Wells Fargo breached the RISCs by which they obtained

---

[20] Wells Fargo concedes that the economic loss rule does not apply to Plaintiffs' RICO, BHCA, or UCL claims.

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

financing for their vehicles.  Rather, Plaintiffs allege that Wells Fargo, along with the CPI Vendor, defrauded them by taking money that they did not owe, for CPI that they did not need.  The Amended Complaint alleges that Defendants made false and misleading statements of material fact to borrowers in the Insurance Request and Coverage Issued Letters, which intentionally concealed that Defendants engaged in a pattern of force-placing CPI on borrowers' accounts without regard for the insurance the borrowers maintained on their vehicles.  ¶¶ 118-19, 132-33, 396-400.  These are fraud claims, not contract claims. The economic loss rule does not apply.

### B.  <u>The Fraud Exception to the Economic Loss Rule Applies.</u>

If the Court were to construe these tort claims as arising from breach of the RISCs, they would still be cognizable under the fraud exception to the economic loss rule.  "[W]hen one party commits a fraud during the contract formation or performance, the injured party may recover in contract and tort."  *Harris v. Atlantic Richfield Co.*, 17 Cal. Rptr. 2d 649, 654 (1993); *Century of Progress Prods. v. Vivendi S.A.*, No. CV 16-7733 DMG (ASx), 2018 WL 4191340, at *10 (C.D. Cal. Aug. 28, 2018); *Sandford v. Wells Fargo & Co.*, No. SACV 11-502-JST (RNBx), 2012 WL 12886416, at *7 (C.D. Cal. Mar. 5, 2012).  Plaintiffs' claim for fraud by concealment fits squarely within the fraud exception to the economic loss rule.

### C.  <u>The Economic Loss Rule Does Not Apply Because Defendants' Duties Arose Independent of Any Contract.</u>

Finally, the economic loss rule would not apply to Plaintiffs' fraud by concealment claim, even if the Court considers it to be contract-based, because Defendants had independent duties to disclose the truth.  Conduct amounting to a breach of contract becomes tortious when it violates a duty independent of the contract arising from principles of tort law.  *Robinson Helicopter Co., Inc. v. Dana Corp.,* 102 P.3d 268, 273 (Cal. 2005); *Erlich v. Menezes*, 981 P.2d 978, 983 (Cal. 1999).  Here, Defendants had an independent duty to disclose the truth because they had superior knowledge over the borrowers.  ¶ 401.  *See In re MyFord Touch*

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 38 -

1   *Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014). Further, having

2   volunteered to provide information to borrowers, Defendants had a duty to disclose

3   the whole truth. ¶ 402.  *See Tenet Healthsystem Desert, Inc. v. Blue Cross of Calif.*,

4   245 Cal. App. 4th 821, 844 (2016); *Low v. Wheeler*, 207 Cal. App. 2d 477, 484

5   (1962).  Because Defendants breached these duties, which arose independently from

6   the RISCs, the economic loss rule does not bar Plaintiffs' fraud claim.

7        **D.  <u>The Economic Loss Rule Does Not Bar Plaintiffs' Unjust Enrichment</u>**

8            **<u>Claim.</u>**

9        Because restitution is an equitable doctrine, not a tort, the economic loss rule

10   does not apply to bar Plaintiffs' unjust enrichment claim.  *See, e.g., ARC Welding*

11   *Supply Co., Inc. v. American Welding & Gas, Inc.*, No. 3:16-cv-00173-RLY-MPB,

12   2017 WL 4012106, at *9 (S.D. Ind. Sept. 12, 2017); *Jorgensen v. Colorado Rural*

13   *Properties, LLC*, 226 P.3d 1255, 1259 (Colo. App. 2010).

14   **VII.   <u>PLAINTIFFS STATE A CLAIM FOR FRAUD BY CONCEALMENT.</u>**

15       Defendants challenge Plaintiffs' fraud by concealment claim on the basis that

16   all material facts concerning the CPI scheme were fully disclosed.  This argument

17   borders on frivolous.  No disclosure ever revealed that Defendants engaged in a 14-

18   year scheme to systemically bilk more than 2 million consumers by forcing them to

19   pay for duplicative and unnecessary CPI while deliberately ignoring borrowers'

20   proof of insurance—all so Defendants could reap hundreds of millions of dollars in

21   premiums, kickbacks, and other compensation.   Had Defendants' fraud been

22   publicly-known, it would have stopped long before Wells Fargo drew the ire of

23   banking regulators who are demanding comprehensive remediation to its customers.

