UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | SAML 17-02797 AG (KESx) | Date | August 5, 2019 |
| Title | IN RE WELLS FARGO COLLATERAL PROTECTION INSURANCE LITIGATION | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Melissa Kunig | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |

**Proceedings:** **[IN CHAMBERS] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

This case concerns allegations that Wells Fargo Bank, N.A., together with National General Insurance Company and other related entities, unlawfully participated in a scheme to force millions of Wells Fargo auto-loan customers to pay for Collateral Protection Insurance ("CPI") they didn't need, want, or (in some cases) know about. (*See generally* Second Amended Consolidated Class Action Complaint ("SAC"), Dkt. No. 239-1.) The parties have reached a settlement, and Plaintiffs now ask the Court to, among other things, preliminarily approve that settlement. (Mot., Dkt. No. 262.) Defendants haven't filed an opposition to Plaintiffs' motion. A few days before the originally scheduled hearing, leave to file an amicus brief was sought by the State of Arizona, and was granted. (*See generally* Order, Dkt. No. 275.)

The Court GRANTS Plaintiffs' motion for preliminary approval of class action settlement. The Court ORDERS that the final approval hearing be set **October 28, 2019 at 10:00 a.m.**

**1.     CLASS CERTIFICATION**

A plaintiff seeking class certification must first show that a proposed class satisfies all four of Federal Rule of Civil Procedure 23(a)'s elements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation by the class representatives and class counsel. Fed. R. Civ. P. 23(a). A plaintiff seeking class certification must also show that a proposed class satisfies the requirements of at least one of Rule 23(b)'s three subsections: (1) that prosecuting separate actions would create a risk of inconsistent or varying adjudications; (2) that the party opposing class certification has acted or failed to act on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | August 5, 2019 |
|---|---|---|---|
| Title | IN RE WELLS FARGO COLLATERAL PROTECTION INSURANCE LITIGATION | | |

grounds that apply generally to the class; or (3) that questions of law or fact common to class members predominate over any questions affecting only individual members and a class action is superior to other available methods for adjudicating the dispute. Fed. R. Civ. P. 23(b)(1)–(3).

These requirements aren't just pleading standards. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A party seeking class certification must affirmatively show that these requirements have been met and survive a rigorous analysis that may dip into an evaluation of the case's merits. *Id.* at 350–51. And the class certification analysis doesn't become less rigorous because a case is headed towards settlement. Indeed, courts "must pay 'undiluted, even heightened, attention' to class certification requirements in a settlement context." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)). Among other things, courts must be on the lookout for improper collusion among the parties. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

For settlement purposes only, the parties propose the following class:

> [A]ll Wells Fargo Dealer Services ("WFDS") Customers who had a CPI Policy placed on their Account(s) that became effective at any time between October 15, 2005 and September 30, 2016 and Wells Fargo Auto Finance ("WFAF") Customers who had a CPI Policy placed on their Account(s) that became effective at any time between February 2, 2006 and September 1, 2011. The "Settlement Class" excludes Non-Compensable Flat Cancels.

(Mot. at 6.) The term "Non-Compensable Flat Cancels" is more specifically defined in Plaintiffs' proposed order. (*See* Proposed Order, Dkt. No. 262-9.)

Plaintiffs' proposed settlement class satisfies Rule 23(a)'s four elements. The class consists of more than 570,000 members so numerosity is met. (*Id.* at 16); *see Villalpando v. Exel Direct, Inc.*, 303 F.R.D. 588, 605-606 (N.D. Cal. 2014) ("[C]ourts have routinely found the numerosity requirement satisfied when the class compromises 40 or more members.") As for commonality, there do appear to be some differences among the various class members. For example, it appears that class members had CPI force-placed on their accounts for different periods and suffered different consequences as a result. (*See* Mot at 7-8.) Even considering this, the Court concludes that the commonality requirement is met. *See Hanlon*, 150 F.3d at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | August 5, 2019 |
|---|---|---|---|
| Title | IN RE WELLS FARGO COLLATERAL PROTECTION INSURANCE LITIGATION | | |