24   This Court should reject Defendants' arguments out of hand.

25       A claim for fraud by concealment must allege:  (1) the defendant concealed a

26   material fact; (2) the defendant had a duty to disclose the fact to the plaintiff; (3) the

27   defendant intended to defraud the plaintiff; (4) the plaintiff was unaware of the fact

28   and would not have acted as she did if she had known of the concealed fact; and (5)

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 39 -

the plaintiff sustained damage as a result.  *RBC Bearings Inc. v. Caliber Aero, LLC*, No. SACV 121442 FMO (PLAx), 2013 WL 12129619, at *5 (C.D. Cal. Apr. 3, 2013) (citing *Kaldenback v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (2009)).[21]  The Amended Complaint satisfies these elements.

### A. Defendants Omitted Material Facts.

Defendants have no basis to assert that all material facts concerning the CPI scheme were disclosed.  Both Wells Fargo and National General argue that the CPI scheme was not concealed because:  (1) the RISCs disclosed that borrowers were required to have physical damage insurance; (2) the RISCs and Insurance Request Letters disclosed that Wells Fargo "may buy insurance to protect our interest in your vehicle," unless it received proof of adequate insurance; (3) the Insurance Request Letters disclosed that a Wells Fargo affiliate would "earn a commission if this insurance is purchased"; and (4) the Coverage Issued Letters disclosed the annual insurance premium, finance charge, and amounts by which the borrower's payments would increase.  WF at 12-16; NG at 14-15.  These statements are half-truths at best.

At no point did Defendants disclose the following material facts:

- Wells Fargo and the CPI Vendor deliberately disregarded the borrower's proof of insurance, Agreement to Furnish Insurance provided by the borrower at loan origination, and electronic information about the borrower's insurance that was available through the EDI system.  ¶¶ 110-111, 113, 116-118, 132.

- Defendants knew at the time the CPI Vendor mailed the Insurance Request and Coverage Issued Letters to borrowers that Wells Fargo did not need to purchase insurance to protect its interest in their vehicles.  ¶¶ 119, 132-33.

---

[21] A plaintiff may state a claim for fraud by concealment without being able "to specify the time, place and specific content of an omission as precisely as would a plaintiff in a false representation claim."  *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007); *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007).  However, the Amended Complaint provides an incredibly detailed description of Defendants' fraud.

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 40 -

- Defendants' force-placement of CPI on eligible accounts did not depend on whether the borrower had independent insurance. ¶ 135.
- The commission received by Wells Fargo's affiliate, WestFin, was by no means "earned," because WestFin did not sell, market or promote CPI to borrowers; collect insurance premiums; communicate with borrowers or the CPI Vendor; assist the policyholder in determining her insurance needs; shop the market for the insurance product that met the policyholder's needs; or seek the most competitive price for the product.  Instead, the commission was an unlawful kickback for the placement of CPI on borrowers' accounts. ¶¶ 120-121.  Moreover, the percentage of the commission identified was often false. ¶ 122.  Nothing within Wells Fargo's "contractual rights" within the RISCs disclosed that Defendants would charge borrowers for a commission, the cost of administering the CPI Program, or the cost to pay for Tracking Services across Wells Fargo's entire indirect auto loan portfolio. ¶ 134.
- The Coverage Issued Letter failed to identify that the specified premium included an unearned commission paid to WestFin for CPI issued during the period from March 2002 to February 2013. ¶ 136.
- Defendants back-dated CPI by 77 days without regard to the condition of the vehicle before force-placing CPI, enabling Defendants to collect two and one-half months of premiums for which they knew the likelihood they would have to pay claims was minimal. ¶ 137.
- Wells Fargo knew that its disclosure of CPI charges in the Coverage Issued Letters was inadequate.  In fact, an internal Wells Fargo audit concluded that billing statements to borrowers were "deceptive" because they failed provide an itemized breakdown of CPI charges and associated fees. ¶¶ 141-43.

Each of these well-pleaded omissions of material fact is sufficient, by itself, to support Plaintiffs' fraud by concealment claim.  But Wells Fargo's acknowledgment that its CPI billing practices were deceptive—both in its own audit and through the

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 41 -

testimony of its corporate representative—should settle the matter.  ¶¶ 141-42.