1019 ("All questions of fact and law need not be common to satisfy the rule."); *see also Dukes*, 564 U.S. 338, 369 (2011) ("Even a single question of law or fact common to the members of the class will satisfy the commonality requirement."). Overall, the class members all challenge the same course of conduct based on the same core factual allegations. Indeed, the class members' claims are all rooted in Defendants' purported scheme to profit from force-placed CPI that the class members didn't want or need but paid for nonetheless. These and other common questions of fact and law establish that the commonality requirement is met. *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005) (explaining that courts generally find commonality where "the lawsuit challenges a systemwide practice or policy that affects all of the putative class members[ ]"). Further, typicality is met because Plaintiffs' individual claims arise from the same events and are based on the same legal theories as those claims asserted on behalf of the class. Both Plaintiffs and the other class members were all financially harmed by Defendants alleged force-placement of CPI on their Wells Fargo auto loan accounts. Finally, regarding adequacy, the Court cannot identify any conflicts between Plaintiffs, Plaintiffs' attorneys, and the class. These and other facts sufficiently establish that Plaintiffs and their attorneys adequately represent the class.

The proposed settlement class also satisfies one of Rule 23(b)'s three subsections: the Rule 23(b)(3) predominance and superiority standard. Figuring out whether Defendants unlawfully engaged in a uniform scheme to profit from force-placed CPI establishes liability on a class-wide basis. The same can be said for determining whether Defendants made material misrepresentations and omissions concerning their loans and procedures for force-placing CPI. There are limited issues affecting only some class members. And there are common questions that class members share (like whether it was reasonable to rely on Defendants' purported misrepresentations about CPI) that are a "significant aspect of the case and . . . can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (internal quotation marks and citations omitted). Put simply, issues common to the class predominate over any questions affecting only individual members and a class action is the best way to resolve this dispute.

Another reason conditional class certification is appropriate is that the parties' proposed settlement doesn't appear collusive. *See Bluetooth Litig.*, 654 F.3d at 947. The settlement resulted from "five in-person mediation sessions between May 2018 and March 2019, as well as numerous telephone sessions with . . . Professor Eric D. Green." (Mot. at 1.) The parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | August 5, 2019 |
|---|---|---|---|
| Title | IN RE WELLS FARGO COLLATERAL PROTECTION INSURANCE LITIGATION | | |

have engaged in substantial motion practice in this case both on the pleadings and during discovery. The settlement amount also reflects a compromise between two strongly held and disputed positions.

Concluding that the proposed classes meet the requirements of Federal Rule of Civil Procedure 23, the Court CERTIFIES the proposed class for settlement purposes only. The Court provisionally appoints Plaintiffs Angelina Camacho, Odis Cole, Nyle Davis, Duane Fosdick, Regina-Gonzalez Phillips, Brandon Haag, Paul Hancock, Dustin Havard, Brian Miller, Analisa Moskus, Keith Preston, Victoria Reimche, Dennis Small, and Bryan Tidwell as class representatives. The Court provisionally appoints as class counsel Baron & Budd, P.C., Robins Kaplan, LLC, Gerry, Schenk, Francavilla, Blatt & Penfield, LLP, Weitz & Luxenberg PC, the Gibbs Law Group, and Levin Sedran & Berman. The Court appoints Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the third-party settlement administrator.

## 2. PRELIMINARY APPROVAL OF SETTLEMENT TERMS AND COSTS

The Court may approve a settlement agreement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). District courts must consider various factors in assessing a settlement proposal:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. Because of the danger of improper collusion, "settlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Id.* But "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027. "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Id.* at 1026. Ultimately, "[s]trong judicial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | August 5, 2019 |
|---|---|---|---|
| Title | IN RE WELLS FARGO COLLATERAL PROTECTION INSURANCE LITIGATION | | |

policy favors settlements." *Churchill Vill., LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (omission and quotation marks omitted) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Here, the parties' settlement has no reversion and each class member would receive a payment unless the class member opts out. (Settlement Agreement, Dkt. No. 262-1 at 9; Proposed Long Form Notice, Dkt. No. 262-5 at 3.) Under the proposed settlement, Defendants will pay at least $393,500,000 to Plaintiffs and class members, *plus* attorney fees and costs. (*Id.* at 1.) The settlement thus includes the following payments:

| Amount | Payee |
|---|---|
| $393,500,000 or more | Class members |
| $36,000,000 or less | Class attorney fees |
| $105,000 or less | Class representative awards (not to exceed $7,500 per representative) |
| $500,000 or less | Litigation costs |