National General also complains about the purported lack of specificity in Plaintiffs' allegations concerning the Insurance Request and Coverage Issued Letters. NG at 15.  But, the false and misleading nature of these letters is described in more than requisite detail in the Amended Complaint to satisfy Rule 9(b).  ¶¶ 113-124, 129-139.  The named Plaintiffs also allege in detail the dates of force-placement, the amounts charged, that Defendants ignored their proof of independent insurance, and that National General never disclosed the scheme to them.  ¶¶ 190-92, 198-200, 203, 206-08, 211, 214-19, 222-29, 233-37, 240-46, 249-54, 257-67, 266-70, 273-78, 281-88, 291-96, 299-303.  Plaintiffs' allegations state a claim for fraud by concealment.

## B. National General Committed Fraud.

National General makes the untenable argument that Plaintiffs allege only that Wells Fargo committed a fraud and the CPI Vendor simply did not disclose the scheme.  Not so.  Wells Fargo and the CPI Vendor established and agreed upon all policies, practices, and procedures relating to the force-placed CPI Program.  And, the CPI Vendor directly communicated with Plaintiffs and the putative class. Plaintiffs' allegations place the CPI Vendor at the heart of the fraudulent scheme:

- The CPI Vendor and Wells Fargo continually coordinated activities (including the transmission of the Daily New Loan File, agreements to force-place CPI on borrowers, monthly management meetings, and quarterly business reviews), financial ties (including daily payments of premium, refunds, and commissions), and contractual business arrangements (including the IAAs and GAAs).  ¶¶ 51, 67-69, 109.

- The CPI Vendor drafted the Insurance Request and Coverage Issued Letters, and mailed them directly to Plaintiffs and putative class members.  ¶¶ 114,116, 130, 131.  That the letters were on Wells Fargo's letterhead was a deliberate decision between Defendants because, in the words of Wells Fargo's corporate representative, "'it's a Wells Fargo Dealer Services account, and the customer

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 42 -

knows Wells Fargo Dealer Services and does not know the vendor.'" ¶ 115. Thus, the misrepresentations and omissions in both letters were attributable not only to Wells Fargo, but also to the CPI Vendor. ¶¶ 114, 130.

- The Insurance Request Letters included four points of contact—an "Insurance Service Center" post office box, toll-free telephone number, fax number, and website—each owned and operated by the CPI Vendor. ¶¶ 123.

- The CPI Vendor placed outbound calls to consumers regarding insurance and devised scripts for its customer services representatives. ¶¶ 124-125.

- Wells Fargo's Rule 30(b)(6) witness testified that both Defendants agreed to eliminate any reference in Coverage Issued Letters to the lucrative kickbacks Wells Fargo received from the unearned commissions. ¶ 136.

Accordingly, National General cannot claim that Wells Fargo alone committed fraud or deny knowing the material information that both Defendants concealed.

### C. Defendants Were Obligated to Disclose the CPI Scheme.

Although Wells Fargo appears to concede that it had a duty to disclose, National General argues otherwise. Regardless, both Defendants were obligated to disclose the true nature of the CPI scheme to Plaintiffs and the putative class.

First, Defendants' duty to disclose arises from their superior knowledge of the CPI scheme. Defendants ran the CPI Program for 14 years and knew exactly how it was defrauding unsuspecting consumers. In fact, one major harmful practice identified by a Wells Fargo risk review was "False placement of insurance … insurance is added when the customer sent in valid proof but due to our error in system, insurance gets added anyway." ¶ 150. Similarly, National General recognized that the largest categories of complaints it received pertained to "Duplicate Coverage," "Placement of Insurance," or "Document Not Received." ¶ 159.[22] Because Wells Fargo and National General had superior knowledge of the

---

[22] National General cannot possibly claim that it did not know it was force-placing

CPI scheme, both Defendants were under a duty to disclose.  ¶ 401; *see, e.g.*, *Tenet Healthsystem Desert*, 245 Cal. App. 4th at 844; *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014).

Second, both Defendants had a duty to disclose the true nature of the CPI scheme because they actively concealed the full truth.  ¶ 401.  "[A] cause of action for non-disclosure of material facts may arise [where] … the defendant actively conceals discovery from the plaintiff."  *Tenet Healthsystem Desert*, 245 Cal. App. 4th at 844 (citations and quotations omitted).  National General actively concealed that, in coordination with Wells Fargo, it force-placed CPI without regard for the insurance Plaintiffs maintained on their vehicle, and paid kickbacks in the form of unearned commissions and other compensation to Wells Fargo for force-placing CPI.