(*Id.* at 6-10.) It's unclear, however, whether any of these amounts encompass the anticipated settlement administration costs, or what those costs might be. The $393,500,000 paid to class members also fails to account for non-cash compensation eligible class members will receive in addition to their allocated share of cash compensation. (*Id.* at 7.) This non-cash compensation is comprised of adjustments to adverse credit reporting caused by force-placed CPI. (*Id.* at 7-8.) As for cash compensation, each class member will be paid according to the parties' settlement allocation plan. That plan divides class members into four partially overlapping categories. (*See generally* Settlement Allocation Plan, Dkt. No. 262-3.) For each category, payment will depend on the CPI refund amount for each individual class member, among other things. (*See* Mot. at 7-9.) This information will be determined using Defendants' records. (*Id.* at 6.) There's also a "catch-all" category to ensure payment for class members "who are otherwise not receiving any payment under the Settlement Allocation Plan." (*Id.* at 9.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | August 5, 2019 |
|---|---|---|---|
| Title | IN RE WELLS FARGO COLLATERAL PROTECTION INSURANCE LITIGATION | | |

The Court has considered various factors in assessing this class settlement and finds that, at this stage, the settlement is overall fair, reasonable, and appropriate. One important factor is that the parties reached the settlement after significant arms-length negotiations with a third-party mediator. *See In re First Capital Holdings Corp. Financial Prods.*, No. MDL 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) ("[T]here is typically an initial presumption of fairness where the settlement was negotiated at arm's length.") Indeed, the parties' settlement negotiations followed nearly two years of vigorous prosecution, and can be accurately described as "difficult, protracted," and highly "adversarial". (*See* Mot. at 15.) Further, the parties have grappled significant discovery throughout this case. (*Id.* at 14-15.) In response to Plaintiffs' document requests, Defendants produced more than 663,880 documents in this case. (*Id.* at 4.) And Plaintiffs responded to Defendants' document requests be producing over 1,800 pages of documents. (*Id.*) Plaintiffs' counsel also conducted "a comprehensive factual investigation into their allegations" that encompassed "full day interviews of Wells Fargo personnel in Charlotte, North Carolina" and "review[ing] [ ] almost 4.5 million pages of documents". (*Id.* at 4, 15.) The parties also met and conferred on many occasions regarding issues relating to the pleadings, motion practice, and discovery. All this tends to show that the settlement is based on a sufficient understanding of what's at stake in this case. Plaintiffs' counsel are experienced litigators and have apparently concluded that the benefits of settlement outweigh the risks of continued litigation. The Court is also reassured that leftover settlement funds don't revert back to Defendants or the parties' attorneys.

Further, the proposed release of claims appears fair and reasonable. The scope of released claims is limited to those claims arising out of the CPI policies placed on the class members' WFDS and WFAF accounts. (*Id.* at 10; *see also* Settlement Agreement at 9.) The release is also limited to claims arising during the class period. (*Id.*) Further, the proposed release provision was part of a very complex negotiation over a long period of time with very experienced counsel.

But the Court does have some concerns about the reasonableness of class counsel's proposed fees, particularly given the recent filing of an amicus brief in this case. (*See generally* Amicus Br., Dkt. No. 272-1.) That brief suggested that the proposed fee award was excessive since most of the total settlement amount—approximately $385 million—came from government-ordered restitution payments, not class counsel's efforts settling this case. Thus, the brief urged the Court to "demand that any final approval papers seeking to rely on the $385 million in [government]-ordered restitution include materials specifically demonstrating the actual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | August 5, 2019 |
|---|---|---|---|
| Title | IN RE WELLS FARGO COLLATERAL PROTECTION INSURANCE LITIGATION | | |

value within that fund that was created by Class Counsel." (*Id.* at 6.) The brief also insisted that the Court clarify that the "proper legal standard" for awarding fees requires class counsel to "establish what portion (if any) of the $385 million in [government]-ordered restitution was 'created by class counsel,' rather than the government." (*Id.* at 2 (citing *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 338 (3d Cir. 1998)).)