Finally, Defendants had a duty to disclose the true nature of the CPI scheme in light of their half-truths about how they force-placed CPI, the validity of their CPI practices, and the charges for CPI premiums, interest, and unearned commissions.  ¶ 402.  A duty to disclose exists where "the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead."  *Tenet Healthsystem Desert,* 245 Cal. App. 4th at 844.  Having volunteered to provide information to Plaintiffs and putative class members, Defendants had the duty to disclose "the whole truth."  *Id.*; *see also Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 292, (2004).

Contrary to National General's argument, a fiduciary or contractual relationship with Plaintiffs and putative class members is not required for the CPI Vendor to have a duty to disclose.  *See Tenet Healthsystem Desert*, 245 Cal. App. 4th at 844 (explaining that cause of action for non-disclosure of material facts may arise "[i]n transactions which do not involve fiduciary or confidential relations").[23]

---

duplicative insurance, as its own documents show that more than 10,000 CPI certificates per month were flat-canceled due to duplicative coverage.  ¶ 148.

[23]  National General's authorities are also inapposite, because the plaintiffs in those

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 44 -

1
#### D. **The CPI Vendor Intended to Defraud Plaintiffs.**

2          The Amended Complaint more than adequately alleges that the CPI Vendor

3    intended to defraud Plaintiffs and the putative class.    To satisfy this element,

4    Plaintiffs must plead that the CPI Vendor had "intent to *induce conduct*—action or

5    inaction—that differs from what the plaintiff would have done if informed of the

6    concealed fact." *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal.

7    App. 4th 858, 869 (2008) (emphasis in original); *see also Southern Calif. Dist.*

8    *Council, Assemblies of God v. Shepherd of Hills Evangelical Lutheran Church*, 144

9    Cal. Rptr. 46, 50 (1978).   Plaintiffs have done so.   Plaintiffs allege throughout the

10   Amended Complaint that the CPI Vendor, like Wells Fargo, intended Plaintiffs and

11   members of the putative class to pay for unnecessary CPI.   ¶¶ 2, 5, 6, 51, 63, 79-81,

12   112-14, 125, 129, 132, 136, 147-48, 159, 172, 190-91, 199-200, 207, 215-16, 223-

13   25, 234, 241, 250, 258, 267, 274, 282, 292, 300.   Defendants achieved their objective,

14   generating hundreds of millions of dollars in net written premiums, commissions,

15   interest, and other charges.   ¶¶ 80- 81.   These allegations plausibly satisfy the element

16   of intent and state a claim for fraud by concealment against all Defendants.[24]

17
## VIII.    **PLAINTIFFS STATE CLAIMS FOR UNJUST ENRICHMENT.**

18
19         Plaintiffs' Amended Complaint pleads more than sufficient facts to state a

20   _____

21   cases did not have any direct dealings with the defendants.  *See Arch Ins. Co. v.*
     *Allegiant Prof'l Bus. Servs., Inc.*, No. CV 11-1675 CAS PJWX, 2012 WL 1400302,
22   at *6 (C.D. Cal. Apr. 23, 2012) ("[Plaintiff] has failed to allege any specific dealings
     between itself and [Defendant].");  *Shin v. Kong*, 80 Cal. App. 4th 498, 509 (2000)
23   ("Appellant has not pled a direct misrepresentation was made to him");  *Simon v.*
24   *Starbucks Corp.*, No. CV 09-9074-GW(PLAX), 2010 WL 11597622, at *3 (C.D.
     Cal. Apr. 1, 2010) (Starbucks did not make any representations directly to plaintiff).
25
26   [24] National General argues that claims premised on injuries suffered prior to July 30,
     2015 are barred by the three-year statute of limitations.  NG at 17 n. 4.  However,
27   Cal. Civ. Proc. Code § 338 does not protect an entity that delays the assertion of a
     right through fraudulent concealment.  *Kane v. Cook*, 8 Cal. 449, 458 (1857).
28