Plaintiffs call the brief "a premature and baseless attack on Plaintiffs' forthcoming fee application." (Plaintiffs' Suppl. Br., Dkt. No. 276 at 2.) Plaintiffs say it's premature because, here, at the preliminary approval stage, the Court need only determine whether the overall settlement (as opposed to the fee award specifically) seems reasonable. Further, Plaintiffs contend the amicus brief is baseless because the government consent orders didn't require Wells Fargo to pay a specific restitution amount. Rather, the consent orders mandated that Wells Fargo submit some remediation plan for review while also providing some guidelines for what that remediation plan should include. (*See id.* at 7-8.) But ultimately, it was up to Wells Fargo, "in conjunction with Plaintiffs and other stakeholders, to craft the details including . . . the amounts recoverable, and the procedures for providing redress to consumers." (*Id.* at 9.) Thus, Plaintiffs insist that the consent orders don't take away from the settlement value class counsel added to this case, making their proposed attorney fee award reasonable.

For now, the Court is satisfied that the proposed fee award is likely reasonable. The requested fee reflects fair compensation for undertaking this complex, risky, expensive, and time-consuming multidistrict class action, particularly since both parties have been actively litigating this case for nearly two years. Still, given the concerns discussed in the amicus brief, the proposed fee award will be carefully scrutinized at the final approval stage. The Court will pay close attention to whether the amount of fees requested proportionally reflects class counsel's added settlement value. And although the Court doesn't hold that the standard set forth in *Prudential* necessarily applies, the reasonableness of the proposed fee award certainly hinges on whether class counsel can appropriately take credit for the entire settlement amount. So class counsel's anticipated fee motion should thoroughly brief this important point.

Other important points for further briefing include review of the fess under a lodestar analysis and a percentage-of-recovery analysis. The Court may review, for example, whether the 25% benchmark for fees applies to large recoveries. Also, whether the potential government-ordered restitution relates to the difficulty of recovery, and therefore reasonable fees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | August 5, 2019 |
|---|---|---|---|
| Title | IN RE WELLS FARGO COLLATERAL PROTECTION INSURANCE LITIGATION | | |

The Court GRANTS preliminary approval of the class settlement.

### 3. PROPOSED NOTICE

When a court certifies a class under Rule 23(b)(3), it must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In "plain, easily understood language" the notice must "clearly and concisely" state:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion;
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* Finally, "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted).

The parties agree that a third party, Epiq, will send class members notice materials via first-class mail. (Mot. at 23.) The notice materials encompass both a Long Form Notice and a Summary Notice. (*Id.*) "The Long Form Notice includes a thorough series of questions and answers" as well as "an overview of the litigation, an explanation of the benefits available under the Settlement, and detailed instructions on how to comment on, participate in, or opt out of, the settlement." (*Id.*) The Summary Notice, on the other hand, is meant to "convey the basic structure of the Settlement and is designed to capture Settlement Class members' attention with clear, concise plain language." (*Id.*) The Summary Notice also lists the address for the Settlement Website, which Epiq will establish and maintain to "provide Settlement Class members with detailed information about the case and access to key documents, . . . as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SAML 17-02797 AG (KESx) | Date | August 5, 2019 |
|---|---|---|---|
| Title | IN RE WELLS FARGO COLLATERAL PROTECTION INSURANCE LITIGATION | | |

well as answers to frequently asked questions." (*Id.*) This Court's own review of the proposed notice materials confirms that both documents are broken down into clearly labeled categories and subcategories of information, and all the elements outlined in Rule 23(c)(2)(B) are adequately covered. (*See generally* Proposed Notices, Dkt. Nos. 262-5, 262-6.) A simple statement of the range of potential recoveries might be helpful in the summary notice, but the complexity of the different categories of class members likely unduly complicates such a statement.

The Court therefore concludes that the notice packet and plan comply with Federal Rule of Civil Procedure 23.

### 4.   FINAL APPROVAL HEARING

A court must hold a hearing before finally determining whether a class settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). Plaintiffs propose that the final fairness hearing take place on October 28, 2019. (Mot. at 23.) The Court thus ORDERS that the final fairness hearing be set **October 28, 2019 at 10:00 a.m.** Regarding all other applicable dates, the Court ADOPTS the implementation schedule included in Plaintiffs' proposed order except for those dates listed that have already passed. (*See* Proposed Order at 8.) The parties are encouraged to work together in choosing any additional dates or deadlines needed.

### 5.   DISPOSITION

The Court GRANTS Plaintiffs' motion for preliminary approval of class action settlement. The Court ORDERS that the final approval hearing be set **October 28, 2019 at 10:00 a.m.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | mku | |