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 45 -

claim for unjust enrichment under California law and the laws of the other relevant states.[25]  Plaintiffs Fosdick, Moskus and Preston allege a stand-alone claim for unjust enrichment on behalf a nationwide class or alternatively, a California sub-class under California law. ¶ 407(a). Likewise, the remaining Plaintiffs state unjust enrichment claims on behalf state sub-classes under the laws of Colorado, Indiana, Mississippi, Minnesota, Missouri, Wisconsin and Wyoming. ¶ 407 (b)-(h).[26]

### A. California Recognizes a Cause of Action for Unjust Enrichment.

California recognizes a cause of action for unjust enrichment. *See Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1001 (2015) ("Squire Sanders next suggests that relief for unjust enrichment is unavailable here. … We disagree."). In *Hartford*, the plaintiff insurer brought an unjust enrichment claim to recover "unreasonable" and "excessive" fees which it paid to independent counsel who defended the plaintiff's insured under a reservation of rights.  The Court held that such a claim sounds in restitution.  *Id.* at 1001.[27]

Defendants cite cases that do not recognize unjust enrichment as a stand-alone

---

[25] Numerous courts have upheld unjust enrichment claims against force-placement insurers including Wells Fargo, QBE, and Balboa. *See, e.g., Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV, 2011 WL 4368980, at *11 (S.D. Fla. Sept. 19, 2011); *Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915-JST ANX, 2012 WL 7071469, at *12–13 (C.D. Cal. Dec. 20, 2012); *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063 (N.D. Cal. 2012); *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 964 (N.D. Cal. 2012); *Lane v. Wells Fargo Bank N.A.*, No. C 12-04026 WHA, 2013 WL 269133 (N.D. Cal. Jan. 24, 2013); *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1312, 1319 (S.D. Fla. 2014); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1122 (N.D. Cal. 2013); *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1303 (C.D. Cal. 2015).

[26] A choice-of-law analysis is premature and should occur at class certification. *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013).

[27] *See also Ghirardo v. Antonioli*, 14 Cal. 4th 39, 50 (1996); *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000); *Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708, 722 (2003); *Ellsworth*, 908 F. Supp. 2d 1063.

claim, but *Hartford* has settled the matter.  Defendants' reliance on this Court's opinion of *Browning v. Unilever United States, Inc.*, No. SACV1602210AGKESX, 2017 WL 7660643 (C.D. Cal. Apr. 26, 2017), with all due respect, is misplaced. There, the Court relied on *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 763 (9th Cir. 2015), which pre-dates *Hartford*.  To the extent this Court understands that California recognizes a stand-alone cause of action for unjust enrichment pertaining to insurance, then the claim applies here.  Recent decisions in the Ninth Circuit also confirm that unjust enrichment is a viable claim under California law.[28]

## B. Plaintiffs State A Claim Under Various States Laws.

The Amended Complaint states a claim for unjust enrichment or restitution under California, Colorado, Indiana, Mississippi, Minnesota, Missouri, Wisconsin and Wyoming law.  In all eight states, a plaintiff must allege that the defendant has been enriched at the plaintiff's expense, and that the enrichment was unjust.[29] Plaintiffs easily satisfy these elements.  First, Defendants received a benefit— hundreds of millions of dollars in CPI premiums, commissions, fees, and charges— from Plaintiffs and putative class members from the CPI scheme.  ¶ 407.  Second,

---

[28] *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 1 (9th Cir. 2017); *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 535 (9th Cir. 2016); *Gasser v. Kiss My Face, LLC*, No. 17-CV-01675-JSC, 2017 WL 4773426, at *9 (N.D. Cal. Oct. 23, 2017); *Wu v. Sunrider Corp.*, No. CV 17-4825 DSF (SSX), 2017 WL 6880087, at *4 (C.D. Cal. Oct. 10, 2017); *Young v. Cree, Inc.*, No. 17-CV-06252-YGR, 2018 WL 1710181, at *8 (N.D. Cal. Apr. 9, 2018).

[29] **CA**: *Ghirardo*, 14 Cal. 4th at 50; *Hartford Casualty Ins. Co.*, 61 Cal. 4th 988; **CO**: *City of Arvada ex rel. Arvada Police Dep't v. Denver Health & Hosp. Auth.*, 403 P.3d 609, 616 (Colo. 2017);  **IN:** *Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009);  **MN**: *Dahl v. R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186, 195–96 (Minn. App. 2007); **MS**: *Blades v. Countrywide Home Loans, Inc.*, No. CIVA1:06CV1000LG-JMR, 2007 WL 2746678, at *5 (S.D. Miss. Sept. 18, 2007); **MO**: *AIG Agency, Inc. v. Missouri Gen. Ins. Agency, Inc.*, 474 S.W.3d 222, 228 (Mo. App. 2015); **WS**: *Admiral Ins. Co. v. Paper Converting Mach. Co.*,  811 N.W.2d 351, 360 n.16 (Wis. 2012); **WY**: *Boyce v. Freeman*, 39 P.3d 1062, 1065 (Wyo. 2002).

- 47 -

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

Defendants were unjustly enriched at the expense of the Plaintiffs and the putative class members in that money and property belonging Plaintiffs and Class Members were unjustly taken.  ¶ 408.  Third, it would be inequitable and unconscionable for Defendants to retain the money from their unlawful practice of force-placing unlawful and unnecessary and undisclosed CPI.  ¶ 409.  That much is clear.  Even Wells Fargo is planning some form of "remediation" for some consumers.  ¶¶ 174-78.  Plaintiffs' allegations more than suffice to state a cause of action in any of the relevant jurisdictions at issue.

### C. Defendants' Remaining Arguments Are Without Merit.

#### 1. Plaintiffs Adequately Allege They Conferred a Benefit on National General.

National General wrongly argues that Plaintiffs' claim for unjust enrichment under Minnesota, Missouri, and Wisconsin law cannot survive because they have not alleged that they conferred a direct benefit to National General.  NG at 25.  National General ignores the well-pleaded allegations that the CPI scheme was lucrative for National General and its predecessors because it gave them a captive audience of millions of accounts on which it earned hundreds of millions of dollars in net written premium at a low risk of payout on insurance claims.  ¶¶ 80, 330.  These allegations satisfy plaintiffs' pleading obligations.  Moreover, contrary to National General's argument, there is no requirement to plead receipt of a direct benefit.  *See Luckey v. Alside, Inc.*, 245 F. Supp. 3d 1080, 1099 n.26 (D. Minn. 2017); *CCA Glob. Partners, Inc. v. Yates Carpet, Inc*, No. 4:06 CV 15 JCH, 2006 WL 2883376, at *10 (E.D. Mo. Oct. 5, 2006); *First Am. Title Ins. Co. v. Westbury Bank*, No. 12-CV-1210, 2013 WL 1677911, at *12 (E.D. Wis. Apr. 17, 2013).[30]  Because Plaintiffs need not allege a

---

[30] This is consistent with the decisions of other courts analyzing similar force-placed insurance schemes.  *See, e.g., Williams*, 2011 WL 4368980, at *9 ("[J]ust because the benefit conferred by Plaintiffs on Defendants did not pass directly from Plaintiffs to Defendants—but instead passed through a third party—does not preclude an

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 48 -

direct contact between a plaintiff and a defendant to show that a "direct benefit" was conferred, National General's arguments fail.

### 2. Plaintiffs Adequately Pled that Defendants Appreciated and Knowingly Accepted the Benefit.

Defendants' argument that Plaintiffs have failed to properly plead an "appreciation" and "knowing acceptance" of the benefit under Minnesota and Wisconsin law is erroneous.  WF at 24; NG at 25.  The entire CPI scheme was viable because Defendants knew they were taking money from consumers to pay for unnecessary CPI at overly-inflated prices.  Plaintiffs readily plead both Defendants' knowing acceptance and appreciation of the consumers' payments.  ¶¶ 345, 350, 404.

### 3. The Claims Are Not Barred by Contract.

National General incorrectly argues that Plaintiffs' unjust enrichment claims are precluded under Colorado, Minnesota, Mississippi, Wisconsin, and Wyoming law because of the existence of an express contract between Plaintiffs and Wells Fargo. NG at 25. This argument is without merit.  Defendants are not parties to the RISCs between the car dealers and Plaintiffs, and Plaintiffs do not assert a breach of contract claim.  As Plaintiffs' unjust enrichment claim does not arise from the RISC, it cannot be barred by the RISC.[31]  In any event, Plaintiffs would be entitled to pursue their unjust enrichment claim as an alternative theory of liability.[32]

---

unjust-enrichment claim.  Indeed to hold otherwise would be to undermine the equitable purpose of unjust enrichment claims.").

[31] *See Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1053 (N.D. Cal. 2013); *Williams*, 2011 WL 4368980, at *11; *Morris v. Wells Fargo Bank N.A.*, No. 2:11-cv-474, 2012 WL 3929805, at *10 (W.D. Penn. Sep. 7, 2012); *MidCities Metro. Dist. No. 1 v. U.S. Bank Nat. Ass'n*, No. 12-CV-03322-LTB, 2013 WL 3200088, at *8 (D. Colo. June 24, 2013); *Kevin Breyer Concrete, Inc. v. Beutel*, No. A09-1547, 2010 WL 2732384, at *4 (Minn. Ct. App. Apr. 13, 2010); *Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1116–17 (E.D. Wis. 2016) (same).

[32] *See Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012); *McNeary-Calloway*, 863 F. Supp. 2d at 964–65; *Ellsworth*, 908 F. Supp. 2d at 15–19; *DSU*

## IX.    LEAVE TO AMEND SHOULD BE GRANTED IF NECESSARY.

If this Court is inclined to grant any portion of Defendants' motions, Plaintiffs request leave to amend.  Leave to amend should be "freely granted when justice so requires."   Fed. R. Civ. P. 15(a).   This policy is to be applied with "extreme liberality."   *Eminence Capital LLC v. Speon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  Liberal amendment policy strongly favors determination of cases on their merits, so leave to amend is freely granted unless the opposing party can make a showing of undue prejudice, bad faith, or dilatory motive.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  No such showing can be made here.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motions to dismiss, or allow leave to amend on any dismissed claims.

Dated:  November 2, 2018          Respectfully submitted,

By:    */s/ Aaron M. Sheanin*
          Aaron M. Sheanin

          Aaron M. Sheanin (SBN 214472)
          asheanin@robinskaplan.com
          ROBINS KAPLAN LLP
          2440 W. El Camino Real, Suite 100
          Mountain View, California  94040
          Telephone:  (650) 784-4040
          Facsimile:  (650) 784-4041

          Roman M. Silberfeld (SBN 62783)
          rsilberfeld@robinskaplan.com
          ROBINS KAPLAN LLP
          2049 Century Park East, Suite 3400
          Los Angeles, California  90067

_____

*Aviation, LLC v. PCMT Aviation, LLC*, No. 07-1478 SC, 2007 WL 3456564, at *2 (N.D. Cal. Nov. 14, 2007).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone: (310) 552-0130
Facsimile: (310) 229-5580

Kellie Lerner (*pro hac vice*)
klerner@robinskaplan.com
Benjamin D. Steinberg
bsteinberg@robinskaplan.com
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, New York  10022
Telephone:  (212) 980-7400
Facsimile:  (212) 980-7499

By:      */s/ Roland Tellis*
_____
         Roland Tellis

Roland Tellis (SBN 186269)
Dan Alberstone (SBN 105275)
Mark Pifko (SBN 228412)
Sterling Cluff (SBN 267142)
David Fernandes (SBN 280944)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:  (818) 839-2333
Facsimile:   (818) 986-9698

*Plaintiffs' Co-Lead Counsel*

Eric H. Gibbs (SBN 178658)
Michael L. Schrag (SBN 185832)
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510)-350-9700
Facsimile: (510 350-9701

Charles E. Schaffer (*Pro Hac Vice*)
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 51 -

1

2

Telephone: (215) 592 1500
Facsimile: (215) 592-4663

3

4

Paul F. Novak (*Pro Hac Vice*)
WEITZ & LUXENBERG, P.C.
Chrysler House

5

6

719 Griswold, Suite 620
Detroit, Michigan 48226

7

Telephone: (313) 800-4170
Facsimile: (646) 293-7992

8

9

*Plaintiffs' Steering Committee*

10

David S. Casey, Jr. (SBN 060768)
Gayle M. Blatt (SBN 122048)

11

CASEY GERRY SCHENK

12

FRANCAVILLA BLATT & PENFIELD, LLP
110 Laurel Street

13

San Diego, California

14

Telephone: (619) 238-1811
Facsimile: (619) 544-9232

15

16

*Plaintiffs' Liaison Counsel*

17

18

19

20

21

22

23

24

25

26

27

28

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 2, 2018, I electronically filed the foregoing document entitled **PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** with the Clerk of the Court for the United States District Court, Central District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

*/s/ Aaron M. Sheanin*
Aaron M. Sheanin

PLS.' OMNIBUS OPP. TO DEFS.' MOTIONS
TO DISMISS PLS.' AM. CONSOLIDATED
CLASS ACTION COMPL.

- 53 -